UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ )<br>BASSEM YOUSSEF, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL BUREAU )<br>OF INVESTIGATION, *et al.,* )<br>Defendants. )<br>_____ ) | Civil Action No. 1:03CV01551 (CKK/AK) |

## MEMORANDUM OPINION

Pending before this Court is the Plaintiff's Motion to Compel Production of Documents and Verified Answers to Interrogatories ("Motion") [42], Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents and Verified Answers to Interrogatories ("Opposition") [57], and Plaintiff's Reply to Defendants' Opposition ("Reply") [65].  Plaintiff requests that this Court enter an Order compelling Defendants to produce the requested documents and verified answers to interrogatories.  Upon consideration of the record and memorandum submitted in support and in opposition to the Motion, for the reasons set forth below, the Motion is granted in part and denied in part.  An appropriate order accompanies this Memorandum Opinion.

## I.  BACKGROUND

Plaintiff Bassem Youssef filed a complaint on July 18, 2003 alleging that the Federal Bureau of Investigation ("FBI") violated Title VII of the Civil Rights Act of 1964 ("Title VII"),

and seeking injunctive relief, a declaratory judgment, and compensatory damages.  Plaintiff

alleges that the FBI took discriminatory employment actions against him based on his national

origin and in retaliation for having engaged in an activity protected under Title VII.  In the

current Motion, Plaintiff requests that this Court compel Defendant to produce documents

relating to any FBI Agent promotions to Senior Executive Service ("SES") level positions in the

Counterterrorism Division ("CTD") (or its predecessor, the National Security Division ("NSD"))

from 1999 to the present, including the official personnel file for all such Agents.  (Mot. at 1.)

Plaintiff similarly requests documents related to promotions into the CTD SES following

temporary duty ("TDY") assignments.  (Mot. at 1.)  Plaintiff seeks all reports regarding

inspection of the FBI's office in Legat Riyadh, Saudia Arabia from June 2000 to the present, and

"all documents directly or indirectly related to the FBI's decision to transform the position of

Legat Riyadh into a term SES level position." (Mot. at 1-2.)  Finally, Plaintiff demands "all

compilations of statistics of FBI employee race, sex, and national origin on a year-by-year basis

from 1996 through the present for: (a) all FBI employees at any level; (b) all FBI Agents at the

GS-14 level; (c) all FBI Agents at the GS-15 level; (d) all FBI Agents at the SES level."  (Mot. at

2.)   Plaintiff admits that Defendants have produced some personnel files on Agents promoted

into SES positions within the CTD, but contends that Defendants have refused to produce all

such documents and provide verified answers to related interrogatories.  (Mot. at 2.)

　　　　Prior to filing the Motion to Compel, Plaintiff conferred with Defendants' counsel in an

effort to secure the discovery without court action, in accordance with Fed. R. Civ. P.

37(a)(2)(B).  Upon failure to reach an agreement, Plaintiff subsequently filed the current Motion

on May 18, 2005.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Fed. R. Civ. P. 33(b) relates to interrogatories and states in relevant part that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."  Fed. R. Civ. P. 34 governs production of documents and requires that all requests for production of documents "set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity."  Fed. R. Civ. P. 34(b).  Rule 34(b) also provides that a party served with a request shall give a written response, and "[t]he response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated."  *Id.*

If an objection regarding the relevancy of any discovery request is raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable. *Alexander v. F.B.I.*, 194 F.R.D. 316, 325 (D.D.C. 2000).  Fed. R. Civ. P. 26(b) states that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  If there is an objection based on undue burden, the objecting party must make a specific, detailed showing of how the discovery request is burdensome.  *See Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) ("A party opposing discovery bears the burden of showing why discovery should

be denied."); *United States v. Network Software Assocs*, 217 F.R.D. 240, 246 (D.D.C. 2003)

("[C]ourts entertain the burdensome objection only when the responding party demonstrates how

the document is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering

evidence which reveals the nature of the burden.'") (quoting *Athridge v. Aetna Cas. & Sur. Co.,*

184 F.R.D. 181, 191 (D.D.C. 1998)).

The court can limit discovery, either on its own initiative or pursuant to a motion for a

protective order, if it determines that

> (i) the discovery sought is unreasonably cumulative or duplicative; (ii) the party seeking discovery has had ample opportunity by discovery in this action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2); *Alexander v. F.B.I.*, 194 F.R.D. 316, 325 (D.D.C. 2000).

## III.  ANALYSIS

### A.  Timeliness of Plaintiff's Motion to Compel

Defendant contends that Plaintiff's Motion to Compel is untimely as it was filed three

weeks after the close of written discovery.[1]  Plaintiff responds that the April 27, 2005 deadline

for written discovery was delayed when the two parties subsequently filed a joint motion for

enlargement of discovery until May 18, 2005.[2]  (Reply at 2.)  Plaintiff further states that he did

---

[1] Plaintiff filed his Motion on May 18, 2005.  Defendant claims that the close of written discovery was April 27, 2005.  (Opp'n at 3.)

[2] The joint motion filed was to bifurcate discovery on damages and for an enlargement of time to complete fact discovery depositions.  *See* Civil Docket for Case: 1:03-cv-01551-CKK-AK at 5 [34].

not file the current Motion until May 18 because he hoped to resolve the dispute without the necessity of court action. (Reply at 7.) While the joint motion filed was for an enlargement of time to complete fact discovery depositions, the Plaintiff's delay in filing was reasonable in light of the fact that outstanding discovery issues were being resolved up to May 18, 2004 and the delay in filing did not prejudice Defendant. For that reason, the Court finds Defendants' argument of untimeliness without merit.

### B.  Documents Relating to Permanent and TDY SES Level Positions within the CTD

Plaintiff asserts that he made repeated requests, beginning on June 23, 2004, that Defendants produce documents related to permanent and TDY SES level positions. (Mot. at 7.) Specifically Plaintiff requests: (1) documents related to the selection of any FBI employee who was promoted into an SES-level position within the CTD from 1999 to the present; (2) any documents related to any acting or TDY positions within the CTD held by individuals from September 11, 2001 to the present; (3) each such employee's personnel file. (Mot. at 7.) Defendants object to these requests on the basis of relevance and on the basis that some requests are "overbroad, vague and overly burdensome." (Opp'n at 9.)

### 1. Selection of FBI employees promoted into an SES-level position

Defendants' primary argument in opposing the document requests related to promotion within the SES is that the documents are not relevant to Plaintiff's claim in accordance with Fed. R. Civ. P. 26(b). Defendants argue that "based on the allegations in the complaint, Youssef is not claiming that he should have been promoted to one or more specified positions and it does not appear that all SES positions within the [CTD] are pertinent to his case." (Opp'n at 9.) Defendants also object on the basis that some requests are "overbroad, vague and overly

burdensome." (Opp'n at 9.)

Both parties agree that notwithstanding Defendants objections, Defendants did produce FBI Career Board records relating to the promotion of FBI officials from the rank of GS-14 or GS-15 into the SES. (Opp'n at 9; Mot. at 7-8.) These files contained a memorandum regarding candidates for SES positions and employee profiles for each of the candidates. (Opp'n at 13-14.) However, Defendants did not produce any documents relating to individuals who were transferred from one SES position to another, claiming that "such information was not relevant because [those] employees are not similarly situated to plaintiff who, as a GS-15, allegedly sought an entry-level SES position." (Opp'n at 11.) Defendants argue that Plaintiff must demonstrate that "he has been treated in a disparate manner than those to whom he is similarly situated" to prove his *prima facie* case. (Opp'n at 18-19.) Plaintiff responds that these documents are relevant, *inter alia,* "to the issue of whether Defendants' purported legitimate reasons for failing to promote Plaintiff were in fact pretext for discrimination," and to the futility exception to the Title VII requirement that a plaintiff must demonstrate that he applied for a promotion. (Reply at 13, 14.)

A document or other discoverable material is relevant when the information it contains is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Furthermore, relevant materials include "any matter that could bear on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Network Software Assocs.*, 217 F.R.D. at 245-46 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).

-6-

Plaintiff has made a Title VII claim and therefore, will establish a *prima facie* case of discrimination upon demonstrating that: (1) he is a member of a protected class; (2) he applied and was qualified for a job that an employer was trying to fill; (3) though qualified, he was rejected; and (4) that similarly situated employees outside of the protected class were treated more favorably. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Plaintiff contends that a Title VII plaintiff is not required to demonstrate that he applied for the position "if he can demonstrate that he did not apply . . . because any such application would have been futile." (Mot. at 12 (citing *Winbush v. State of Iowa*, 66 F.3d 1471, 1480-81 (8th Cir. 1995)).

Defendants argue that Plaintiff's futility claim is insufficient and that Plaintiff does not have standing to bring the claim; however, "discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) (citing 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2008 (2d ed. 1994)). Accordingly, as the requested documents are relevant to Defendants' affirmative defense that Plaintiff lacks standing and are likely to lead to admissible evidence regarding Plaintiff's claim of futility in accordance with *Winbush*, Plaintiff has met his burden of establishing that some of the requested documents are relevant.

Plaintiff has established that the pertinent documents related to the selection of GS-14 and GS-15 level FBI employees for SES level positions within the CTD from 1999 are relevant to the pending action. However, *McDonnell Douglas* requires Plaintiff to prove that similarly situated employees were treated more favorably to make his *prima facie* case. 411 U.S. at 802. Plaintiff has not shown a basis for requesting information with respect to individuals transferred from one SES position to another SES position because, as Defendants correctly note, "those

individuals are not similarly situated to Plaintiff," and therefore, such information is not relevant.

Defendants also make general claims that the document request is overly burdensome. Defendants argue that the document request seeking information related to the promotion of FBI employees, in addition to information in the official promotion records, is overly broad and unduly burdensome because "it requires an extensive search of FBI files for information that is not kept in the normal course of business." (Opp'n at 9.)

Once relevancy is established, the party objecting to the discovery then bears the burden of "showing why discovery should not be permitted." *Alexander v. FBI*, 194 F.R.D. 316, 325-36 (D.D.C. 2000).   Defendants' claim of undue burden without any explanation of why production is unduly burdensome requires the Court to find that Defendants must produce those pertinent documents related to the selection of GS-14 and GS-15 FBI employees into SES level positions from 1999 to the present to the extent that they have not already done so.

## 2. Documents Related to TDY Positions

Defendants make a similar argument in response to a request for documents relating to every FBI employee placed in a GS-15 or SES level position on a TDY basis within the CTD, claiming that they are not relevant to Plaintiff's *prima facie* case and that Plaintiff's futility argument is insufficient.  (Opp'n at 17.)  Plaintiff asserts that the information regarding TDY level positions is relevant to his case because "the FBI used a system of acting and temporary supervisory positions as a means of preselecting non-Arab American employees for promotion into SES level positions within the CTD in a discriminatory manner."  (Reply at 16.)  Plaintiff further argues that these documents may provide evidence of Defendants' discriminatory pattern to the extent that they show widespread abuse of the FBI's TDY assignment practice.  (*Id.*)

The Court finds that these documents are relevant to Plaintiff's claim and must be produced.  As a part of his *prima facie* case, Plaintiff is attempting to demonstrate that it would have been futile for him to apply for an SES position within the CTD.  *See Winbush*, 66 F.3d at 1480-81.  Plaintiff claims to need the information regarding the TDY assignment practice to show that "individuals selected for promotion into the SES were TDY'd to their positions prior to their official promotions."  This information is also relevant to Defendants' affirmative defense that Plaintiff lacks standing.  Accordingly this Court finds that the documents related to TDY assignments to SES positions within the CTD from September 11, 2001 to the present are relevant and should be produced.

Defendants also objected to producing the documents because the requests were overbroad "inasmuch as employees may be designated to act temporarily in a management position for very short period of time, such as when the supervisor is out of the office for an afternoon;" that the request was vague because "it was unclear what the request means by "selected" on a "TDY" basis; and that the requests are burdensome because the FBI would have to search file by file for such information.  (Opp'n at 17-18.)

Once the relevance of the material sought has been established, the party objecting to the discovery then bears the burden of "showing why discovery should not be permitted."  *Alexander v. FBI*, 194 F.R.D. 316, 325-36 (D.D.C. 2000).  This Court does not look favorably upon the "boilerplate objections" made by Defendant and finds that Defendants have not met their burden of showing why the discovery request is overly burdensome.  Furthermore, it is clear from Defendants' Opposition, as well as Plaintiff's memoranda, that the phrase "TDY assignments" has meaning within the FBI; Defendants' themselves used the term stating "[t]here are only three

examples of individuals who were acting in or assigned TDY to the positions for which they

applied on a permanent basis." (Opp'n at 21.)  For this reason, this Court finds that the

documents related to any acting or TDY positions within the CTD held by individuals from

September 11, 2001 to June 30, 2005, are relevant and must be produced by Defendant,  but

excluding the documents relating to those "employees designated to act temporarily in a

management position for a very short period of time such as when the supervisor is out of the

office for an afternoon." (Opp'n at 17.)

### 3. Employee Personnel Files

Plaintiff also seeks the employee personnel files of any FBI employee who was promoted

into an SES-level position within the CTD from 1999 to the present and any employee holding a

TDY position within the CTD from September 11, 2001 to the present.  (Mot. at 7.)  Plaintiff

states that he "seeks access to the personnel files . . . in order to obtain any documents disclosing

the dates on which these agents began their inspections and the dates on which they completed

their inspections." (Mot. at 18.)[3]  Defendants assert that the requested personnel records,

including documents relating to inspection certification [4] are not relevant.  (Opp'n at 25.)

Plaintiff responds that the documents are relevant to his retaliation claim because "since filing his

administrative Title VII complaint the FBI has retaliated against him by preventing him from

---

[3] Plaintiff claims that his managers "repeatedly prevented him from completing the number of inspections required to obtain his inspection certification" and seeks this information to demonstrate that the FBI delayed him from becoming inspection certified.  (Mot. at 18.)

[4]Inspection certification is a component of the traditional FBI promotion process.  In general, agents who have been promoted to GS-14 Supervisory Special Agent (SSA) positions may commence the process to become inspection certified.  Certification occurs when an SSA has completed 6 inspections of FBI offices.  (Opp'n at 24.)

completing his inspection certification." (Reply at 21.)

A document or other discoverable material is relevant when the information it contains is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). To the extent that the requested documents demonstrate that other FBI employees completed their inspections, while Plaintiff was "prevented" from completing his, these documents are relevant to Plaintiff's claim of retaliation and thus, are discoverable.

Defendants also claim that the information regarding inspection certification of FBI employees is overly burdensome because the FBI "does not maintain inspections files based on the individuals who performed the inspections or who were inspected." (Opp'n at 25.) Defendant further claims that Plaintiff did not request documents concerning inspection certification of FBI employees in his earlier discovery requests. (Opp'n at 25.) Plaintiff responds to these arguments by stating that Defendants failed to meet their burden of demonstrating that Plaintiff's discovery requests would impose an undue burden. (Reply at 25.)

The Court finds the information sought by Plaintiff relating to the permanent and TDY SES level positions, including personnel files, is relevant to the Plaintiff's claims and is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Once the relevance of the material sought has been established, the party objecting to the discovery then bears the burden of "showing why discovery should not be permitted." *Alexander v. FBI*, 194 F.R.D. 316, 325-36 (D.D.C. 2000). In order to sustain an objection based on undue burden, the objecting party must make a specific, detailed showing of how production of the requested documents would be burdensome. *Id.* In this case, Defendants did not meet their burden because they did not make any specific showing of how the requested documents would

be burdensome to produce.  Furthermore, considering the pleadings and the memorandum submitted in support and in opposition of this Motion, it appears that only a limited number of people were promoted into an SES or TDY SES level position of the CTD during the relevant period.

Nonetheless, the Court finds that Defendant must only respond to this request by providing the personnel files of the relevant FBI employees.  Plaintiff did not specifically request information regarding the inspections and stated in his current Motion that "Plaintiff seeks access to personnel files . . . in order to obtain any documents disclosing the dates on which these agents began their inspections and the dates on which they completed their inspections."  (Mot. at 18.) Thus, Defendants need not conduct an independent search for any inspection information but must provide the personnel files as requested by Plaintiff.

### C. Interrogatory Request Nos. 8 and 13

Plaintiff seeks to compel verified answers to Interrogatory Request Numbers 8 and 13. Interrogatory Number 8 requests that Defendants "identify the name, sex, race and national origin of every person at the GS-14 level or above who was 'assigned to work' in the CTD . . . from September 11, 2001 through the present."  Interrogatory Number 13 similarly requests Defendants to "identify all employees who have applied for or obtained a position within the SES through any means from 1999 to the present" and to provide the employee's name, race, sex, and national origin.  (Mot. at 19-20.)  Plaintiff claims that this information is relevant to the issue of whether an application by Plaintiff to an SES position would have been futile and "to the extent that the evidence sought . . . demonstrates a disparity in the number of minority Agents assigned to the TDY and SES level positions . . . the information sought in these interrogatories provides

relevant circumstantial evidence of discriminatory motive." (Mot. at 22.)  Defendant stated that it would provide a supplemental interrogatory response with the names of the GS-15 and SES employees in response to Interrogatory Request No. 8.  (Opp'n at 16.)  Defendants further contended that the national origin information is not kept in the database, and that race and gender data are irrelevant.  (Opp'n at 16.)

Plaintiff has met his burden of proof in establishing that some of the requested information is relevant and likely to lead to admissible evidence relevant to his claims.  The request for the names and national origin of all persons assigned to work in the CTD and those that applied for positions within the SES is relevant to Plaintiff's claim of futility.  However, the sex and race of the persons is not relevant to this case because this Court determined on May 26, 2005 that "Plaintiff failed to exhaust his administrative remedies regarding claims of racial discrimination resulting in disparate impact" and denied Plaintiff's Motion to Amend to add this claim.  (Memorandum Order [47] at 7.)  Accordingly, discovery relating to race and gender is not relevant to Plaintiff's national origin discrimination claim and Plaintiff's request is only relevant to the extent that it requests information on national origin and names.

Defendants further contend that providing the national origin information is overly burdensome. (Opp'n at 16.)  Defendants provided no information as to why this information is unduly burdensome and therefore, did not meet its burden of proof in establishing burdensomeness.  *See Alexander v. FBI*, 194 F.R.D. 316, 325-36 (D.D.C. 2000).  Accordingly, Defendants must answer Interrogatory No. 8 and provide Plaintiff with the name and national origin of every person at the GS-14 level or above assigned to work in the CTD from September 11, 2001 to the present to the extent they have the information and have not already responded to

the request.  Additionally, Defendants shall provide the name and national origin of all GS-14,

GS-15, and SES level employees who applied or were successfully promoted to an SES level

position to the extent that Defendants have that information.

### D. Documents Related to Reports of Legat Riyadh Office Inspection

Plaintiff requests "all documents related to all reports of inspection for the Offices of the

FBI's Legat Riyadh, Saudi Arabia from [June 2000] . . . through the present."  (Mot. at 23.)

Plaintiff claims that these documents are directly relevant "to Plaintiff's performance as Legat

Riyadh, because they [would demonstrate], by way of comparison, Plaintiff's superior

performance in this difficult assignment." (Mot. at 24.)  Plaintiff seeks to compare the Reports of

Inspection of the Office during Plaintiff's tenure and that of his successors and hopes to rebut

Defendants' assertions that Plaintiff suffered from performance deficiencies during his tenure as

Legat Riyadh (Mot. at 24.)  Specifically, Plaintiff claims that performance deficiencies attributed

to him arose during a time when other FBI employees served as Legat Riyadh.  (Mot. at 24.)

Defendants object to this request on the ground that it is not relevant to the claims and

defenses in this case "inasmuch as the Legat position in Saudi Arabia did not become a term SES

position until 2003 and plaintiff left the position in June 2000."  (Opp'n at 27.)  Defendants

further state that the work of the Riyadh Legat office was transformed after Plaintiff departed in

June 2000, following the bombing of the USS Cole in Yemen and the September 11, 2001

terrorist attacks, and thus that "it is not meaningful to compare plaintiff's performance in the

Legat position with that of his successor given the radical change in circumstances."  (Opp'n at

28.)

Plaintiff claims he needs the requested documents to demonstrate that he was "qualified

-14-

for a job that an employer was trying to fill" in accordance with *McDonnell Douglas*.   411 U.S. at 802.   However, the requested documents are not likely to lead to admissible evidence on the issue of Plaintiff's qualifications because comparing Plaintiff's job performance with the performance of his successors is not relevant in light of Defendants statement that the Legat Riyadh position was markedly different and transformed after Plaintiff left.   Furthermore, as Defendants note, the supervisory chain of command for his successor was different than it was for Plaintiff when he served as Legat.  (Opp'n at 28.)  Accordingly, this Court finds that the inspections of the Legat Riyadh position after Plaintiff left and after the job requirements were changed are too remote and not relevant to Plaintiff's claim that his job performance was equal to or better than his successors; thus, Plaintiff's motion to compel documents related to reports of Legat Riyadh office inspections is denied.

### E. Documents Related to Decision to Transform Position of Legat Riyadh into a Term SES Position

In a Request for Production of Documents dated March 17, 2005, Plaintiff requested, "all documents related . . . to the decision to make the Legat position in Saudi Arabia an SES position" and "all documents related . . . to any evaluation of the Legat position . . . to determine whether that position should be within the SES and/or should be a GS-15 position."  (Mot. at 28.) Plaintiff claims that these documents are relevant and will "provide further evidence that Plaintiff was fully capable of performing at the SES level upon his return to the United States," as well as to "serve to rebut Defendants' claims that Plaintiff suffered from performance deficiencies during his tenure as Legat." (Mot. at 28-29.)  Defendant again claims that this information is wholly unrelated to Plaintiff's claims stating "the changes to the Legat office resulted from the Cole

bombing, the 9/11 attacks, the war in Iraq, and the bombing of the United States Embassy."
(Opp'n at 29.)

For the reasons set forth above, namely that world events after Plaintiff left the position in 2000 led to a change in the position requirements and that Plaintiff seeks to use the information to demonstrate that he was capable of performing an SES-level position, the Court finds Plaintiff's request is not relevant and must be denied.  If a position changes and by accretion receives more responsibilities, it is not meaningful to compare the previous position with the new position.  In light of Defendants' statement that the Legat Riyadh position was transformed after the bombing of the USS Cole and the terrorist attacks of 9/11, the Court finds that the requested information is not likely to lead to admissible evidence relating to Plaintiff's national origin discrimination claim in accordance with Fed. R. Civ. P. 26(b); thus, Defendants need not produce such documents.

### F.  Documents and Interrogatories Related to Statistical Information of Race, Sex and National Origin

Plaintiff requests detailed statistical information pertaining to the composition of the FBI employees at the GS-14, GS-15, and SES level in terms of race, gender, and national origin in the form of both interrogatories and document requests.  (Mot. at 29-30.)  Plaintiff claims that these are relevant to establishing a general policy and practice with respect to minority employment.  (Mot. at 32 (citing *McDonnell Douglas*, 411 U.S. at 805)).  Defendants object to these requests on the ground that they are not relevant and are overly broad inasmuch as they apply to all FBI employees and not just those who were similarly situated to the Plaintiff.  (Opp'n at 30.)  Defendants also claim that the FBI does not possess information regarding race or national origin

and that they are not required to "create data."  (Opp'n at 31.)

Rule 34 allows a party to serve on another party a request to produce any designated documents that "are in the possession, custody, or control of the party upon whom the request is served."  Fed. R. Civ. P. 34(a).  Thus, Rule 34 only requires a party to produce documents that are already in existence and does not require a party to prepare new documents solely for their production.  *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000); *see Rockwell Int'l Corp v. H. Wolfe Iron and Metal Co.*, 576 F. Supp. 511, 511 (W.D. Pa. 1983); 8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994). Accordingly, Defendant need not create data in response to this Document Request.

Moreover, Plaintiff has not established that all of the requested information is relevant to his claim of national origin discrimination.  Statistical information pertaining to the composition of the SES in terms of race and gender is not relevant or likely to lead to admissible evidence in Plaintiff's national origin discrimination claim.  Thus, the fact that Defendants do not possess statistical information regarding race or national origin and the non relevance of information regarding gender requires the Court to find that Defendant need not provide such information.

### G.  Interrogatory Request No. 10 and Document Request No. 8

Plaintiff's Interrogatory Request No. 10 and Document Request No. 8 request Defendants to identify all FBI Agents with more operational counterterrorism ("CT") experience than Plaintiff with respect to Middle Eastern/Central Asian terrorist organizations on September 11, 2001; describe the nature and extent of their work; and provide their complete personnel files. (Opp'n at 31; Mot. at 32.)  Plaintiff contends that this information is relevant because it will "provide evidence that will demonstrate that Plaintiff possessed qualifications in the area of

-17-

Counterterrorism Operations which were superior to most . . . [other] employees." (Mot. at 33.)

Defendant objects to these requests because "the term 'operational [counterterrorism] experience' [is] vague and incapable of precise definition and without knowing what this term means, it was impossible to compare plaintiff with others," and because the request is overly burdensome. (Opp'n at 32.) Plaintiff asserts that it consented to narrowing the request to only those employees at the GS-15 level and thus Defendants objection based on undue burden is without merit. (Mot. at 33-34.)

The Court finds that Plaintiff's request for the identity of FBI Agents with more operational counterterrorism is incapable of a precise definition. Moreover, determining who had *more* operational experience than the Plaintiff is subjective and by its nature imprecise. Accordingly, Defendants need not provide any further information regarding Interrogatory Request No. 10 and Document Request No. 8.

## H.  Interrogatory Request Nos. 2 and 5

Plaintiff's Interrogatory Nos. 2 and 5 request that Defendants "explain in detail the reasons why Plaintiff was not assigned to a position within the International Terrorism Operations Section ("ITOS") I or II in accordance with an April 30, 2002 memorandum requesting Plaintiff's direct placement into these Sections."[5] (Mot. at 34-35.) Defendants object to both interrogatories claiming that they are vague and that Request No. 2 is overly broad. (Opp'n at 34.)

Notwithstanding these objections, Defendants responded by asserting that Plaintiff never

---

[5] Interrogatory Nos. 2 and 5 were virtually identical and Defendant offered a similar response to both.

applied for these positions and that Plaintiff was assigned to the Document Exploitation task force "at least in part due to his Arabic language skills and experience." (Opp'n at 34.) Defendants also stated that other than the information provided, "defendants have been unable to discover an explanation for why plaintiff's transfer to ITOS was never effectuated." (Opp'n at 35.) Plaintiff argues that these responses do not explain "why the FBI did not implement Plaintiff's directed transfer in accordance with the April 30, 2002 memorandum." (Mot. at 35.)[6]

The Court finds that the answer to Interrogatories Nos. 2 and 5 provided by Defendants was sufficient as Defendants offered as much information as was available to them regarding the assignment. Furthermore, Plaintiff had an opportunity to explore this issue further in his deposition of Thomas Kinnally, a FBI Agent involved in the creation of the April 30, 2002 memorandum. Accordingly, Plaintiff's request for any further information relating to the ITOS Assignment and April 30, 2002 memorandum is denied.


DATED: July 22, 2005                          _____
                                              ALAN KAY
                                              UNITED STATES MAGISTRATE JUDGE


_____

[6] The Court notes that Plaintiff did not address these requests in his Reply filed on July 15, 2005.