UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BASSEM YOUSSEF,
    Plaintiff,

v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,
    Defendants.

Civil Action No. 03-1551 (CKK)

**AMENDED MEMORANDUM OPINION**
(July 22, 2005)

    Pending before the Court is Plaintiff's Motion for Reconsideration [58/61], in which Plaintiff asks the Court to reconsider Magistrate Judge Alan Kay's decision [44/47] to deny Plaintiff's Motion for Leave to File His Second Amended Complaint [22]. Defendants oppose Plaintiff's motion [63], and Plaintiff has filed his Reply [67]. After an examination of the parties' arguments, Magistrate Judge Kay's ruling, and the relevant law, the Court finds that it shall deny Plaintiff's Motion for Reconsideration.

**I.    BACKGROUND**

    Plaintiff Bassem Youssef filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, as well as the First Amendment, the Lloyd-LaFollette Act and the Administrative Procedure Act, seeking injunctive, declaratory and equitable relief from alleged adverse employment actions taken against him, and other similarly situated employees, by the Federal Bureau of Investigation ("FBI"). Plaintiff was granted leave to amend his Complaint for the first time on October 25, 2004, a request that Defendants had not opposed. Discovery in this case was scheduled to close in April 2005. On March 8, 2005, Plaintiff filed

his Motion for Leave to File His Second Amended Complaint, in which he sought to add proposed Counts II and III, alleging disparate impact, and proposed Count V, alleging reprisal. Defendants did not oppose Plaintiff's request to add his proposed Count V, but did oppose Plaintiff's attempt to add the two claims of disparate impact.

The Court referred Plaintiff's motion seeking leave to amend his Complaint to Magistrate Judge Kay for a ruling, in conjunction with a motion involving discovery disputes, and on May 25, 2005,[1] Magistrate Judge Kay denied Plaintiff's request to add the two disparate impact claims. On June 1, 2005, Plaintiff filed a motion requesting an extension of time in which to file objections to Magistrate Judge Kay's ruling. The Court granted Plaintiff's request, but noted that Plaintiff would need to file a motion for reconsideration (not objections, as Plaintiff had suggested) under the appropriate legal standard, because Magistrate Judge Kay had issued a ruling on Plaintiff's motion, rather than a report and recommendation. On June 20, 2005, Plaintiff filed his Motion for Reconsideration, including 11 exhibits, and on June 21, 2005, Plaintiff filed additional exhibits and a proposed motion. On June 28, 2005, Plaintiff filed an "errata" to his Motion for Reconsideration, which consisted of a list of 56 errors contained in his original Motion for Reconsideration, and a corrected copy of the motion. Defendants subsequently opposed Plaintiff's motion, and the Court now rules on this record.

## II. LEGAL STANDARD

In light of the fact that Magistrate Judge Kay issued a ruling, as opposed to a report and recommendation on Plaintiff's Motion for Leave to File His Second Amended Complaint, any

---

[1] The accompanying Memorandum Opinion [47] was docketed on May 26, 2005.

disputes with that ruling must be addressed under Local Civil Rule 72.2(b) and 72.2(c). Rule 72.2(b) states that "[a]ny party may request the judge to reconsider a magistrate judge's ruling under paragraph (a) by filing a motion to reconsider within 10 days . . . ." Rule 72.2(c) sets forth the basis for reconsideration, stating that "a judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law." *See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous or contrary to law.*") (emphasis added). A court should make such a finding when "'on the entire evidence' the court 'is left with the definite and firm conviction that a mistake has been committed.'" *Neuder v. Battelle Pac. Northwest Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 365 (1948)); *see also Gluck v. Ansett Australia*, 204 F.R.D. 217, 218 (D.D.C. 2001).

Furthermore, a motion for reconsideration is "not simply an opportunity to reargue facts and theories upon which the court has already ruled." *United States v. Funds from Prudential Sec.,* 245 F. Supp. 2d 41, 44 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Nor is it "a vehicle for presenting theories or arguments that could have been presented earlier," *id*. at 38, or a method of introducing evidence that was "available but not offered at the original motion or trial," *Natural Res. Def. Council, Inc. v. United States Envt'l Protection Agency*, 705 F. Supp. 698, 702 (D.D.C. 1989), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989). Indeed, "[p]arties must take before the magistrate, not only their best shot, but all of their shots." *Borden v. Sec'y of Health and Human Servs.*, 836 F.2d 4, 6 (1st Cir.

1987).

## III.   DISCUSSION

In seeking to add his proposed Counts II and III, Plaintiff seeks to add two claims alleging discrimination resulting in a disparate impact against "all non-white FBI agents, including Plaintiff" in the Counterterrorism Division of the FBI.  Pl.'s Mot. to Amend at 3.  Plaintiff argues that his proposed Second Amended Complaint supplements his claims, and "adds additional factual allegations based on discriminatory conduct which Plaintiff has recently discovered during the February 2, 2005 deposition of John Pikus." *Id*. at 2.

Magistrate Judge Kay rejected Plaintiff's attempts to add Counts II and III, based on three primary findings.  First, Magistrate Judge Kay found that Plaintiff had failed to exhaust his administrative remedies with respect to his proposed claims of racial discrimination resulting in a disparate impact. *Youssef v. FBI*, No. 03-1551 at 4-7 (D.D.C. May 25, 2005) (Order and Accompanying Memorandum Opinion denying in part Plaintiff's Motion to for Leave to File His Second Amended Complaint) ("Memorandum Opinion" or "Mem. Op.").  Second, Magistrate Judge Kay found that Plaintiff lacked standing to bring his proposed Counts II and III because he had failed to apply for the jobs he claims to have been denied. *Id*. at 7-11.  Finally, Magistrate Judge Kay held that, even if Plaintiff had exhausted his administrative remedies and were found to have the requisite standing, "Plaintiff's attempt to add claims of disparate impact after discovery closed, and without good cause will ineluctably change the tenor of this case and necessitate additional factual and expert discovery, and prejudice the Defendants." *Id*. at 11-15.

Plaintiff's Motion for Reconsideration challenges each of Magistrate Judge Kay's rulings.

However, after considering Magistrate Judge Kay's ruling in light of Plaintiff's arguments, the Court cannot find that Magistrate Judge Kay's ruling was clearly erroneous or contrary to law. Rather, the Court finds that Magistrate Judge Kay's ruling was thorough, correct, and amply supported by the law.

### A. *Plaintiff Has Not Met the Exhaustion Requirement for His Proposed Disparate Impact Claims*

Magistrate Judge Kay found that Plaintiff had failed to meet the exhaustion requirements for his proposed Counts II and III. Mem. Op. at 4-7. A plaintiff must exhaust the available administrative remedies before he can establish subject matter jurisdiction over claims brought under Title VII. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Exhaustion in the Title VII context generally requires that the claims have been included in the underlying administrative complaint, although an exception permits a plaintiff to raise claims that are "like or reasonably related" to the claims in the administrative complaint. *Carroll v. England*, 321 F. Supp. 2d 58, 65 (D.D.C. 2004) (quoting *Park*, 71 F.3d at 907). In order to be considered "like or reasonably related," the claims raised in the district court "must be reasonably expected to grow out of the EEO investigation and administrative claims." Mem. Op. at 5 (citing *Contreras v. Ridge*, 305 F. Supp. 2d 126, 132 (D.D.C. 2004)); *see also Park*, 71 F.3d at 907. In addition, the claims must "describe the *same conduct* and implicate the *same individuals*" as in the administrative complaint. *Mack v. Strauss*, 134 F. Supp. 2d 103, 109 (D.D.C. 2001), *aff'd Mack v. Strauss*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. September 28, 2001) (quoting *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).

In applying this legal standard, Magistrate Judge Kay found that Plaintiff's EEO

investigation covered whether he was "discriminated against on the basis of his Middle Eastern origin" when he was subject to various employment actions. Mem. Op. at 5. Magistrate Judge Kay noted that "Plaintiff claims that the conduct alleged in his administrative [EEOC] complaint encompasses Counts II and III of his Second Amended Complaint; i.e. the FBI's post-September 11, 2001 practices . . . had a 'disparate impact on FBI agents of Arab/Middle Eastern descent and all minority Agents.'" Mem. Op. at 6 (quoting Reply at 3). However, Magistrate Judge Kay found that "Plaintiff's Reply mischaracterizes the nature of the allegations in Counts II and III to the extent that they focus on disparate impact based on racial considerations versus national origin." *Id*. at 6-7.

Ultimately, Magistrate Judge Kay found that "Plaintiff's administrative complaint and his sworn statement only mention national origin discrimination, not racial discrimination." *Id*. at 7. Relying on case law holding that "Title VII recognizes that race and national origin are ideologically distinct," Magistrate Judge Kay found that Plaintiff had never exhausted his administrative remedies with respect to his proposed Counts II and III alleging disparate impact from racial discrimination. Mem. Op. at 7 (citing *Sisay v. Greyhound Lines Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998) and *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996)).

Although Plaintiff agrees with Magistrate Judge Kay's finding that his administrative proceedings only addressed national origin discrimination, not racial discrimination, Plaintiff's substantive objection to Magistrate Judge Kay's finding is on the grounds that his proposed amended claims on behalf of himself and "all non-White agents should be interpreted as a

national origin claim." Mot. to Recon. at 4; *see also* Pl.'s Reply in Support of Mot. to Recon. ("Pl.'s Reply") at 2-3.[2] Based on Plaintiff's proposed interpretation of his claims, Plaintiff argues that his proposed disparate impact claims are related to his existing disparate treatment claims in a manner that should permit a finding that Plaintiff had in fact exhausted his administrative remedies with respect to his proposed additional claims.

The fact remains, however, that Magistrate Judge Kay found that Plaintiff's Counts II and III should *not* be interpreted as claims of national origin discrimination. Plaintiff's attempt to bring his claims on behalf of "non-White agents," and his administrative claims addressing alleged discrimination based on his Arab/Middle Eastern background does not find support in the case law which holds that "[r]ace and national origin are ideologically distinct under Title VII." *Kun*, 949 F. Supp. at 64. Furthermore, in his Second Amended Complaint, Plaintiff alleges that various positions were staffed by "white males." Second Am. Compl. ¶ 171. To bring claims based on the fact that individuals are not white, and then argue that the claims are not based on race is an implausible argument that Magistrate Judge Kay rejected. Plaintiff has presented the Court with nothing that suggests a different result, and this Court agrees with the Magistrate

---

[2]In his Reply, filed at 7:30 p.m. the night before the scheduled status hearing in this case, Plaintiff suggests that because the introduction to his Second Amended Complaint mentions national origin, "it is unambiguous that when Mr. Youssef refers to similarly situated persons as non-white persons, he does not invoke a race-based category." Pl.'s Reply at 2. This argument is unavailing. This reference to national origin was included in the introduction to Plaintiff's original Complaint and his First Amended Complaint, so the argument that the reference to national origin in Plaintiff's Second Amended Complaint should eliminate any ambiguity is spurious. Indeed, the Magistrate Judge's ruling was not dependent on this reference, which remained unchanged when Plaintiff attempted to add his new claims, and the Court agrees with the Magistrate Judge's holding. Plaintiff's protestations that his allegations are unambiguous does not make them so, and Plaintiff's may not recharacterize his proposed amendments in light of the Magistrate Judge's ruling.

Judge's holding.

Furthermore, Defendant points out that "[u]nder the EEOC guidelines . . . the term 'non-white' connotes a racial, not an ethnic, category," and that Plaintiff has admitted that "as a matter of race, he is not 'non-white.'" Def.'s Opp. at 6. Indeed, despite Plaintiff's statement that the Magistrate Judge should not have relied on the EEOC classifications, *see* Pl.'s Reply at 2, the Court finds that it certainly is reasonable to rely on the EEOC classifications when considering a Title VII complaint. Indeed, Plaintiff has agreed, in essence, that he is white for EEO purposes. Plaintiff has conceded that his Counts II and III cannot be based on a theory of racial discrimination. Mot. to Recon. at 3 ("Plaintiff did not assert a disparate impact claim based on *race*."). Although Plaintiff may attempt to salvage these claims by now discussing them as national origin claims, Defendants correctly point out that Plaintiff cannot represent all ethnic groups. *See* Def.'s Opp. at 2 (noting that Plaintiff does not have "standing to allege discrimination on behalf of all of *all* ethnic minorities, because there is no ethnic (as distinguished from racial) majority in the United States.").

Defendant explains, and the Court agrees, that "to the extent plaintiff is in a legal position to raise discrimination claims on behalf of others as well as himself, he is limited to raising claims only on behalf of other Arab Americans." *See* Def.'s Opp. at 6. However, Plaintiff's Second Amended Complaint is not worded so narrowly, and even in Plaintiff's Reply he continues to conflate the concepts of race and national origin. *See* Pl.'s Reply at 5 (discussing discrimination against "persons with similar racial-ethnic-national origin"). Consequently the

Court cannot permit Plaintiff's proposed amendments.[3]

### B. *Plaintiff Does Not Have Standing to Raise His Proposed Disparate Impact Claims*

Magistrate Judge Kay also held that Plaintiff lacked standing to raise his proposed Counts II and III, because Plaintiff did not apply for the positions to which he believes he is entitled. Mem. Op. at 7-8. A plaintiff can circumvent the requirement that he have applied for a job in order to be considered injured for purposes of a discrimination suit by demonstrating that such an application would have been futile in light of a defendant's discriminatory policies. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). Although Plaintiff argued that his application would have been futile, Magistrate Judge Kay rejected any futility argument because "Plaintiff acknowledges he first learned of the FBI's alleged discriminatory policies during the deposition of Mr. Pikus on February 2, 2005; thus, by his own admission, he could not have been aware of such policies when he initiated his administrative EEO process in March 2002." Mem.

---

[3]The Court also rejects the only other possible reading of Plaintiff's suggestion that his proposed Counts II and III "on behalf of Plaintiff and 'all non-White' agents should be interpreted as a national origin claim." Mot. to Recon. at 4. The Court considers the possibility that Plaintiff is arguing that the Court should read this statement to mean that he is recalibrating these claims in his Second Amended Complaint to address disparate impact on Arab or Middle Eastern agents, which could therefore make the proposed claims more closely related to the disparate treatment claims in the First Amended Complaint. However, Plaintiff is not permitted to undertake such a recalibration in light of the Magistrate Judge's ruling. Such an argument would be, in essence, an attempt to amend his proposed Second Amended Complaint into a Third Amended Complaint. A plain reading of Plaintiff's Second Amended Complaint does not suggest such an interpretation of Plaintiff's proposed claims. Accordingly, such an argument on Plaintiff's part cannot properly be part of a motion for reconsideration, because it would propose claims that were not in front of the Magistrate Judge. Even if the Court were to consider this alternative reading of Plaintiff's proposed claims, Plaintiff would still be faced with the prejudice these late proposed amendments bring to bear on Defendants. *See* Section III(C), *infra*.

Op. at 10.  Magistrate Judge Kay went on to state that "[a]ctions of an employer which an employee subsequently learns of and believes would make his application for a position futile, cannot be asserted *nunc pro tunc* to support a futility argument." *Id*.

The Court notes at the outset that Plaintiff's arguments that the Court should reverse Magistrate Judge Kay's holding on this point rely most heavily on additional citations to deposition transcripts that were on the record when Plaintiff filed his motion seeking leave to file his Second Amended Complaint.  To the extent that Plaintiff has determined in hindsight that his motion ruled on by Magistrate Judge Kay could have been more fulsome, Plaintiff's belated attempts to bolster his arguments is unavailing.  "Parties must take before the magistrate, not only their best shot, but all of their shots."  *Borden*, 836 F.2d at 6.

Plaintiff's only substantive argument in support of his position that Magistrate Judge Kay erred in his holding that Plaintiff lacked standing is that Plaintiff has in fact met the standard for demonstrating that it would have been futile for him to apply for the positions in dispute.  However, upon examination the Court does not find that Magistrate Judge Kay's ruling was clearly erroneous or contrary to law.  Under *International Brotherhood of Teamsters* and its progeny, a plaintiff can be considered a "constructive applicant" if he can "show that he was a potential victim of unlawful discrimination," and if he can meet the "difficult 'burden of proving that he would have applied for the job had it not been for' the employer's discriminatory practices."  *Milton v. Weinberher*, 645 F.2d 1070, 1078 (D.C. Cir. 1981) (quoting *Int'l Bhd. of Teamsters*, 431 U.S. at 367-68).  Magistrate Judge Kay explained that "[a]n argument of futility is unavailing if the employer openly advertised job vacancies for all employees," and that "[a]

plaintiff's failure to apply for a posted position is excused only if his or her employer fills the position in question without soliciting applications." Mem. Op. at 8.

Plaintiff attempts in his Motion for Reconsideration to recharacterize his interpretation of Mr. Pikus' deposition to suggest that "it was not until Mr. Pikus' deposition that the Plaintiff learned that the FBI's policies and practices underlying the TDY process . . . were inherently discriminatory and would have a disparate impact on Plaintiff and all other similarly situated minority employees." However, this does not change the fact that Plaintiff cannot support his arguments of futility on belatedly discovered information. Furthermore, Defendant asserts, and Plaintiff has not shown otherwise, that of 35 individuals who were promoted into "entry-level SES positions within the FBI's Counterterrorism and Counterintelligence Divisions . . . only three had served in the position on an acting or TDY basis prior to applying for the permanent SES position." Def.'s Opp. at 10. Consequently, Defendant argues, and the Court agrees, that "[P]laintiff's futility argument is undermined by the fact that the vast majority of entry-level SES positions in Counterterrorism Division . . . were not filled by employees who were acting in those positions on a TDY basis." Furthermore, to the extent that Plaintiff attempts to apply his futility arguments to the TDY positions, *see* Pl.'s Reply at 4, this argument is unavailing. Plaintiff's proposed Counts II and III, while addressing the TDY positions, are ultimately concerned with the availability of the SES positions. The Magistrate Judge found that Plaintiff had not satisfied the requirements for showing futility with respect to the SES positions, and Plaintiff has not demonstrated that Magistrate Judge Kay committed clear error in finding that Plaintiff failure to apply for positions could not be excused under the doctrine of futility.

### C.     *Permitting Plaintiff to File His Second Amended Complaint Would Unduly Prejudice Defendants*

Ultimately, Plaintiff cannot argue his way around the fact that amendment at this late stage would cause significant prejudice to Defendants. Early in this litigation, the Court impressed upon Plaintiff the importance of setting out his claims and proceeding with discovery in a timely fashion. In fact, the Court "cautioned Plaintiff not to file an amended complaint near the end of the discovery period." Mem. Op. at 12. Nevertheless, Plaintiff now seeks to file his Second Amended Complaint.

Magistrate Judge Kay found that, "[w]hile Plaintiff did not inordinately delay moving to amend his First Amended Complaint, Plaintiff's attempt to add claims of disparate impact after discovery closed, and without good case will ineluctably change the tenor of this case an necessitate additional factual and expert discovery, and prejudice Defendants." Mem. Op. at 15.

Plaintiff disputes Magistrate Judge Kay's finding, claiming that his disparate impact claims are "intertwined" with his disparate treatment claims, and arguing that his proposed amendments "should not result in extensive new discovery." Mot. to Recon. at 18-19; Pl.'s Reply at 6-7. Defendants argue that "[d]isparate impact claims require a statistical analysis of employment practices sufficient to demonstrate that an identified subjective or facially neutral employment practice resulted in a discriminatory impact. Def. Opp. at 15 (citing *Koger v. Reno*, 98 F.3d 631, 639 (D.C. Cir. 1996)). Defendant further argues that responding to Plaintiff's outstanding discovery requests with respect to these proposed claims would create significant work that would otherwise be unnecessary. *Id*.

Plaintiff's disapproval of Magistrate Judge Kay's finding that the proposed amendments

12

would prejudice Defendants aside, the Court cannot find that his ruling was "clearly erroneous or contrary to law." L. Civ. R. 72.2(c); *see also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall . . . modify or set aside any portion of the magistrate judge's order found to be *clearly erroneous or contrary to law*.") (emphasis added). Indeed, Plaintiff has raised no argument that leaves this Court with "the definite and firm conviction that a mistake has been committed." *Neuder*, 194 F.R.D. at 292 (D.D.C. 2000). Rather, the Court finds that Plaintiff's Motion for Reconsideration amounts to an attempt to take a second bite at the apple, by re-asserting theories Plaintiff either raised or could have raised in his motion requesting leave to file his Second Amended Complaint. Plaintiff cannot at this stage recharacterize evidence to the Court in a way more favorable to him because his earlier motion failed. The Court finds that permitting Plaintiff to file his proposed Second Amended Complaint would change the nature of this suit, and would require Defendant to undertake additional work, both in the form of responding to discovery requests associated with Plaintiff's proposed new claims, and with respect to additional analysis of the FBI's employment practices. Accordingly, the Court finds that Magistrate Judge Kay's ruling on this point was not clearly erroneous and shall stand.

## IV.   CONCLUSION

After consideration of Plaintiff's Motion for Reconsideration, the parties' briefs, and the relevant case law, the Court finds that Plaintiff has failed to demonstrate that Magistrate Judge Kay's denial of Plaintiff's Motion for Leave to File His Second Amended Complaint was clearly erroneous or contrary to law. As a result, Plaintiff's Motion for Reconsideration shall be denied, and Plaintiff shall not be permitted to add Counts II and III to his Complaint. As specified in

Magistrate Judge Kay's Order, Plaintiff has been permitted to add Count V to his Complaint.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge