UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BASSEM YOUSSEF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:03CV01551 (CKK) |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO STRIKE PURSUANT TO RULES 16 AND 37

Plaintiff Bassem Youssef, by and through counsel, hereby submits this motion to strike Defendants' Cross-Motion for Summary Judgment and supporting papers [Docket Nos. 109, 111-113] pursuant to Rules 16(b) and 16(f), Fed. R. Civ. P., for failing to follow this Court's scheduling orders establishing deadlines for filing dispositive motions, and for failing to state good cause or seek leave to modify the briefing schedule to file defendants' cross motion for summary judgment on June 14, 2006, three months after the dispositive motions deadline and three months after defendants had already filed their motion for summary judgment. Additionally, pursuant to Rule 37(c), Fed. R. Civ. P., plaintiff moves to exclude from use as evidence at trial, at a hearing or on any motion, including defendants' pending summary judgment papers [Docket Nos. 109-113], at least 42 new documents and 15 declarations (13 of who were signed by persons never disclosed by defendants as potential witnesses) containing facts that were not previously disclosed by defendants during discovery because they were not disclosed during discovery either as part of defendants' initial disclosures or in response to plaintiff's discovery requests. In support of this motion, plaintiff refers the Court to the

memorandum of points and authorities included herein.  A proposed order is also submitted herewith.

Prior to filing this motion, plaintiff's counsel conferred with defendants' counsel pursuant to Local Rule 7(m) and determined that the defendants oppose the relief sought by this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2006, the Defendants filed a Cross-Motion for Summary Judgment and supporting papers [Docket Nos. 109, 111-113].  Defendants also filed on June 14, 2006 their Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment.  [Docket No. 110].  In support of their Opposition and Cross-Motion, Defendants attached at least 42 documents as exhibits that were never disclosed during discovery and they also attached fifteen (15) declarations of witnesses, 13 of whom had never been previously identified by defendants as potential witnesses.  Defendants produced no less than forty-two (42) new documentary exhibits, for the first time, in their June 14th opposition and cross motion.  Based on a review of the new exhibits, the following documents relied upon in the FBI's June 14, 2006 filings were not produced in discovery:  Defendants' Exhibits B-NN, PP, TT and UU.  These newly disclosed documents and declarations contain information, facts and evidence that were not disclosed timely during discovery, either as part of defendants' initial disclosures or in response to plaintiff's discovery requests.  Nor have defendants properly or seasonably amended their initial disclosures or their prior discovery responses and thy are submitting this material for the first time in the midst of summary judgment briefing.

On June 16, 2006, defendants also served a "Supplemental Response to Plaintiff's Interrogatory No. 2."  This supplemental discovery response was served more than eight (8)

months after the close of discovery, which formally closed on October 1, 2005.  *See* Minute Entry (July 22, 2005).

This action was commenced by the filing of plaintiff's Complaint on July 18, 2003.  The first Scheduling Order was entered on June 22, 2004, and this Court ordered that discovery close by February 27, 2005.  *See* Order (June 22, 2004) [Docket No. 13].  After several extensions, discovery closed on October 1, 2005.  *See* Minute Entry (July 22, 2005).

Prior to the close of discovery, plaintiff sought to enlarge the number of depositions, which was opposed by defendants.  *See* Plaintiff's Mtn. to Enlarge Number of Depositions (May 10, 2005) [Docket No. 41]; Def. Opp. (May 23, 2005) [Docket No. 43].  By order dated June 7, 2005, Magistrate Judge Alan Kay denied plaintiff's request to enlarge the number of depositions, with one exception.  *See* Order (June 7, 2005) [Docket No. 54].

Following the close of discovery on October 1, 2005, defendants were granted additional time in which to comply with Magistrate Judge Kay's July 22, 2005 Order granting, in part, plaintiff's motion to compel.  *See* Mem. Op. and Order (July 22, 2005) [Docket Nos. 69-70]; Order (Oct. 3, 2005) [Docket No. 72].

At a Status Conference held on October 31, 2005, this Court entered a briefing schedule for summary judgment motions and ordered the parties to submit a Joint Status Report on the outstanding discovery issues.  *See* Minute Entry (Oct. 31, 2005) ("Summary judgment motions due by 2/22/2006.  Response to Motion for Summary Judgment due by 4/28/2006.  Reply to Motion for Summary Judgment due by 5/19/2006.  Joint status report due 12/2/2005 around the issues of discovery.").[1]

---

[1] Following two status reports submitted by plaintiff [Docket Nos. 74-75], plaintiff moved to enforce compliance with the July 22, 2005 order granting plaintiff's motion to compel, in part. *See* Pltf.'s Mtn. (Jan. 31, 2006) [Docket No. 76].  On March 30, 2006, Magistrate Judge Kay

On Feburary 13, 2006, this Court granted the defendants' unopposed motion to enlarge the briefing schedule for filing summary judgment motions, ordering defendants to file their motion for summary judgment by March 13, 2006. *See* Minute Entry (Feb. 13, 2006).

On March 13, 2006, defendants filed their motion for summary judgment. [Docket No. 85]. Plaintiff also filed a motion for partial summary judgment. [Docket No. 84].

After plaintiff filed his motion for partial summary judgment on March 13, 2006, the defendants filed an unopposed motion to extend the time to respond to plaintiff's motion for partial summary judgment and "to align the briefing schedule" to permit simultaneous briefing on the parties then-pending cross motions for summary judgment. *See* Def. Mtn. (March 24, 2006) [Docket No. 87]. On April 19, 2006, defendants filed another motion for extension of time to respond to plaintiff's motion for summary judgment. [Docket No. 92].

Notably, nowhere in defendants' unopposed motion to align the briefing schedule filed on March 24, 2006, nor in defendants' motion for extension of time filed on April 19, 2006, did the defendants seek leave to file a second motion for summary judgment or to modify the pre-existing briefing schedule on the already pending dispositive motions. In their April 19, 2006 motion for extension of time the defendants simply asked "to file their opposition to plaintiff's motion for summary judgment," three weeks after the Court issues a ruling on the defendants' motion to strike plaintiff's statement of material facts. *See* Def. Mtn., p. 2 [Docket No. 92].

By order dated May 11, 2006, this Court granted defendants' motion for an extension of time to file an opposition to plaintiff's motion for summary judgment. *See* Minute Entry (May 11, 2006) ("The Court extends the deadline for Defendants' filing of Opposition to Plaintiff's

---

granted plaintiff's motion to enforce compliance with the order compelling the defendants to produce certain personnel documents. *See* Mem. Order (March 30, 2006) [Docket No. 89].

Motion for Summary Judgment until and including May 19, 2006, to allow the Court to rule on the Motion to Strike.").

In the meantime, plaintiff filed his opposition to defendants' motion for summary judgment on May 16, 2006. [Docket No. 100].

On May 17, 2006, the Court granted defendants' request for an extension of time to and including June 14, 2006 in which to file "Defendants' Opposition to Plaintiff's Motion for Summary Judgment," and ordered "that replies by both Parties to the pending cross motions for summary judgment are due to the Court by July 7, 2006." *See* Order (May 17, 2006) [Docket No. 102].

Instead of simply filing an opposition to plaintiff's March 13, 2006 motion for partial summary judgment, defendants filed on June 14, 2006 a cross-motion for summary judgment and an opposition to plaintiff's motion. [Docket Nos. 109-113]. In effect, defendants have filed another cross motion while the Parties' cross motions for summary judgment were already pending. Additionally, defendants failed to request leave to file their latest motion for summary judgment approximately three months out of time, and defendants did not request the Court to modify its pre-existing scheduling orders establishing a briefing schedule for dispositive motions. Moreover, defendants' new summary judgment filings on June 14, 2006 raise entirely new facts and evidence as well as new witnesses that were not timely disclosed during discovery in this case.

**ARGUMENT**

I. **DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT IS UNTIMELY AND ITS LATE FILING VIOLATES FED. R. CIV. P. 16.**

Once a Scheduling Order is entered establishing deadlines for filing dispositive motions that "schedule shall not be modified except upon a showing of good cause and by leave of the

district judge…" *See* Rule 16(b), Fed. R. Civ. P. When a party violates Rule 16 by failing to obey a scheduling order the district judge make such orders as are just and impose other sanctions, if appropriate. *See* Rule 16(f), Fed. R. Civ. P.

The briefing schedule for summary judgment motions was established by the Court pursuant to its powers to enter a Scheduling Order under Rule 16(b), following a Status Conference held on October 31, 2005 with counsel for the parties. *See* Minute Entry (Oct. 31, 2005). Significantly, after the plaintiff and the defendants simultaneously filed dispositive motions on March 13, 2006, several motions were filed by defendants seeking additional time to file an opposition to plaintiff's motion for partial summary judgment. [Docket Nos. 87, 92]. However, the defendants never sought leave to modify the briefing schedule or the aligned briefing schedule to permit defendants to file a second motion for summary judgment on June 14, 2006.

While briefing schedules entered under Rule 16(b) can be modified, they may only be changed by leave of the Court upon a showing of "good cause." *See Corkery v. Internal Revenue Serv.,* 192 F.R.D. 66 (S.D.N.Y. 2000) (Defendant who moved to modify the scheduling order did not show good cause for extending the deadline for filing dispositive motions based on assertions that its motion was likely to prevail and defendant's extension request was denied even though it was not opposed by the plaintiff); *Makin by & through Russell v. Hawaii,* 114 F.Supp.2d 1017 (D. Hawaii 1999) (Plaintiffs, who filed their first motion for partial summary judgment timely, were not entitled to consideration of an untimely cross-motion for summary judgment since the court limited the parties to one summary judgment motion and plaintiffs did not specifically request the court to modify its scheduling order or seek relief from the

scheduling order, and plaintiffs failed to show good cause since they had already filed for summary judgment).

Defendants' second motion for summary judgment filed on June 14, 2006 was filed more than three months after the extended deadline for defendants to file a motion for summary judgment in this case, and more than three months after defendants did, in fact, file a summary judgment motion on March 13, 2006. It is undisputed that defendants never sought leave to modify the briefing schedule to permit their filing of a second motion for summary judgment. Moreover, defendants have not file a motion for leave, as required by Rule 16(b), nor have they sought relief under Rule 16 to modify the briefing schedule to permit a second summary judgment motion. Defendants' second summary judgment motion filed on June 14, 2006 should be stricken from the record on that ground alone.

More importantly, defendants have failed to attempt to demonstrate "good cause" for filing their second summary judgment motion three months late, and they have not demonstrated "good cause" for raising new evidence or facts (in the form of new documents and new witness declarations) that were not previously disclosed in discovery. For example, in support of defendants' second motion for summary judgment, defendants have submitted at least 42 new documents (Def. Exhibits B-NN, PP, TT and UU) not previously produced in discovery as well as the declarations of 15 individuals to provide new information and facts not previously disclosed in discovery. Defendants even served a supplemental response to plaintiff's interrogatory number 2 on June 16, 2006, two days after they filed their second summary judgment motion and more than eight (8) months after the close of discovery, to raise new issues and a new defense theory. However, the time for defendants to have produced this new

information and new witnesses was prior to the close of discovery on October 1, 2005, not in response to plaintiff's motion for partial summary judgment.

By failing to timely disclose this new factual information and evidence as well as new witnesses – all not previously disclosed in discovery – the defendants cannot demonstrate the diligence that is necessary to establish "good cause" to modify a scheduling order under Rule 16(b) to file a second motion for summary judgment three months late.  *See* Vol. 6A, Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d.,* § 1522.1, p. 231 (West 1990) (A showing of good cause "would require the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.").  In this case, the defendants did not even seek leave or request relief under Rule 16(b) so they could file a second motion for summary judgment.  Moreover, defendants are not diligent because they failed to timely disclose at least 42 documents and 15 declarations from witnesses (13 of whom were never previously identified), containing information and evidence that was not disclosed in discovery and produced for the first time as exhibits to defendants' second motion for summary judgment filed on June 14, 2006.

Accordingly, defendants' second motion for summary judgment filed on June 14, 2006, and all supporting papers (including the 42 newly disclosed documents and the 15 newly disclosed declarations), should be stricken from the record in their entirety.  *See* Rule 16(f), Fed. R. Civ. P.

## II.  DEFENDANTS' SECOND SUMMARY JUDGMENT MOTION AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DEFENDANTS' SUPPORTING PAPERS MUST BE STRICKEN PURSUANT TO RULE 37(c).

Pursuant to Rule 37(c)(1), Fed. R. Civ. P., the newly proffered declarations and newly produced documents submitted as exhibits to defendants' Opposition Memorandum and Cross

Motion filed on June 14, 2006 must be stricken from the record because they were not disclosed in discovery. As a practical matter, the scope of defendants' violation of Rule 37(c) is so vast (at least 42 documents and 15 declarations not previously disclosed) that defendants' entire opposition and cross motion must also be stricken. The defendants had a duty to seasonably amend their initial disclosures and other responses to plaintiff's discovery requests during discovery. Defendants' waiting until the midst of summary judgment briefing to disclose to plaintiff new documents and witness statements that contain information concerning the defendants' defense of plaintiff's claims, which are obviously relevant to plaintiff's claims and responsive to plaintiff's discovery requests, is highly improper. Defendants were not substantially justified in failing to identify the additional information or witnesses prior to the close of discovery, and defendants have made no effort to justify the late production of this new information and evidence. Allowing the introduction of new facts, information and witnesses at the summary judgment stage, when it was not disclosed previously by defendants in their initial disclosures or in response to plaintiff's discovery requests, and when defendants failed to make timely efforts to supplement their initial disclosures and prior discovery responses, is highly prejudicial to plaintiff. All new information, documents and witnesses must be excluded from trial, any hearing or any motion (including the summary judgment record) pursuant to Rule 37(c), and sanctions should be imposed as appropriate.

Defendants produced fifteen (15) declarations in support of the Opposition Memorandum and Cross Motion filed on June 14, 2006. *See* Exhibits 1-9, 14, 15, 25, 27-29 (Declarations by the following persons: Andre G. Khoury; Christine M. Gallenstein; Gary Douglas Perdue; Andrew W. Apollony; Carolyn J. Kelliher; Scott G. Jessee; James van Rhein; Mary Deborah Doran; Michael J. Heimbach; Michael B. Ward; Pasquale J. D'Amuro; Laurie J. Bennett; M.

Chris Briese; William Hooton; Marylouise Felder). These 15 declarations were proffered by the FBI in support of their newly minted reason for why the Agency failed to execute plaintiff's direct placement to the FBI's ITOS Unit.[2] With the exception of two persons, Mr. D'Amuro and Ms. Bennett, none of the other 13 persons were ever disclosed as potential witnesses by defendants, and none of the information contained in the 15 declarations was previously disclosed by defendants.

Additionally, defendants also produced no less than forty-two (42) new documentary exhibits, for the first time, in their June 14th opposition and cross motion. None of the new FBI exhibits were bates stamped, and consequently comparing those documents with previously filed documents is not practical. Based on a review of the new exhibits, the following documents relied upon in the FBI's June 14, 2006 filings were not produced in discovery: FBI Exhibits B-NN, PP, TT and UU.

On the face of the newly-produced exhibits themselves, it is clear that these documents came from much larger files, which would also contain additional documents directly related to the newly-produced documents. In essence, the FBI reviewed a very large document system, and carefully selected forty-two (42) new documents not produced in discovery which the FBI believed would assist their case. The FBI simply did not produce the complete document files, which could contain numerous materials – much of which would likely further support Mr. Youssef's claims.

Significantly, the FBI has conceded that its document production during the discovery phase of this proceeding was incomplete, and they have implicitly or explicitly conceded that

---

[2] Plaintiff sees no reason to address at this time the merits of the information contained in the 15 declarations and 42 documents not previously produced by defendants because these documents should be excluded *per se* from the record.

- 10 -

their discovery production efforts were controlled not buy the actual document requests filed by Mr. Youssef, but by the FBI's concern to fully paper its own "primary defense(s)." In a May 4, 2006 filing with the Court, the FBI set forth an explanation for its incomplete discovery responses:

> **Defendants have made clear in several filings that their primary defense to plaintiff's first (discrimination) claim is that plaintiff failed to apply either for the position he claims to be seeking or for any other commensurate position. For this reason, during the discovery phase of this case, defendants could not reasonably have been expected to exhaust time and resources checking each and every last detail of plaintiff's FBI employment history. . .**

*See* Defendants' Reply in Support of Motion for an Extension of Time to Respond to Plaintiff's Motion for Summary Judgment, p. 3 (May 4, 2006) [Docket No. 97].

However, it was clear from the beginning of this case that Mr. Youssef's claims were based primarily on his years of expertise, and the failure of the FBI to properly utilize that expertise after the 9/11 attacks. Regardless of the merits of the FBI's "primary defense," the FBI was still obligated during the discovery phase to fully respond to plaintiff's discovery requests and produce documents requested by Mr. Youssef, even if those documents were not related to the FBI's defense of the claims.

Moreover, none of the new facts and information contained in the 15 new declarations and 42 documents were disclosed by defendants before the close of discovery. These new facts, witnesses and evidence were disclosed for the first time on June 14, 2006 as attachments to defendants' summary judgment filings.

Defendants also attempted to supplement their response to Plaintiff's Interrogatory No. 2. Defendants' original response to this interrogatory was served on March 9, 2005. *See* Ex. 7 to Plaintiff's Motion to Compel (May 18, 2005) [Docket No. 42]. The interrogatory requested the Agency to:

> Explain in detail why Mr. Youssef was not assigned to the International Terrorism Operations Section. In answering this questions, please explain why Mr. Youssef was assigned to a position in the Communications Analysis Section rather than the International Terrorism Operations Section, in accordance with the April 30, 2002 memorandum entitled "Request for Directed Placement Supervisory Special Agency Bassem Youssef fomr the Counterintelligence Division to the Counterterrorism Division" (DOJ 003960). In answering this question, please set for any performance issues which were relied upon by the decision makers in reaching this decision.

*Id*.

The Agency responded to Plaintiff's Interrogatory on April 20, 2005. *See* Ex. 10 to Plaintiff's Motion to Compel. Apart from their objections to the interrogatory, the Defendants stated that the reason why the directed placement was never implement was because

> . . . Plaintiff has never applied for or expressed interest in a position with ITOS I or II. Further, defendants note that, as set forth in the EEO Statement of Thomas Kinnally, plaintiff was assigned to the Document Exploitation task force within what became the Communications Analysis Section at least in part due to his Arabic language skills and experience.

*Id*.

After receiving Defendants' response to the Interrogatory, Plaintiff conducted numerous depositions on the matter, including FBI Director Robert Mueller, who testified that he did not know that Mr. Youssef was not placed into ITOS. *See* Ex. 27 to Plaintiff's Partial Motion for Summary Judgment, Mueller Depo, Tr: 71, ln 3 [Docket No. 85]. In addition, Mr. Kinnally testified that after June 26, 2002, he was not informed nor did he discuss with anyone the fact that Mr. Bassem Youssef had been given a directed placement to work in ITOS. *See* Ex. 25 to

Plaintiff's Partial Motion for Summary Judgment, Kinnally Depo, Tr: 35, ln 17-20 [Docket No. 85].

Now, however, the Agency has served a Supplemental Response to Plaintiff's interrogatory request well-after the close of discovery and clearly in response to Plaintiff's Partial Motion for Summary Judgment.

Rule 26(e) creates a duty for a party to disclose additional information in response to a discovery request if that party learns that the previously disclosed information is in some way materially incomplete. *See* Fed. R. Civ. P. 26(e); *Coles v. Perry*, 217 F.R.D. 1, 5 (D.D.C. 2003).

Further, Rule 37(c)(1) states:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Rule 37(c)(1), Fed. R. Civ. P.

Moreover, "the sanction of exclusion is '*automatic and mandatory* unless the party to be sanctioned can show that its violation . . . was either justified or harmless.'" *Foster v. United States*, 130 F.Supp.2d 68, 70 n.1 (D.D.C. 2001) (emphasis added) (quoting *NutraSweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785-86 (7th Cir. 2000)).

Substantial justification is defined as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002); *see Peterson v. Hantman*, 227 F.R.D. 13, 16 (D.D.C. 2005). Failure to comply with a duty to disclose is considered harmful if a reasonable attorney would have conducted additional discovery or attempted to counter the evidence produced in violation of Rule 26. *See Coles v.*

*Perry*, 217 F.R.D. at 6. Moreover, the party accused of failing to make required disclosures bears the burden of demonstrating both substantial justification and harmlessness. *See Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995).

A party is under a duty to disclose additional information pursuant to a discovery request if that party learns that prior responses are materially incomplete. *See* Rule 26(e), Fed. R. Civ. P.; *Grajales-Romero v. American Airlines, Inc.*, 194 F.3d 288, 297 (1st Cir. 1999); *Coles*, 217 F.R.D. at 5. In *Grajales-Romero*, the First Circuit ruled that the trial court did not abuse its discretion when excluding a witness under Rule 37(c)(1), when the witness was not properly disclosed during the course of discovery. *Grajales-Romero*, 194 F.3d at 297.

In *Coles*, the defendant was under a duty to provide all information intended for use as evidence prior to the close of discovery. *See Coles,* 217 F.R.D. at 5. When the defendant attempted to supplement its initial disclosures ten months after discovery had closed, the court found that the defendant had violated its duty. *Id.* Likewise, the FBI failed to comply with its duty to supplement its previous disclosures by attempting to introduce new witness testimony eight months after the discovery closure.

A party's failure to disclose information is substantially justified only if reasonable people could differ as to whether the party was under a duty to disclose the information. *See Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995). The *Nguyen* court ruled that where the non-disclosing party gave no explanation for its failure to provide information required under Federal Rule of Civil Procedure 26, the party had failed to demonstrate substantial justification for withholding material information. *Id.* Cf., *Peterson v. Hantman*, 227 F.R.D. 13, 17-19 (D.D.C. 2005) (holding that employer was substantially justified in untimely producing discovery responses because it explained that information sought by employee was, *inter alia*,

"strictly confidential," and such defenses were "reasonable, defensible positions"). Similarly, despite the FBI's duty to provide information about all witnesses, the agency provides no reason for its untimely post-discovery addition of ten witnesses' testimony in violation of Rule 26. Thus, unless the FBI's failure to comply with its evidentiary duty is harmless, Rule 37(c) automatic exclusion sanctions should be imposed.

Failure to comply with a duty to disclose under Rule 26 is harmful if a reasonable attorney would have engaged in additional discovery or attempted to refute the proffered evidence. *See Coles v. Perry*, 217 F.R.D. 1, 6 (D.D.C. 2003). *Also see,* Exhibit 1, attached hereto, *Davis v. Ashcroft*, Civ. Action No. 01-331 (RBW), Order (Aug. 7, 2003) [Doc. No. 110]. In *Coles*, the court ruled that admitting disclosures made after a discovery deadline, unless substantially justified, would disrupt the discovery process and inhibit "mov[ing] the case expeditiously forward from the end of discovery," though the court reserved judgment on the harmlessness issue. *Coles,* 217 F.R.D. at 5. Similarly, the *Davis* court excluded the testimony of one witness who was not identified during discovery by the FBI in that case, because allowing her testimony would necessitate reopening discovery and taking additional depositions, which would be unwarranted and result in harmful delay. *See* Ex. 1, *Davis,* Order, pp. 1-2.

Likewise, in this case, allowing the testimony of the FBI's newly disclosed witnesses and allowing the newly disclosed 42 documents would result in harmful delay. Admitting the previously undisclosed witnesses' testimony and documents would require additional discovery – many times more harmful than that which would have been required in *Davis* – resulting in unnecessarily delay in this case and monetary expenditures on the part of the Complainant. Thus, the FBI cannot demonstrate that its failure to disclose witnesses and relevant documents until after the close of discovery is harmless.

Because the FBI's untimely disclosures violate the duties established by Federal Rule of Civil Procedure 26 and are neither substantially justified nor harmless, Rule 37(c) exclusionary sanctions must be automatically imposed. The following should be excluded from the record: all assertions made in Defendants' Supplemental Response to Plaintiff's Interrogatory No. 2 (June 16, 2006); all witnesses identified in and declarations made in Exhibits 1-4, 6-9, 14, 15 submitted on June 14, 2006; FBI Exhibits B-NN, PP, TT and UU, submitted on June 14, 2006; and all of defendants' motions, memoranda, statement of material facts, and other papers that refer or rely on this newly produced information that was not disclosed in discovery.

## CONCLUSION

For the above-stated reasons, plaintiff's motion to strike and for other sanctions should be granted.

Respectfully submitted,

/s/Stephen M. Kohn
Stephen M. Kohn, # 411513

/s/David K. Colapinto
David K. Colapinto, # 416390
KOHN, KOHN & COLAPINTO, LLP.
3233 P Street, N.W.
Washington, D.C. 20007-2756
(202) 342-6980
(202) 342-6984 (fax)
Attorneys for Plaintiff

June 22, 2006