UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BASSEM YOUSSEF,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )        Case No. 1:03CV01551 (CKK)
                                   )
ALBERTO R. GONZALES,               )
  ATTORNEY GENERAL,                )
  U.S. DEPARTMENT OF JUSTICE, et al., )
                                   )
          Defendants.              )
_____)

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION TO STRIKE PURSUANT TO RULES 16 AND 37

Despite a wealth of opportunity during the lengthy and comprehensive discovery phase in this litigation, plaintiff now moves to strike information defendants submitted primarily in response to the entirely new claim set forth in his motion for partial summary judgment. Plaintiff's failure to ask the right questions or seek to compel the production of documents cannot form the basis for a motion to strike, inasmuch as any prejudice plaintiff has suffered results from his own tactical decisions rather than from defendants' actions.

Defendants have been entirely consistent in their position that plaintiff's employment history is not relevant to the discrimination and retaliation claims articulated in the first amended complaint. This position was clearly enunciated throughout the discovery period and was reiterated in defendants' motion to strike plaintiff's statement of facts at 3-4 (Docket # 91), the primary basis of which was that the vast majority of plaintiff's "statements" were not material to plaintiff's new retaliation claim. In accordance with the Court's order denying defendants'

motion to strike, defendants filed a thorough response to the hundreds of putative facts that plaintiff himself had put in issue.  Scrutiny of defendants' response to plaintiff's statement of facts reveals that all of the exhibits and most of the declarations about which plaintiff now complains were introduced solely in order to dispute **plaintiff's** factual allegations.  Further, defendants' response establishes that most of the facts plaintiff asserted were immaterial.  Therefore, given these circumstances, Rules 26 and 37 do not support plaintiff's motion to strike defendants' opposition and response to plaintiff's statement of facts.

In addition, as set forth in detail in defendant's memorandum of points and authorities in opposition to plaintiff's motion for partial summary judgment and in support of defendant's cross motion for summary judgment (Defs.' SJ Opp. Memo), plaintiff's retaliation claim, as argued in his motion, was entirely new.  Inasmuch as defendants could not reasonably have been on notice during discovery or at the time of the deadline for filing summary judgment that such a claim was being made in this case, there is good cause for defendants to have filed a cross motion for summary judgment with respect to this claim after the briefing deadline.  Further, to the extent defendants supplemented the information produced during discovery, such augmentation was consistent with Rule 26 and Rule 30(b)(6).  Indeed, the information that plaintiff alleges is new or different with respect to the merits of defendants' defense of plaintiff's new retaliation claim either was available during discovery and not pursued by plaintiff, stemmed from the filing of a declaration by the individual who has assumed the position and responsibilities of the individual defendants had proffered as a Rule 30(b)(6) deponent, or related solely to a ministerial matter that cannot form the basis of a retaliation claim under Title VII.  For these reasons, plaintiff's motion to strike should be denied.

## BACKGROUND

**1.     Discovery Phase**

Based on the claims set forth in the first amended complaint, information relating to plaintiff's complete employment history was neither relevant nor material to his claim that he was not promoted to a Senior Executive Service (SES) position or to his retaliation claims. Because defendants' primary defense is that plaintiff failed to apply for an SES or commensurate position, defendants objected to producing documents in response to vague requests for all documents relating to plaintiff. This tactic was made clear to plaintiff well before the close of discovery and, yet, he did not take any steps to compel production of additional information for this reason. Nor has the Court required defendants to produce such information.

During discovery, defendants interposed a variety of objections to plaintiff's voluminous requests for production of documents, including, *inter alia*: (1) an objection to the open-ended nature of plaintiff's requests, despite the fact that, pursuant to 29 C.F.R. § 1614.105(a)(1), the relevant period of time for liability purposes is from January 29, 2002 to the present, *see* Exh. 1 (excerpts from defendants' responses to plaintiff's first request for production of documents); Exh. 2 (excerpts from defendants' responses to plaintiff's first set of interrogatories and request for production of documents); (2) objections to producing "all documents" relating to plaintiff, mentioning plaintiff, relating to communications about plaintiff, and relating to policies that affected plaintiff on the grounds that such requests were irrelevant, vague, and burdensome, *see* Exhibit 1; and (3) objections to plaintiff's definitions of employment related terms. *See* Exhibit 2. The substance of these objections formed one of the foundations of defendants' motion to strike plaintiff's statement of "material" facts and also was repeated in defendants' response to

plaintiff's factual statement, which noted that, *inter alia*, all facts relating to plaintiff's

employment history prior to the terrorist attacks on September 11, 2001, were not material to the

claims and defenses asserted in this case.

> **2.      Opposition to Plaintiff's Motion for Partial Summary Judgment**

Due to the Court's denial of defendants' motion to strike, defendants had no choice but to

respond to plaintiff's statement of facts paragraph by paragraph, even though the majority of the

statements were, in defendants' view, immaterial to the claims and defenses in this case.  As

required by Local Rule 56.1 and Federal Rule of Civil Procedure 56(c), defendants also were

required to produce evidence in order to dispute plaintiff's statements of facts.  All of the

documents produced as exhibits in response to plaintiff's statement of facts were produced solely

to refute plaintiff's factual allegations.  *See* Second Declaration of Christine Gallenstein and

attached exhibits (Exhibit 2 to Defs.' SJ Opp. Memo).  Similarly, most of the declarations (9 of

15) were submitted as evidence under Rule 56 to dispute plaintiff's statements of fact.

As defendants noted in their SJ Opp. Memo, plaintiff's claim that a "transfer" to the

International Terrorism Operations Section (ITOS) was "rescinded" in retaliation for his meeting

with Director Mueller, as set forth in plaintiff's motion for partial summary judgment, had been

expressed neither in plaintiff's administrative EEO complaints nor in his first amended

complaint.  For this reason, defendants did not include an argument relating to this claim in their

March 13, 2006, motion for summary judgment.  Defs.' SJ Opp. Memo at 12-15.  To rebut

plaintiff's claim, as well as to support the cross motion for summary judgment, defendants relied

upon the declarations of five individuals.  The information about which these individuals

testified was accessible to plaintiff during discovery.

One of the declarants, Pasquale D'Amuro, a former Assistant Director of the Counterterrorism Division (CTD), was deposed during discovery by plaintiff's counsel and asked questions relating to the April 30, 2002, memorandum which forms the basis of plaintiff's new retaliation claim.  Exhibit 18 to Defs. SJ Opp. Memo.  Another, Mary Deborah Doran, was mentioned in connection with her temporary duty assignment to the Document Exploitation project (DocEx) in early 2002 and her counterterrorism expertise in several depositions, including that of plaintiff, *see* Exhibit 3 (Deposition of Bassem Youssef at 264, 273-74, 355) and in those of Thomas Kinnally, a former Section Chief in CTD, and D'Amuro.  Exhibit 4 (Deposition of Thomas Kinnally at 17-19, 21-22, 24, 40, 56; Deposition of Pasquale D'Amuro at 32, 160).  One declarant, Michael J. Heimbach, produced information relating to ITOS, which plaintiff put in issue in his new retaliation claim, and responding to the contention that plaintiff's career would have been enhanced if he had been assigned to ITOS.  Plaintiff sought no discovery specifically relating to ITOS.

Two other declarants, William L. Hooton and Marilouise Felder, provided information relating to a purely ministerial matter: the fact that, due to a backlog of 18,000 requests for action in the Director's office, plaintiff's transfer from the Counterintelligence Division (CID) to CTD (as well as numerous other administrative matters) was not uploaded into the FBI's computer system until January 2003.  Finally, the second declaration of Michael B. Ward was introduced for the purpose of establishing FBI policies relating to SES promotions and hiring in general as well as the filling of such positions in CTD in particular.  Ward currently serves as the Section Chief of the Executive Development and Selection Program (EDSP), Administrative Services Division, FBI.  The position Ward now holds previously was occupied by John Pikus, who was

deposed by plaintiff pursuant to Rule 30(b)(6), in response to plaintiff's request to depose an official who could testify on behalf of the FBI with respect to SES hiring and promotion policies. Pikus was proffered to testify on behalf of the agency to address topics identified by plaintiff.

### 3.     Supplemental Interrogatory Response

Finally, during the course of responding to plaintiff's new retaliation claim, defendants identified information that augmented their response to plaintiff's Interrogatory No. 2.  The original response properly answered the question plaintiff posed given the context of the claims plaintiff had asserted at that time.  For example, the interrogatory asked why plaintiff had not been assigned to ITOS; defendants responded that plaintiff had never applied for a position in that Section.  *See* Exh. 2 (excerpts from defendants' responses to plaintiff's interrogatories). The interrogatory further requested an explanation for plaintiff's assignment to the Communications Exploitation Section rather than to ITOS.  Defendants answered that plaintiff was assigned to DocEx because that was where the FBI had determined plaintiff was needed.  *Id.* Plaintiff's interrogatory did not ask why plaintiff was not assigned to ITOS under an April 30, 2002, memorandum.  Moreover, when he moved to compel additional information in response to this interrogatory, plaintiff stated he needed the information with respect to his claim of discrimination, not in connection with a claim of retaliation based on an alleged rescinded transfer to ITOS.  Pl.'s Motion to Compel Production of Documents and Verified Answers to Interrogatories, May 18, 2005, at 36.  Plaintiff also deposed five of the FBI officials who signed the April 30, 2002, memorandum.  Exh. 5 (depositions of Robert Mueller at 69-71; Thomas Kinnally at 32-36; Pasquale D'Amuro at 150-56; David Szady at 89-95; Dale Watson at 143-44). In all but one of these depositions, plaintiff did not ask questions or otherwise mention an alleged

"rescission" of his transfer to ITOS or seek information relating to a claim that he was retaliated against for meeting with Director Mueller on June 28, 2002.  Plaintiff did ask Mueller why the April 30, 2002, memorandum was never implemented, but did not pursue additional information when, in response, Mueller stated he did not know that the memorandum had never been implemented.  Mueller Depo at 70.

## ARGUMENT

Plaintiff seeks sanctions under Rules 26 and 37 because, he alleges, defendants filed a cross motion for summary judgment out of time and introduced information and witnesses that had neither been produced nor identified during discovery.  Plaintiff's position is a blatant attempt at "having his cake and eating it, too."  The only reason defendants filed a cross motion for summary judgment is because plaintiff introduced a new claim in his motion that had not been articulated previously, either at the administrative level, in the first amended complaint, in discovery, or in filings made with the Court prior to March 13, 2006.  Similarly, the sole purpose for defendants' filing of exhibits and declarations not produced during discovery was to dispute plaintiff's hundreds of erroneous and immaterial facts, a filing that became necessary after the Court denied defendants' motion to strike plaintiff's statement of facts.  Plaintiff cannot, on the one hand, place facts and issues in contention and then, on the other, object to defendants' response thereto.  For these reasons, the motion to strike is without merit and should be denied.

1.      **Defendants Had Good Cause for Filing a Cross Motion for Summary Judgment**

Defendants moved for summary judgment with respect to all of the claims pleaded in plaintiff's first amended complaint on March 13, 2006.  Plaintiff's motion for partial summary judgment was the first document to raise a claim that plaintiff was retaliated against due to the "rescission" of a transfer to ITOS; it was not raised in plaintiff's administrative complaint or first amended complaint.  Thus, practically speaking, defendants could not have addressed the claim in any papers filed by the March 13, 2006, deadline for dispositive motions.  Not only do defendants have good cause to cross move for summary judgment with respect to a claim raised for the first time in plaintiff's motion for partial summary judgment, but also, because plaintiff himself has raised the claim, he has had a full and fair opportunity to determine whether any genuine issue of material fact exists with respect to it.  See generally W.C. & A.N. Miller Companies v. United States, 173 F.R.D. 1, 3 (D.D.C. 1997); Shaw v. District of Columbia, 238 F. Supp. 2d 127, 145 (D.D.C. 2002).

Plaintiff did not plead the ITOS-retaliation claim in his first amended complaint, which was filed on October 1, 2004, nor in the proposed Second Amended Complaint he filed on March 8, 2005.  Plaintiff's complaint does not allege that defendants retaliated against him by "rescinding" the alleged transfer to ITOS.  See id.  In fact, it does not mention the supposedly "rescinded" transfer at all, let alone the reason for the alleged "rescission" or the FBI memorandum that stands at the heart of this newly-minted claim, see Pl.'s SJ Exh. 30 (Request for Directed Placement, April 30, 2002).  See also First Amended Compl.  Thus, the complaint provided no notice of this claim or the grounds on which it is based.

-8-

Further, although plaintiff did make the allegedly unconsummated transfer the subject of an interrogatory directed toward the defendants, he never tied the allegedly unconsummated transfer to retaliation.  To the contrary, plaintiff explained that the memorandum was relevant to his claims that the FBI allegedly discriminated against him on the basis of his national origin. Plaintiff's Motion to Compel Production of Documents and Verified Answers to Interrogatories, May 18, 2005, at 36.   Because the introduction of a rescinded-transfer retaliation claim is the creation of a new claim and the new claim was raised for the first time on the deadline for filing dispositive motions, defendants had good cause to file a cross motion with respect to this claim after that deadline.  *See generally* Hanson v. Hoffman, 628 F.2d 42, 53 (D.C. Cir. 1980).

    **2.**       **Defendants' "New Evidence" Consists Primarily of Materials Disputing Plaintiff's Statement of Facts and, Therefore, Is Admissible**

In an attempt to obfuscate the baseless nature of his arguments, plaintiff's motion to strike confuses two separate categories of evidence.  The first category is evidence that defendants submitted solely to dispute plaintiff's statement of "material" facts.  The second category, which will be discussed *infra*, is comprised of evidence that supports defendants' cross motion for summary judgment.

With respect to the evidence that disputes plaintiff's factual statements, plaintiff's contention that the documents and declaration should be stricken is wholly without merit.  In opposing plaintiff's statement of "material" facts, defendants submitted 47 exhibits, all of which were attached to the Second Declaration of Christine M. Gallenstein (Defs.' SJ Opp Exh. 2), which simply authenticated these documents and did not provide any substantive evidence.  Each of the exhibits attached to the Second Gallenstein Declaration was submitted solely as evidence

Case 1:03-cv-01551-CKK   Document 117   Filed 07/06/06   Page 10 of 18

disputing a factual statement made by plaintiff.  None was relied upon either in opposition to

plaintiff's motion for partial summary judgment or in support of defendants' cross motion.

Further, of the remaining fourteen declarations that defendants submitted, eight provided

evidence only to rebut plaintiff's factual allegations.[1]  In addition, three other declarations, those

of Mary Deborah Doran (Defs.' SJ Opp. Memo Exh. 9), Michael J. Heimbach (Defs.' SJ Opp.

Memo Exh. 14), and Michael B. Ward (Defs.' SJ Opp. Memo Exh. 15), included evidence that

refuted plaintiff's factual allegations (in addition to evidence in support of defendants' cross

motion).

As previously stated, defendants have consistently contended in this case, in the form of

both objections to plaintiff's discovery requests and documents filed with the Court, that

plaintiff's employment history with the FBI, particularly prior to 9/11, is neither relevant nor

material to the claims and defenses in this case.  For this reason, defendants did not produce such

information during discovery (with some limited exceptions, such as plaintiff's official

personnel, medical, and background investigation files).  Plaintiff did not seek to compel this

information prior to the close of discovery.  Plaintiff cannot now complain that, because of

evidence and facts he put in issue by including them in his statement of facts, defendants should

be precluded from introducing evidence solely for the purpose of rebutting his factual allegations

or impeaching his testimony.  Moreover, pursuant to Rule 26, defendants may present undislosed

---

[1]  The eight declarations were those of:  Andre G. Khoury (Defs.' SJ Opp. Memo Exh. 1);
Gary Douglas Perdue (Defs.' SJ Opp. Memo Exh. 3); Andrew A. Apollony (Defs.' SJ Opp.
Memo Exh. 4); M. Chris Briese (Defs.' SJ Opp. Memo Exh. 5); Carolyn J. Kelliher (Defs.' SJ
Opp. Memo Exh. 6); Scott G. Jessee (Defs.' SJ Opp. Memo Exh.7); James Van Rhein (Defs.' SJ
Opp. Memo Exh. 8); and Laurie J. Bennett (Defs.' SJ Opp. Memo Exh. 27).

-10-

evidence and witnesses for rebuttal or impeachment purposes. *See, e.g.,* Bearint v. Dorell Juvenile Group, 389 F.3d 1339, 1353 (11th Cir. 2004)(undisclosed evidence may be used for impeachment); Garining v. Sherburne City, 172 F.3d 611, 614 n.2 (8th Cir. 1999)(same); Alaska Wildlife Alliance v. Jensen, 108 F.3d 1065, 1068 n.5 (9th Cir. 1997)(same); Globe Savings Bank, FSB v. United States, 61 Fed. Cl. 91, 101 (Fed. Cl. 2004)(government not precluded from calling witnesses previously undisclosed for rebuttal purposes); Halbasch v. Medical Data Inc., 192 F.R.D. 641, 648-50 (D. Or. 2000)(no misconduct in failure to disclose witnesses prior to trial because witnesses used for impeachment purposes). *See also* Sessoms v. Ghertner & Co., 2006 WL 1102323(M.D. Tenn. 2006)(court refused to strike declarations filed in support of opposition to motion for summary judgment because used in rebuttal to plaintiff's contentions); Long v. Proctor & Gamble Mfg. Co., 2005 WL 1181888 (W.D. Tenn. 2005)(plaintiff's motion to strike affidavits attached to defendant's motion for summary judgment denied because affidavits were used for rebuttal and impeachment purposes; and since plaintiff identified some of the witnesses during his deposition he was aware of them); Salami v. N.C. A & T State Univ., 394 F. Supp. 2d 696, 705 (M.D.N.C. 2005)(motion to strike affidavits denied because affidavits offered for impeachment purposes). Therefore, plaintiff's motion to strike this evidence from the record should be denied.

### 3. Defendants' Evidence in Support of Their Cross Motion for Summary Judgment Should Not Be Stricken

The evidence that was submitted in support of defendants' cross motion for summary judgment consists of the declarations of the following individuals: Mary Deborah Doran (Defs.' SJ Opp. Exh. 9); Michael J. Heimbach (Defs.' SJ Opp. Exh. 14); Michael B. Ward (Defs.' SJ

Opp. Exh. 15); Pasquale D'Amuro (Defs.' SJ Opp. Exh. 24); Marilouise Felder (Defs.' SJ Opp.

Exh. 28); and William L. Hooton (Defs.' SJ Opp. Exh. 29).  In addition to these declarations,

plaintiff claims that defendants' supplemental interrogatory response should be excluded from

the record.  Because this evidence was submitted in response to plaintiff's new and previously

unarticulated claim, plaintiff's contention that the declarations are inconsistent with the civil

discovery rules is wrong.  Moreover, irrespective of Rule 26(a), the Court should not strike that

evidence because plaintiff has been neither prejudiced nor surprised by the evidence, plaintiff had

ample opportunity to obtain the evidence, the introduction of defendants' evidence at this stage

of the proceedings will not disrupt trial, and plaintiff has not proffered any evidence of bad faith

or willfulness involved in not disclosing the evidence at an earlier date. *See* David v. Caterpilliar,

Inc., 324 F.3d 851, 856 (7th Cir. 2003).

      a.    Mary Deborah Doran

      Doran's declaration was submitted for two purposes: to rebut some of plaintiff's factual

allegations relating to DocEx and the extent of his counterterrorism experience and to support

defendants' position that DocEx was a significant component of the 9/11 investigation.  Plaintiff

cannot reasonably contend that he was surprised or otherwise prejudiced by Doran's testimony.

Plaintiff testified about Doran's presence at DocEx when he was assigned there in March 2002.

Exh. 3.  Thomas Kinnally also mentioned Doran in his deposition, as did D'Amuro, who

mentioned not only her assignment to DocEx but also Doran's counterterrorism expertise.  Exh.

4.  Plaintiff, thus, was on notice prior to the close of discovery that Doran had information

pertinent to the litigation and was a potential witness; plaintiff thus had fair opportunity to seek

discovery from her prior to the deadline for filing summary judgment motions.  Gutierrez v. AT

& T, 382 F.3d 725, 732 (7th Cir. 2004).

b.    Michael J. Heimbach Declaration

The declaration of Heimbach, a Section Chief in ITOS, addressed the qualifications for managers in that Section and refuted plaintiff's contention that, if the purported transfer to ITOS had not been "rescinded," plaintiff's career opportunities would have been enhanced. Plaintiff was aware of Heimbach, inasmuch as his personnel records were among those produced in compliance with the Court's orders of July 22, 2005, and March 30, 2006; in addition, Career Board records were produced in discovery relating to Heimbach's promotion into the SES. Further, plaintiff had expressed his opinion during his deposition that he should have been selected on a noncompetitive basis for an undefined position in ITOS. Exh. 3. Therefore, he cannot now claim surprise or prejudice when, after inserting a new retaliation claim into the case at summary judgment, defendants have proffered testimony from an individual with knowledge of ITOS.

c.    Second Michael B. Ward Declaration

In his first notice of depositions, plaintiff's requested a Rule 30(b)(6) deponent "to testify . . . with regard to all promotional activities concerning counter-terrorism in which any employee for the FBI who had a rank of GS-15 or below was promoted into the SES since 2001." Exh. 6. In response to this notice, defendants proffered John Pikus as its Rule 30(b)(6) witness; Pikus was deposed on February 2, 2005. Pikus preceded Ward as the Section Chief of the Executive Development and Selection Program (EDSP) Section, Administrative Services Division, FBI.

Ward now has the responsibilities and duties that Pikus held when the latter was designated by the FBI as its witness on SES promotions and policies. As a Rule 30(b)(6)

witness, Pikus was proffered by the FBI as the official with knowledge relating to the issues

plaintiff had identified.  Ward has stepped into Pikus' shoes in terms of his official

responsibilities and duties, and defendants therefore submitted his declaration with respect to

topics connected with the SES.  Because plaintiff  had ample opportunity to explore all areas

regarding SES policies and promotions during discovery, he cannot fairly claim to have been

surprised or prejudiced by Ward's testimony.

    d.  <u>Pasquale D'Amuro Declaration and Supplemental Interrogatory Response</u>

   Plaintiff deposed D'Amuro on November 2, 2004.  Although counsel asked D'Amuro

questions regarding the circumstances of plaintiff's assignment to DocEx, counsel never referred

to or otherwise asked D'Amuro about the April 30, 2002, memorandum.  Later, in response to

plaintiff's Interrogatory No. 2, defendants stated that plaintiff was assigned to DocEx for the

reasons set forth in Kinnally's EEO affidavit, reasons that were re-stated by Kinnally in his

deposition and supported by the testimony of D'Amuro in his deposition testimony.  Defs. SJ

Opp. Exhs. 18 and 25.  Because of the new issue raised for the first time in plaintiff's motion for

partial summary judgment, D'Amuro addressed the origin and purpose of the April 30, 2002,

memorandum for the first time, in a declaration attached as Exh. 24 to Defs. SJ Opp., which

augmented his prior sworn testimony.  The new information D'Amuro provided included: (1) at

the time the April 30, 2002, memorandum was drafted, the CTD had only four Sections, only one

of which (ITOS) performed duties in connection with Middle Eastern counterterrorism; (2) the

memorandum stated that plaintiff would be transferred into ITOS because that Section was the

one within the then-existing CTD which performed duties related to the work being performed in

the DocEx project; and (3) the purpose of the memorandum was simply to memorialize

plaintiff's transfer from Counterintelligence to CTD without affecting his assignment to DocEx, not to physically place plaintiff into ITOS.  D'Amuro Dec. ¶¶ 7-15.  The remainder of the facts on which defendants relied in their  memorandum of points and authorities were brought out during discovery: (a) that the FBI assigned plaintiff to DocEx because he was a Special Agent with counterterrorism experience who spoke Arabic; (b) that the DocEx position was the only CTD position FBI managers considered in connection with plaintiff because that was where, in their assessment, he was needed; and (c) that DocEx was an integral and important part of the 9/11 investigation.  Defs. SJ Memo at 12-14.

In addition to deposing D'Amuro and Kinnally, plaintiff posed deposition questions relating to his assignment to DocEx and the April 30, 2002, memorandum to David Szady, a former Assistant Director in the Counterintelligence Division (CID) and to FBI Director Mueller.[2]  At the time of these depositions, plaintiff had not articulated his new claim of retaliation relating to the alleged "rescission" of a transfer to ITOS.  Indeed, plaintiff did not pursue questions with the deponents in a manner consistent with such a claim.  Nor, in his interrogatory, did plaintiff directly ask why he had not transferred to ITOS under the April 30, 2002, memorandum.  Through D'Amuro's declaration and the supplemental interrogatory response, *see* Exh. 7, defendants merely have responded to plaintiff's recently added claim. Moreover, plaintiff should not be rewarded for failing to adequately explore this issue in discovery by the entry of sanctions against defendants, who had absolutely no knowledge that the "rescission" claim was a part of this case until plaintiff filed his motion for partial summary

---

[2]  Plaintiff had the opportunity to ask Dale Watson, another former FBI official who signed the April 30, 2002, memorandum, questions about the memorandum, but declined to do so.  Exh. 5.

judgment.  Clearly, defendants have been more prejudiced by plaintiff's late introduction of this

claim into this case than plaintiff has been by defendants' submission of evidence in response

thereto.  *Cf.* <u>David</u>, 324 F.3d at 856 (court declined to  punish defendants by striking affidavit

proffered in support of their summary judgment motion or reopening discovery where plaintiff

made a tactical decision not to seek production of certain witnesses prior to the close of

discovery).

> e.    <u>Marilouise Felder and William L. Hooton Declarations</u>

In his motion for partial summary judgment, plaintiff noted that there was confusion

within the FBI regarding whether he was assigned to CTD or CID.  Plaintiff also had included

this observation in his administrative EEO claims, although there was no mention in those claims

that his purported transfer to ITOS had been "rescinded."  During discovery, plaintiff did not

seek or otherwise request any information relating to this particular issue, other than submitting

requests for "all documents" relating to plaintiff, mentioning plaintiff, relating to

communications about plaintiff, and relating to policies that affected plaintiff, all of which

defendants objected to on the grounds that such requests were irrelevant, vague, and burdensome.

Exhs. 1and 2.[3]  In an effort to clarify the record relating to this administrative matter, defendants

submitted the Hooton and Felder declarations for the proposition that, although the April 30,

2002, memorandum had been intended to effectuate plaintiff's transfer from CID to CTD,

because of a computer backlog, this request never was entered into the system.  Inasmuch as

plaintiff was aware of a potential question regarding his assignment from CID to CTD at the

---

[3]  Defendants note that, in his motion, plaintiff has failed to identify any specific
discovery request, compliance with which would have resulted in production of the information
he now claims, erroneously, should have been produced.

administrative level and yet failed to pursue this matter during discovery, defendants cannot be

sanctioned for failing to disclose this information.[4]

## CONCLUSION

For the foregoing reasons, plaintiff's motion to strike pursuant to Rules 26 and 37 should

be denied.

Dated:  July 6, 2005                                    Respectfully submitted,

                                                        PETER D. KEISLER
                                                        Assistant Attorney General

                                                        KENNETH L. WAINSTEIN
                                                        United States Attorney

                                                        STUART A. LICHT
                                                        Assistant Director

---

[4]  The cases relied upon by plaintiff do not support the entry of sanctions herein.  For example, in Foster v. United States, 30 F. Supp. 2d 68, 70 n.1 (D.D.C. 2001), the defendant disclosed four new witnesses two weeks before trial.  In this case, no trial date has been scheduled.  In Grajales-Romero v. American Airlines, 194 F.3d 288, 297 (1st Cir. 1999), the defendant listed new witnesses in the pretrial order and the witnesses were excluded as a sanction.  Again, this case is not in the pre-trial stage.  Finally, in Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995), the plaintiff failed to provide an adequate expert report.  No such failure occurred here.

In any event, the preclusion of testimony is a severe sanction, especially where the Court has not set a trial date and where there is no evidence of bad faith or egregious behavior to warrant such a severe sanction.  See Robinson v. District of Columbia, 1998 WL 429837 (D.D.C. 1998).  Here, plaintiff has not made any showing that defendants acted in bad faith.  To the contrary, defendants acted reasonably and in good faith, and merely were responding to plaintiff's new and untimely claim.

_____/s/_____
CARLOTTA P. WELLS
JUSTIN M. SANDBERG
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
(202) 514-4522 (telephone)
(202) 616-8470 (facsimile)

Counsel for Defendants