UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BASSEM YOUSSEF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:03CV01551 (CKK) |
| | ) | |
| ERIC HOLDER, JR., | ) | |
| ATTORNEY GENERAL, | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE*
## AND MOTION TO BIFURCATE

On March 30, 2008, this Court granted the FBI's motion for summary judgment on all

but one of plaintiff's claims of discrimination and reprisal.  Youssef v. FBI, 541 F. Supp. 2d 121

(D.D.C. 2008).  The Court noted that:

> On the one hand, a jury could find that Lewis retaliated against Youssef by
> preventing him from becoming inspection certified out of animus toward his
> statutorily-protected activities. . . . On the other hand, a jury could find that
> Lewis' denial of Youssef's requests was reasonable because the decision to grant
> or deny leave for training opportunities, including inspections, is discretionary,
> and based on a supervisor's belief that an employee can otherwise meet his job
> responsibilities.  The finder of fact, not the Court, must decide which of these
> inferences is more likely based on the evidence.

Id. at 160.  Thus, the issue for the jury to decide, as framed by the Court, is whether the Federal

Bureau of Investigation ("FBI" or "Bureau") retaliated against plaintiff for engaging in protected

activity, when Deputy Assistant Director John Lewis temporarily denied plaintiff's request to go

on another inspection during January and February, 2005, or whether he acted on the basis of

legitimate business reasons due to his concern that as a newly-appointed Unit Chief, plaintiff

should not be away from his duty station for four consecutive weeks.  This Court's Opinion significantly narrowed the issues for trial in both time and scope.

However, much of the evidence that plaintiff proposes to introduce is patently irrelevant to this very narrow remaining claim, or is otherwise inadmissible, and therefore defendants bring this single, omnibus Motion *In Limine* to exclude seven categories of evidence – as well as to bifurcate proceedings so that evidence relating solely to whether equitable relief may be awarded under Title VII should be heard only by the Court.  This Court has sweeping powers under Rule 16 to entertain motions *in limine* to exclude categories of evidence and to make such other orders as will allow for the fair and efficient presentation of evidence at trial.  See Johnson v. Williams, 584 F. Supp. 2d 97, 100 (D.D.C. 2008); U. S. v. American Tel. & Tel. Co., 83 F.R.D. 323, 336 (D.D.C. 1979); see generally  Note, Federal Civil Procedure Federal Rule 16 Definition of Issues by the Pre-Trial Judge, 61 Mich. L. Rev. 1566, 1567 (1963).

## ARGUMENT

1. **Evidence Relating to Claims that Are Not the Basis of this Action Should Be Excluded.**

Defendants move to exclude testimony and documentary evidence concerning the substance of plaintiff's claims that are not the basis of the retaliation claim to be presented to the jury.  Specifically, defendants seek to exclude evidence relating to the claims that the Court dismissed in its March 30, 2008 Memorandum Opinion: (1) that plaintiff's non-selection for the position of Unit Chief of the Strategic Information and Operations Center ("SIOC") in the Investigative Services Division of the FBI was an act of discrimination based on national origin; (2) that the fact that he was not promoted to a Senior Executive Service ("SES") position was an act of national origin discrimination; and (3) that the rescission of his transfer into the

2

International Terrorism Operations Section ("ITOS") constituted retaliation for his pursuit of his discrimination claims and (4) plaintiff's additional claims, <u>see</u> 541 F. Supp. 2d at 164-66.  In addition, defendants seek to exclude evidence relating to the ongoing adjudication of plaintiff's whistleblower retaliation claim by the Department of Justice's Office of Attorney Recruitment and Management ("OARM"), which raises the issue of whether the failure to transfer plaintiff to ITOS constituted retaliation, and plaintiff's allegations that he has been mistreated by defendant in retaliation for testifying before Congress.

Evidence relating to these claims should be excluded under Federal Rules of Evidence 401, 402, 403, 701, and 801-802 because it is not probative of the sole retaliation claim at issue, its presentation to the jury would merely permit plaintiff to air grievances about his alleged mistreatment by the FBI over a span of several years but cannot provide a basis for relief in this action, and defendant would be significantly and unfairly prejudiced if plaintiff were permitted to advance claims of discrimination and retaliation which are not the subject of this action under the guise of presenting "background" information.

### A.     Evidence Relating to Plaintiff's Claims of Discrimination Should be Excluded

Defendants do not dispute that plaintiff engaged in protected activity, including the lodging of an EEO complaint alleging national origin discrimination.  However, whether the allegations underlying  these complaints of discrimination are well-founded is not probative of the retaliation claim currently before this Court.  See <u>Desmond v. Ashcroft</u>, No. 03-01729, slip. op. at 7 (D.D.C. Nov. 15, 2006) (DE # 95); <u>see also</u>  <u>Easley v. Amer. Greetings Corp.</u>, 158 F.3d 974, 976 (8th Cir. 1998) (excluding evidence of sexual harassment because it would "not make it more or less likely for an employer to retaliate against an employee who had complained");

3

Perez v. Consol. Edison Order Corp., No. 02 CIV 2832, 2008 U.S. Dist. LEXIS 4594, at *2 (S.D.N.Y. Jan. 23, 2008) ("Evidence having the singular purpose of proving the truth of the underlying discrimination is . . . presumptively irrelevant to retaliation claims."); Nwanna v. Ashcroft, 2003 U.S. Dist. LEXIS 22213, at *4 (S.D. Ind. Oct. 24, 2003) ("Evidence of discriminatory work conditions against plaintiff is irrelevant in the trial of the retaliation claim."). Accordingly, the jury may "be informed of the nature of the plaintiff's complaints . . . but not about the details underlying those complaints." Harvey v. D.C, 949 F. Supp. 874, 876 (D.D.C. 1996).

Because evidence of plaintiff's dismissed discrimination claims are not relevant to his claim of retaliation, no evidence relating to them should be admitted. See Fed. R. Evid. 402. To allow plaintiff to present such evidence would be to invite the jury to adopt an impermissible propensity inference – namely, that if FBI officials committed acts of discrimination, they are likely to have also engaged in retaliation as well. See Fed. R. Evid. 404. "Rule 404(a) would cease to be meaningful if any act of discrimination was admissible" to establish retaliation. See White v. U.S. Catholic Conference, No. 97-1253 1998 U.S. Dist. LEXIS 11832, at *16 (D.D.C. May 26, 1998).

> **B.     Evidence Relating to Plaintiff's Other Claims of Retaliation Should be Excluded**

Evidence relating to plaintiff's other claims of retaliation -- including the allegedly retaliatory rescission of his transfer to ITOS, the ongoing OARM adjudication of that matter, and the alleged mistreatment he received as a result of testifying before Congress -- is not relevant to the determination of Mr. Lewis' motive in denying plaintiff's requests to be absent from the office for three additional weeks in order to engage in an inspection. For other acts of retaliation

to be probative of a supervisor's motive or intent, "there must be some reason to believe that [the supervisor's] motivation or intention in the acts in question was similar to the supervisor's motivation or intention on the [other] occasion[s]."  White, supra 1998 U.S. Dist. LEXIS 11832 at * 15.  Of particular significance to this inquiry is whether the same decisionmakers were involved in the acts sought to be introduced as evidence as in the act at issue in litigation.  See Elion v. Jackson, 544 F.Supp.2d 1, 8 (D.D.C. 2008); see also Hall v. Giant Food, Inc., 175 F.3d 1074, 1079-80 (D.C. Cir. 1999) (statement by manager that plaintiff was "too old" was irrelevant in age discrimination case where plaintiff "offered no evidence to establish that [the manager] was even involved in the [relevant] decisionmaking process").   Here, the supervisor responsible for denying plaintiff's requests to complete his inspections, John Lewis, did not have any involvement with or connection to these other allegedly retaliatory acts.  Therefore, evidence of these other acts is not probative of  Lewis's motive or intent in denying plaintiff's requests and hence is not relevant to this case.

### C.    Evidence of Dismissed Claims Is "Fiercely Prejudicial"

Even if evidence of plaintiff's other claims – whether based on discrimination or retaliation – could provide some "background" or "context" for the sole remaining retaliation claim, it should nevertheless be excluded because it is "fiercely prejudicial."  Annis v. County of Westchester, 136 F.3d 239, 247 (2d. Cir. 1998).  Presentation of this evidence would create a danger that the jury would consider the merits of these alternate claims - which have already been dismissed by this Court - in rendering a verdict on the retaliation claim at issue.  See Desmond, supra No. 03-01729, slip. op. at 8; Easley, supra 158 F.3d at 976.  Moreover, a jury instruction would be insufficient to mitigate these risks; once evidence of these dismissed claims

is before the jury, "the well [will have] been poisoned, and despite the court's best efforts, there [will be] no way to decontaminate it." Annis, 136 F.3d at 247. Presentation of this evidence would unfairly prejudice defendant by confusing the jury and producing undue sympathy for plaintiff. To avoid this result, evidence relating to these other claims should be excluded.

To permit plaintiff to bootstrap his numerous other claims to his single actionable retaliation claim would also render meaningless the six years spent narrowing the issues in this case and would deprive defendants of the benefit of securing dismissal of all but one of the claims against it. Defendants would be compelled to mount a defense against these collateral issues, thereby creating a series of time-consuming and distracting "mini-trials." Tennison v. Circus Enterprise Inc., 244 F.3d 684, 690 (9th Cir. 2001). This, in turn, would further distract the jury from the narrow issues to be decided.

For all of these reasons, plaintiff should not be allowed to present evidence relating to his discrimination or other retaliation claims.[1]

## 2.    The Court Should Exclude Testimony Relating to Promotions that Plaintiff Contends He Should Have Received

Notwithstanding the Court's dismissal of plaintiff's promotion-related claims, plaintiff is seeking to present testimony and other evidence to the jury concerning plaintiff's qualifications for promotion to several SES, high level management positions. But as the Court has dismissed all of plaintiff's nonselection claims, see 541 F.Supp 2d at 155 (plaintiff "cannot establish a *prima facie* case by showing that either (1) he applied for, and was denied an SES position," or

---

[1]Attached to Defendants' Objections are Exhibits 1 and 2 reflecting which exhibits and witnesses, respectively, should be excluded based upon each of the seven motions in limine contained in this omnibus motion.

that application was futile, the court grants defendant's motion for summary judgment), such evidence is patently irrelevant.  Nor should plaintiff be permitted to offer totally speculative testimony, either by plaintiff, or his expert Dr. Sharf or any other witness, about SES promotions plaintiff contends he would have received, had he applied for them.  This is simply not a case about the retaliatory denial of a promotion and hence all evidence relating to plaintiff's qualifications and about SES selections to which he did not apply, should be excluded.

    The Federal Rules of Evidence contemplate the admission of only "relevant evidence." *See* Fed. R. Evid. 402.  "Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Accord United States v. Carter, 522 F.2d 666, 685 (D.C. Cir. 1975).  Equally important, the Federal Rules also provide for the exclusion even of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or [the likelihood of] misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  See also Wright & Graham, Federal Practice and Procedure: Evidence § 5200.  Unfair prejudice has been defined as an undue tendency to suggest a decision on an improper basis, commonly an emotional one.  Id. § 5209.  The Supreme Court has recognized that the danger of unfair prejudice includes "generally relevant evidence" that can lure a fact-finder into rendering a decision on a "ground different from proof" specific to the elements of a given case.  Old Chief v. United States, 519 U.S. 172, 180 (1997).  Further, confusion of issues generally occurs when the proffered evidence has a tendency to lead to litigation of collateral issues.  See, e.g., Caladera v. Eastern Airlines, 705 F.2d 778, 782 (5th Cir.

7

1983).

Plaintiff's list of witnesses and exhibits in the Joint Pretrial Statement contain numerous references to certain aspects of plaintiff's career with the FBI, which began in 1988, relating to accomplishments or assignments that occurred well before the events giving rise to plaintiff's retaliation claim.  For example, among the exhibits plaintiff has identified are several documents that pertain to his past performance, including an Intelligence Community Award he received in 1994; performance appraisals spanning his entire FBI career; a 1999 inspection report for the Legat in Riyadh, Saudi Arabia; and a position description for a position to which plaintiff was detailed from 2000-2002.  Similarly, plaintiff has identified witnesses proffered to provide testimony regarding plaintiff's qualifications but who have neither direct knowledge of the facts relating to the retaliation claim nor first hand knowledge of plaintiff's performance during the 2004-2005 period.  For example, plaintiff has identified Ed Curran, who supervised plaintiff in Los Angeles until 1994 and who retired from the FBI prior to the 9/11 terrorist attacks in 2000; and Louis Freeh, a former Director of the FBI who had minimal contact with plaintiff when he served as Legat in 1996-2000 and who also retired from the FBI in 2001.

In reviewing plaintiff's lists of exhibits and witnesses, one would assume that the claim to be tried involved plaintiff's eligibility for promotion.  But plaintiff's non-selection claims have all been dismissed and none of this evidence is relevant to plaintiff's retaliation claim. Neither the testimony nor the exhibits listed above can shed any light on the issue of whether Lewis harbored a retaliatory animus when he denied plaintiff's requests to go on another inspection in January and February 2005.  Further, the proffered testimony and other evidence does not pertain to the issue of what consequences plaintiff may have suffered as a result of the

delay in his becoming inspection certified, such as any putative effect on his reputation or potential harm to his professional standing.

Again, plaintiff should not be permitted to present evidence on an allegation relating to alleged unfair employment practices other than the sole surviving claim of retaliation.  Under Rule 403, even if the proffered evidence were relevant to the determination of whether plaintiff was retaliated against, it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.   Such evidence may well mislead the jury into believing it has been called upon to decide whether plaintiff's past employment history played a role in the decisions subject to plaintiff's retaliation claim.  Alternatively, such evidence might lead the jury to compare plaintiff's career expectations, based on his employment experience prior to 2001, with his actual employment situation from January 2005 to the present.  As such, the evidence could invite the jury to make its decision on an emotional basis rather than on the basis of the facts and evidence relating to the alleged retaliation.

Based on the representations of plaintiff's counsel, it appears that he intends to challenge at trial the FBI's selections for three SES positions in March 2005, which are discussed in the Supplemental Report of Dr. James C. Sharf (Plaintiff's proposed Exhibit 117).  Plaintiff should not be allowed to challenge the legitimacy of the basis for the decisions and actions taken in connection with the promotions of three other FBI Special Agents to SES positions in March 2005.  Allowing plaintiff to cast a wide enough net to encompass a challenge to these selections would permit plaintiff to revive his discrimination claims and circumvent prior rulings, because

these selections were included among those plaintiff alleged to be discriminatory in his

opposition to defendant's motion for summary judgment.  CITE  Further, evidence relating to

these selections would be extremely prejudicial to defendant because it would appear to the jury

that the promotion and selection process is at issue, rather than the narrow retaliation claim

relating to requests for additional time away from the office to engage in another inspection.

Allowing such testimony would also require "mini-trials" on these three nonselection

claims, with the Court required to speculate about how the FBI's SES panel, and ultimately the

Director, who approves all SES selections, would have weighed plaintiff's hypothetical

application against those of the actual candidates.[2]

### 3.       Witness Testimony Concerning Plaintiff's Background and Performance Should be Excluded

The Court's March 30, 2008 Opinion dismissed all claims prior to plaintiff's 2005

reprisal claim.  541 F. Supp. 2d at 141- 65.  Indeed, all of plaintiff's claims for nonselections to

SES positions and below were dismissed.  Id.  The remaining reprisal issue involves whether the

denial of his requests to attend inspections in January and February, 2005 were retaliatory.

Despite the narrow time scope of this issue, plaintiff seeks the testimony of numerous witnesses,

many who were not even employed by the FBI in 2004 and 2005, to discuss his performance,

skills and background.  All testimony which is far attenuated in time and circumstance from the

alleged act of retaliation should be excluded as irrelevant.  See Fed. R. Evid. 402.  The FBI

objects to the following witnesses due to their lack of relevant knowledge of the pending issue:

---

[2]Moreover, defendant additionally objects to the testimony of Dr. Sharf for the reasons noted above, as well as under Fed. R. Evid. 703.  See Motion 5, infra.

1. <u>Ed Curran</u>: Mr. Curran resigned from the FBI in December 2000, and therefore has no personal knowledge of the actions challenged in this case and cannot testify about the FBI policies or procedures after 2000.   Any testimony Curran offers about the matters relevant to the pending issues, including purported damage to plaintiff's reputation, would be pure speculation. While plaintiff claims Curran will offer testimony that plaintiff is qualified to be promoted "to the highest levels within the FBI," there is no nonselection issue remaining in this matter and Curran has not supervised plaintiff since 1994.

2. <u>Louis Freeh</u>: Mr Freeh resigned as the Director of the FBI in May 2001.  Freeh's knowledge concerning plaintiff is limited to the time period plaintiff was the FBI's legal attache office in Riyadh from 1996 to 2000.  <u>See</u> 541 F. Supp. 2d at 129-30.  Since plaintiff's remaining claim does not involve any matters to which his performance in Riyadh, or the 1996 to 2000 time period, is relevant, Freeh does not have any relevant, personal knowledge to offer at trial about plaintiff's career, performance or whether plaintiff "could have and should have been inspection certified."

3. <u>Paul Vick</u>: Mr. Vick retired from the FBI in 2004 and never served in a position higher than a GS-14 Supervisory Special Agent and has no personal knowledge concerning the events at issue.  Plaintiff proposes to call Vick will testify about William Chornyak's opinions of plaintiff and plaintiff's national origin.  But plaintiff's discrimination claims concerning Chornyak date back to 2001 and 2002, and have been dismissed.  <u>See</u> 541 F. Supp. 2d at 131-32, 164.  The FBI contends that any testimony concerning Chornyak, the National Counterintelligence Center, or speculation concerning negative opinions of plaintiff by others is clearly irrelevant.  The FBI also moves to exclude and opinion testimony from Vick concerning

the role of inspection certification in the promotional process when he has never served higher

than a GS-14 in the FBI and is thus not qualified to offer such opinions.  As such, Vick cannot

offer more than speculation as to the "crucial nature" of inspection process.

4.  <u>Michael Fedarcyk</u>: Mr. Fedarcyk has retired from the FBI, but was the Section Chief

of the Communications Exploitation Section until April 11, 2004.  Plaintiff's claims concerning

Fedarcyk were dismissed by this Court in March 2008.  541 F. Supp. 2d at 156 n.32.   He has no

relevant or personal knowledge of the 2005 denial of plaintiff's request to attend inspections.

plaintiff has listed Fedarcyk to testify concerning plaintiff's performance in the Document

Exploitation Unit prior to April 11, 2004, but such information is not relevant to plaintiff's

performance in another unit almost a year later.

5.  <u>Robert Mueller</u>: Plaintiff should not be permitted to call the Director of the FBI,

Robert Mueller.  Defendant addresses this issue in its Motion *in Limine* number 7.

6.  <u>William Chornyak</u>: Mr. Chornyak retired from the FBI in September 2002 and has no

personal or relevant knowledge concerning the matters to be tried.  Moreover, the claims of

discrimination brought by plaintiff concerning Chornyak were previously dismissed by this

Court.  541 F. Supp. 2d at 131-32, 164-65.  Chornyak has no knowledge about the denial of

plaintiff's request to attend inspections in 2005, three years after he retired from the FBI.

Indeed, it appears plaintiff is attempting to utilize Chornyak's deposition in order to admit

inadmissible hearsay evidence.  The exhibits attached to Chornyak's deposition include the

transcription of a telephonic interview of Chornyak by an EEO investigator conducted after

Chornyak retired.  The interview involved issues now dismissed from this case.  This Court has

already ruled that the interview notes constitute hearsay.  541 F. Supp. 2d at 131.  The FBI

objects to the deposition designations as irrelevant to the pending matter and to the exhibits to the deposition transcript as hearsay and irrelevant.

7. <u>Ellen Knowlton</u>: Ms. Knowlton retired from the FBI on February 3, 2006 and served her last four years as the Special Agent in Charge of the FBI's Las Vegas field office. Knowlton's knowledge about plaintiff dates to her service at FBI headquarters before March 2002. All of the deposition designations listed by plaintiff for Knowlton, aside from those concerning her FBI background, concern plaintiff's background prior to 2002 and the consideration of transferring plaintiff to the Budget Unit. The issue relating to that transfer has been dismissed by the Court. <u>See</u> 541 F. Supp. 2d at 164-65.

8. <u>Unnamed Witnesses</u> The FBI objects to plaintiff's blanket reservation of calling "any witness necessary to introduce a document into evidence." If plaintiff needs to call a witness for any of the exhibits on his exhibit list, he was required to identify such witnesses on his witness list.[3]

**4.      Plaintiff's Witnesses Should Not Be Permitted to Offer "Me Too" Testimony.**

From the Joint Pretrial Statement, it appears that plaintiff's witness Thomas (Tony) Wall will attempt to testify about a variety of matters (many patently irrelevant, or otherwise objectionable), including "the culture of retaliation within the FBI." <u>See</u> Joint Pretrial Statement at 19. Mr. Wall, a former-FBI mid-level manager who served only three years in CTD, lacks any foundation to testify about the entire institutional culture of the Bureau. And to the extent that

---

[3]In a meet and confer conference, plaintiff's counsel suggested that evidence of the sort objected to in Argument 3 should be admissible under the authority of <u>National Railroad Passenger Corp. V. Morgan</u>, 536 U.S. 101 (2002). However that case is easily distinguishable as it involved a hostile environment claim involving "repeated conduct" over the entire course of plaintiff's employment – not a single discrete alleged act of retaliation. <u>Id</u>. at 115.

he intends to testify about alleged acts of retaliation that occurred against him, (Mr. Wall was the subject of an OPR investigation in 2005 and objected to the charges with some success before he resigned in 2006), such "me too" evidence, even if it involved the same supervisors that plaintiff alleges retaliated against him, (which is not the case with Mr. Wall's proposed testimony), is regularly excluded in Title VII litigation.

"Evidence of other 'bad acts' is never admissible simply to establish a propensity to engage in similar acts." White, supra 1998 U.S. Dist. LEXIS 11832, at *14 (citing Fed. R. Evid. 404(b)).  Although other acts of discrimination or retaliation may in certain instances be probative of a supervisor's motive or intent, see Sprint v. Mendelsohn, 128 S. Ct. 1140 (2008) (rejecting per se rule of exclusion), "there must be some reason to believe that [the supervisor's] motivation or intention in the acts in question was similar to [the supervisor's] motivation or intention on the prior occasion[s]." White, 1998 U.S. Dist. LEXIS 11832, at *15.  Factors to be considered include "(1) whether such past . . . behavior by the employer is close in time to the events at issue in the case, (2) whether the same decisionmakers were involved, (3) whether the witness and the plaintiff were treated in a similar manner, and (4) whether the witness and the plaintiff were otherwise similarly situated." Elion, supra 544 F. Supp. 2d at 8.

Judged against these standards, plaintiff's anticipated "me too" evidence is without probative value. Since Mr. Wall was investigated for his actions while in the FBI field office in Jackson, Mississippi before he came to the CTD, there is no indication that any of his "me too" evidence involves the supervisor whose motives are at issue in this case.  "[G]uilt by association is as unfair as it is illogical." Morgan v. Fed. Home Loan Mortgage Corp., 197 F.R.D. 12, 17 (D.D.C. 2000) (evidence that other employees engaged in racist behavior found not probative

hiring official's racial bias).  Put simply, plaintiff has failed to make the necessary threshold

showing that other employees' circumstances are closely related to, and therefore probative of,

his own.  See Welzel v. Bernstein, No. 03-1887, 2005 U.S. Dist. LEXIS 16771, at * 6 (D.D.C.

Aug. 16, 2005) (noting plaintiff's burden).

Even if plaintiff could make such a showing, the evidence should be excluded for its

inherent tendency to inflame and confuse the jury.  Cf. United States v. Bowie, 232 F.3d 923,

931 (D.C. Cir. 2000) ("Evidence of other [bad acts] having a legitimate nonpropensity purpose

undoubtedly may contain the seeds of a forbidden propensity inference.").  "Trial courts

routinely prohibit 'me too' evidence from or about other employees who claim discrimination

because it is highly prejudicial, but only slightly relevant."  Reid v. Nat'l Linen Serv., 182 F.3d

918 (table), 1999 U.S. App. LEXIS 11409, at *18 (6th Cir. 1999).  "[E]ven the strongest jury

instruction could not. . . dull[] the impact of a parade of witnesses, each recounting his

contention" that he was treated unlawfully or unfairly.  Moorhouse v. Boeing Co., 501 F. Supp.

390, 393 n.4 (E.D. Pa. 1980).  Moreover, if this "me too" testimony were permitted, defendants

would be forced to mount a time-consuming defense not only to plaintiff's retaliation claim, but

also to a host of other unspecified claims where the only common thread is employment by the

FBI, a patent waste of judicial resources.  Thus, neither Wall nor any other witness should be

permitted to testify about their own employment grievances with the Bureau or about an

imagined "culture of retaliation" at the FBI.

**5.      The Expert Testimony of Sharf and Byman Should Be Excluded**

According to the description of testimony in plaintiff's pretrial statement, seven of the listed witnesses will provide "expert" testimony.[4]   Defendants have no objection to two of these witnesses (McCarthy and Carter), who were timely designated, provided expert reports and were deposed.  Defendant object to any expert testimony from Mr. Curran, Mr. Freeh, Director Mueller and the plaintiff himself on a variety of grounds, however in the meet and confer conference today, counsel for plaintiff has informed defendants that these "expert" testimony designations were made in error.  Defendants will file a supplemental motion as to these witnesses if plaintiff persists in seeking to elicit expert testimony from them.  Defendants object to plaintiff's experts James Scharf and Daniel Byman.

**A.      Sharf's Expert Testimony Should Be Excluded**

Because Dr. Sharf lacks the factual underpinnings for his opinions required under Federal Rule of Evidence 702 and the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), his opinion is unreliable and, accordingly, should be excluded.  Dr. Sharf offers the opinion that plaintiff should have been promoted to one of three SES positions in March 2005.  See Supplemental Report of James C. Sharf, PhD ("Sharf Supp. Rpt") (Exhibit 4) at 3; Report of James C. Sharf, PhD ("Sharf Rpt") (Exhibit 5) at 14.  This

---

[4]Ed Curran, Bassem Youssef, Louis Freeh, Robert Mueller, James Scharf, Amy McCarthy, Daniel Byman and Edwin Carter.  Defendants note that plaintiff has placed an asterisk (*) beside the names of many of his witnesses, evidently because they may provide opinion testimony either in the form of expert opinion testimony or lay opinion testimony pursuant to Fed. R. Evid. 703.  This motion only addresses two of plaintiff's witnesses who, according to the summary of their testimony, may provide "expert" testimony within the meaning of Fed. R. Evid. 702 and 703.

opinion was based on Dr. Sharf's review of: the deposition transcript for Curran; the deposition

transcript for Freeh; testimony provided by Director Mueller to Congress on September 17,

2001; vacancy announcements for GS-15 ASAC and Assistant Section Chief positions; and

documents relating to three entry level SES positions in March 2005.  Sharf Supp. Rpt at 6-7;

Sharf Rpt at 17; Deposition of James C. Sharf ("Sharf Depo") (Exhibit 6) at 28; 46-47; 49-51.

Moreover, as noted above, Sharf testified in his deposition that he was retained to address the

question of whether plaintiff had been denied a promotion, not whether he was retaliated against

by the denial of his requests to attend inspections.  Sharf did not address the issue of what

qualifications plaintiff possessed as of March 2005 that would have satisfied the job

requirements for the three SES vacancies he considered.  Sharf Depo at 24, 31, 94-95, 109.

Sharf further noted that, in his opinion, as reflected in his Report and Supplemental

Report, plaintiff was qualified for promotion to an SES position "based on the experience and

the language fluency that [plaintiff] had at the date certain on 9-11-2001."  Id. at 103.  But Dr.

Sharf did not address what leadership and management skills plaintiff had in 2005, skills that

Sharf admitted form the core requirements for promotion to the SES.  Sharf Depo at 108-109;

119.  Because Sharf's opinion fails to address the basic qualifications for promotion to SES

positions that he contends plaintiff should have been promoted into, his opinions should be

excluded under Fed. R. Evid. 702.

To be admissible, the testimony and opinions of an expert witness must satisfy the

requirements of Fed. R. Evid. 702:  If scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto

in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702 imposes upon the Court a special "gatekeeping obligation" to prevent the introduction of certain expert testimony that is irrelevant or unreliable.  See, e.g., Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 569 (D.C. Cir. 1993). Specifically, the Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire, 526 U.S. 137, require "judges to determine that scientific testimony," as well as technical or other specialized expert testimony, "offered under FRE 702 is both relevant and reliable." Masters v. Hesston Corp., 291 F.3d 985, 991 (7th Cir. 2002). Further, plaintiff, as the party proposing to introduce expert opinion testimony, "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702 (citing Bourjaily v. United States, 483 U.S. 171 (1987)).

The Supreme Court has rejected the familiar refrain that federal courts have sufficient safeguards against irrelevant or unreliable expert testimony in the opponent's ability to present its own expert testimony or to cross-examine each other's experts at trial.  Daubert, 509 U.S. at 596; see Joy, 999 F.2d at 569 (rejecting "'let it all in' philosophy" of expert testimony).  Rather, federal courts are required to exercise greater care to prevent the admission of unreliable or irrelevant expert opinion because "Federal Rules [of Evidence] 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" Kumho

Tire, 526 U.S. at 148 (quoting Daubert, 509 U.S. at 592).  Pursuant to Daubert and Kumho Tire,

"[p]roposed testimony must be supported by appropriate validation – i.e., 'good grounds', based

on what is known." Daubert, 509 U.S. at 590, 593-94; see Advisory Committee Notes, 2000

Amendments, Fed. R. Evid. 702; Kumho Tire, 526 U.S. at 149-50.

In this case, Sharf fails to rely upon sufficient facts and data in his report to support his

opinions.  Sharf's opinion relies heavily on the testimony of former FBI officials (Curran and

Freeh) who had retired from the FBI several years prior to the events giving rise to the remaining

retaliation claim and did not have working relationships with plaintiff during the time relevant to

this claim.  Sharf also relied on plaintiff's subject matter expertise rather than on his skills as

related to the core competencies for SES positions and, thus, applied a flawed analysis in

assessing the extent to which plaintiff was qualified for one of three SES positions filled in

March 2005. Moreover, Sharf's opinion is itself based on a premise that pertains solely to the

dismissed discrimination claims, not to the remaining retaliation claim, i.e., whether plaintiff

should have been promoted to an SES position and does not apply FBI SES policies from 2005.

As such, Sharf's opinion lacks sufficient indicia of reliability to be admissible.[5]  The Court

should exercise its gatekeeping obligation and exclude this testimony.

### B.      Byman's Expert Testimony Should Be Excluded

---

[5]  Tellingly, Sharf did not even identify in his reports all of the facts and data he relied upon in reaching his conclusions, nor could he when asked at his deposition.  Sharf Depo at __ (admitting he relied upon certain articles in reaching his conclusions, but failed to identify them in his report).  This violation of the requirements of Rule 26(a)(2) alone is a sufficient basis to exclude Sharf's opinions.  See Connelly v. H.O. Wolding, Inc., No. 06-5129, 2007 WL 2750595, *2 (W.D. Mo. Sept. 18, 2007) (striking rebuttal affidavit that failed to provide, among other things, data and information considered by expert).

Plaintiff states that Mr. Byman will testify about his report and generally, and vaguely about "career prospects and promotional potential of Mr. Youssef."  Joint Pretrial Statement at 22-23. See generally March 13, 2005 Expert Report of Daniel Byman, PhD. (Exhibit 7). However even if the Court considers speculative evidence related to SES promotions that plaintiff might have received had he applied, see Sharf Report at 17), Byman's potential testimony is too vague and unfocused to be relevant to the issue of a particular promotion. Byman never addresses FBI SES selections policies or the qualifications required in any particular vacancy announcement, much less the three that Sharf will rely upon.  Instead he limits himself to the general assertion that knowledge of the Middle East, of terrorist groups and fluency in Arabic would be valuable to anyone in CTD.  But this ignores the fact that SES level Section Chief positions in CTD require primarily, if not overwhelmingly management, communication and leadership skills.  Subject matter knowledge and language skills would be valuable to an analyst, certain street agents, and certainly the Legat in a Middle Eastern Capitol – but not to managers at FBI HQ.  Hence Byman's testimony is inadmissible under Fed. R. Evid. 702 and 703.

> **6.    Testimony about the June, 2002 Meeting between director Mueller and the Plaintiff in the Office of Congressman Wolf Should be Excluded**

In June of 2002, FBI Director Robert Mueller held a meeting with Congressman Frank Wolf at his office.  During that meeting, Congressman Wolf introduced Director Mueller to the plaintiff, evidently to Director Mueller's surprise.  Plaintiff then recounted his complaints about his employment at the FBI, including his belief that he was the victim of discrimination.  There are two facts about this meeting that are relevant to this litigation, and which are undisputed by defendants.  First, by alleging unlawful discrimination in this meeting, plaintiff's actions

constitute "protected activity" within the meaning of Title VII.  <u>Second</u>, John Lewis was aware

of the fact that plaintiff alleged discrimination at this meeting as plaintiff fully recounted his

pending EEO matters at an initial lunch meeting with Lewis in May of 2004, shortly after Lewis

became Deputy Assistant Director of CTD.  <u>See</u>  <u>Youssef v. FBI</u>, 541 F. Supp. 121, 159-60

(D.D.C. 2008) (issue for trial relates to"how Lewis perceived Youssef's treatment of the

Director.").

What is not relevant are the who-said-what-to-whom details of this meeting, and

therefore defendant moves to exclude testimony about the substance of the discussions at this

meeting.  In addition to being irrelevant, testimony about this meeting might lead to jury

confusion, and hence potential prejudice to defendant, by inserting evidence of plaintiff's

(dismissed) claims of national origin discrimination.  Finally, removing this issue from the case

will vitiate one of plaintiff's principal justifications for seeking testimony from Director Mueller.

<u>See</u> <u>infra</u> at Argument 5.  Additionally, plaintiff's Exhibit 105, a June 10, 2002 letter from

plaintiff to Congressman Wolf recounting his complaints of discrimination, should be excluded

for the same reason, as well as on grounds of hearsay

**7.     The Court Should Exclude Live Testimony by FBI Director Mueller**

FBI Director Robert Mueller has no personal knowledge or relevant information

concerning the sole remaining issue in this case.  Moreover, the Director already has provided

deposition testimony in this matter.  Nevertheless, rather than relying on the deposition

transcript, plaintiff seeks to compel the live testimony of the Director.  For the reasons set forth

below, the Court should preclude any testimony by the Director of the FBI.

**A.     High Ranking Government Officials Should Not Be Compelled to
Testify**

21

Courts have consistently concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify.  See United States v. Morgan, 313 U.S. 409, 422 (1941); In re United States (Holder), 197 F.3d 310, 313 (8th Cir, 1999); In re FDIC, 58 F.3d 1055, 1060 (5th Cir. 1995); In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993); Simplex Time Recorder Co. v. Secretary of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985).  "High ranking government officials have greater duties and time constraints than other witnesses." Kessler, 985 F.2d at 512.  "In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that [the requesting party] show a special need or situation compelling such testimony."  Id.  No such need has been demonstrated here.  Indeed, "common sense seems to suggest that administration heads ... should not be called to testify personally unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it."  Byrd v. District of Columbia, 259 F.R.D. 1, 7 (D.D.C. 2009) (internal citation omitted).

As head of the FBI, Director Mueller has a myriad of responsibilities affecting national security, the safety of the citizens of the United States, and the orderly and effective administration of justice.  Because of his time constraints and multiple responsibilities, the Court should preclude Director Mueller's live testimony at trial.  Plaintiff deposed Director Mueller for two hours in this matter, and may use such deposition testimony at the trial – subject to defendants' evidentiary objections. Even if plaintiff were to allege some minor prejudice from the use of deposition testimony and the preclusion of live testimony from the Director, any such prejudice is greatly outweighed by the significant hardship that such live testimony would cause to the FBI Director.  "[P]ublic policy requires that the time and energies of public officials be

conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases."  Cmty. Fed'l Sav and Loan Ass'n v. Fed'l Home Loan Bank Bd., 96 F.R.D. 619, 621 (D.D.C. 1983).

>    **B.    Director Mueller Does Not Have Personal Knowledge Concerning Much of His Alleged "Expected Testimony"**

Before compelling the head of an agency to testify, courts require a demonstration that the proposed witness has personal and relevant knowledge of the matter being tried.  See Byrd, 259 F.R.D. at 7; Low v. Whitman, 207 F.R.D. 9, 12 (D.D.C. 2002); Alexander v. FBI, 186 F.R.D. 1, 4 (D.D.C. 1998).  Plaintiff has failed to demonstrate that the Director has personal knowledge of many of the areas he has listed for the Director's purported testimony, most of which are not relevant to the sole remaining claim in this matter.

In his pre-trial statement, plaintiff claims that Director Mueller will testify about Assistant Special Agent in Charge (ASAC) selections, that plaintiff "could have and should have been inspection certified, and that nothing in his performance prevented such certification," the damages "incurred or suffered" by plaintiff, "the harm to career and reputation caused by animus of John Lewis," as well as about plaintiff's "judgment" in seeking a meeting with the Director in Congressman Wolf's office.  Dkt #171 at 20-21.  Because plaintiff, as a GS-15 Unit Chief, is at least six levels below Director Mueller in the FBI's organizational hierarchy,[6] there is no reasonable basis to infer that the Director has personal knowledge concerning the alleged

---

[6]The reporting hierarchy from Mr. Youssef is as follows: (1) Assistant Section Chief; (2) Section Chief; (3) Deputy Assistant Director of CTD; (4) Assistant Director of CTD; (5) Executive Assistant Director, National Security Branch; (6) Director.  If the Director sought to have a matter reviewed by the Bureau's Deputy Director, two additional levels of review would be added.

retaliation in this case, or of plaintiff's career path, performance or alleged damages.  Nor does

the Director select ASACs, and thus is not the "hiring official for any ASAC . . . position that

Youssef would have applied for" as stated by plaintiff.  Dkt# 171 at 20.  Since the Director does

not have any personal knowledge concerning matters about which plaintiff seeks his testimony,

the Court should preclude any such testimony.  And for the reasons set forth in Motion In Limine

No. 6, his testimony about the meeting in congressman Wolf's office is irrelevant.

> **C.    Because the Information Sought May Be Obtained Through The Testimony of Other Witnesses, The Court Should Preclude The Testimony Of Director Mueller**

Prior to permitting the testimony of a high ranking government official, courts have

required a showing that the information sought from the proposed witness is not available from

other individuals.  See Byrd, 259 F.R.D. at 7; Low, 207 F.R.D. at 13 (plaintiff prevented from

deposing EPA Deputy Chief of Staff because, inter alia, "the information plaintiff seeks is

readily available from other sources.").  Because plaintiff has failed to establish that information

concerning the FBI's promotional and inspection process cannot be elicited from other

witnesses, the Court should preclude the testimony of Director Mueller on these issues.

In his pre-trial statement, plaintiff claims that Director Mueller will testify about SES

selections, inspection certification, the inspection process, and the promotional process.  Dkt#

171 at 20-21.  Because such testimony is readily available from other witnesses, the Court

should preclude plaintiff from calling the Director to testify about such matters.  The FBI has

listed several witnesses to testify concerning the promotional process.[7]  Because these witnesses

---

[7]Indeed, the Section Chief of the FBI's Executive Development and Selection Program (EDSP) oversees the section of the FBI devoted entirely to the promotional process for FBI agents.  She will testify concerning about the SES selection process and the agent promotional

have the expertise in the very areas for which plaintiff seeks to have the Director testify, plaintiff

has failed to demonstrate that the information he seeks in not available from another source.  As

such, the Director should not be compelled to testify.

> ### 8. The Court Should Bifurcate Proceedings and Exclude from the Jury Trial Portion of the Trial All Evidence Relevant Only to Equitable Relief that the Court Can Award, Including Back Pay, Front Pay and Promotion.

In actions brought under Title VII of the Civil Rights Act of 1964, where a jury trial has

been requested, the jury is responsible for determining liability and, where it finds for the

plaintiff, the jury shall also determine the amount of compensatory damages.  42 U.S.C. §

1981a(c).  But, the traditional maxim that juries have authority only to award damages, and not

equitable relief, applies in full force under Title VII.  Thus, the Court, not the jury, determines

the amount and nature of any equitable relief available to the plaintiff, including any change in

employment status as well as the amount of any back pay to be awarded.  See 42 U.S.C. §

2000e-5(g).  In this situation, it is appropriate, both for reasons of judicial economy and

efficiency as well as to prevent jury confusion, to bifurcate proceedings and exclude from the

jury trial portion of the case any evidence relating exclusively to the award of equitable relief.  If

the jury finds for the plaintiff, the Court can then receive additional evidence and rule on the

nature of equitable relief in a subsequent hearing.[8]

---

process.  Deputy Director John Pistole has been the Chairman of the SES career board since
October 2004 and will testify about the SES selection process.  Finally, Patrick Maley was the
Chief Inspector of the FBI's Inspection Division and will testify about inspection certification
and the inspection process.  See Joint Pretrial Statement at 26 - 28; 33.

[8]Plaintiff appears to recognize that only the Court can award equitable relief, since in the
damages itemization portion of the Joint Pretrial Statement, plaintiff notes that "[b]ased on the
jury verdict, plaintiff would submit a request for equitable relief post-trial."  Joint Pretrial
Statement at 39.  However plaintiff appears to be confused about the scope of equitable relief

The plain language of section 2000e-5(g) allows the court to "enjoin" any "unlawful employment practice," and "order" appropriate relief, including "reinstatement and back pay." Thus, back pay under Title VII is treated as an element of equitable relief, not money damages. Albermarle Paper v. Moody, 422 U.S. 405, 416 (1975) (award of back pay is "equitable in nature"). Front pay is also not an element of compensatory damages within the meaning of Title VII but instead is treated as an aspect of equitable relief. See Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 854 (2001). And, needless to say, the entry of an injunction directing an agency to take a personnel action, such as promotion, to undue prior discriminatory acts, is also an exercise of the Court's equitable powers, and not a matter for the jury.

The Court has the discretion under Fed. R. Civil P. 16 to structure pretrial proceedings to provide for the most fair and efficient organization and presentation of evidence. See, e.g., In Re San Juan Dupont Plaza Hotel Fire Lit., 994 F.2d 956, 965 (1st Cir. 1993); see also Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962) (court has inherent power to manage its docket). In addition, the Court can and should exclude evidence from the jury when the evidence is not relevant to the issues that the jury is to decide. The jury has no need whatever to receive evidence relevant to the calculation of plaintiff's claim for back pay or front pay or any promotion that the Court might award. Under these circumstances, any danger of confusion to the jury, no matter how slight, would justify exclusion of such evidence by the straightforward application of Rule 403 of the Federal Rules of Evidence.

Here, both parties have designated experts to provide testimony on the amount and nature

under Title VII, since his jury verdict form invites the jury to award back pay in addition to compensatory damages. See Joint Pretrial Statement at Attachment 7.

of back pay (and perhaps front pay) that plaintiff should receive if he prevails at trial.[9]  Because

that testimony has no bearing whatever on either of the two issues before the jury – liability or

compensatory damages – the jury has no need whatever to hear this back pay-related testimony.

There is however, a very real possibility that the jury might become confused by this testimony,

either concluding that they are required to base their compensatory damages calculations on such

testimony about pay or substituting the experts' back pay testimony for their conclusions as to

the proper amount of compensatory damages.  See, e.g., Burris v. Richards Paving, Inc., 472 F.

Supp. 2d 615 (D. Del.2007) (jury in ADA case failed to distinguish between award for

compensatory damages and for back pay).  "When the probative value of a proffered item is

slight, a contest as to its existence or non-existence may mislead the jury into believing it an

issue of major importance."  Jack B. Weinstein, et al., 2 Weinstein's Fed. Evid. § 403.05[1] (2d

Ed. 2005).  Here, where the probative value of the evidence is nonexistent, it necessarily follows

that it should be excluded from consideration by the jury. See Fed. R. Evid. 402 ("Evidence

which is not relevant is not admissible").

It is equally clear that testimony relevant to any promotion that plaintiff claims he would

have received but for the alleged retaliation should also be excluded from the jury trial portion of

the case.  While defendant contends that this is not a promotion case and such testimony should

be excluded, see supra Motion In Limine No. 2, if such testimony were received, it should be

considered solely by the Court since it goes solely to the equitable relief the Court might order

and has no relevance whatever to any issue to be decided by the jury.  Thus, testimony by

---

[9]Plaintiff's expert is Dr. Amy McCarthy, a Ph.D economist.  Defendant's expert is Joel
Lesch, a certified public accountant.

plaintiff's damages expert, Dr. James Scharf, to the effect that plaintiff would have been automatically selected to one of several SES section chief positions early in 2005 if he had completed his sixth inspection, should not be considered by the jury. Rebuttal testimony on this point by Dr. Suzanne Tsacoumis, defendant's expert, should also be excluded from the jury, as should any other testimony by plaintiff's witnesses to the effect that plaintiff was well-qualified and so should have been promoted.

In addition, deferring testimony relevant solely to equitable relief to a subsequent proceeding also serves the interests of judicial economy since if the jury rules for defendant, the Court would never need to hear from these witnesses, and the parties would be spared the expense of presenting this expert testimony. Consequently, for this reason as well, the Court should grant defendant's motion to bifurcate proceedings to exclude testimony about back pay, front pay and possible promotions from the jury trial and instead, if necessary, conduct a subsequent hearing to receive such evidence.

Coincidently, in a recent Title VII trial involving the FBI in this district, Judge Robertson adopted precisely such a procedure, trying all issues necessary to be tried to a jury and deferring to a later proceeding issues (and evidence) relating to equitable relief. The transcript of the Pretrial Conference in that case, Kapche v. Holder, (D.D.C. No. 07-2093) reflects the Judge's decision (not disputed by either party), to bifurcate the trial. As the Court notes at the very beginning of the Pretrial Conference:

> We're not going to try the equitable issues in this case. We're not going to try the instatement, (sic) we're not going to try back pay, we're not going to try front pay, we're not going to try the after acquired reasons for not hiring the plaintiff.

Kapche Pretrial Conference Transcript (relevant pages attached) (Exhibit 8) at 3:16-21. Later

the Court notes in commenting on a particular issue implicating damages, "[t]he only question is whether it has anything to do with the trial we're about to conduct here, the jury trial."  Id. at 11:6-8; see also id. at 13:1-2.

Therefore, defendant moves that the Court enter an order bifurcating proceedings at trial to exclude from the jury any evidence relating solely to back pay and other forms of equitable relief (including the expert testimony of Mr. Lesch, Ms. McCarthy, and, if permitted, that of Mr. Sharf and Ms. Tsacoumis, as well as any other testimony or exhibits about promotions or back pay.  This evidence can then, if necessary, be heard by the Court at a subsequent hearing conducted after the conclusion of the jury trial.

## CONCLUSION

Wherefore, defendant moves that the Court grant defendant's motions *in limine* and enter the Attached Order.

Dated: December 4, 2009                    Respectfully submitted,

TONY WEST
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

STUART A. LICHT
Assistant Branch Director
Civil Division, Federal Program Branch

/s/   *Daniel Bensing*
CARLOTTA P. WELLS
DANIEL BENSING
VIKAS DESEI
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
(202) 305-0693 (telephone)

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2009 I filed the foregoing through the district court's electronic case filing system, causing a copy to be sent to counsel for plaintiff at the following email address:

Steve Kohn
Smk@kkc.com

**Daniel Bensing**
DANIEL BENSING