UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BASSEM YOUSSEF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:03CV01551 (CKK) |
| | ) | |
| ERIC HOLDER, JR., | ) | |
| ATTORNEY GENERAL, | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF
OF DEFENDANTS' MOTIONS *IN LIMINE***

To read plaintiff's opposition to defendants' motion *in limine* is to wonder whether the

last six and one-half years spent litigating this case have been nothing more than an exercise in

futility for the Court and the parties.  Not accepting the reality that the dismissal of his

discrimination claims means that those claims are neither valid nor relevant, plaintiff now would

have the Court wholly disregard the effect of the March 30, 2008 Memorandum Opinion by

allowing the jury to consider evidence relating to the dismissed discrimination claims under the

guise of "background" information.  Contrary to plaintiff's erroneous version of reality, for

purposes of the upcoming trial, the evidence must necessarily be circumscribed by the facts and

circumstances relating to plaintiff's sole surviving retaliation claim –and not all of the facts and

circumstances in his First Amended Complaint.  Indeed, plaintiff cannot ignore the limiting

effect of the March 30, 2008 decision and, thereby, be allowed to introduce evidence relating to

each aspect of his dismissed discrimination claims as relevant to the one surviving retaliation claim. Plaintiff's blatant attempt to re-litigate the dismissed claims should be rejected. Defendants' motions *in limine* should be granted.

## ARGUMENT

**1.      Evidence Relating to Plaintiff's Dismissed Claim of Discrimination Should be Excluded**

In opposing defendants' motion to exclude evidence relating to plaintiff's dismissed claims of discrimination, plaintiff seeks to abrogate the legal distinction between discrimination and retaliation claims under Title VII. Plaintiff makes no secret that he seeks to perpetuate his argument that this case remains one that relates primarily to his claim of national origin discrimination. *See, e.g.,* Pl.'s Opp. Memo at 1 (plaintiff "must have the opportunity to present" to the jury "any direct evidence of discrimination"); *id.* at 3 ("the jury will need to consider the full scope of Mr. Youssef's protected actvities"); *id.* (evidence of the FBI's "past discrimination against Mr. Youssef on account of his Middle Eastern national origin" is "probative of defendants' intent, motive, plan, knowledge, and opportunity"); *id.* at 6 (plaintiff should be allowed to present "evidence that defendants seek to impose a culture of intimidation"). Plaintiff's misconceived contortion of the legal and procedural posture of the case fails to account for the relevant case law and is a contrived, desperate attempt to rewind the clock and place the Court as well as the parties in a time before the Court's March 30, 2008 dismissal of plaintiff's discrimination claims. At bottom, plaintiff has not provided a legal basis for including such evidence.

### a.   *Plaintiff Ignores the Distinction Between Discrimination and Retaliation Claims*

Plaintiff argues that, because the Court has recognized that "'issues concerning liability and damages may overlap,'" he has unfettered license to introduce evidence relating to his dismissed discrimination claims. Pl.'s Opp. Memo at 6 (citing the Court's May 18, 2009 Order). The fact that issues relating to liability and damages may overlap in connection with the sole remaining retaliation claim does not support a claim that plaintiff's discrimination and retaliation claims are synonymous. Indeed, the Supreme Court has soundly rejected this premise, holding that the interests sought to be protected by Title VII's anti-discrimination mandate differ from those underlying its retaliation clause. "The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006).   Therefore, for purposes of retaliation, the critical issue is whether the employer retaliated against the employee for complaining about discrimination, not whether he was motivated by national origin bias at the time in question. *See* Biblioni Del Valle v. Puerto Rico, No. 07-1362 (RLA), 2009 WL 3287918 at *5 (D.P.R. Oct. 14, 2009) (citing DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008)). As a consequence, the relevant conduct for retaliation purposes "'is that which occurred **after** [plaintiff] complained about'" discrimination. Biblioni Del Valle, 2009 WL 3287918 at *5 (quoting Quiles-Quiles v. Hendeson, 439 F.3d 1, 8 (1st Cir. 2006) (emphasis in original)).

Given this paradigm, evidence relating to the nature of plaintiff's dismissed discrimination claims, including but not limited to the extent to which plaintiff's actions were

"reasonable," is not probative on the issue of whether Lewis retaliated against plaintiff in early

2005.[1]  Thus, only evidence relating to the facts and circumstances surrounding the narrow

retaliation claim are probative and not, as plaintiff contends, the totality of all circumstances

relating to each and every aspect of his complaint, including the dismissed discrimination

claims.[2]  Here, the evidence relating to the stand-alone retaliation claim will be adequate to

provide the jury with sufficient background and context for reaching a decision.  *See* Pleasants v.

Allbaugh, 285 F. Supp. 2d 53, 55 (D.D.C. 2003) (prior events are admissible only if necessary

for jury to understand context or if relevant to discriminatory intent).

      Even if relevant, evidence relating to plaintiff's dismissed claims would be unfairly

---

[1]  Plaintiff claims that defendants' pretrial submissions fail to address the issue of whether Lewis continued to block plaintiff from attending an inspection after the denials in January and February 2005 until he left FBI Headquarters in May 2006.  Pl.'s Opp. Memo at 2.  This claim, however, is not included in plaintiff's Second Amended Complaint.  Moreover, the Court's March 30, 2008 decision defines the "adverse action" as the denial of plaintiff's requests to attend inspections.  541 F. Supp. 2d 121, 137, 156 (D.D.C. 2008).  Plaintiff should not be permitted to introduce a new claim at this time.

[2]  As defendants noted in their Responses to Plaintiff's Objections to Defendants' Pretrial Submissions (Docket # 177), plaintiff misconstrues the decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Contrary to plaintiff's assertions, Pl.'s Opp. Memo at 3, 7, the decision in Morgan dealt with the issue of when a claim of discrimination or retaliation arises, not with the evidence to be admitted at the trial of a retaliation claim.  To the extent Morgan discusses the evidence to be considered, it is in relation to when a claim begins or, with respect to a hostile work environment claim, how to identify the period of time relevant to a finding of liability.  536 U.S. at 113.  Plaintiff similarly relies on propositions from other cases that are inapposite here.  Pl.'s Opp. Memo at 8-9.  For example, the decision in Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998), involves the issue of whether a claim of same gender sexual harassment is actionable under Title VII.  The decision in Aman v. Cort Furniture Rental Corp., 85 F.3d 1074 (3d Cir. 1996) involved a claim of discrimination, not retaliation.  And the discussion in Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003), about whether direct or circumstantial evidence is sufficient to establish discrimination, is not germane on the issue of whether evidence relating to the details of the protected activity is probative of the claim of retaliation.

prejudicial to defendants because it could persuade the jury that the discrimination issue is before

them.  *See, e.g.,* King v. Ahrens, 16 F.3d 265, 269 (8th Cir. 1994) (in medical malpractice case,

exclusion of evidence that physician's medical license had been suspended approximately eight

years earlier was not abuse of discretion because, even though license suspension was arguably

relevant to issue of physician's credibility, its probative value was substantially outweighed by

danger of unfair prejudice); Wade v. Haynes, 663 F.2d 778, 783 (8th Cir. 1981) ("[r]ule[s]

protect against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an

improper basis").[3]  As such, evidence relating to plaintiff's dismissed discrimination claims

should be excluded.

> b.   ***Evidence Relating to Whether Plaintiff Was Reasonable in Arranging a Meeting Between Director Mueller and Congressman Wolf Is Not Probative of Any Fact in Issue***[4]

Plaintiff also claims that he should be allowed to demonstrate that it was reasonable for

him to meet with Director Mueller in Congressman Wolf's office on June 28, 2002, because such

evidence is necessary to establish the complete context and scope of his protected activity.  Pl.'s

Opp. Memo at 3-6, 19.  Plaintiff submits that the details of the meeting need to be presented to

the jury to show that he had an "objectively reasonable" basis for initiating the meeting.  *Id.* at

---

[3]  Plaintiff argues that the Court of Appeals decision in Desmond v. Mukasey, 530 F.3d 944 (D.C. Cir. 2008), stands for the proposition that evidence relating to improper motives should be admitted.  Pl.'s Opp. Memo at 9.  However, the appellate decision in Desmond related to whether the district court's dismissal of plaintiff's **discrimination** claim on summary judgment was in error, not to whether the evidentiary rulings relating to the jury trial on the plaintiff's retaliation claim were in error.

[4]  The discussion in this subpart also responds to Pl.'s Opp. Memo at 19, which relates to the issue of whether testimony about the meeting between Director Mueller and plaintiff in Congressman Wolf's office should be excluded.

19.   However, whether plaintiff had an objectively reasonable basis for initiating the meeting would only be relevant to the question of whether the meeting constituted protected activity.   *See* Burton v. Batista, 339 F. Supp. 2d 97, 114 (D.D.C. 2004) (explaining that an employee's activity is not statutorily protected unless he has an objectively reasonable belief that the employment practice he opposed is a Title VII violation).   As defendants noted in their Responses to Plaintiff's Objections to Defendants' Pre-trial Statement (Docket # 177 at 2 n.1), defendants stipulate that plaintiff told Director Mueller he believed he was being discriminated against on the basis of his national origin in a meeting held on June 28, 2002 in Congressman Wolf's office; that plaintiff filed a formal claim of discrimination on July 5, 2002; that plaintiff was leaving work for depositions in this case during the period at issue (*i.e.,* November 2004 to February 2005); and that plaintiff's attorney was taking the depositions of other FBI employees.   Because the occurrence of this meeting and its status as protected activity are not at issue, plaintiff is incorrect in his assertion that the jury must be presented with evidence relating to plaintiff's "reasonableness" in arranging the meeting and stating his belief that he was discriminated against.

Indeed, the fact that the June 28, 2002 meeting between Director Mueller and plaintiff occurred is relevant only insofar as it establishes the state of mind of John Lewis when he denied plaintiff's requests to participate in inspections in January and February 2005.   In particular, the only relevant facts about this meeting are that it was protected activity and that Lewis became aware of its existence prior to denying plaintiff's requests to attend the two relevant inspections. Because both of these facts are undisputed, evidence detailing the specific conversations at that meeting have no probative value.   Moreover, such evidence would contain details of plaintiff's

dismissed discrimination complaints that would potentially confuse the jury and be prejudicial to defendants.

Further, it is not necessary to undertake a prolonged evaluation of the sufficiency of this aspect of plaintiff's prima facie case where the central inquiry at trial will be whether plaintiff produces "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason" and that the employer intentionally retaliated against plaintiff in violation of Title VII.  *See* Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *see also* Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08, 511 (1993) and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-16 (1983)); Talavera v. Fore, 648 F. Supp. 2d 118, 127 (D.D.C. 2009).

Finally, plaintiff's claim that he "needs to explain what was said [at the meeting] because it tends to make it more likely that Director Mueller told others about Mr. Youssef's participation in the meeting in a way that led to the adverse actions," Pl.'s Opp. Memo at 19, is without merit. It is unclear how explication of the specific statements made at the meeting would show that it was more likely that Director Mueller told others about the meeting's occurrence, and in fact, whether the Director did tell others about the meeting is immaterial.  The actor of primary relevance in this case is Lewis and, as stated above, it is undisputed that he knew about plaintiff's meeting with Director Mueller.  Resolution of this case requires only a finding on whether Lewis denied plaintiff's requests to participate in inspections because he had complained of national origin discrimination to Director Mueller and engaged in other protected activities, and the

contents of plaintiff's conversation with the Director are not significant to this determination.

Therefore, such evidence should be excluded.

> c.    **The Central Issue at Trial is The State of Mind of John Lewis, not Others in the FBI**

Plaintiff's quote of the Court's citation to the Lewis deposition underscores that the

central question at trial will be Lewis's state of mind at the time he rejected plaintiff's requests to

attend inspections in early 2005.  Pl.'s Opp. Memo at 4-5.  A critical questions for the jury,

therefore, will be what Lewis was thinking when he denied plaintiff's requests to complete

another inspection.  Did Lewis make these decisions for legitimate, business-related reasons or

because he harbored a retaliatory animus toward plaintiff?  Notwithstanding plaintiff's

assertions, Pl.'s Opp. Memo at 4-9, to answer these questions, the jury need not consider whether

plaintiff acted reasonably when he engaged in protected activity, whether plaintiff performed in

an exemplary manner during any time outside the period during which Lewis was plaintiff's

third-line supervisor, whether plaintiff had counterterrorism experience, or whether other FBI

officials had a high regard for plaintiff's capabilities.

To prove retaliation at trial, plaintiff must show that the decisionmaker, here John Lewis,

acted upon the basis of an improper motive; however, the motivations, knowledge, or beliefs of

others who were not involved in the decision at issue are not probative.  *Cf.* Corbitt v. Home

Depot U.S.A., Inc., No. 08-12199, 2009 WL 4432654 at * 15 (11th Cir. Dec. 4, 2009) (in context

of establishing a causal connection, court noted that because Title VII retaliation requires actual

knowledge on the part of the decisionmaker, the knowledge of one who is not a decisionmaker

cannot be imputed to the decisionmaker); Johnson v. Louisiana, 369 F.3d 826, 831 (5th Cir.

2004) (only final decisionmakers may be held liable for First Amendment retaliation employment

discrimination under § 1983); Long v. Eastfield College, 88 F.3d 300, 306 (5th Cir. 1996) (the

statements and actions of ordinary employees or co-workers may not normally be imputed to the

employer).   Plaintiff has not alleged that anyone outside of his supervisory chain of command

during the relevant period – *i.e.,* Lewis, Bennet, and Rogers – was involved or otherwise

influential in making the decision to deny plaintiff's requests to attend inspections.   Therefore,

evidence relating to the culture of the FBI, plaintiff's past performance, or plaintiff's job

experiences are not at all probative on the narrow surviving retaliation claim.[5]

### 2-3.   Plaintiff's Job Performance, Except for a Limited Period in 2004 - 2005, Is Not Relevant to the Sole Surviving Retaliation Claim

The Court should reject not only plaintiff's transparent attempt to go to trial on all of the

claims that have been dismissed in this action, but also plaintiff's efforts to drag before the Court

his entire 21-year history with the FBI.  Pl.'s Opp. Memo at 11-13.   Other than evidence of

plaintiff's job performance in the months immediately prior to the allegedly retaliatory actions at

issue (*i.e.,* Lewis' decisions in January and February of 2005), all other evidence of plaintiff's

work history and performance with the FBI should be excluded as irrelevant and potentially

prejudicial.   As  Lewis testified in his deposition, he disapproved plaintiff's requests to spend

three weeks on the LA inspection (with a week of annual leave tacked on), because plaintiff, as

---

[5]  Plaintiff claims that Lewis's deposition testimony is a predicate for his claim of entitlement to compensatory damages based on harm to his reputation and professional esteem. Pl.'s Opp. Memo at 5.  Plaintiff, however, cannot establish an element of his claim through the testimony of a witness he deposed and who was answering the questions of his counsel under oath.  Protected activities that occur subsequent to alleged retaliatory acts, such as the taking of a deposition in connection with his Title VII litigation, cannot support a causal link between the protected activity and –in this case– the prior acts of alleged retaliation.  *See, e.g.,* Timmons v. United Parcel Serv., Inc., 310 F. App'x 973, 975 (9th Cir. 2009).

the newly appointed Unit Chief of the Communications Analysis Unit, had been <u>absent from work for a significant portion of the first three months of his service in that position</u>.  *See* Lewis Depo at 142 - 54.  While Lewis perceived that plaintiff had certain performance problems in his previous tenure as Unit Chief of Doc Ex, Lewis's central concern was the obvious one that plaintiff could not successfully serve as a manager of a new unit if he did not show up for work.

This case is not a dispute about plaintiff's workplace performance (other than during the period during which Lewis served as plaintiff's third-line supervisor from May 2004 until he denied plaintiff's requests to attend inspections in early 2005).   Authorities such as <u>Hussain v. Nicholson</u>, 435 F.3d 359, 365 (D.C. Cir. 2006), which discuss the obvious relevance of qualifications and past performance in an allegation of discriminatory non-selection, have no relevance here.  Pl.'s Opp. Memo at 12.  Nor is plaintiff challenging a low performance evaluation on the ground that it was improperly motivated by discrimination or retaliation, rendering irrelevant cases such as <u>Ellias Fischel State Cancer Hosp. v. Marshall</u>, 629 F.2d 563, 566 (8th Cir. 1980), cited in Pl.'s Opp. Memo at 13.

To cite one of many examples of plaintiff's attempts to introduce patently irrelevant evidence, he states that the testimony of Paul Vick "is important in order for the jury to understand why a person with the background and skills of Mr. Youssef was not used more extensively after 9/11 . . . ."  Pl.'s Pretr. Resp. at 7.  All of plaintiff's complaints about his job assignments from 9/11 forward have been dismissed by the Court, so the jury's potential curiosity about such matters does not alter the fundamental fact that such evidence will not make

"any fact that is of consequence to the determination of the action more probable or less probable," Fed. R. Evid. 401, and hence such evidence should be excluded.[6]

4.     **All of Plaintiff's "Me Too" Evidence Should be Excluded**

Plaintiff concedes that Tony Wall's "personal experience with discrimination or retaliation at the FBI may be excluded." Pl.'s Opp. Memo at 14. But plaintiff still contends that Wall will offer testimony to prove "Mr. Lewis' guilt by virtue of Mr. Lewis' own words and actions," Pl.'s Opp. Memo at 17. Irrespective of whether statements by Lewis to a third person that relate to the alleged act or acts of retaliation to be tried would be relevant, it is evident from plaintiff's proffer that Mr. Wall has no such evidence to offer.

The closest example of such testimony relates to a question about the possible promotion of plaintiff. When asked if Section Chief Jennifer Love had concerns about Mr. Lewis' reaction if she were to promote plaintiff, Wall responded, "That was definitely the impression that I got." Wall Depo at 30; Pl.s' Opp. Memo at 14-15. Thus, Wall cannot testify to what he heard Lewis say, or even to what he heard Love say that she heard Lewis say. Instead, we have Wall's vague, speculative "impression" about what he believes Love was thinking about what she suspected that Lewis might be thinking. Lacking any personal knowledge about Lewis' motives, Wall's testimony should be excluded. *See* Fed. R. Evid. 602.

Finally, while plaintiff concedes defendants' position that "me too" evidence about retaliation should be excluded, Pl.'s Opp. Memo at 14, he continues to seek to allow Wall to testify that:

---

[6] *See* Exhibits 1 and 2, charts comprehensively listing defendants' objections to plaintiff's witnesses and exhibits, respectively. *See* objections on the basis of "Qualifications" (Q), "Time Frame" (TF) and "Irrelevant Circumstances" (IC) (Docket # 173).

     a.        Lewis was a "vindictive manager;" (Wall Depo at 32)

     b.        The grounds for Wall's termination from the FBI were inappropriate; (Wall Depo at 36)

     c.        The "work environment" Wall and allegedyly plaintiff shared;  (Pl. Opp. Memo at 16);[7] and

     d.        His opinion about the importance of service in the FBI's Criminal Division for promotion (Wall Depo at 55-56).

All of this testimony, and any similar testimony, should be excluded as inadmissable "me too" evidence, or simply lacking in the required foundation or relevance.[8]

**5.      The Expert Reports of Drs. Byman and Sharf Should Be Excluded**

Plaintiff claims that Drs. Byman and Sharf have relevant evidence to provide to the jury. Plaintiff does not dispute that Byman's testimony relates solely to his dismissed discrimination claims and that he has no knowledge of the facts and circumstances relating to the narrow surviving retaliation claim.  Indeed, plaintiff notes that Byman will testify about plaintiff's qualifications for SES positions.  Pl.'s Opp. Memo at 18.  For the reasons stated *supra* as well as in defendants' *In Limine* Memo (Docket # 172-1) at 16-20, this testimony should be excluded.

With respect to Sharf, plaintiff claims that the Court has already ruled that his testimony is admissible in denying defendants' motion to strike Sharf's report.  Pl.'s Opp. Memo at 18.

---

     [7]  Wall did not become the Assistant Section Chief of the Communications Exploitation Section of the FBI's Counterterrorism Division until April 24, 2006, well after the allegedly retaliatory decisions of Lewis in January and February of 2005.

     [8]Defendants have no objection to Wall offering testimony about plaintiff's alleged compensatory damages.

Defendants acknowledge that the Court stated that "the finder of fact" may determine whether

the conclusions in Sharf's report are entitled to weight.  Docket # 167.  As defendants point out,

however, if Sharf's report is to be considered, the proper "finder of fact" on the issue of whether

plaintiff is entitled to a promotion would be a question for the Court, not the jury, as it relates

solely to equitable relief.  Defs.' *In Limine* Memo at 27-28.  Further, the Court's decision was

issued without having the benefit of Sharf's deposition.  That testimony clearly demonstrates that

Sharf lacks the requisite factual underpinnings for expressing opinions mandated by Federal Rule

of Evidence 702 and the Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals,</u>

<u>Inc.</u>, 509 U.S. 579 (1993).  As explained at length in Defs.' *In Limine* Memo at 16-19, Sharf's

opinion is unreliable and, accordingly, should be excluded.  Because plaintiff has not countered

defendants' recitation of these evidentiary deficiencies as evinced by Sharf's deposition

testimony, defendants' motion should be granted.

**6.     Testimony about the June 2002 Meeting between Director Mueller and the Plaintiff in the Office of Congressman Wolf Should Be Excluded.**

*See* the discussion *supra* at 5-7.

**7.     The Court Should Exclude Live Testimony by FBI Director Mueller.**

Defendants have previously argued that live testimony at trial by Director Mueller should

be excluded because he is a high ranking government official that should not be compelled to

testify absent extraordinary circumstances.  In addition, Director Mueller has no personal

knowledge of information relevant to this case, he has already provided deposition testimony,

and the testimony sought from him by plaintiff can be obtained from other witnesses.  As

plaintiff has failed to articulate a need for the Director's live testimony that would outweigh these

factors, such testimony should be excluded.

Plaintiff asserts that the Director is needed to testify at trial because he has previously provided testimony on the importance of inspection certification to promotion at the FBI that supports plaintiff's claim and runs counter to defendants' position.  However, this argument fails to address the pertinent question here of whether the Director must provide **live** testimony.  As plaintiff's argument itself admits, the Director has **already** provided the very testimony which plaintiff finds critical to his case.  Pl.'s Opp. Memo at 20-21.  Hence, there is no reason to require the Director to appear at trial to re-answer the same questions.  The use of the Director's deposition testimony at trial would sufficiently enable plaintiff to convey to the jury the Director's understanding of the importance of inspection certification and would avoid interfering with the Director's ability to carry out his significant and demanding job functions.

Plaintiff also argues that the Director's live testimony is necessary because it could rebut allegedly prejudicial testimony that might possibly be provided by Lewis that the Director was "appalled" by the meeting with plaintiff.  However, if such potential testimony by Lewis would be prejudicial, the proper remedy would be to exclude it, and not to compel the testimony of a high-ranking government official that would otherwise not be required.  Plaintiff further argues that the Director's live testimony is needed because only he can provide evidence that plaintiff exercised reasonable judgment in initiating the meeting.[9]  However, Director Mueller has no expert opinion or unique knowledge on the reasonable ways in which to respond to a perceived Title VII violation, and plaintiff has no special need to question him on this topic.  Moreover, this argument that the Director will testify to the reasonableness of plaintiff's initiation of the meeting

---

[9] As noted above, because defendants do not dispute that the meeting with Director Mueller is protected activity, the reasonableness of plaintiff's initiation of that meeting is irrelevant.

is contradicted by a later argument by plaintiff that, in fact, the meeting caused the Director to have a retaliatory animus towards him. *See* Pl.'s Opp. Memo at 22-23. (This alternate argument, that plaintiff must be able to question the Director about this allegedly retaliatory animus, is also unavailing, as the Director had no involvement in the denial of plaintiff's request for permission to participate in the Los Angeles or OPR inspections.) Accordingly, this justification for compelling the Director's live testimony is insufficient.

Finally, plaintiff attempts to support his position that Director Mueller's live testimony is necessary by stating that plaintiff's skills and reputation are central to this case and he must therefore be able to present evidence on these topics. As set forth above, because this Court has already dismissed plaintiff's promotion-related claims, evidence of plaintiff's qualifications is irrelevant. Further, even if such evidence were relevant, plaintiff has not explained why Director Mueller's testimony is necessary to demonstrate the extent of his qualifications. If the Court were to find that evidence of plaintiff's qualifications is relevant, plaintiff has a myriad of other means to present such evidence, and requiring Director Mueller to testify would not be necessary.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as for the reasons set forth in Defendants' Memorandum in Support of Motions *In Limine*, the Court should grant the defendants' motions *In Limine*.

Dated: December 16, 2009

Respectfully submitted,
TONY WEST
Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

STUART LICHT
Assistant Director
Federal Programs Branch
Civil Division

*Carlotta P. Wells*
CARLOTTA WELLS
DANIEL BENSING (D.C. Bar 334268)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 514-4522
Fax: (202) 616-8460
E-mail: carlotta.wells@usdoj.gov

Attorneys for Defendants