UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM YOUSSEF,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, *et al.*,<br><br>    Defendants. | Civil Action No. 03-1551 (CKK) |

**ORDER ON BIFURCATION**
(January 21, 2010)

In preparation for trial of this action, the parties have filed their [171] Joint Pretrial Statement containing the positions of both parties as to the evidence and issues remaining for trial.  Defendants have filed [173] Objections to Plaintiff's pretrial submissions, to which Plaintiff has filed a [179] Reply Memorandum.  Plaintiffs have also filed [175] Objections to Defendants' pretrial submissions, to which Defendants filed [177] Responses.  Defendants have also filed a [172] Motion in Limine and to Bifurcate, to which Plaintiff filed a [178] Memorandum in Opposition and Defendant filed a [180] Reply.  These filings by the parties raise myriad issues that must be resolved by the Court before or during trial.  This Order concerns Defendants' motion to bifurcate the proceedings so that only the Court will hear evidence related to equitable relief.

    **I.    Bifurcation of Trial**

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."

Fed. R. Civ. Proc. 42(b). The parties' pretrial submissions make clear that in addition to the issues of liability and compensatory damages that must be determined by the jury, there are complicated questions involving the equitable relief that may be appropriate. Because a finding by the jury that Defendants have no liability would obviate the need for proceedings with respect to equitable relief, the Court finds that bifurcation will serve the convenience of the parties and the Court, expedite the resolution of this action, and avoid prejudice from having the jury hear issues that are committed to the sole discretion of the Court.

Accordingly, the Court shall order that a jury trial be held on all issues relating to liability and compensatory damages. After the jury has returned a verdict, if the jury finds Defendants liable, the Court shall begin pretrial proceedings with respect to equitable relief sought by Plaintiff. The Court shall not attempt to resolve any pretrial disputes pertaining solely to equitable relief until after the conclusion of the jury trial. This bifurcation should focus the parties initially on presenting only those issues relevant to liability and compensatory damages.

## II.     Scope of Compensatory Damages under Title VII

The parties dispute the scope of compensatory versus equitable relief available to a Title VII plaintiff. Accordingly, the Court shall set out the basic principles defined by the statute.

The award of equitable relief under Title VII is governed by § 706(g) of the Civil Rights Act of 1964, which provides in pertinent part:

> if the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as

the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). Under this provision, back pay, front pay, and reinstatement are forms of equitable relief that are awarded by the court rather than determined by a jury. *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572 (1990) ("Congress specifically characterized back pay under Title VII as a form of 'equitable relief.'"); *Pollard v. E.I. du Pont de Nemours Co.*, 532 U.S. 843, 853 (2001) (holding that front pay is an equitable remedy under § 706(g)). Thus, issues relating to the amount of wages Youssef would have received had he been promoted are equitable in nature.

In 1991, Congress amended the Civil Rights Act to provide for the award of compensatory and punitive damages by a jury in cases of intentional discrimination brought under Title VII. *See* 42 U.S.C. § 1981a.[1] Compensatory damage awards may include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *Id.* § 1981a(b)(3). Youssef valiantly attempts to persuade this Court that by amending the law to permit compensatory damages, Congress permitted back pay to be a legal remedy in addition to an equitable remedy, entitling him to a jury trial on back pay. *See* [175] Pl.'s Objs. at 11-20. For this proposition, Youssef cites *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995), which explains that "as a general rule awards of pecuniary relief such as back pay are legal." 49 F.3d at 746. However, *Crocker* was not a Title VII case, and the *Crocker* court explicitly recognized that "a monetary award incidental to or intertwined with injunctive relief may be equitable." *Id.* at 747 (quoting *Terry*, 494 U.S. at 571)

---

[1] Punitive damages may not be obtained against a government employer. 42 U.S.C. § 1981a(b)(1).

(internal quotation marks omitted).  Federal courts have recognized that the 1991 amendment did not change the equitable nature of back pay as a remedy under Title VII.  *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005) ("[T]here is no right to have a jury determine the appropriate amount of back pay under Title VII . . . even after the Civil Rights Act of 1991.  Instead, back pay remains an equitable remedy to be awarded by the district court in its discretion.").  Indeed, Congress explicitly excluded back pay from the category of compensatory damages available to a Title VII plaintiff: "Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."  42 U.S.C. § 1981a(b)(2).  Youssef tellingly fails to cite this provision in his more than ten pages of briefing on this topic.  Because Title VII only provides a jury trial as to compensatory damages, *id.* § 1981a(c), Youssef is not entitled to have a jury determine back pay.

Youssef also contends that the Lily Ledbetter Fair Pay Act, Pub. L. No. 111-2, 123 Stat. 5 (2009), compels a jury determination as to back pay.  The statutory language added by that legislation reads, in pertinent part:

> In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

42 U.S.C. § 2000e-5(e)(3)(B).  Contrary to Youssef's interpretation, this language governing back pay awards does not indicate that back pay is legal relief that a jury may award.  In fact, this new language explicitly confirms that back pay is a component of the equitable relief "as

4

provided in subsection (g)(1)" and distinct from "any relief authorized by section 1981a of this title." Nor does the legislative history of the Act indicate that Congress intended to have back pay determined by juries. Youssef cites statements by members of Congress who were critical of the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), for setting aside the jury's award of back pay in Ledbetter's Title VII case. However, the jury did not actually award back pay in that case—it made an advisory recommendation. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1176 (11th Cir. 2005) ("The jury *recommended* $223,776 in backpay, *awarded* $4,662 for mental anguish, and *awarded* $3,285,979 in punitive damages." (emphasis added)). That is consistent with the view opposed by Youssef that back pay is an equitable remedy that must be awarded by the Court in Title VII cases.

Youssef finally asks this Court to permit the jury to render an advisory verdict as to the back pay to which he may be entitled. The Court declines to do so. Accordingly, all issues relating to back pay must be reserved until the second trial on equitable relief.

### III.    Pretrial Issues Relevant to Equitable Relief

The parties have presented a number of issues in their pretrial filings that pertain primarily to the award of equitable relief. For example, Youssef intends to call three expert witnesses to testify about lost wages and other employment-related damages: Dr. James Sharf, Dr. Amy McCarthy, and Dr. Daniel Byman. From the materials before the Court, it appears that the testimony of Dr. Amy McCarthy is limited solely to the calculation of back pay and front pay, which is equitable. *See* [154] Pl.'s Mem. Opp'n to Defs.' Mot. to Strike Expert Report, Ex. 1 (McCarthy Expert Report). Accordingly, her testimony should be excluded from the jury trial. As for Drs. Sharf and Byman, part or all of their testimony should be excluded from the jury trial.

The Court needs additional information regarding the nature of their testimony before deciding whether some of it may be appropriate for the jury.  Similarly, Defendant has identified witnesses whose testimony are relevant to claims for injunctive relief: Valerie Parlave, Joel Lesch, Suzanne Tsacoumis, and John Pistole.  It appears that witnesses Lesch, Tsacoumis, and Pistole would testify entirely relating to matters relevant only to equitable relief.  Accordingly, their testimony should be excluded from the jury trial.  The Court shall address the testimony of other witnesses in a separate order.

The Court also notes that Youssef seeks to introduce evidence relating to the specific promotions that he claims he would have received had he not been denied the opportunity to become inspection certified.  The Court's preliminary view is that testimony regarding the specific dates and positions to which Youssef claims he would have been promoted should be reserved for the remedy phase.  The Court recognizes, however, that some general testimony regarding the effect of inspection certification on Youssef's career path may be relevant to other compensatory damages and may be heard by the jury.

**SO ORDERED.**

                                                                                                    _/s/_
                                                                 COLLEEN KOLLAR-KOTELLY
                                                                 United States District Judge