UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM YOUSSEF,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, *et al.*,<br><br>　　　Defendants. | Civil Action No. 03-1551 (CKK) |

**ORDER**
(February 3, 2010)

On January 29, 2010, the Court held a final pretrial conference in the above-captioned matter. Prior to the conference, the parties had filed their [171] Joint Pretrial Statement containing the positions of both parties as to the evidence and issues remaining for trial. Defendants filed [173] Objections to Plaintiff's pretrial submissions, to which Plaintiff filed a [179] Reply Memorandum. Plaintiff also filed [175] Objections to Defendants' pretrial submissions, to which Defendants filed [177] Responses. Defendants also filed [172] Motions in Limine and Motion to Bifurcate, to which Plaintiff filed a [178] Memorandum in Opposition and Defendant filed a [180] Reply. On January 21, 2010, the Court issued an [185] Order on Bifurcation directing that evidence relating to equitable relief (i.e., back pay, front pay, promotions, etc.) be reserved for a remedy phase after a jury decides issues of liability and compensatory damages. This Order, which incorporates the Court's discussion on the record during the pretrial conference, addresses the outstanding issues between the parties.

**A.    The Scope of Plaintiff's Retaliation Claim**

In a March 30, 2008, Order and Memorandum Opinion, the Court dismissed the majority

of Youssef's claims relating to alleged discrimination and retaliation by Defendants. *See Youssef v. FBI*, 541 F. Supp. 2d 121 (D.D.C. 2008). The Court restricted the scope of the trial to a single retaliation claim involving Deputy Assistant Director John Lewis's denials of Youssef's requests for leave to complete his final inspection in order to become inspection-certified. *See Youssef*, 541 F. Supp. 2d at 155-60. The parties agree that Youssef's retaliation claim pertains to specific denials in January and February 2005 pertaining to requests for leave to conduct inspections in the FBI's Los Angeles and Washington, D.C., offices. The Court asked the parties at the pretrial hearing whether there was evidence to support retaliation beyond those two specific denials. Plaintiff asserted that there is evidence in the record to show that Lewis instructed Youssef not to request any more leave to conduct inspections. *See* Jan. 29, 2010, Pretrial Hr'g Tr. ("Tr.")[1] at 14-15. Defendants disputed this and presented the Court with Exhibit 22, an email from Lewis to Youssef, which Defendants believe demonstrates there was no blanket prohibition on Youssef going out on any inspections in the future. Tr. at 29-30. However, the Court found that the language in the email is open to interpretation. Tr. at 30-31. Plaintiff also cited to the Court Exhibit 25, another email from Lewis to Youssef, which supports Youssef's view that Lewis wanted Youssef to not ask for further requests for inspections. Tr. at 32-33. Therefore, the Court ruled that each party may make arguments at trial as to whether, from these statements, it can reasonably be inferred that Youssef was told not to apply for inspections after February 2005. Tr. at 33-34.

      The Court also asked the parties at the hearing whether there is any evidence that Lewis's

---

[1] The Court cites to a preliminary version of the pretrial hearing transcript that has been edited but not proofread by the court reporter.

denials of Youssef's requests were based on deficiencies in Youssef's job performance separate and apart from his absenteeism due to his protected activities. This is relevant because Lewis testified at deposition that there were problems at the Document Exploitation Unit ("DocEx") during Youssef's tenure there, and Youssef was subsequently transferred from DocEx to the Communications Analysis Unit ("CAU"). *See* 541 F. Supp. 2d at 136. Plaintiff asserted that although Lewis's justification has been primarily based on absenteeism, Lewis also criticized Youssef's "judgment" and "leadership," which go broadly to issue of performance. Tr. at 18-19. Defendants clarified that Lewis's testimony regarding Youssef's judgment is directed to the issue of absenteeism, i.e., Youssef's choosing to be absent from the CAU for long periods of time was a failure of leadership. Tr. at 26-27. Defendants explained that evidence relating to the problems in the DocEx unit would only be admitted to explain the motivation for Youssef's transfer into the CAU. Tr. at 35-37. However, Plaintiff argued that evidence relating to Youssef's transfer from DocEx to CAU is not relevant to denial of inspection certification, and Youssef would not make any arguments at trial that his transfer was retaliatory. Tr. at 39-40, 43. Defendants initially argued that the reasons for the transfer were relevant to Lewis's state of mind to show that Lewis did not harbor retaliatory animus toward Youssef prior to the transfer, but Defendants eventually agreed to narrow the issue and not address any of the performance issues at DocEx. Tr. at 42, 44. Accordingly, the parties shall not present evidence at trial relating to the reasons for Youssef's transfer from DocEx to CAU or any performance-related problems in the CAU unless linked to the issue of absenteeism.

**B.     Relevance of Youssef's Claims of Past Discrimination**

In his pretrial papers, Youssef indicated that he intends to present evidence at trial

relating to Defendants' past discrimination against him. *See* Pl.'s Mem. Opp'n Defs.' Mot. in Limine ("Pl.'s Opp'n") at 3. Youssef contends that this evidence is admissible both as background evidence and to explain why his meeting with Congressman Wolf and FBI Director Mueller was protected activity. The Court shall address each in turn.

### 1.      Past Discrimination as Background Evidence

Youssef relies heavily on *National Passenger Rail Corporation v. Morgan*, 536 U.S. 101 (2002), for the principle that prior acts of discrimination may be used as background evidence in support of a Title VII claim. However, *Morgan* does not stand for this principle. *Morgan* was a case involving the extent to which Title VII plaintiffs may file a lawsuit based on discriminatory or retaliatory acts that are outside the statutory time period for filing a formal charge with the EEOC. *See* 536 U.S. at 104-05. The Court held that courts may consider the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, as long as some act occurred during the time period. *Id.* at 105. In so holding, the Court noted in passing that Title VII does not "bar an employee from using . . . prior acts as background evidence in support of a timely claim." *Id.* at 113. This language only means that the statutory limitations period does not preclude a court from hearing evidence of acts that occurred outside the time period, *where otherwise admissible* in support of a timely claim. It does not mean, as Youssef suggests, that any prior acts are necessarily admissible as "background evidence" to support Youssef's theories as to Defendants' motive or intent. The *Morgan* Court did not purport to make any holdings regarding the admissibility of such evidence, and this Court does not read *Morgan* as compelling the admission of such prior acts as "background evidence."

Evidence of past discrimination against Youssef might be relevant to the issue of whether

Defendants retaliated against him for his protected activities. However, Youssef has failed to make a specific proffer as to how the substance of his discrimination claims is relevant to his remaining retaliation claim. Even if he could make such a showing, under Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In a pure retaliation case, such as this one, presenting evidence of past discrimination may prejudice Defendants and cause confusion for the jury, who is tasked only with deciding whether Defendants unlawfully retaliated against Youssef. Courts within this District have previously excluded such evidence in retaliation cases. *See, e.g.*, *Harvey v. District of Columbia*, 949 F. Supp. 874, 876-77 (D.D.C. 1996) (excluding under Rule 403 evidence related to the details of sexual harassment complaints for which plaintiff claimed retaliation). Youssef has not explained how the FBI's alleged discrimination makes it more or less likely that he was unlawfully retaliated against by Deputy Assistant Director Lewis. Therefore, evidence relating to Youssef's specific discrimination claims should not be introduced at trial.

  2.  **Reasonableness of Youssef's Claims of Discrimination**

  Youssef claims that evidence of past discrimination is relevant to show that Youssef had a reasonable basis for his remarks to FBI Director Mueller and Congressman Wolf, which were protected activity that provide part of the basis for Youssef's remaining retaliation claim. Pl.'s Opp'n at 3. Youssef contends that the jury will need to consider the full scope of his protected activities in order to determine if they were the cause of the adverse actions taken against him. *Id.* Youssef cites *Clark County School District v. Breeden*, 532 U.S. 268 (2001), for the

proposition that Title VII only protects employee opposition to activities that the employee reasonably believes are unlawful, *see id.* at 270, and therefore the jury must conclude that Youssef had a reasonable basis for his discrimination claims. *See also George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) ("[A]n employee seeking the protection of the opposition clause must demonstrate a good faith, reasonable belief that the challenged practice violates Title VII." (quotation marks and alterations omitted)). However, the reasonableness of an employee's belief is only relevant to the question of whether the employee's opposition constitutes protected activity. *See Burton v. Batista*, 339 F. Supp. 2d 97, 114 (D.D.C. 2004) (describing scope of "opposition clause" under Title VII's retaliation provision).[2]

Here, Defendants do not dispute that Youssef's meeting with Director Mueller and Congressman Wolf constituted protected activity. Moreover, Defendants are willing to stipulate to the following: that Youssef told Director Mueller he believed he was being discriminated against on the basis of national origin in a meeting held on June 28, 2002, in Congressman Wolf's office; that plaintiff filed a formal claim of discrimination on July 5, 2002; that plaintiff was leaving work for depositions in this case during the period at issue (*i.e.*, November 2004 to February 2005); and that plaintiff's attorney was taking the depositions of other FBI employees.

---

[2] Youssef's meeting with Director Mueller and Congressman Wolf clearly falls under the opposition clause of Title VII rather than the participation clause. The opposition clause protects against adverse actions due to an employee's opposition to any practice that is unlawful under Title VII. The participation clause protects an employee against adverse actions from making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). However, activities related to Youssef's filing an EEO charge and giving deposition testimony related to his lawsuit fall within the participation clause. *See id.*; *Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411, 413 (4th Cir. 1999) ("It is . . . plain that testifying in a deposition in a Title VII case generally constitutes protected activity under [Title VII's] participation clause.")

*See* Defs.' Reply Supp. Mots. in Limine at 6.  Moreover, Defendants have proposed jury instructions that explicitly state that there is no dispute that Youssef engaged in protected activities and instructs the jury to find for Youssef on this element.  *See* Joint Pretrial Statement, Defs.' Proposed Non-Standard Jury Instructions at 1.  Accordingly, the issue of whether Youssef's meeting with Congressman Wolf and Director Mueller constituted protected activity will not be before the jury, and evidence regarding whether Youssef reasonably believed his discrimination claims were valid is irrelevant.  *See Morris v. Wash. Metro. Area Transit Auth.*, 702 F.2d 1037, 1043-44 (D.C. Cir. 1983) (holding that where defendant stipulates as to protected status of plaintiff's activity, the jury should not decide whether plaintiff's beliefs were reasonable).  For these reasons and the reasons stated on the record during the hearing, the Court shall not permit Plaintiff to produce evidence relating to the substance of his discrimination claims.

**C.**     **Evidence Regarding Youssef's Motivation for Meeting with Congressman Wolf**

At the hearing, the parties engaged in a lengthy discussion about the extent to which Plaintiff should be permitted to testify regarding the reasons why Youssef felt the need to go outside the FBI and complain to Congressman Wolf about his discrimination.  The record shows that Lewis criticized Youssef for having gone outside the chain of command to set up the meeting with Director Mueller and speculated that Director Mueller was "appalled" by this behavior.  *See* 541 F. Supp. 2d at 160.  Plaintiff seeks to rebut this criticism in order to show that Lewis's actions were retaliatory.  Plaintiff proffered to the Court Exhibit 105, a letter from Youssef to Wolf, which explains that Youssef has certain skills and expertise relating to counterterrorism that were being underutilized by the FBI in part due to discrimination.  *See* Tr.

at 48-49.  Plaintiff indicated that the contents of this letter are what Youssef said during his meeting with Congressman Wolf and Director Mueller.  Tr. at 49.  Plaintiff noted that the letter does not describe in detail his various discrimination claims, and Plaintiff agreed to limit his testimony to what was in the letter.  Tr. at 49-50.

Defendants object to this testimony and evidence on the ground that the only relevant issue for the jury is Lewis's state of mind, and there is no evidence that Lewis was aware of what was actually said at the meeting with Congressman Wolf.  Tr. at 50.  Therefore, Defendants contend that the substance of what was said at the meeting or why Youssef wanted to set up the meeting are irrelevant.  Tr. at 50-53.  Defendants did indicate, however, that Lewis would likely testify that Youssef was exercising poor judgment in deciding to take his complaints to Congressman Wolf.  Tr. at 52-54.  Thus, Lewis will raise the reasonableness of Youssef's opposition as an issue that is probative of why Lewis decided to deny Youssef's requests for leave.  Plaintiff indicated that Lewis's reaction to the Mueller meeting is central to his case for retaliation, since Lewis said that it was the "worst act of judgment in the history of the FBI."  Tr. at 60.  Plaintiff argues that in light of this expected testimony, Youssef will need to be able to justify his extreme measures in order to establish his credibility as an employee and explain why Lewis's attack on his judgment is unsound.  Tr. at 58, 60-61.  Plaintiff explained that it would only take fifteen minutes of testimony to establish that he had a successful career in counterterrorism that was being wasted by the FBI.  Tr. at 60-61.

After a short recess, the Court examined the substance of Exhibit 105 and concluded that Youssef should be permitted to testify regarding the contents of the letter, insofar as it explains why Youssef felt compelled to go outside the chain of command to set up a meeting.  Tr. at 103.

The letter explains that Youssef understood that he was taking an extraordinary step that may have adverse consequences for him, and Youssef should be allowed to testify to that effect in order to rebut the accusations of Mr. Lewis. *Id.* However, Youssef shall not go into detail regarding the contents of what was said at the meeting with Congressman Wolf, as there is no evidence that Lewis was actually aware of what occurred during this meeting. The parties agree that there is no evidence in the record that Lewis was aware of or had any personal knowledge regarding Director Mueller's reaction to the meeting with Youssef. Tr. at 66-67. Plaintiff indicated at the hearing that he may seek to challenge Lewis's prior statement regarding Mueller's reaction to the meeting, and Defendants do not object to this line of inquiry as being relevant to Mr. Lewis's state of mind. Tr. at 67.

D.    **Director Mueller's Testimony**

In his pretrial filings, Plaintiff indicated that he intended to call Director Mueller as a witness at trial. Defendants objected and argued that there was no need for live testimony by Director Mueller because Plaintiff could introduce his deposition testimony into evidence. At the hearing, Plaintiff indicated that, based on the bifurcation order and the other rulings made on the record, he would not call Director Mueller as a live witness at trial. Tr. 73. Accordingly, the parties shall confer regarding the relevant deposition transcripts that each seeks to have admitted.

E.    **Testimony of Drs. Sharf and Byman**

Plaintiff indicated in his pretrial filings that he seeks to introduce expert testimony from Drs. James Sharf and Daniel Byman. The Court inquired at the hearing whether any of these experts' testimony would be relevant for the jury as opposed to the remedy phase. *See* Tr. at 73-74. Plaintiff indicated that Drs. Sharf and Byman would testify regarding the adverse effect that

9

denial of inspection certification had on Youssef's career, which would be relevant to the contested issue of whether denial constituted an adverse action, an essential element of Plaintiff's retaliation claim. Tr. at 74. Defendants agreed that this was disputed, as their position is that Youssef was only denied a training opportunity and that this was not a materially adverse action. Tr. at 74-75. However, Defendants claimed that neither Dr. Sharf nor Dr. Byman sufficiently addressed the issue of inspection certification in their expert reports. Tr. at 77. Plaintiff conceded that Dr. Byman does not address this issue in his inspection report. Tr. at 79-80. Therefore, Dr. Byman's testimony shall not be admissible for any purpose in the jury trial.

A discussion with the parties revealed that Dr. Sharf included only one conclusory statement regarding inspection certification in his initial report, and he was unable to elaborate upon that statement at his deposition. Tr. at 77-84. However, Dr. Sharf did file a supplemental expert report that addressed the issue of inspection certification. *See* Defs.' Mots. *in Limine*, Ex. 4. Accordingly, the Court ruled that Dr. Sharf may testify regarding the findings in this supplemental report, limiting his testimony to the adverse effect of the denial of inspection certification and without getting into any specific promotions that Youssef might have earned or SES positions he might have obtained. Tr. at 85-86.

**F.     Evidence Regarding Damage to Youssef's Reputation**

Defendants seek to limit the scope of Plaintiff's testimony regarding his past job performance on the ground that it is not relevant to whatever damages to his reputation were suffered by the denial of inspection certification. Plaintiff indicated at the hearing that he intends to present evidence that will show that Youssef had a "spectacular" reputation and a 20-year record of outstanding service to the FBI. Tr. at 90-91. Plaintiff seeks to introduce this evidence

in order to show how his reputation was harmed by the denial of inspection certification and to show that Lewis's reasons for denying him leave for inspections were pretextual. *Id.* Plaintiff intends to elicit approximately two hours of testimony regarding Youssef's service record. Tr. at 93. The Court noted that some of this proposed testimony would be focused on the time frame surrounding the denial of leave, around 2005, but some of it appeared to be focused on time periods much earlier. Tr. at 92-93. The Court instructed Plaintiff to identify more specifically which witnesses he intended to call for this purpose and what their testimony would likely be. Tr. at 94. The Court shall evaluate Plaintiff's proposed evidence regarding reputation at the next pretrial hearing.

**G.     Testimony of Tony Wall**

The parties dispute the proper scope of testimony by Tony Wall, who was Youssef's first- and second-line supervisor after Youssef was denied inspection certification by Mr. Lewis and who shared a work environment with Youssef and Lewis during part of this period. Plaintiff indicated at the hearing that Mr. Wall would not offer "me too" testimony regarding his experience with employment discrimination and/or retaliation at the FBI, nor would he offer testimony regarding service in the FBI's Criminal Division as being relevant for promotion. Tr. at 96. Rather, Plaintiff proffered that Mr. Wall would testify to the work environment that he shared with Mr. Lewis and Youssef, explaining that Youssef was a stellar employee and that the FBI waited until Lewis was no longer working in that unit to send Youssef for inspection certification, rebutting the notion that the delay in obtaining certification was necessitated by Youssef. Tr. at 97. Plaintiff explained that this testimony would also be relevant to Youssef's emotional state and reputation for compensatory damages. Tr. at 97-98. Defendants conceded at

the hearing that Wall may testify regarding the circumstances surrounding Youssef's final inspection and, to a certain extent, Youssef's reputation. Tr. at 98-99. Defendants indicated that their objection to Mr. Wall's testimony is that he may offer opinions regarding a "culture of retaliation" during a period beyond the four- or five-months he actually worked with Lewis and Youssef. Tr. at 99. The parties indicated that Defendants' objections may have to be made on a question-by-question basis at trial. Tr. at 99-101. However, as the Court explained at the hearing, the parties should resolve any disputes as to the scope of Mr. Wall's testimony before trial if at all possible. Tr. at 101.

**H.     Revised Witness and Exhibit Lists, Pretrial Filings**

The parties included in their pretrial filings a list of witnesses and exhibits. Because of the Court's various rulings narrowing the scope of issues for the jury trial, the parties shall revise their list of witnesses and inform the Court as to which witnesses they now expect to call at trial, with the understanding that witnesses previously identified may also be called if circumstances change. The parties should also determine whether their lists of exhibits need to be revised. As discussed on the record at the hearing, the parties need to refile their neutral statement of the case, their joint proposed jury instructions, and any other revised pretrial filings by March 8, 2010. The parties shall include a revised list of witnesses, exhibits, and objections thereto, along with any new motions in limine. The Court shall hold a second pretrial hearing on March 26, 2010, at 9:30 A.M.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge