UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM YOUSSEF,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, *et al.*,<br><br>    Defendants. | Civil Action No. 03-1551 (CKK) |

**SECOND PRETRIAL ORDER**
(May 21, 2010)

On April 27, 2010, the Court held a second pretrial conference in the above-captioned matter. Prior to the conference, the parties had filed [194] Revised Joint Pretrial Filings containing a list of the parties' witnesses and exhibits, statements of the claims and defenses, and proposed voir dire. The parties also filed [201] Joint Revised Amended Jury Instructions with the parties' proposed jury instructions and objections. Defendants subsequently filed a [193] Second Set of Motions *in Limine* and a [199] Third Set of Motions *in Limine*, which were opposed by Plaintiff. These motions *in limine* were discussed on the record at the second pretrial conference, and those discussions are incorporated into this Order. The motions *in limine* involve five issues: (1) evidence pertaining to the amount of time it took Youssef to become inspection certified as compared to other FBI agents; (2) evidence relating to the subject matter of the Office of the Inspector General ("OIG") investigation into the FBI's use of exigent letters to obtain telephone records; (3) evidence relating to Youssef's reputation dating back to his early career with the FBI; (4) proposed expert testimony that may be elicited from witnesses Louis Freeh, Edward Curran, and Bassem Youssef; and (5) expert testimony from Dr. James C. Sharf

about the material effect of retaliation on Youssef's career as well as other FBI employees. The Court shall address each of these issues in turn, as well as address the other pretrial issues discussed at the second pretrial conference. In addition, the Court shall discuss Plaintiff's [207] Report Regarding Expert Testimony, which was filed on May 14, 2010, in response to the Court's request that more specific proffers be provided as to proposed expert testimony by Bassem Youssef, Louis Freeh, and Edward Curran.

    A.    *Objections to Witnesses and Exhibits*

During the pretrial conference, the Court asked the parties whether there were outstanding objections to the testimony of various witnesses identified in the pretrial statement. The parties indicated that there were no longer any objections to the testimony of Tony Wall. With respect to the testimony of Glenn Rogers, Defendants explained that the purpose of his testimony would be to clarify what evaluation, if any, he conducted of Youssef's time and attendance records and that his testimony may be unnecessary. *See* Tr.[1] at 6-8. Plaintiff also clarified that Ed Dickson, Tony Wall, and Jennifer Love are expected to testify about Youssef's reputation after the alleged retaliatory events at issue in this action and not about his reputation prior to the alleged retaliation. *Id.* at 10.

    B.    *OIG Investigation*

In their motions *in limine*, Defendants seek to exclude evidence relating to the OIG investigation and report on the use of "exigent letters" by the FBI. As explained to the parties during the second pretrial conference, the Court has previously ruled that such evidence will not

---

[1] The Court refers to a version of the transcript from the second pretrial conference that has been edited but not proofread by the court reporter.

be admissible for any purpose at trial. *See* Tr. at 21-22. Based on the present record, the OIG report has no relevance on the limited issues that will be contested at trial.

        C.     *Evidence Relating to the Time It Took Youssef to Complete Inspections Compared to Other FBI Employees*

Defendants seek to exclude any testimony on the issue of the length of time that it took for Youssef to complete his six inspections and become inspection certified compared to other FBI agents. Specifically, Defendants anticipate that Plaintiff's witnesses will testify about delays or denials pertaining to earlier inspection requests that are not at issue, such as requests that were denied in November 2002, July 2003, and November 2003. During the second pretrial conference, Plaintiff made clear that he will not elicit specific testimony regarding these earlier denials or argue that they were discriminatory. *See* Tr. at 24-25. This Court previously dismissed any discrimination claims pertaining to these earlier denials for failure to establish a *prima facie* case. *See Youssef v. FBI*, 541 F. Supp. 2d 121, 156 n.32 (D.D.C. 2008). However, Plaintiff indicated that he does intend to argue that the overall time between his first inspection in 2000 and his sixth and final inspection in January 2007 is significantly longer than the time it took other FBI employees to become inspection certified. *See* Tr. at 24-25, 29. Plaintiff also indicated that both John Lewis and Laurie Bennett were specifically aware of the significant delay in Youssef's inspection certification process and that this is one reason that Youssef's fifth inspection was approved in November 2004. *See* Tr. at 26-27, 32-33.

Evidence about the timing of Youssef's inspection certification compared to other FBI agents is relevant to his retaliation claim under the minimum thresholds of Federal Rule of Evidence ("FRE") 401. Youssef contends that the average time it takes an agent to complete six

inspections is about one to three years, whereas it took him over two years just to complete his sixth and final inspection. Such a disparity, if proven at trial, would tend to undermine John Lewis's apparent assertion that he was concerned about Youssef obtaining his inspection certification and that he would work to get Youssef an opportunity to complete his sixth inspection in a timely manner. In other words, the fact that it took Youssef so long to obtain his sixth inspection compared to the average FBI agent makes it more likely that the denials of his inspection requests were retaliatory. However, under FRE 403, the Court must determine whether the probative value of such evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403. Defendants object to the introduction of such evidence on the grounds that it will enable Youssef to rely in part on the timing of the first four inspections, which are not at issue in Youssef's remaining retaliation claim, and will require Defendants to introduce rebuttal evidence that would confuse the issues, mislead the jury, and waste time.

In order to assess each side of the FRE 403 balancing test, the Court asked the parties for more specific proffers. Plaintiff indicated Youssef would testify about the experience of five individuals who became inspection certified in relatively short periods of time: Art Cummings, Todd Doss, Jerry Garcia, Mike Harpster, and Bill O'Leary. *See* Tr. at 27-33. According to Plaintiff's proffer, Mr. Cummings was a GS-14 employee (compared to Youssef, who is a GS-15) who started his inspections at the same time as Youssef and completed his inspections in roughly one year. *Id.* at 27-28. Messrs. Doss, Garcia, Harpster, and O'Leary (also GS-14 employees) were subordinates of Youssef in the Communications Analysis Unit (CAU) who

were permitted to conduct and complete their inspection certifications, whereas Youssef was not. *Id.* at 30-33. Defendants argue that these comparators are irrelevant because (a) they are not true "comparators" in the sense that they are not similarly situated to Youssef and (b) John Lewis was not involved in their inspection certification. *Id.* at 38-39. Plaintiff argues that these comparators' experiences are relevant because they establish a background practice in the FBI with which Lewis was familiar and that his decision must be viewed in that context as deviation from a routine procedure. *Id.* at 42-43. Plaintiff explained, moreover, that with respect to Doss, Garcia, Harpster, and O'Leary, their inspections were approved by Laurie Bennett without intervention from John Lewis, whereas Youssef's L.A. inspection was approved by Laurie Bennett but overruled by Lewis. *Id.* at 45-47. Thus, Plaintiff wants to argue that Lewis treated Youssef differently than these four other employees who worked in Youssef's unit. *Id.* at 47. Defendants do not object to Plaintiff's questioning Lewis about these four employees. *See id.* at 54-56. Therefore the Court agreed to permit Plaintiff to elicit testimony regarding the "non-intervention" of Lewis in the inspection certification process of Doss, Garcia, Harpster, and O'Leary. *Id.* at 46-47.

In addition to this "non-intervention" evidence, however, Plaintiff plans to elicit testimony indicating that each of these five comparators (Cummings, Doss, Garcia, Harpster, and O'Leary) became inspection certified in one to three years, much faster than Youssef. *See* Tr. at 57-59. At the hearing, the Court expressed concern that Defendants would seek to introduce evidence relating to each of these alleged comparators to distinguish them from Youssef's situation, which would result in a series of mini-trials that could distract and confuse the jury from the central issues in this case. *Id.* at 42-45. Defendants indicated that they would in fact

seek to introduce such evidence to rebut the implication that these comparators were similarly situated to Youssef.  *See id.* at 85-86.

However, the risk of mini-trials could be avoided (or at least minimized) if Plaintiff does not rely on specific comparators but instead focuses on the general "average" time that he believes it takes an agent to become inspection certified.  During the hearing, Plaintiff indicated that both Youssef and Curran could be expected to testify that in their opinion, it takes about one to three years for the average FBI agent to become inspection certified.  Plaintiff further indicated in his [208] Corrected Report Regarding Expert Testimony that Youssef and Curran will testify that inspections are typically completed in eighteen months.  *See* Report at 5-6, 11.  The Court asked Defendants at the hearing how they would present evidence to rebut such testimony, since their position is that there is no "average" time to complete inspections and that the length of time will vary from agent to agent depending on their workload and other factors.  *See* Tr. at 79-80.  Defendants indicated that they would likely ask every FBI agent who is a witness what their experience was and how long it took them to get inspections.  *Id.* at 80.  Defendants also indicated that they may elicit testimony from Patrick Maley, who can provide background testimony about the timeframes for inspections.  *See id.* at 86.  This rebuttal evidence would be much more limited than what would be required to rebut specific examples of the five comparators cited by Plaintiff and would therefore pose a lesser risk of a mini-trial on this issue.

The Court did not make a ruling during the second pretrial hearing regarding the use of comparative evidence at trial.  Having now reviewed the transcript of the hearing and the record as a whole, the Court finds that opinion testimony regarding the "average time" needed for an FBI agent to complete inspections is relevant to Youssef's retaliation claim and is not

"substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FRE 403. In addition, the Court holds that Plaintiff may elicit testimony indicating that John Lewis did not intervene in the inspection requests of Youssef's four subordinates in the CAU. Once this evidence is admitted, the probative value of testimony regarding specific comparators is rather limited because they are merely examples of agents who completed their inspections more quickly than Youssef. Moreover, the probative value of these particular comparators' experience is attenuated at best because they were not in the same position as Youssef and were not directly involved with Lewis. The Court agrees with Defendants that if such evidence were admitted, it would be appropriate to allow Defendants to cross-examine Plaintiff's witnesses regarding these individuals and present other rebuttal evidence as necessary to fully explain how these individuals were or were not similarly situated. Such a full presentation of comparator evidence would take a significant amount of trial time and risk confusing the jury about how these comparators' experience pertains to the sole retaliation claim in their purview. Therefore, the Court finds that the limited probative value of testimony regarding specific comparators' inspection certification timing is substantially outweighed by the danger of confusion of the issues, misleading the jury, and by considerations of undue delay, waste of time, and needless presentation of cumulative evidence.[2]

In conclusion, Plaintiff may elicit testimony indicating that the average time for an FBI

---

[2] Plaintiff must be careful not to elicit too much detailed testimony regarding the inspection certification of Messrs. Doss, Garcia, Harpster, and O'Leary, such as the length of time it took for them to become inspection certified. The scope of any testimony should be limited to the fact that Lewis chose to intervene in Youssef's inspection request but declined to do so for these other individuals.

agent to become inspection certified was approximately one to three years (or whatever time their testimony indicates), and Defendants may rebut this testimony as appropriate. The Court finds that this evidence will be relevant to the jury in assessing the credibility of Lewis's explanation that he was concerned about Youssef obtaining his final inspection. Plaintiff may also elicit testimony indicating that Lewis did not intervene in the inspection requests of Youssef's subordinates (Doss, Garcia, Harpster, and O'Leary), but Plaintiff may not elicit detailed testimony regarding the amount of time that it took specific individuals (other than Youssef) to become inspection certified. Plaintiff also may not argue that the length of time required to complete his first four inspections is evidence of discrimination by Defendants, as those claims have been dismissed as conceded and for failure to establish a *prima facie* case of retaliation.

   D.   *Evidence Relating to Youssef's Reputation*

Defendants seek to preclude Youssef from presenting evidence that he had a good reputation during the early part of his FBI career, prior to the events at issue in this lawsuit. Defendants argue that Youssef's reputation during this time is not in dispute and that testimony regarding Youssef's early FBI career is irrelevant and should be excluded for lack of proper foundation or as improper character evidence. Specifically, Plaintiff indicated at the hearing that he plans to have Youssef testify about his early career and accomplishments and have Curran and Freeh testify about their experience working with Youssef at the FBI prior to their departures in 2000 and 2001 in order to establish a "baseline" reputation. *See* Tr. at 66-68. The Court ruled at the hearing that Youssef should be permitted to testify to a certain extent regarding his service record and commendations. *See id.* at 60-61. Plaintiff also intends to elicit testimony from Freeh and Curran regarding their opinion of Youssef's work ethic, judgment, and leadership in order to

rebut Lewis's contention that Youssef was not sufficiently devoted to his job. *See id.* at 66-68. Plaintiff explained at the hearing that he would not utilize Curran and Freeh to review all of Youssef's performance records but would instead focus on specific examples that were material to the case. *See id.* at 66.

Injury to reputation is compensable under Title VII. *See, e.g.*, *McDonough v. City of Quincy*, 452 F.3d 8, 22 (1st Cir. 2006) (upholding damages award based on reputational injury as a component of emotional distress damages); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) (citing "injury to character and reputation" as a type of nonpecuniary loss compensable under Title VII).  Generally, in proving damage to reputation, a plaintiff must establish the existence of a particular reputation before the incident. *See, e.g.*, *Sykes v. Hengel*, 394 F. Supp. 2d 1062, 1076 n.10 (S.D. Iowa 2005) (finding testimony insufficient to prove harm to reputation where plaintiff failed to show that he had a particular reputation in the community to be damaged).  Defendants cite several precedents from various common law courts for the proposition that a person is presumed to have a good reputation until the contrary is shown. *See* Defs.' Mots. *In Limine* at 6.  These cases largely involve the law of defamation and hold that a plaintiff is relieved of the burden of establishing that he had a good reputation that could be defamed.  However, these cases—which apply state tort law rather than federal statutory law—do not provide a basis for excluding testimony regarding Youssef's "baseline" reputation, which in this case would only be relevant to the assessment of damages and would have no bearing on the determination of liability.  Moreover, it appears that the reputation testimony that would be offered by Curran and Freeh is limited in scope and would not be disputed by Defendants. Therefore, the Court holds that Plaintiff may elicit testimony from Curran and Freeh regarding

Youssef's good reputation in order to establish a baseline against which later harms to Youssef's reputation may be measured. The Court understands that this reputation testimony will be limited to Curran and Freeh's experience working with Youssef within the FBI and the FBI community. *See* Tr. at 72-73.

Plaintiff indicated at the hearing that in addition to providing "baseline" reputation testimony, Curran will provide specific testimony regarding harms to Youssef's reputation that occurred between 2000 and the time period at issue, 2004 to 2005. *See* Tr. at 73-76.[3] Plaintiff indicated that some of this testimony would be expert testimony based on his specialized knowledge of the FBI, which shall be discussed separately below. However, Plaintiff indicated that Curran may also provide fact testimony regarding an incident in which the FBI did not permit Youssef to give a presentation on terrorism to law enforcement officials in New Jersey, where Curran then worked. *See id.* at 70. Curran would testify that he specifically requested that Youssef be permitted to speak as an expert in counterterrorism and that the FBI sent Art Cummings instead, whom Curran viewed as an inferior expert. *Id.* at 74-75. Curran would then render an opinion regarding the reputational damage caused by the FBI in not allowing Youssef to speak. *Id.* at 74-76. However, Plaintiff acknowledged during the hearing that Curran lacks personal knowledge about the reasons that the FBI sent Cummings instead of Youssef and that much of what Curran learned about the incident came from speaking directly with Youssef. *See id.* at 74-76, 102-04. Defendants also pointed out that it was Gary Bald, not John Lewis, who made the decision to send Cummings rather than Youssef to New Jersey. *See id.* at 107-08. According to Plaintiff's allegations in the First and Second Amended Complaints, Youssef was

---

[3] Plaintiff indicated that Freeh will only give "baseline" testimony. *See* Tr. at 78.

denied permission to go to New Jersey in April 2004, before John Lewis even learned about Youssef's protected equal employment opportunity activity.  *See* First Am. Compl. ¶¶ 145-48; Sec. Am. Compl. ¶¶ 239-42.[4]  In addition, any claims Youssef had arising out of the New Jersey incident did not survive summary judgment and are no longer part of this case; Plaintiff conceded that he did not pursue such claims because they did not amount to an adverse employment action. *See* Tr. at 96.  Therefore, Defendants argue that Curran's testimony about the New Jersey incident is irrelevant, and Defendants informed the Court that they would plan to rebut such testimony with testimony from Gary Bald.  *See* Tr. at 107.

The Court did not make a ruling during the second pretrial conference about the admissibility of evidence regarding the New Jersey incident.  However, upon review of the transcript and the record as a whole, the Court finds that the minimal probative value of such evidence is substantially outweighed by a danger of unfair prejudice to Defendants, confusion of the issues, and a waste of time.  Accordingly, the Court shall exclude such evidence pursuant to FRE 403.

The Court also held a discussion on the record with the parties regarding whether Plaintiff has stated a claim for damages based on reputational harm outside and beyond the FBI community.  Plaintiff argues that he should be permitted to produce evidence that his reputation in the greater law enforcement community has been harmed, whereas Defendants argue that the relevant community for purposes of reputational damage is the FBI.  Plaintiff clarified during the

---

[4] Plaintiff's counsel averred during the hearing that the New Jersey incident "occurred in 2005, simultaneously with the denial of inspections." *See* Tr. at 96.  However, the First Amended Complaint, which includes allegations regarding the New Jersey incident, was filed in October 2004.  *See* Docket No. 20.

hearing that Curran may opine that leading up to 2005, Youssef had a good reputation within the greater law enforcement community, based on his continued interactions with Youssef within that broader community after he left the FBI in 2000.  *See* Tr. at 72-73; 99-100.  However, with evidence of the New Jersey incident excluded, it is not clear what evidence Plaintiff can actually offer to show that Youssef's reputation was harmed in the greater law enforcement community. During the hearing, Plaintiff's proffer of Curran's testimony regarding reputational harm outside the FBI was connected to the discussion of the New Jersey incident.[5]  *See* Tr. at 95-108. Moreover, in the Report Regarding Expert Testimony, Plaintiff describes Curran's expert testimony as stating that "[t]he inability to complete inspections and obtain certification would stall an employee's ability to obtain promotions within the FBI and harm an employee's career and reputation."  *See* Report at 7.  There is no indication from that report or from the other pleadings in the record that Plaintiff will be arguing that the denial of inspection certification harmed Youssef's reputation beyond the FBI community.  In his Second Amended Complaint, Plaintiff alleges that certain information provided to John Pikus and others, namely that Youssef would not be participating in the Los Angeles inspection because of unspecified performance problems, "was entirely false and seriously harmed the reputation of Mr. Youssef."  *See* Sec. Am. Compl. ¶¶ 260-61.  Elsewhere, Plaintiff claimed that exclusion from various FBI lists "denied him several opportunities for advancement within the FBI, *has harmed his professional reputation and standing as an FBI Agent*, and has interfered with his ability to qualify for

---

[5] Specifically, Youssef's counsel stated at the hearing that the incident with Lewis and the denial of inspection certification became known outside the FBI because Youssef had to explain why he was not being given permission to speak in New Jersey.  *See* Tr. at 103-04.  That explanation, however, relies on the mistaken assumption that the New Jersey incident was contemporaneous with Lewis's involvement with Youssef's requests for inspections.

promotions, obtain awards and perform the work for which he is hired to perform." *See id.* ¶ 270 (emphasis added). Plaintiff also alleged that Defendants' discriminatory actions "directly interfered with his ability to build his resume in a manner which would ensure his promotion to SES." *See id.* ¶ 272. All of this indicates a focus on the FBI community rather than the greater law enforcement community. Therefore, the Court expects that the testimony at trial will be limited to showing how the denial of inspection certification harmed Youssef's reputation within the FBI community.

In conclusion, Plaintiff may elicit testimony from Curran and Freeh regarding Youssef's good reputation in order to establish a baseline against which later harms to Youssef's reputation may be measured. This reputation testimony should be limited to Curran and Freeh's experience working with Youssef within the FBI and the FBI community. Plaintiff may not elicit testimony pertaining to the New Jersey incident.

### E. Expert Testimony Regarding Harm to Reputation Resulting from Denial of Inspection Certification by Youssef, Curran, and Freeh

The Court held a discussion during the second pretrial hearing with the parties regarding the proposed expert testimony of Youssef, Curran, and Freeh. These witnesses were designated as expert witnesses by Plaintiff pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), but because they were not "retained or specially employed to provide expert testimony in the case," no expert report was provided according to Rule 26(a)(2)(B).[6] In their motions *in limine*,

---

[6] These three witnesses were designated as possible expert witnesses in a March 8, 2005, Supplement to Initial Disclosures and Disclosure of Expert Testimony as well as in the Joint Pretrial Statement. *See* Defs.' Mots. *In Limine*, Ex. 3; [171] Joint Pretrial Stmt. at 15-18. The Court finds that this disclosure was sufficient notice to Defendants that expert testimony would be elicited from these witnesses.

Defendants object to expert testimony offered by these witnesses as lacking a reliable foundation and otherwise failing to satisfy the requirements of FRE 702.[7] The Court asked Plaintiff at the hearing for oral proffers regarding the expert testimony; however, the Court ultimately ordered that Plaintiff provide a written report akin to the requirements of Rule 26(a)(2)(B) for any expert testimony that would be elicited from Youssef, Curran, or Freeh.  Plaintiff has since filed a Report Regarding Expert Testimony that describes the specialized knowledge of those witnesses and the basis for any opinion testimony that would be offered at trial.  That report describes proposed expert testimony by both Curran and Youssef regarding the FBI inspection certification process and Youssef's potential for promotions given his qualifications.[8]

During the hearing and in their motions *in limine* (filed before Plaintiff's latest report), Defendants raised several objections to possible expert testimony by Youssef and Curran.  Their first objection—that Plaintiff's proffer is insufficient to establish the admissibility of expert testimony under FRE 702—is overcome by the filing of the Report Regarding Expert Testimony, which provides detailed proffers.  Defendants' second objection is that the proposed opinion

---

[7] Defendants clarified during the hearing that they do not presently challenge the admissibility of any opinion testimony offered under FRE 701 but reserve their right to make specific objections at trial.  *See* Tr. at 116-17.

[8] Plaintiff states that the report also describes opinion testimony that may be in the "gray area between expert and lay opinions."  *See* [208] Report at 2.  Plaintiff asserts that any opinion testimony by Freeh will fall squarely within the rubric of lay opinion testimony under FRE 701.  The Court notes that the primary distinction between lay opinion testimony under FRE 701 and expert opinion testimony under FRE 702 is that lay opinions must be based on the witness's personal knowledge (described in the text of the rule as "the perception of the witness"), whereas expert opinions are based on the witness's application of his own specialized knowledge to the facts of the particular case.  *See* FRE 701, advisory comm. note (2000 Amendments) ("[Rule 701] testimony is not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge.")

testimony should be excluded because the jury does not need an expert opinion to explain how a delay in inspection certification harmed Youssef's reputation. According to Defendants, expert testimony must be reserved for information that is "not within the common knowledge of the average juror." *United States v. Clarke*, 24 F.3d 257, 268 (D.C. Cir. 1994). However, the standard in FRE 702 is "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Here, the proposed expert testimony will help the jury understand the significance of inspection certification for career advancement in the FBI, which is not a topic that is within the common knowledge of the average juror. Therefore, expert opinion testimony on this topic will assist the jury to understand the evidence and determine a fact in issue.

      Defendants' third objection is that Youssef and Curran lack the necessary expertise to offer an informed opinion about the topics about which they will opine. Defendants note that Curran left the FBI in 2000 and never served in the FBI's Counterterrorism Division (CTD) and therefore argues that he is not qualified to give opinions about events that occurred in 2004-05 with Youssef in the CTD. During the hearing, Plaintiff argued that the relevant FBI policies and procedures regarding inspection certification remain unchanged from the time that Curran was at the FBI, while Defendants represented that some substantial changes were made around 2001 or 2002 in response to a lawsuit. *See* Tr. at 128-30. It may be that the policies have changed to such a significant extent that the changes render Curran's testimony unreliable or unhelpful, or it may be that the changes are such that they go to the weight rather than the admissibility of the testimony. The Court notes that Defendants have indicated that they will present testimony from Patrick Maley and Valerie Parlave to rebut Plaintiff's evidence that the denial of inspection

certification would affect an FBI agent's reputation.  *See* Tr. at 105.  The Court did not make a ruling on this issue during the hearing, and based on the present record, the Court cannot determine whether there are defects in the witnesses' qualifications that render their expert opinions unreliable and therefore inadmissible under FRE 702.  Therefore, the Court shall reserve further discussion of this issue until the third pretrial hearing, which has been scheduled for May 26, 2010.

      F.     *Expert Testimony by Dr. Sharf*

Defendants' last motion *in limine* was to exclude expert testimony by Dr. Sharf regarding "the materiality of defendant's actions" on Youssef's career and "how other FBI employees would be deterred from engaging [in] protected activity that could result in such adverse action against them."  *See* Defs.' Mots. *In Limine* at 18.  This Court previously ruled that Dr. Sharf may testify regarding the findings in his supplemental expert report, limiting his testimony to the adverse effect of the denial of inspection certification on Youssef's career prospects without getting into any specific promotions that he might have received.  *See* Feb. 3, 2010, Order at 10.  Defendants maintain that Dr. Sharf's expert report contains no support for testimony regarding the deterrent effect of the FBI's actions on other FBI employees.  During the hearing, the Court asked Plaintiff to identify where in Dr. Sharf's report he gave an opinion about the deterrent effect on FBI employees from a denial of an inspection.  Plaintiff identified a passage in which Dr. Sharf described FBI management's control over the last inspection as effectively being control over an agent's ability to advance to various management positions, i.e., the "gatekeeping" role played by management.  *See* Tr. at 139-40.  However, the Court ruled at the hearing that this part of the report is not enough to allow Dr. Sharf to testify that other FBI

employees would be deterred from engaging in protected activity if an inspection request was denied.  *See* Tr. at 142-43.

Therefore, Dr. Sharf may not testify that a denial of inspection certification would have a deterrent effect on other FBI employees.

* * *

Based on the parties' filings and the discussion above, it appears that the parties' only outstanding objections with respect to witnesses are Defendants' objections to the expert testimony of Curran and Youssef, which shall be discussed at the continued pretrial conference on May 26, 2010, at 9:00 A.M.  The Court shall also discuss the parties' objections to exhibits and deposition designations during that hearing.

**SO ORDERED.**

                                                                                      */s/*
                                                  COLLEEN KOLLAR-KOTELLY
                                                  United States District Judge