UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM YOUSSEF,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, *et al.*,<br><br>    Defendants. | Civil Action No. 03-1551 (CKK) |

**THIRD PRETRIAL ORDER**
(June 7, 2010)

On May 26, 2010, the Court held a third pretrial conference in the above-captioned matter. The Court held a discussion on the record regarding the parties' outstanding objections to exhibits, witnesses, and deposition designations and set a date for trial. This Order is intended to review and summarize those discussions and the rulings made on the record, and they are hereby incorporated as part of this Order.

   *A.   Expert Testimony by Curran and Youssef*

As the Court noted in its [210] Second Pretrial Order, Defendants have outstanding objections to the proffered expert testimony of Ed Curran and Bassem Youssef. After a brief discussion with the parties regarding the proffered testimony and Defendants' objections thereto, the Court determined that it would be most expeditious to rule on Defendants' objections during a pretrial *Daubert* hearing. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). This will enable Defendants to voir dire the witnesses regarding their qualifications and allow the Court to rule on objections before the jury is selected. The Court shall schedule these hearings for two days prior to the start of the trial.

B.     *Deposition Designations*

The parties indicated that there was one outstanding objection to the deposition designation for John Pikus and an outstanding objection to the deposition designation for Robert Mueller.  With respect to the deposition testimony of John Pikus at page 126 of his deposition, the Court ruled that the testimony was not hearsay because it was not being offered for the truth of the matter asserted (that Youssef was having performance issues) but was being admitted to show the statements that were being made about Youssef and the harm to his reputation.  The Court instructed the parties to come to an agreement about a limiting instruction that may be given to the jury during the reading of the deposition transcript.

With respect to Mueller's testimony, the Court had a discussion on the record regarding Plaintiff's objection to Mueller's testimony on pages 95 and 96 of his deposition transcript. Plaintiff objected to part of Mueller's testimony regarding inspection certification and to part of Mueller's testimony that he was unaware of Youssef's attempts to obtain his inspection certification.  The Court overruled Plaintiff's objections and ruled that the testimony may be admitted.  However, the Court asked Defendants to review the designation so that the relevance of Mueller's testimony regarding his lack of awareness of Youssef's attempts at inspection certification (which goes to rebut Youssef's claim that his reputation was harmed throughout the FBI by the denials of inspections) is clarified for the jury.

The Court also had a discussion with the parties regarding the availability of John Lewis as a witness in Plaintiff's case-in-chief.  Although Defendants indicated that they would make Lewis available to testify in court during Plaintiff's case, Plaintiff's counsel informed the Court that they preferred to rely on Lewis's deposition testimony and not call Lewis as a live witness.

Plaintiff has withdrawn the deposition designations of Lewis for which the FBI filed objections. *See* [211] Pl.'s (Second) Notice of Withdrawal of Dep. Designations. Therefore, there should be no remaining disputes regarding the deposition designations for Lewis that will be used by Plaintiff in his case-in-chief.

    C.    *Objections to Exhibits*

The Court held a detailed discussion regarding the parties' objections to exhibits. The Court shall not repeat the full discussion held on the record here. However, the Court notes that Plaintiff agreed to withdraw Exhibits 103, 104, 107, and 138. Plaintiff also agreed to remove documents relating to periods after 2005 from Exhibit 100. The Court ruled that Exhibit 105 should be excluded as hearsay and that Exhibits 115, 116, 117—all of which pertain to the expert testimony of Dr. James Sharf—should not be admitted, unless they are needed to impeach Dr. Sharf's testimony. The Court held a detailed discussion regarding Exhibit 106, which consists of evaluations of Youssef's performance on inspections; specifically the two inspections completed in November 2004 and February 2007. The purpose of these exhibits is to show that Youssef performed well on his inspections, a fact that Defendants apparently do not dispute. The parties agreed to work on a stipulation that would obviate the need for Exhibit 106, but this issue may need to be revisited if the parties cannot agree on language for a stipulation. Both parties agreed to withdraw their objections to exhibits that consist of parts of the FBI's Manual of Administrative Operations and Procedures (MAOP).

Defendants agreed to withdraw Exhibits 353, 407, and 412, and Defendants indicated that Exhibits 361-63 shall be reserved for the equitable relief phase of the trial, if necessary. With respect to Exhibit 347, which is a document from 2008 that provides background information

about the Communications Analysis Unit, the Court ruled that it could be admitted so long as witnesses (such as Bennett, Lewis, and Rogers) provide a foundation that the document reflects policies or conditions during the relevant time period, i.e., 2004-05.  The Court also held a discussion regarding Exhibit 354, which relates to inspections records that were not produced by Defendants during fact discovery.  The Court therefore ruled that Plaintiffs shall be permitted to depose Patrick Maley regarding Exhibit 354.  The Court also had a detailed discussion regarding Exhibits 356, 357, and 358, which are leave records that were not produced by Defendants during discovery.  The parties have a joint stipulated exhibit that addresses Youssef's time and attendance records, and therefore there should be no need to introduce the underlying records during Defendants' case.  If during the course of the trial a need arises to introduce these specific records, the Court shall revisit the admissibility of Exhibits 356-58.

The Court also discussed Defendants' rebuttal exhibits.  However, the Court did not make definitive rulings regarding the admissibility of these exhibits because it will not be known until trial whether and under what circumstances the exhibits will be introduced.

> D. *Objections to Witnesses*

During the hearing, Defendants indicated that they would like to have Glenn Rogers testify about his tenure as assistant section chief during the period that Youssef made requests to go out on inspections.  Defendants previously told the Court that Glenn Rogers's testimony would be limited to the subject of Youssef's time and attendance records, and the Court previously ruled that Rogers could testify in that limited capacity.  Defendants did not list Rogers as a witness until after the close of fact discovery, and Plaintiff relied on this in deciding not to depose Rogers.  Nevertheless, Defendants now plan to have Rogers offer substantive testimony

beyond what was originally described.  Because Rogers's testimony is relevant to critical issues in the case, the Court shall not prohibit Defendants from calling him as a witness.  However, the Court ruled that Plaintiff shall be permitted to depose Rogers prior to trial at Defendants' expense.

Plaintiff indicated that he had outstanding objections to three of Defendants' rebuttal witnesses: Mary Deborah Doran, Michael Fowler, and Don Robinson.  Defendants indicated that *either* Fowler *or* Robinson, but not both, would testify solely for the purpose of rebutting claims by Youssef that there were no problems within CAU relating to Youssef's absence.  The Court had a discussion regarding the scope of the proposed testimony, and it appears to the Court that the testimony of Fowler or Robinson does not clearly fall under the category of "rebuttal" testimony and that it goes to a central issue in the case.  Because Defendants did not disclose Fowler and Robinson in their early disclosures, the Court ordered that Plaintiff be permitted to depose either Fowler or Robinson (whichever witness Defendants choose to have testify) before trial.  With respect to Ms. Doran, her testimony would be limited to rebutting testimony by Youssef about his performance at DocEx—an issue the Court has previously ruled should not come up at trial except in summary fashion.  Therefore, there should be no need for Defendants to call Ms. Doran.

   E. *Trial Schedule*

The parties agreed that the additional depositions ordered by the Court could be completed by August 1, 2010, and the Court therefore orders that all discovery be completed by that date, including an exchange of demonstrative exhibits.  The Court set a trial date of September 14, 2010.  The Court shall hold a *Daubert* hearing with respect to the proposed expert

testimony of Curran and Youssef beginning September 10, 2010, and continuing on September 13, 2010, if necessary. The Court also scheduled pretrial status hearings for August 27, 2010, at 9:30 A.M., and September 8, 2010, at 9:30 A.M. During these final status hearings, the Court shall discuss trial procedures, voir dire, and the parties' proposed jury instructions.

**SO ORDERED.**

                                                                                                   */s/*
                                                                                              COLLEEN KOLLAR-KOTELLY
                                                                                              United States District Judge