## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM YOUSSEF,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, *et al.*,<br><br>    Defendants. | Civil Action No. 03-1551 (CKK) |

**FOURTH PRETRIAL ORDER**
(August 27, 2010)

On August 27, 2010, the Court held a fourth pretrial conference in the above-captioned matter. The Court held a discussion on the record regarding the parties' outstanding motions *in limine*, objections relating to jury instructions, and other pretrial matters. Since the third pretrial conference on May 26, 2010, Plaintiff filed a [214] Motion *In Limine* and Objection to Defendants' Demonstrative Exhibits 7, 8, and 9, to which Defendants filed an opposition, Plaintiff filed a reply, and Defendants filed a surreply. Defendants filed their [222] Fourth Motion *In Limine* Relating to Comparators (filed under seal), to which Plaintiff filed an opposition, and Defendants filed a reply. Defendants also filed their [215] Objections to Plaintiff's Demonstrative Exhibits and a [216] Pre-Hearing Memorandum Supplementing Defendants' Motion *In Limine* to Exclude Expert Testimony by Edward Curran and Bassem Youssef. This Order is intended to review and summarize the discussions and the rulings made on the record during the fourth pretrial conference, and they are hereby incorporated as part of this Order.

>   A.  Plaintiff's Motion in Limine *Regarding Steps Youssef Took to Get Promoted After Becoming Inspection Certified*

Plaintiff seeks to exclude any evidence pertaining to steps that Youssef might or might not have undertaken to get promotions after receiving his final inspection certification in February 2007.  *See* Pl.'s [214] Motion *In Limine*.  Defendants argue that they should be entitled to present this evidence because it is relevant to one of the elements of Plaintiff's retaliation claim, i.e., whether the denial of inspection certification is a materially adverse action.  Specifically, Defendants proffer the following evidence: (1) testimony from Valerie Parlave, Section Chief of the FBI's Executive Development and Selection Program until July 2010, that inspection certification is only a requirement for an Assistant Special Agent-in-Charge (ASAC) position and that a substantial minority of agents promoted to the Senior Executive Service (SES) have not served as ASACs and have not been inspection certified; and (2) testimony from other FBI agents that inspection certification is not necessary unless an agent seeks to become an ASAC and that the denial of an employee's request to go out on inspections or deferral of an agent's inspection certification neither derails an agent's career nor affects his reputation.  *See* Defs.' Opp'n to Pl.'s Mot. *in Limine* at 3-5.  None of this testimony specifically relates to Plaintiff's efforts to get promotions after he became inspection certified and therefore is permissible.

However, Defendants also indicated that they would like to ask Youssef about his failure to complete his "knowledge, skills, and abilities" (KSAs) requirement for advancement to an ASAC position even after he became inspection certified.  *See id.* at 6.  During the hearing, the parties agreed that Defendants may ask Youssef about his KSAs *prior* to the time he became

inspection certified because this relates to the adverse action element of the retaliation claim. Defendants argue that Youssef's *post*-certification conduct is relevant to show that Plaintiff has no compensatory damages as a result of any delay in inspection certification.  However, Plaintiff explained that he is only claiming compensatory damages during the period he was denied inspection certification, not for the period after he became inspection certified (except to the extent there may be residual emotional or psychological harms that follow).  Therefore, evidence relating to Youssef's post-certification activity in and after 2007 is not relevant to the question of compensatory damages and should therefore be excluded.

> This ruling is consistent with the Court's prior order of February 3, 2010.  In that Order, the Court recognized that some of the testimony of Plaintiff's experts, Drs. Sharf and Byman, might address the issue of what effect the denial of inspection certification would have on Youssef's career, which would be relevant to whether the denial constituted a materially adverse action, an element of Plaintiff's retaliation claim.  *See* Order (Feb. 3, 2010) at 9-10.  The Court concluded, however, that Dr. Byman did not address this issue in his expert report, and Dr. Sharf only addressed this issue in a limited manner in his supplemental expert report.  Therefore, the Court excluded the testimony of Dr. Byman and limited Dr. Sharf's testimony to what is contained in his supplemental expert report regarding the significance of inspection certification. *Id.* at 10.  Dr. Sharf may testify generally about his opinion about the role of inspection certification in the FBI.  There should be no need, however, for Dr. Sharf to specifically discuss Youssef's specific promotion opportunities.

> Plaintiff has also raised the issue of Ms. Parlave's testimony during the jury trial. Plaintiff claims that he was not on notice that Ms. Parlave would testimony during the jury trial,

noting that she was designated in the Joint Pretrial Statement as a witness whose testimony was relevant to the issue of equitable relief. However, the Court is not persuaded that Plaintiff was not on notice that Ms. Parlave would testify as a witness during the jury phase on the issue of inspection certification. First, the Court explicitly noted in its Order on Bifurcation that it was unclear whether Ms. Parlave's testimony would be relevant only to claims for injunctive relief. *See* Order on Bifurcation (Jan. 21, 2010) at 6. Second, Defendants' counsel stated at the second pretrial conference that Ms. Parlave would give testimony to rebut Plaintiff's contention that the denial of inspection certification would affect an FBI agent's reputation, as the Court noted in its Second Pretrial Order. *See* Second Pretrial Order (May 21, 2010) at 15-16. Therefore, Plaintiff has been on notice for some time that Defendants would use Ms. Parlave's testimony during the jury phase of the trial. Plaintiff also seeks to prevent Ms. Parlave from offering expert opinion testimony regarding the issue of inspection certification. Defendants have designated Ms. Parlave as a fact witness, and therefore the Court agrees with Plaintiff that Ms. Parlave's testimony must be limited to facts or lay opinions offered under Federal Rule of Evidence 701. Plaintiff also objects to Ms. Parlave's testimony to the extent it relates to SES Career Board meetings for which her participation was not disclosed during discovery. To the extent that Ms. Parlave's involvement was not disclosed during discovery, she may not testify about those meetings. The Court expects the parties to resolve any disputes relating to this discovery matter prior to trial so that objections are not made during her testimony. Consistent with the Court's other rulings, Ms. Parlave's testimony should not address specific comparators to Youssef regarding inspection certification.

In summary, the Court shall exclude evidence relating to Youssef's employment activity

after he became inspection certified in 2007.

  B. *Objections to Defendants' Demonstrative Exhibits 7, 8, and 9*

Plaintiff also sought to exclude Defendants' Demonstrative Exhibits 7, 8, and 9.  During the hearing, the Court stated its preference to allow Defendants to use these exhibits while the sponsoring witness testifies but to exclude their use during opening statements.  The parties agreed that this is appropriate, and accordingly Plaintiff dropped its objection to these exhibits.

  C. *Defendants' Objections to Plaintiff's Demonstrative Exhibits*

In their written motion, Defendants objected to Plaintiff's Demonstrative Exhibits 3, 4, and 5, which consist of excerpts from deposition testimony.  During the hearing, Defendants clarified that their objection is to showing the transcript of deposition testimony to the jury while that testimony is read into the record.  Plaintiff indicated that he does not plan to show the jury the transcript while the testimony is being read, and therefore Defendants' objection is moot. Plaintiff shall be able to utilize excerpts from the depositions in the same manner as other live testimony at trial.

Defendants also objected to Demonstrative Exhibit 2.  During the hearing, Plaintiff agreed to withdraw this exhibit.

  D. *Defendants' Fourth Motion* in Limine *Relating to Comparators*

Defendants seek to prevent Plaintiff from presenting evidence relating to certain other FBI employees who were allowed opportunities to go on inspections and/or become inspection certified during or around the time that Youssef was denied the opportunity to conduct inspections.  Specifically, Defendants seek to exclude any alleged comparator evidence relating to Glenn Rogers, William O'Leary, Christopher Todd Doss, Geronimo Garcia, and Michael

Harpster. However, the Court has already ruled on this issue. In its Second Pretrial Order, the Court ruled that Plaintiff may elicit testimony indicating that the average time for an agent to become inspection certified was approximately one to three years and that John Lewis did not intervene in the inspection requests of Youssef's subordinates (Doss, Garcia, Harpster, and O'Leary), but Plaintiff may not elicit detailed testimony regarding the amount of time that it took specific individuals (other than Youssef) to become inspection certified. *See* Second Pretrial Order (May 21, 2010) at 7-8. The Court declines to change its prior ruling with respect to the use of comparator evidence.

The Court has not previously addressed the issue of Glenn Rogers's experience with inspection certification. During the third pretrial conference, Defendants indicated that they planned to have Glenn Rogers testify about his tenure as assistant section chief during the period that Youssef made requests to go out on inspections. Although Defendants had previously indicated that Rogers's testimony would be limited to the issue of time and attendance records, the Court ruled that Rogers may testify about his experience, provided that Defendants afford Plaintiff an opportunity to depose Rogers before trial, which they did. Now that Rogers is planning to testify about his experience in the unit with inspections, Plaintiff wants to be able to cross-examine Rogers about his own experience in getting approvals to participate in inspections, believing that Rogers's personal experience undercuts his testimony supporting Lewis's decision to deny Youssef inspection opportunities. Specifically, Defendants proffered during the hearing that Rogers would testify that he agreed with Lewis's decision to deny Youssef an inspection opportunity because it was inappropriate for Youssef to leave the unit when he was new to the unit and there was critical work to be done. Plaintiff argued at the hearing that he should be

permitted to ask Rogers questions about his own experience going on inspections while he was (relatively) new to a unit in order to impeach his testimony that Lewis's actions were appropriate. The Court understands that Plaintiff's intent is to show that Rogers's testimony on this issue may be viewed as hypocritical if he had earlier taken advantage of inspection opportunities himself but was suggesting that Youssef should be denied those same opportunities.  Therefore, the Court shall allow Plaintiff to impeach Rogers based on this theory.  Rogers's answers to these questions may or may not serve as impeachment.  Defendants are free to follow up on re-direct examination about whether in Rogers' view, the circumstances of his inspections were materially different than Youssef's.  However, the Court shall limit Plaintiff's questions to impeachment purposes.  Plaintiff shall not be allowed to argue to the jury that Youssef was retaliated against because he was treated differently than Rogers or make any related arguments using Rogers as a comparator to Youssef, or to show a pattern or practice.

In summary, the Court shall exclude testimony relating to comparator evidence but shall allow Plaintiff to impeach Glenn Rogers on cross-examination regarding his prior experience with inspections to the extent it informs his opinion as to the propriety of Youssef's requests to go on inspections.

E.   *Other Issues*

Defendants orally raised two other evidentiary issues which they anticipate may arise during the trial.  First, Defendants anticipate that Plaintiff will attempt to impeach Glenn Rogers by showing that he has a bias against Youssef because of allegedly negative or false statements made by Youssef about Rogers during the OIG investigation.  Defendants seek to rehabilitate Rogers's testimony by inquiring about the nature of the allegedly negative or false statements

made.  The Court previously excluded any evidence relating to the OIG investigation as irrelevant.  However, the Court shall permit the parties to raise the subject of the OIG investigation within the limited context of the impeachment of Glenn Rogers.

Second, Defendants suggested that Plaintiff might attempt to ask Rogers about his opinion regarding Youssef's transfer from the "DocEx" unit to the CAU.  The Court previously ruled that evidence relating to Youssef's transfer should be excluded.  Plaintiff indicated during the hearing that he did not intend to ask any questions about this issue.  Therefore, there should be no issues at trial relating to this issue.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　 /s/
　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　United States District Judge