# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BASSEM YOUSSEF,

      Plaintiff,

      v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

      Defendants.

Civil Action No. 03-1551 (CKK)

## MEMORANDUM OPINION
(February 2, 2011)

Plaintiff Bassem Youssef ("Youssef") brought the above-captioned action alleging that his employer, the Federal Bureau of Investigation ("FBI"), discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The Court granted-in-part and denied-in-part Defendants' motion for summary judgment, *see Youssef v. FBI*, 541 F. Supp. 2d 121 (D.D.C. 2008), and proceeded to try Youssef's remaining claim of retaliation before a jury. Following a nine-day jury trial, the Court entered judgment in favor of Defendants. *See* [247] Judgment. Presently pending before the Court are Plaintiff's [249] Motion for New Trial and to Alter or Amend Judgment[1] and Plaintiff's [251] Motion to Review Costs and Alternative Motion to Stay Adjudication of Costs. Defendants have filed oppositions to these motions, and Youssef has filed replies. For the reasons explained below, the Court shall DENY Youssef's [249] Motion for New Trial and GRANT-IN-PART and DENY-IN-PART

---

[1] Although captioned in the alternative as a motion to alter or amend the Court's judgment, Youssef asks only that the Court grant a new trial pursuant to Rule 59(a) and does not specifically request relief under Rule 59(e). Accordingly, the Court treats Youssef's motion solely as a motion for a new trial.

Youssef's [251] Motion to Review Costs.

## I. BACKGROUND

At the time of the jury trial, Plaintiff Bassem Youssef was employed by the FBI as a Supervisory Special Agent and Unit Chief within the FBI's Counterterrorism Division. Youssef initially filed this action on July 18, 2003 alleging that his supervisors discriminated against him on the basis of his national origin (Egyptian) and retaliated against him for opposing this discrimination. After extensive discovery and briefing, the Court granted-in-part and denied-in-part Defendants' motion for summary judgment, dismissing all of Youssef's claims except a single claim for retaliation. *See Youssef v. FBI*, 541 F. Supp. 2d 121 (D.D.C. 2008). To prevail on his retaliation claim under Title VII, Youssef had to establish (1) that he engaged in protected activity, (2) that he was subjected to a materially adverse action after the protected activity took place, and (3) that there was a causal connection between the protected activity and the materially adverse action. *See id.* at 155.

There was no dispute at trial that Youssef had engaged in protected activity by filing a discrimination complaint in 2002, meeting with Congressman Frank Wolf and FBI Director Robert Mueller in June 2002, leaving work for depositions, and taking the depositions of other FBI employees in late 2004 and early 2005. Youssef claimed at trial that as a result of his engaging in these activities, the FBI denied him permission to participate in inspections of FBI offices. The evidence at trial showed that participation in inspections is a training opportunity that leads to inspection certification, which can be helpful in obtaining future promotions. Youssef claimed he was harmed by a two-year delay in completing his final inspection and obtaining his inspection certification. It was undisputed that Youssef's supervisors had denied

two specific requests for Youssef to go on inspections in January and February 2005, but there was a factual dispute about whether Youssef could have gone on other inspections after that time.

At trial, the FBI denied that Youssef's discrimination claim played any part in the denial of his requests to take time away from work to participate in the inspections. Rather, the FBI claimed that it denied Youssef's requests in January and February 2005 because, since Youssef had transferred to a new position as Unit Chief of the FBI's Communications Analysis Unit on October 30, 2004, he had been absent from the office for a significant period of time. The FBI denied that Youssef was precluded from requesting permission to participate in inspections after February 2005.

The jury returned a special verdict finding that Youssef had not proven by a preponderance of the evidence that the denial of permission to participate in inspections of FBI offices was a materially adverse action. Because of this finding, the jury did not reach the question of whether Youssef had proven that the denials were retaliatory. Accordingly, the Court entered judgment for Defendants and ordered that costs be taxed against Youssef.

Prior to trial, the Court ordered that the trial be bifurcated so that legal issues such as liability and compensatory damages would be decided first by the jury before the Court heard evidence relating to Youssef's request for equitable relief, which the Court would decide in its sole discretion during a remedy phase. *See* [185] Order on Bifurcation (Jan. 21, 2010). The Court bifurcated the trial to avoid the unnecessary presentation to the jury of complicated expert testimony relevant solely to Youssef's request for equitable relief such as back pay and front pay, which was based on theories of possible promotions that Youssef did not apply for but might have received in the future had he become inspection certified in January or February 2005. The

3

Court did not exclude evidence pertaining to the role that inspection certification plays in obtaining promotions in the FBI. However, the Court precluded the parties from presenting evidence about specific promotional opportunities that Youssef claimed he should have received once he obtained his inspection certification.

## II. LEGAL STANDARD

### A.    Motion for a New Trial Under Rule 59

Federal Rule of Civil Procedure 59(a) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The disposition of such a motion is committed to the sound discretion of the trial court. *Martinez v. District of Columbia*, 503 F. Supp. 2d 353, 354 (D.D.C. 2007). "A trial judge should grant a new trial if the verdict is against the weight of the evidence, damages are excessive, for other reasons the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." *Nyman v. FDIC*, 967 F. Supp. 1562, 1569 (D.D.C. 1997). "The jury verdict stands unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict." *Czekalski v. LaHood*, 589 F.3d 449, 456 (D.C. Cir. 2009) (citation and quotation marks omitted). The court's discretion should be exercised "sparingly and cautiously," and the court should grant a new trial only where the court is convinced that the jury verdict was a "seriously erroneous result" and where denial of the motion will result in a "clear miscarriage of justice." *Martinez*, 503 F. Supp. 2d at 354 (citations and quotation marks omitted). "Generally, a new trial may only be granted when a manifest error of law or fact is presented." *In re Lorazepam & Chlorazepate Antitrust*

*Litig.*, 467 F. Supp. 2d 74, 87 (D.D.C. 2006).

      *B.*     *Motion to Review Bill of Costs*

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Though the allowance, disallowance, or appointment of costs is in the sound discretion of the district court, 'the general proposition is that the prevailing party is entitled to costs in the district court as of course.'" *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985) (quoting 6 J. Moore, *Moore's Federal Practice* § 54.70[5] (2d ed. 1985)). "Because costs are usually assessed against the losing party, liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). Accordingly, "a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so," and "federal courts have placed on the unsuccessful parties some burden of showing circumstances sufficient to overcome the presumption favoring the prevailing party." *Baez v. U.S. Dep't of Justice*, 684 F.2d 999, 1004 (D.C. Cir. 1982).

## III.  DISCUSSION

      *A.*     *Motion for a New Trial*

Youssef contends that the Court should order a new trial because the jury's verdict—finding that the FBI took no materially adverse action against him—is against the weight of the evidence. Furthermore, Youssef argues that this Court's pretrial rulings prevented him from establishing that the FBI's actions were materially adverse to him. The Court shall address each of these arguments.

1.    <u>The Weight of the Evidence</u>

Youssef contends that the weight of the evidence at trial clearly demonstrated that the FBI took a materially adverse action against him. Specifically, Youssef argues that the uncontested evidence showed that inspection certification was a requirement for promotion to an Assistant Special Agent in Charge ("ASAC") position, that Youssef was interested in an ASAC position, and that the FBI denied Youssef the opportunity to go on his final inspection on at least two separate occasions in January and February 2005. In addition, there was testimony by a former FBI director that inspection certification was an expected qualification for employees seeking advancement to a Senior Executive Service ("SES") position. Youssef argues that under the relevant Title VII precedents, a reasonable jury would have had to conclude that the FBI took a materially adverse action against him by blocking his opportunity to receive a promotion.

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). To prevail on a claim for retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citations and quotation marks omitted). Courts have generally found an adverse action where an employee is denied a tangible opportunity to compete for a promotion. *See Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (requiring plaintiff to demonstrate that she was denied "a tangible opportunity to advance her career"); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (holding that the refusal to allow employee to compete for promotion was actionable retaliation).

6

In this case, however, there was substantial evidence in the record at trial suggesting that Youssef was not actually harmed by the denial of his specific requests to go on inspections in January and February 2005 (and that such denials would not have dissuaded a reasonable employee in Youssef's position from engaging in protected activity). First, there was testimony that inspection assignments occur frequently, typically twice a month, suggesting that denial of permission to go on a particular inspection would result in only a minor delay for an employee seeking to become inspection certified. *See* 9/21 PM Tr. at 22, 57, 206; 9/22 PM Tr. at 75, 77-78. In fact, one witness testified that Youssef was offered 19 opportunities to participate in inspections between February 2005 and the time he ultimately became inspection certified two years later in February 2007. *See* 9/22 PM Tr. at 86. Furthermore, the weight of the evidence showed that Youssef was not flatly prohibited from going on a sixth inspection, but rather was told that he needed to provide effective leadership within his unit before taking additional time out of the office to conduct another inspection. *See* 9/21 PM Tr. at 28; 9/22 AM Tr. at 65.

Second, there was evidence that inspection certification was just one of a series of significant prerequisites for an ASAC position, suggesting that delay in obtaining inspection certification, one prerequisite, would not significantly harm an employee's opportunities for promotion to an ASAC position. *See* 9/22 PM Tr. at 27-31; 9/22 AM Tr. at 40; Joint Ex. 36 at 14-15.

Third, there was evidence that Youssef could have required the FBI to let him complete his last inspection within a short time period by submitting an achievement inventory of his Knowledge, Skills, and Abilities ("KSAs"), another prerequisite for an ASAC position, but that Youssef chose not to do this. *See* Joint Ex. 18; 9/22 AM Tr. at 37-39; 9/22 PM Tr. at 31-35; 9/17

AM Tr. at 81. Youssef's supervisor testified that she would have helped him get his last inspection within 90 days if he had submitted his KSAs. *See* 9/22 AM Tr. at 66, 79. In addition, Youssef testified at trial that he *never* submitted his KSAs and *never* applied for an ASAC position—testimony that the jury could have construed as evidence that Youssef had no real interest in obtaining an ASAC position. *See* 9/17 AM Tr. at 81, 83.

Fourth, there was a substantial amount of testimony indicating that inspection certification was not a requirement for promotion to an SES position (except for those positions for which an ASAC position was a prerequisite). *See* 9/22 PM Tr. at 44-48; 9/21 PM Tr. at 104; 9/22 AM Tr. at 96-97. Therefore, the jury could have concluded that inspection certification was only required for promotion to an ASAC position, and, as noted above, the jury could have concluded that Youssef was not actually interested in an ASAC position.

Fifth, there was testimony that denials of requests to attend inspections would not harm an agent's reputation because a denial was usually due to a conflict with work schedules. *See* 9/21 PM Tr. at 104-05; 9/22 AM Tr. at 114; 9/23 AM Tr. at 106.

In light of all this evidence in the record, reasonable jurors could have disagreed about whether the FBI's denial of Youssef's requests to go on inspections amounted to significant rather than trivial harms. *See Burlington*, 548 U.S. at 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms.") The jury could have rationally concluded that obtaining a final inspection to become inspection certified was not a requirement for an SES position and that for an ASAC position, it was merely a formality that could be satisfied quickly after two initial denials. In addition, there was evidence in the record that the FBI planned to arrange for Youssef to go on another inspection some time after his first

8

requests were denied, which the jury could have credited. *See* Joint Ex. 25 at 2. Although not directly relevant to the material adversity inquiry, the jury could also have credited the evidence in the record supporting the FBI's proffered reason for denying Youssef's requests to go on inspections, i.e., his prolonged absences from his new duties as Unit Chief.

Youssef also argues that the evidence clearly showed that inspections were valuable training opportunities for agents, and therefore the jury should have concluded that the denial of a training opportunity was materially adverse to him. As noted above, however, the jury could have reasonably concluded from the evidence that Youssef was at most temporarily denied that opportunity. Moreover, the jury could have reasonably concluded that because Youssef had already participated in five prior inspections, the training value of his sixth inspection was not significant. Although denial of a training opportunity *may* constitute a materially adverse action, there is no per se rule requiring a jury to conclude that such a denial is adverse, and the weight of the evidence does not compel such a conclusion in this case.

Youssef argues that a retaliatory action must be materially adverse when it blocks an employee from receiving a potential promotion. It is true that employment decisions such as hiring, firing, failing to promote, and reassignment with significantly different responsibilities are "conclusively presumed to be adverse employment actions, even if any alleged harm is speculative." *Douglas v. Donovan*, 559 F.3d 549, 552-53 (D.C. Cir. 2009) (discussing stricter "adverse employment action" standard applied in discrimination cases under Title VII). But the weight of the evidence at trial did not clearly establish that the FBI "blocked" Youssef from any promotion. Although it is undisputed that Youssef was denied permission on two occasions to go on his final inspection, the jury could have reasonably concluded that this was only temporary

and that it was not the sort of retaliatory action that would deter a reasonable employee from engaging in protected activity. Accordingly, the Court finds that the jury's verdict was not against the weight of the evidence, and therefore the Court declines to order a new trial on that basis.

### 2. The Court's Pretrial Rulings

Youssef next argues that this Court's pretrial rulings prevented him from presenting evidence that would have demonstrated to the jury how the denials of inspection opportunities harmed his career opportunities at the FBI. Specifically, Youssef argues that the Court's bifurcation order and subsequent rulings precluded him from presenting evidence of specific promotions or pay raises he would have received had he become inspection certified. To be clear, this is not evidence about promotions that Youssef applied for and did not receive; rather, it is evidence about promotional opportunities that Youssef claims he would have applied for and obtained after he became inspection certified. Youssef complains that the Court precluded his designated expert, Dr. James Sharf, from testifying about the deterrent effect that the denial of inspection certification would have on other employees. *See* Pl.'s Br. at 7. As explained below, however, that charge is unfounded because the Court did not preclude Dr. Sharf from testifying about the issue of inspection certification.

The Court's pretrial rulings were aimed at excluding from the jury trial matters pertaining solely to equitable relief, such as Youssef's remedial demands for promotions he might have received, back pay, and front pay. In its pretrial Order on Bifurcation, the Court expressed its preliminary view that "testimony regarding the specific dates and positions to which Youssef claims he would have been promoted should be reserved for the remedy phase" but recognized

that "some general testimony regarding the effect of inspection certification on Youssef's career path may be relevant to other compensatory damages and may be heard by the jury." *See* [185] Order on Bifurcation (Jan. 21, 2010) at 6. Following the first pretrial hearing on January 29, 2010, the Court ruled that Youssef's expert witnesses could provide testimony regarding inspection certification and its effect on promotions and career advancement as long as that subject was discussed in their expert reports. *See* [188] Order (Feb. 3, 2010) at 9-10. The Court then found that only one of Youssef's experts, Dr. Sharf, had raised this issue in any of his reports. As the parties explained during the first pretrial hearing, Dr. Sharf made only a conclusory statement regarding the role of inspection certification in FBI promotions in his initial report, and he was unable to clarify or explain that statement any further at his deposition. *See id.* at 10 (citing 1/19/10 Hr'g Tr. at 77-84). Dr. Sharf later filed a supplemental expert report that did address the subject of inspection certification, and the Court ruled that Dr. Sharf would be permitted to testify about what was contained in that supplemental report. *Id.* However, the Court ruled that he could not testify about any specific promotions that Youssef might have earned because Dr. Sharf did not explain in his report the nexus between inspection certification and any potential promotions. *See id.* The Court reiterated this ruling in its Fourth Pretrial Order, stating again that Dr. Sharf could testify generally about his opinion on the role of inspection certification in the FBI as it relates to career advancement but could not address Youssef's specific promotion opportunities. *See* Fourth Pretrial Order (Aug. 27, 2010) at 3.

Ultimately, Youssef did not call Dr. Sharf to testify at trial. Accordingly, Youssef has waived any objection he has with respect to testimony that Dr. Sharf would have provided about the role of inspection certification in career advancement at the FBI. In any event, it appears that

much of the evidence cited by Dr. Sharf in his supplemental expert report—statements by former

FBI Director Robert Mueller and excerpts from FBI policy manuals—was presented by other

witnesses at trial.  *See* [172] Defs.' Mots. *in Limine*, Ex. 4 (Suppl. Expert Report of James C.

Sharf, PhD).  The other opinions expressed by Dr. Sharf in his expert reports did not specifically

relate to the issue of inspection certification; rather, they related to Youssef's qualifications for

counterterrorism positions and what Dr. Sharf perceived to be the FBI's institutional biases

against Youssef's expertise.  *See id.*, Ex. 5 (Report of James C. Sharf, PhD) at 14.  Similarly, Dr.

Daniel Byman's expert report addressed Youssef's qualifications in the field of counterterrorism

and was not directly relevant to the issue of inspection certification.

There can be no doubt that the jury understood that promotion to either an ASAC or SES

position would have been a meaningful step in Youssef's career.  This was a central theme of

Youssef's case at trial.  There was significant testimony and evidence presented about the

hierarchy of positions within FBI management and its policies regarding advancement, and

Defendants never argued or disputed that an ASAC or SES position would not have been

substantial promotion for Youssef.  The jury did not need to hear evidence relating to the specific

ASAC or SES vacancies that Youssef might have filled had he applied for them after becoming

inspection certified in order to appreciate the significance of inspection certification to the

promotion process.  Such specific evidence as to vacancies would be relevant only to issues of

equitable relief and damages once the jury had determined that the denials of inspection

certification were retaliatory.  The impact of such evidence on the jury's determination of the

adverse action element would have been purely cumulative.  Moreover, the presentation of

substantial expert testimony regarding Youssef's qualifications for promotions to positions that

he did not apply for would have taken up significant trial time and potentially confused the jury, which did not have to determine what promotions Youssef might or might not have obtained had he become inspection certified. Therefore, exclusion of this evidence was proper under Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.") Accordingly, the Court finds that there has been no manifest error of law or fact in excluding this evidence, and therefore the Court declines to grant Youssef's motion for a new trial on this basis.

  *B.*  *Motion to Review Bill of Costs*

  Youssef asks the Court to review the bill of costs submitted by Defendants or, in the alternative, to stay the adjudication of costs until Youssef has exhausted his rights to appellate review of the Court's judgment. The Court declines to defer the adjudication of costs pending a potential appeal and shall directly consider Youssef's challenge to Defendants' bill of costs. Defendants seek a total of $32,431.46 in costs: $446 in fees for service of summons and subpoenas, $615.50 in copying fees, $5924.66 in witness fees, and $25,445.30 in fees for transcripts. Youssef argues that the Court should deny Defendants any of these costs in the interest of justice and also challenges specific aspects of Defendants' bill of costs as improper. The Court shall consider each of Youssef's objections.

  Youssef argues that taxation of costs would be inequitable because it would deter other federal employees from bringing meritorious civil rights claims. However, "costs are routinely awarded to prevailing defendants in civil rights cases." *Long v. Howard Univ.*, 561 F. Supp. 2d

85, 97 (D.D.C. 2008). Youssef cites out-of-circuit precedent for the proposition that the Court should consider the impact that taxing costs may have on chilling civil rights litigation. However, courts within this district have generally rejected this rationale as insufficient to deny costs. *See id.*; *Thomas v. George Washington Univ.*, 286 F. Supp. 2d 38, 40 (D.D.C. 2003). Furthermore, Youssef contends that Defendants' costs are excessive, but he has not argued that he is unable to pay them. *Cf. Johnson v. Holway*, 522 F. Supp. 2d 12, 17 (D.D.C. 2007) (requiring more than "unsubstantiated assertions of financial hardship" to justify denial of costs). Accordingly, the Court finds that Youssef has not overcome the presumption that Defendants are entitled to their costs.

Youssef does, however, raise specific objections to various line-items in Defendants' bill of costs. The taxation of costs is generally governed by 28 U.S.C. § 1920 and by Local Civil Rule 54.1 of this Court. The Court shall address each of Youssef's specific claims below.

### 1.    Fees for Service of Subpoenas

Youssef objects to Defendants' bill for the service of deposition subpoenas on Dr. Rodrigo Hurtado, Dr. Steven Kaufman, and Thomas Wall in the amount of $446. Youssef argues that these fees are not reimbursable because (a) neither federal law nor this Court's Local Rule authorizes taxation of service fees by special process servers, and (b) subpoenas were unnecessary for these witnesses because Drs. Hurtado and Kaufman did not testify at trial and Mr. Wall was called by Youssef, making a subpoena unnecessary. However, Youssef overlooks LCVR 54.1(d)(11), which provides that the Clerk shall tax "costs of service of a subpoena on a witness who testified at a deposition, hearing or trial." "[N]either Local Civil Rule 54.1(d) nor 28 U.S.C. § 1920 requires that the subpoena be 'necessary' in order for the cost to be

recoverable." *Long*, 561 F. Supp. 2d at 97.  Accordingly, the Court shall allow these costs.

2.        Fees for Deposition Transcripts Not Used at Trial

Under 28 U.S.C. § 1920(2), the Court may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  Youssef objects to Defendants' bill for $12,995.30 in deposition transcripts on the ground that Defendants did not use those transcripts at trial.  However, the determination of necessity for purposes of § 1920(2) "is to be made as of the time the deposition was taken rather than at the time of the trial." *Johnson v. Holway*, 552 F. Supp. 2d at 18; *see also Long*, 561 F. Supp. 2d at 98 ("The determination of necessity under section 1920(2) 'must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded for further use.'") (quoting *Mother & Father v. Cassidy*, 338 F.3d 704, 712 (7th Cir. 2003); *Oetiker v. Jurid Werke, GmbH*, 104 F.R.D. 389, 394 (D.D.C. 1982) ("Expenses of discovery depositions shown to be reasonably necessary at the time taken are recoverable as costs even if the deposition is not used at trial.").  Therefore, the deposition fees are recoverable if Defendants had a reasonable basis for taking the depositions at the time.  In addition, Local Civil Rule 54.1(d) directs the Clerk to tax costs for deposition transcripts that are "used on the record, at a hearing or trial."  LCVR 54.1(d)(6).  Accordingly, it is appropriate to tax costs for depositions that are used by a party to support a motion for summary judgment or other substantive motions made to the court in connection with the case.  *See Long*, 561 F. Supp. 2d at 98-99; *Holway*, 552 F. Supp. 2d at 18.  Defendants assert that all of the depositions for which they seek costs were either (a) noticed by Youssef, (b) his own testimony, or (c) witnesses identified by Youssef as experts, and Youssef does not dispute this contention in his reply brief.

Youssef specifically objects to the costs for the deposition transcripts of Lucy Ann Hoover, Steven McGraw, Arthur Cummings, Sandra Fowler, Dr. James Sharf, and Glenn Rogers, on the ground that Defendants made no use of these depositions on the record. The depositions of Messrs. McGraw and Cummings were used by Defendants in their briefs at summary judgment and are therefore presumptively appropriate under Local Civil Rule 54.1(d)(6). Dr. James Sharf was identified by Youssef as an expert witness who might testify at trial, so Defendants had a clear reason to depose him, and his transcript was utilized in Defendants' motion *in limine*. *See* [172] Defs.' Mot. *in Limine* and Mot. to Bifurcate at 17. The deposition of Ms. Fowler was used by Defendants to oppose a motion by Youssef to compel discovery. Therefore, the Court finds that these witnesses' depositions were used "on the record, at a hearing or trial" and may be taxed. Defendants assert that Ms. Hoover's deposition testimony was cited by Youssef in a motion to compel production, thereby necessitating Defendants' review of her testimony. *See* Defs.' Resp. to Pl.'s Mot. to Review Costs, Ex. 4 (referencing Pl.'s [42] Mot. to Compel Production at 10). However, the Court has reviewed the motion cited by Defendants and has not found any reference to Ms. Hoover's deposition. Because Defendants have not provided the Court with any other evidence that her deposition was necessarily obtained for use in the case, the Court shall deny costs for Ms. Hoover's deposition transcript. Defendants did not separately itemize the fees for Ms. Hoover's deposition from several other depositions transcribed by the same reporter. Accordingly, the Court shall order Defendants to file a revised bill of costs excluding Ms. Hoover's deposition fees.

Glenn Rogers was a potential witness for Defendants whose deposition testimony was discussed during the last pretrial hearing. Youssef argues that the Court should not award costs

for Glenn Rogers's deposition transcript because the Court ordered that he be deposed at Defendants' expense as a sanction for failing to disclose him a trial witness during discovery. *See* [213] Third Pretrial Order (June 7, 2010) at 5. The Court agrees that awarding costs for Mr. Rogers's deposition would effectively undermine the Court's prior ruling that Defendants should bear the full cost of Mr. Rogers's untimely deposition. In addition, Defendants did not call Mr. Rogers to testify at trial or use his deposition to advance their case, nor was the deposition transcript necessary to the discussion held at the pretrial hearing. Therefore, the Court shall deny Defendants' request for $772.10 in costs for Glenn Rogers's deposition transcript.

Youssef next challenges the award of costs for depositions of Michael R. Fedarcyk, Pasquale D'Amuro, Dale Watson, David Szady, Robert Thompson, Gary Bald, William Chornyak, Ellen Knowlton, Regina Stephens, Patrick Patterson, Laurie Bennett, and Thomas Kinnally on the ground that Defendants' use of their depositions was minimal and not necessary to Defendants' case.[2] However, all of these witnesses' depositions were used by Defendants to support their motion for summary judgment. Therefore, the Court finds that these costs are appropriately awarded to Defendants as the prevailing party in this litigation.

Youssef also argues that the Court should not approve the bill of costs for deposition transcripts because Defendants' supporting documentation does not clearly establish that invoices have been paid or that the costs requested do not include unnecessary charges such as expedited shipping. However, the Court has reviewed the supporting documentation provided by

---

[2] Youssef also objects to costs for the deposition of "Art Cunningham," but Defendants do not request costs for any such person. Defendants do request costs for Arthur Cummings, but as noted above, his deposition was used by Defendants to oppose Youssef's motion for summary judgment.

Defendants and concludes that it is sufficient to establish entitlement to the fees requested. Whether or not Defendants have paid the fees, the invoices establish their obligation to pay them, and that is a sufficient basis to tax costs. *See OAO Alfa Bank v. Ctr. for Public Integrity*, Civil Action No. 00-2208, 2006 WL 1313309, at *4 (D.D.C. May 12, 2006) (awarding costs supported by invoices).

Accordingly, the Court allow Defendants to recover costs for the deposition transcripts requested, except for those of Lucy Ann Hoover and Glenn Rogers.

### 3. Copying Costs

Youssef objects to Defendants' request for $615.50 in costs for making copies of trial exhibits ($315.50) and other pretrial copying expenses ($300). Local Civil Rule 54.1(d) explicitly provides that the Clerk shall tax "costs of copying those exhibits which are introduced into evidence, are used for impeachment, or are filed with the Clerk," LCVR 54.1(d)(8), as well as "other costs of copying up to $300.00," LCVR 54.1(d)(9). Defendants have established that the exhibits for which they seek copying costs were either introduced into evidence at trial or used for impeachment, and therefore their copying costs are recoverable under LCVR 54.1(d)(8). Youssef argues that Defendants' photocopying fees were not "necessarily obtained for use in the case" as required by 28 U.S.C. § 1920(4). However, Local Civil Rule 54.1 does not contain such a requirement, and courts in this district have generally concluded that copies of exhibits admitted at trial or used for impeachment are presumptively necessary. *See Holway*, 522 F. Supp. 2d at 20-22. Youssef also complains that Defendants have not itemized their request for $300 in "other" copying costs, but the Court is confident that over the course of seven years of litigation, Defendants have expended at least $300 in other copying costs that may be properly

taxed pursuant to LCVR 54.1(d)(9).  Therefore, the Court shall tax these costs.

              4.        <u>Trial and Hearing Transcripts</u>

Defendants seek to recover $12,450 in costs for trial and hearing transcripts.  Under 28 U.S.C. § 1920(2), the prevailing party may recover "fees for printed or electronically recorded transcripts necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  In addition, Local Civil Rule 54.1(d)(7) directs the Clerk to tax the cost "of the original and one copy of the reporter's transcript of a hearing or trial if the transcript: (1) is alleged by the prevailing party to have been necessary for the determination of an appeal within the meaning of Rule 39(e), Federal Rules of Appellate Procedure, or (ii) was required by the court to be transcribed."  Youssef objects to the taxation of costs for transcripts on the ground that no transcripts were used in evidence and that the transcripts were not necessary for trial presentation.

Contrary to Defendants' assertion in their opposition brief, the Court did not require the parties to obtain transcripts of pretrial hearings or the trial proceedings, although the Court did encourage the parties to order transcripts and cite to them when making arguments.  Therefore, the costs are not required to be taxed under the terms of Local Civil Rule 54.1(d)(7).  However, Defendants note that they needed the trial transcripts in order to effectively respond to Youssef's motion for a new trial.  The Court agrees that trial transcripts were necessarily obtained for that purpose, and therefore the Court shall allow the cost of trial transcripts.  *See also Holway*, 522 F. Supp. 2d at 20 (taxing trial transcript costs where briefing was required at trial); *Machesney v. Larry Bruni, M.D., P.C.*, 905 F. Supp. 1122, 1137 (D.D.C. 1995) ("As a general rule, in complex litigation trial transcripts are necessary to ensure a well-presented case.").

Defendants also seek costs for the transcripts of four pretrial conferences, two pretrial

status conferences, and a *Daubert* hearing held just before trial. While such transcripts were undoubtedly convenient for counsel in supplementing the Court's written pretrial orders, Defendants have not shown the Court that the pretrial hearing transcripts were necessary for use in the case. For example, Defendants seek costs for the transcript of the pretrial *Daubert* hearing, but the Court did not make any ruling during that hearing because the parties stipulated at its conclusion that neither Youssef nor another witness, Ed Curran, would give expert testimony under Federal Rule of Evidence 702. Defendants contend that these pretrial hearing transcripts were used during trial "on multiple occasions," but the only two examples they cite in their brief do not actually involve pretrial hearing transcripts. *See* Defs.' Response at 9. The Court memorialized its pretrial rulings in written orders so that the parties would not have to rely on the transcripts, and Defendants have failed to establish that it was necessary to use the transcripts for their defense. Accordingly, the Court shall deny Defendants' request for costs of pretrial hearing transcripts in the amount of $2808.55.

### 5. Witness Fees

Defendants seek a total of $5924.66 in fees for five witnesses who testified at trial. Witness fees are explicitly authorized by 28 U.S.C. § 1920(3), and Local Civil Rule 54.1(d)(10) provides that the Clerk shall tax "witness fees pursuant to 28 U.S.C. § 1821(b), and travel and subsistence costs pursuant to 28 U.S.C. § 1821(c), paid to each witness who testified at a hearing or trial." Youssef objects to the cost of witness travel on the grounds that it was not necessary, claiming that the five witnesses for whom fees are requested could have testified by deposition or live video conference. However, there is no explicit requirement in § 1920 or Local Civil Rule 54.1(d) that witnesses' testimony be "necessary" in order to tax witness fees. *See also* 28 U.S.C.

§ 1821 ("Except as otherwise provided by law, a witness in attendance at any court of the United States . . . shall be paid the fees and allowance provided by this section.").  Moreover, the Court disagrees with Youssef's suggestion that it was unreasonable for Defendants to present the jury with live, in-person testimony from these witnesses, as they provided relevant information for the jury to consider on disputed issues of fact.  Youssef also urges the Court to follow the "100 mile" rule and preclude recovery for costs of witnesses' travel from more than 100 miles outside the courthouse.  *See* Pl.'s Br. at 9 (citing *Oeticker*, 104 F.R.D. at 391-92).  However, courts on this district have generally not applied this rule over the last twenty years, and it is in tension with the plain language of § 1821(c), which provides that "[a]ll normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920."  28 U.S.C. § 1821(c)(4); *see W. Wind Africa Line, Ltd. v. Corpus Christi Marine Servs. Co.*, 834 F.2d 1232, 1237 (5th Cir. 1988) (noting tension between § 1821(c)(4) and the 100 mile rule); *United States v. Sci. Applications Int'l Corp.*, 653 F. Supp. 2d 87, 94 n.4 (D.D.C. 2009) (considering taxation of costs for witness's return travel to China).  Ultimately, the Court finds that it was reasonable for Defendants to bring these witnesses to testify at trial.  Therefore, the Court shall allow Defendants to recover travel costs for these five witnesses.

Youssef also objects to the payment of certain subsistence expenses.  Specifically, Youssef argues that the meal expenses for John Lewis, totaling $63.09 for two breakfasts and one lunch at his hotel, are excessive.  The Court finds that the claimed costs are not unreasonable.  Youssef also argues that the Court should not tax subsistence costs for more than one day of John Lewis's testimony.  However, in light of the uncertainty about the date that Lewis could testify, it was reasonable for Defendants to arrange his travel so that he would be available for a period of

several days during trial, and the witness is entitled to subsistence costs for days of travel. *See*

*Holway*, 522 F. Supp. 2d at 23 (taxing subsistence expenses for multiple days for witnesses

traveling from out of town). The record shows that Lewis arrived in Washington, D.C. on

Saturday, September 18, 2010, testified on Tuesday, September 21, 2010, and left Washington on

Wednesday, September 22, 2010. Defendants have not explained to the Court why it was

necessary for Lewis to be in Washington two days before he could possibly testify, and therefore

the Court shall deny Defendants' request for subsistence costs incurred by Lewis on Saturday,

September 18, 2010.

Finally, Youssef objects to the calculation of mileage for Patrick Maley, who traveled

from Montgomery, Alabama to testify at trial. Defendants seek reimbursement for Maley's

airfare and related travel and subsistence costs. In support of their bill of costs, Defendants

provide an expense report for Mr. Maley, which contains a line item for his airfare of $1137.80

with no further elaboration or supporting documentation. By contrast, Defendants request only

$402.80 in airfare costs for another witness, Valerie Parlave, who traveled from Little Rock,

Arkansas, and only $463.80 in airfare (plus $120 in excess baggage fees) for John Lewis, who

traveled from Phoenix, Arizona. Defendants do not respond to Youssef's objection to the costs

of Mr. Maley's travel, and there is no explanation on record as to why his airfare cost so much.

Mr. Maley was a key witness for Defendants, and they should not have needed to wait until the

last minute to arrange his travel, if that is in fact the reason for the high cost of his airfare.

Accordingly, the Court shall reduce the allowable costs for Mr. Maley's airfare to a more

reasonable amount of $400.

Accordingly, the Court shall allow Defendants' witness fees except for Mr. Lewis's

subsistence expenses for Saturday, September 18, 2010 and Mr. Maley's airfare over $400.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the weight of the evidence at trial does not contradict the jury's finding that Defendants did not take a materially adverse action against Youssef by denying his requests to go on inspections, and the Court's pretrial rulings did not prejudice Youssef's ability to present evidence relevant to this issue at trial.  Therefore, the Court shall DENY Youssef's [249] Motion for New Trial.  The Court shall also GRANT-IN-PART and DENY-IN-PART Youssef's [251] Motion to Review Costs and order Defendants to submit a revised bill of costs excluding the cost of deposition transcripts for Lucy Ann Hoover and Glenn Rogers, pretrial hearing transcripts, subsistence expenses for John Lewis on September 18, 2010, and airfare costs for Patrick Maley in excess of $400.  An appropriate Order accompanies this Memorandum Opinion.

_/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge