# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BASSEM YOUSSEF,           )
                                       )
     Plaintiff,              )
                                       )
     v.                    )     Case No. 1:03CV01551 (CKK)
                                       )
ERIC HOLDER, JR.,          )
ATTORNEY GENERAL,       )
U.S. DEPARTMENT OF JUSTICE, et al.,  )
                                       )
     Defendants.            )
_____)

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
## SUMMARY JUDGMENT

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

RONALD R. MACHEN
United States Attorney

JOSHUA E. GARDNER
Assistant Director
Federal Programs Branch

CARLOTTA P. WELLS
OF COUNSEL:                        ADAM SIPLE
                                     Attorneys
KATHLEEN O'NEILL-TAYLOR      United States Department of Justice
Office of General Counsel           Civil Division
Federal Bureau of Investigation      Federal Programs Branch
                                     20 Massachusetts Ave., N.W.
                                     Washington, D.C. 20530
                                     Tel: (202) 305-7664
                                     Fax: (202) 616-8460

                                     Counsel for Defendant

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

I.      PLAINTIFF HAS FAILED TO PROFFER SUFFICIENT EVIDENCE
TO SUGGEST THAT THE FBI'S REASONS FOR TEMPORARILY
ASSIGNING PLAINTIFF TO DOCEX ARE PRETEXTUAL ........................................2

      A.  Plaintiff's Claimed Superior Qualifications Fails To Establish
That The FBI's Decision To Assign Him To DocEx Was A
Pretext For Discrimination......................................................................4

      B.  Plaintiff's Reliance on Evidence Not Known to the Decision-Maker
At the Time he Assigned Plaintiff to DocEx Is Irrelevant To The
Issue Of Pretext.......................................................................................7

      C.  Plaintiff's Opinion About the Selection of Special Agents For CTD
Positions After 9/11 Presupposes A Decision-Making Process That
Did Not Exist ........................................................................................10

      D.  Plaintiff's Characterizations About DocEx and His Role There Do
Not Establish Pretext.............................................................................11

      E.  Plaintiff Engages in Unwarranted Speculation About Special Agent
Doran's Assignment to DocEx ..............................................................16

II.     THE LAW OF THE CASE DOCTRINE BARS PLAINTIFF FROM
RECYCLING CLAIMS PREVIOUSLY REJECTED BY THIS COURT
IN THIS POST-REMAND PROCEEDING...............................................................18

III.    PLAINTIFF'S CLAIM THAT THE FBI FAILED TO IMMEDIATELY
ASSIGN HIM COUNTERTERRORISM WORK AFTER 9/11 IS BARRED
BECAUSE PLAINTIFF DID NOT FILE A TIMELY CLAIM......................................22

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE(S)**

*Arizona v. California,*
    460 U.S. 605 (1983)....................................................................................................18

*Armstead v. Jewell,*
    958 F. Supp. 2d 242 (D.D.C. 2013) ..........................................................................23

*Belgrave v. Pena,*
    254 F.3d 384 (2d Cir. 2001)......................................................................................24

*Brody v. Brown,*
    199 F.3d 446 (D.C. Cir. 1999) ............................................................................4, 8, 19

*Brown v. Vance Cooks,*
    920 F. Supp. 2d 61 (D.D.C. 2013) ...............................................................................3

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988)..............................................................................................18, 19

*Crocker v. Piedmont Aviation, Inc.,*
    49 F.3d 735 (D.C.Cir.1995) 2007)...............................................................................18

*Czekalski v. Peters,*
    475 F.3d 360 (D.C. Cir. 2007) ......................................................................................3

*Daubert v. Merrell Dow Pharm.,*
    509 U.S. 579 (1993)......................................................................................................9

*Fishbach v. DC Dep't of Corr.,*
    86 F.3d 1180 (D.C. Cir. 1996) ............................................................................ passim

*General Elec. v. Joiner,*
    522 U.S. 136 (1997)................................................................................................9, 10

*Hamilton v. Geithner,*
    66 F.3d 1344 (D.C. Cir. 2011) ...............................................................................5, 6

*Hernandez v. Pritzker,*
    741 F.3d 129 (D.C. Cir. 2013) ........................................................................... passim

*Hines v. Bair,*
    594 F. Supp. 2d 17 (D.D.C. 2009) .........................................................................23, 24

*LaShawn A. v. Barry,*
    87 F.3d 1389 (D.C. Cir. 1996) ........................................................................18

*Microsoft Corp. v. New York,*
    244 F. Supp. 2d 76 (D.D.C. 2002) .............................................................18, 19

*National R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ...............................................................................23, 24

*Pepper v. United States,*
    ___ U.S. ___, 131 S. Ct. 1229 (2011) ...........................................................18

*Perry v. Shinseki,*
    783 F.Supp.2d 125 (D.D.C. 2011) ..................................................................6

*Pro-Football v. Harjo,*
    567 F. Supp. 2d 46 (D.D.C. 2008) .............................................................18, 19

*Sigler v. Am. Honda Motor Co.,*
    532 F.3d 469 (6th Cir. 2008) ........................................................................9

*Taylor v. F.D.I.C.,*
    132 F.3d 753 (D.C. Cir. 1997) ....................................................................24

*Tex. Dep't of Cmty. Affairs v. Burdine,*
    450 U.S. 248 (1981) ....................................................................................3

*Waterhouse v. District of Columbia,*
    124 F. Supp. 2d 1 (D.D.C. 2011) ....................................................................6

*Williams v. Johnson,*
    747 F. Supp. 2d 10 (D.D.C. 2010) .............................................................18, 19

*Young v. Perry,*
    457 F. Supp. 2d 13 (D.D.C. 2006) ..................................................................6

*Youssef v. FBI,*
    687 F.3d 397 (D.C. Cir. 2012) ..................................................................4, 21

*Youssef v. FBI (Youssef I),*
    541 F. Supp. 2d 121 (D.D.C. 2008) ........................................................ passim

*Youssef v. Holder (Youssef II),*
    __ F. Supp. 2d__, No. 11-1362, 2014 WL 298844 (D.D.C. 2014) .................5, 6

**STATUTES & REGULATIONS**

42 U.S.C. § 2000e-16(c) ........................................................................................................22

29 C.F.R. § 1614.105(a)........................................................................................................22

## <u>INTRODUCTION</u>

Defendants established in their Motion for Summary Judgment that former FBI Deputy Executive Assistant Director James Caruso made the decision to assign Plaintiff Bassem Youssef, on a temporary duty ("TDY") basis, to DocEx because the FBI had a critical need to exploit materials coming from overseas as part of the agency's efforts to prevent another terrorist attack in the aftermath of 9/11.  Plaintiff's Opposition raises a scattershot of arguments that seek to establish that Plaintiff's assignment to DocEx was a pretext for national origin discrimination.  Yet despite the substantial ink Plaintiff has spilled in his Opposition and his voluminous Statement of Material Facts, he fails to link *any* of these proffered motivations to the actual decision-maker, Caruso.

The main thrust of Plaintiff's Opposition is that he can demonstrate pretext through what he contends are his superior qualifications.  This argument is wholly misplaced, especially because Plaintiff admits that Caruso was unaware of these qualifications at the time he selected Plaintiff for the TDY appointment in DocEx.  Similarly, Plaintiff's other claimed evidence of pretext not only is untethered to Caruso, but also is legally irrelevant and inadmissible.  Ultimately, the undisputed material facts show that Plaintiff requested a position in the FBI's Counterterrorism Division ("CTD") and Caruso obliged his request by placing Plaintiff in DocEx to fulfill an important counterterrorism mission in the wake of 9/11.  The fact that Plaintiff believes his qualifications better suited him for a different CTD position does not establish that his placement within DocEx was discriminatory.

In a similar vein, Plaintiff tries to create a genuine issue of material fact by insisting that he should have been assigned someplace else within CTD because his

temporary placement at DocEx was a waste of his talents.  In fact, Plaintiff goes so far as to argue that he should have received an assignment "at the Director's level."  Pl.'s SJ Opp. Memo 6 (Doc. # 317).  But even if Plaintiff's unsupported and self-serving allegations were true, it is simply not enough under Title VII for him to argue that he was better suited for another position in order to make out a claim of discrimination.  *See Hernandez v. Pritzker*, 741 F.3d 129 (D.C. Cir. 2013).  Taken as a whole, Plaintiff's arguments on pretext—as detached from the indisputable facts as they are—amount to no more than the highly speculative second-guessing of agency decision makers that courts have rejected as wholly inadequate to discharge an employee's burden of proof under Title VII.  *See Fischbach v. D.C. Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C. Cir. 1996).  Because no reasonable juror could conclude that the FBI's reasons for Plaintiff's placement in DocEx were a pretext, summary judgment is warranted.

## ARGUMENT

**I.     PLAINTIFF HAS FAILED TO PROFFER SUFFICIENT EVIDENCE TO SUGGEST THAT THE FBI'S REASONS FOR TEMPORARILY ASSIGNING PLAINTIFF TO DOCEX ARE PRETEXTUAL.**

Defendants established in their Motion for Summary Judgment that plaintiff's assignment to work on a TDY basis on the DocEx project was made for legitimate, non-discriminatory reasons.  Specifically, in the aftermath of the 9/11 attacks, the FBI identified a critical need that it had to fill immediately and believed that Plaintiff could effectively meet those needs.  In response to Defendants' motion, Plaintiff relies heavily on factual and legal issues that this Court previously has rejected and otherwise fails to establish that the FBI's reasons were a pretext for discrimination.

To prove a violation of Title VII, Plaintiff must demonstrate by a preponderance of the evidence that the actions taken by the employer were "more likely than not based on the consideration of impermissible factors" such as national origin. *Tex. Dep't of Cmty. Affairs v. Burdin*e, 450 U.S. 248 (1981). Because the FBI has articulated legitimate, non-discriminatory reasons for Plaintiff's TDY assignment to DocEx, the burden falls on Plaintiff to come forth with evidence to show that the FBI's proffered reasons were not the true reasons for its employment decision. *Id.* at 256. *Accord Youssef v. FBI* ("*Youssef I*"), 541 F. Supp. 2d 121, 142 (D.D.C. 2008). Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Plaintiff may do this by pointing to evidence that shows that "the nondiscriminatory explanation the defendant proffered for its decision is false." *Czekalski v. Peters*, 475 F.3d 360, 366 (D.C. Cir. 2007).

In examining Plaintiff's proffer of pretext evidence, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, fair, or sensible[; h]e must show that the explanation given is a phony reason." *Fischbach*, 86 F.3d at 1183 (D.C. Cir. 1996) (internal quotation marks and citation omitted). Of course, Plaintiff's self-serving allegations count for little on summary judgment, *see .e.g., Brown v. Vance Cooks*, 920 F. Supp. 2d 61, 70 (D.D.C. 2013), and "hearsay counts for nothing." *Hernandez,* 741 F.3d at 134 (internal quotation and citation omitted). Because "'courts are not free to second-guess an employer's business judgment,' Plaintiff's mere speculations are 'insufficient to create a genuine issue of fact regarding [an employer's]

articulated reasons for [its decisions] and avoid summary judgment.'" *Brody v. Brown*, 199 F.3d 446, 459(D.C. Cir. 1999) (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir 1988)).   As discussed below, Plaintiff has failed to meet his burden to demonstrate pretext.

### A. Plaintiff's Claimed Superior Qualifications Fails To Establish That The FBI's Decision To Assign Him To DocEx Was A Pretext For Discrimination.

The central theme of Plaintiff's argument that the FBI's reasons for assigning him to DocEx on a TDY basis are a pretext for discrimination is that the FBI should have made better use of Plaintiff's counterterrorism skills and expertise in the aftermath of the 9/11 terrorist attacks.   *See* Pl.'s SJ Opp. Memo 4-13.   As an initial matter, the parties agree that Caruso, the official responsible for assigning him to DocEx, did not know about Plaintiff's career background and experience.   Therefore, Caruso's lack of knowledge cannot establish, as Plaintiff must, that Defendants had an improper motive or intent to discriminate.   Further, Plaintiff's discrimination claim must fail as a matter of law because it calls for precisely the kind of speculative second-guessing of management decisions that the courts in this Circuit have repeatedly admonished against.   *See, e.g., Fischbach*, 86 F.3d at 1183; *Brody*, 199 F.3d at 457.[1]

---

[1] As a threshold matter, Defendants note that Plaintiff has mischaracterized the nature of the FBI's concession with respect to a prima facie case of discrimination.  Pl.'s SJ Opp. Memo 2.  In these post-remand proceedings, the Defendants merely have conceded that Plaintiff has established a prima facie case of discrimination solely for the purposes of summary judgment, and only with respect to the decision to assign Plaintiff to a TDY position at DocEx.  Defs.' SJ Memo 3-4, (Doc. # 315-1).  This narrow concession is mandated by the D.C. Circuit's holding that a reasonable juror could find that Plaintiff's assignment to DocEx constituted a materially adverse action under Title VII, and thus is consistent with that court's remand to the trial court for an examination of the FBI's reasons for assigning Plaintiff to DocEx. *Youssef v. FBI,* 687 F.3d 397, 402-03 (D.C. Cir. 2012).  In instructing this Court to consider this "fact-intensive issue," the appellate court observed that "the district court had no need to consider whether the [FBI's] explanation was pretextual, having already concluded that the transfer was not materially adverse." *Id.* (internal citations omitted).

In arguing that the FBI's reasons for assigning him on a TDY basis to the DocEx project are a pretext for discrimination, Plaintiff claims a "disparity in qualifications" between him and other FBI employees assigned to work at the DocEx offsite facility. Pl.'s SJ Opp. Memo 4.   In making this argument, Plaintiff relies on *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012), which holds that a significant "disparity in qualifications" may be sufficient to demonstrate pretext in a non-selection discrimination case under Title VII**.**  But Plaintiff's reliance on *Hamilton* and any "disparity of qualifications" principle fails for several reasons.

First, as discussed above, Plaintiff concedes that Caruso was "the sole decision maker" on the TDY assignment to DocEx, Pl.'s SJ Opp. Memo 33, and also emphasizes that Caruso knew very little about Plaintiff's background at the time Caruso made the decision to assign Plaintiff to DocEx.  *Id.* at 33-34.  Despite this acknowledgement, Plaintiff proffers an exhaustive 97-page, 498-paragraph recitation and recap of his entire career with the FBI in his Statement of Material Facts.  Yet this detailed story of his life's work at the FBI, which Plaintiff suggests demonstrate that the reasons for assigning him to DocEx are a pretext for discrimination, is completely immaterial because, by Plaintiff's own admission, Caruso did not know any of this information when he made the decision to assign Plaintiff to DocEx.  Further, as this Court recently emphasized, it is Plaintiff's burden to demonstrate that such information was known to the decision-maker, especially when proffering examples of experiences that occurred many years prior to the employment decision.  *See Youssef v. Holder* (*"Youssef II"*), __ F. Supp. 2d__, No. 11-1362, 2014 WL 298844, *16 (D.D.C. Jan 28, 2014) (at summary judgment stage, Court declined to consider work experience that was not before the officials who made the

challenged employment decision) (citing *Fischbach*, 86 F.3d at 1183). [2] *Accord*

*Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000).

Second, Plaintiff's reliance on *Hamilton* is misplaced because that case involved a competitive selection process in which applicants and their qualifications were compared to one another in the context of filling a specific job position. *See* 66 F.3d at 1347-50. Here, however, Plaintiff never competed for any job, temporary or permanent, during the relevant time period. To demonstrate an alleged "disparity in qualifications" between Plaintiff and others, he would have been required to formally compete against other candidates for a position. Thus, because the assignment to DocEx was not accomplished as a result of a competitive selection process, Plaintiff cannot argue pretext under some "disparity in qualifications" theory.

Third, Plaintiff's disparity of qualifications argument fails more fundamentally because—competitive application process or not—Plaintiff cannot show that he was denied any position in CTD. It is undisputed that Plaintiff met with Caruso and expressed that he wanted to work in CTD and that Caruso granted that request when he assigned Plaintiff to DocEx. There is no evidence that Plaintiff articulated his interest in any other position to Caruso or to other senior CTD officials and such a request was denied, despite his current claim that he believes he was better suited for a position "at the Director's level." Pl.'s SJ Opp. Memo 6.

---

[2] Moreover, even assuming Plaintiff had offered evidence to show a connection to the decision-maker, Plaintiff's efforts to advance his own self-serving career narrative is misguided because, as this Court has observed, Plaintiff's "subjective opinion concerning his credentials does not weigh heavily in th[e] calculus." *Youssef I*, 541 F. Supp. 2d at 150 (citing *Young v. Perry,* 457 F. Supp. 2d 13, 19 (D.D.C. 2006) and *Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000)); *Youssef II*, 2014 WL298844, at 16 (citing *Perry v. Shinseki*, 783 F.Supp.2d 125, 137 (D.D.C. 2011)).

In sum, Plaintiff has not come forward with probative, admissible evidence that his "superior qualifications" demonstrate that Defendants' reasons for his TDY assignment to DocEx is pretextual.  Thus, Defendants are entitled to judgment as a matter of law.

### B. Plaintiff's Reliance on Evidence Not Known to the Decision-Maker at the Time he Assigned Plaintiff to DocEx Is Irrelevant To The Issue of Pretext.

In his opposition to Defendants' motion for summary judgment, Plaintiff raises a number of allegations that he contends demonstrate that the FBI's decision to place Plaintiff in DocEx, on a TDY basis, was a pretext.  Yet conspicuously absent from these allegations is any connection to the actual decision-maker who placed Plaintiff in DocEx. This lack of evidence is fatal to Plaintiff's demonstration of pretext, and summary judgment is thus warranted.

The facts surrounding Plaintiff's assignment to DocEx are analogous to those considered recently by the D.C. Circuit in *Hernandez*, 741 F.3d 129.  In that case, a Title VII plaintiff alleged that the Department of Commerce had retaliated against her by detailing her from her regularly assigned office to another component within the Department.  *Id*. at 134.   The defendant's proffered legitimate justification for assigning the plaintiff to the detail was that she had requested a transfer to another office.  *Id.* Plaintiff argued that the defendant's rationale was pretextual because, at the time she was transferred, there were other detail opportunities available to which she was better suited. *Id.*  The D.C. Circuit held that the plaintiff had failed to come forth with sufficient evidence of pretext because the undisputed evidence showed that, at the time of her request for a transfer, she "did not identify a preferred office" and, after the assignment

was made, she did not complain about the position to the official who approved the transfer. *Id.*

Like the plaintiff in *Hernandez*, Plaintiff has not come forward with sufficient evidence to show that the FBI's proffered reasons for assigning Plaintiff on a TDY basis to DocEx are not legitimate. Here, the undisputed facts show that Plaintiff requested to be transferred from his detail at NCIX, but he did not identify any particular office or assignment; it is undisputed that the only parameters that Plaintiff expressed to Caruso were that he wanted an assignment in CTD and did not want to work in the budget office of the Counterintelligence Division ("CID"). *Cf. Youssef I*, 541 F. Supp. 2d at 164 (court observed that having failed to identify specific positions for which he applied, "it is unclear how Youssef could show that he is basing a claim on anything other than "'[m]ere idiosyncrasies of personal preference [that] are not sufficient to state an injury.'") (alterations in the original, quoting *Brody*, 199 F.2d at 457). And, as with the plaintiff in *Hernandez*, Plaintiff accepted the assignment that Caruso offered—the TDY to the DocEx offsite—and never complained either to the decision maker or other senior CTD officials after he arrived there. *See infra* at 15. Indeed, the officials involved in effectuating Plaintiff's assignment to DocEx had no reason to believe that Plaintiff was unhappy with their decision because it is undisputed that Plaintiff never told them and, thus, consistent with *Hernandez*, Plaintiff has not adduced any evidence of pretext.[3]

---

[3] Plaintiff asserts that it was not necessary for him to express his dissatisfaction with the DocEx assignment to those responsible for his placement there in part because he "initiated an EEO proceeding about his job assignments and the failure of the FBI to utilize his expertise." Pl.'s Resp. to Defs.' SMF ¶ ¶ 71-73, ECF No. 317-2. The EEO process, however, is not an appropriate avenue for the redress of ordinary workplace grievances. *See Brody*, 199 F.2d at 457. Further, it is undisputed that Caruso lacked any knowledge of either Plaintiff's dissatisfaction with his work assignment or Plaintiff's EEO complaint. *See* Deposition of James Caruso ("Caruso Depo") Ex. 25 at 71-81.

In addition to relying on background information regarding his career that was never presented to the FBI decision-maker, Plaintiff also alleges that the FBI's reasons for the DocEx assignment are a pretext based on events that occurred **after** Caruso's decision to assign Plaintiff to DocEx.  *See* Pl.'s SJ Opp. Memo 14-16.  Such events by definition have no connection to or bearing on the challenged employment decision.  For example, Plaintiff argues that his responsibility for locating "office space" for a permanent DocEx facility in August 2002 undercuts the FBI's stated explanation that Plaintiff was needed to help review materials for terrorist threats.  *See id.* [4]  But, Plaintiff was not given this duty, which was one among many, until five months after Caruso's decision and, indeed, after Caruso had retired from the FBI.  Caruso Depo (Ex. 25) at 7. As such, this assignment does not contradict Caruso's stated reasons for his decision to place Plaintiff in DocEx on a TDY basis in March 2002 and, thus, does not constitute evidence of pretext.[5]

---

[4] Plaintiff alleges that there was a need for an Acting Unit Chief to oversee the entire DocEx Project and that the failure to appoint him into that position in June or July 2002 constitutes evidence of pretext.  Pl.'s SJ Opp. Memo 34-35.  But Plaintiff has not connected the alleged need for a Unit Chief with the motives of the senior CTD officials involved in assigning him to DocEx in March 2002.  Therefore, such a claim cannot be a basis for showing pretext as a matter of law.

[5] Plaintiff's reliance throughout his Opposition on the expert report of Daniel Byman to bolster his argument that the FBI's justification for Plaintiff's DocEx assignment is a pretext for unlawful discrimination is misplaced.  *See* Pl.'s SJ Opp. Memo 5-6, 21, 32.  As an initial matter, Plaintiff's expert report and associated documents constitute inadmissible hearsay and, for that reason alone, Plaintiff's Exs. 12, 13, and 51 should be disregarded on summary judgment.  *See, e.g.*, *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480-81 (6th Cir. 2008) (district court erred when it considered defendant's three unsworn expert reports; reports were inadmissible hearsay and could not be considered on summary judgment). More fundamentally, Byman failed to consider sufficient facts and data and lacked subject matter expertise to offer reliable expert opinion testimony under Federal Rule of Evidence 702 in this case.  *See, e.g., Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993); *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997).  Among other flaws in his analysis, Byman: (1) was unaware of the fact that Plaintiff had not applied for an SES position at the FBI during the relevant period of time, Deposition of Daniel Byman, Ex. 9 at 79-81, 102-103; (2) testified that he was not familiar with the FBI's personnel selection procedures or policies for SES positions, *id.* at 97-98; (3) admitted that he had examined Plaintiff's qualifications in a vacuum, and without comparing Plaintiff to any other FBI employees  or potential applicants for CTD SES positions, *id.* at 31, 37-44, 78-79, 90-98; and (4) explained that his report was offered as strictly as an assessment of Plaintiff's subject matter expertise and was not an evaluation of Plaintiff's managerial

**C. Plaintiff's Opinion About the Selection of Special Agents For CTD Positions After 9/11 Presupposes A Decision-making Process That Did Not Exist.**

Plaintiff equates his personal opinion about his qualifications and the use he believes FBI managers should have made of such experience in the FBI's counterterrorism efforts following the 9/11 attacks with admissible evidence of pretext. For example, Plaintiff faults Caruso for failing to learn more about his background before assigning him to DocEx, *see* Pl.'s SJ Opp. Memo 24-25, and faults FBI Deputy Director Dale Watson for not returning his phone call, *see* Pl.'s SJ Opp. Memo at 32, 42. Plaintiff also claims that senior FBI CTD officials should have searched a database to discover his counterterrorism expertise. *See* Pl.'s SJ Opp. Ex. 3 ¶¶ 76-80. And Plaintiff emphasizes that he mentioned his interest in coming to work in CTD to two CTD managers, Debbie Stafford and Michael Rolince, but he never explains how or why his communications with these two individuals should have resulted in his placement in a CTD role he desired (whatever that might have been). *See* Pl.'s SJ Opp. Memo 17, 23, 26, 32 42 & Ex. 3 ¶ 25.

Much of Plaintiff's pretext argument simply supposes that there was an orderly, merit-based selection process to fill TDY assignments or, alternatively, that it was incumbent upon FBI leaders to have had such a process in place to facilitate their identification of Plaintiff among the thousands of Special Agents working for the FBI in September 2001. But Plaintiff's supposition simply does not comport with the operational realities the FBI faced in the immediate aftermath of 9/11. Indeed, Plaintiff misunderstands Defendants' characterization of the environment that existed in CTD

---

qualifications. *Id* at 41-42. Thus, even if his testimony were relevant, Plaintiff cannot rely on Byman's opinion to contradict the legitimate management decisions of the FBI with respect to SES selections –for jobs to which Plaintiff did not apply—because "there is simply too great an analytical gap between the data and the opinion proffered," and thus this testimony may not be considered under Rule 702. *Joiner*, 522 U.S. at 146.

after 9/11.  *See* Pl.'s SJ Opp. Memo 15-25.  Defendants used the term "chaos" as an apt characterization of the record evidence regarding the intense pressures, shifting demands and priorities, extreme sense of urgency, and lack of established infrastructure that defined how CTD functioned in the months following 9/11.  *See* Defs.' SMF ¶¶ 1-9, ECF No. 315-5.  *Cf. Youssef I*, 541 F. Supp. 2d at 132-33 n.10 (recognizing that "[b]ecause DocEx was a new program, it lacked an established place within the FBI's organizational 'structure.'").  While these pressures were certainly neither the direct nor but-for cause of Plaintiff's assignment to DocEx (and Defendants never argued that they were), the operating environment at that time is nonetheless important as the context in which (1) CTD officials did not respond to Plaintiff's telephone calls in September-October 2001 and (2) the FBI made its decision to assign Plaintiff to DocEx on a TDY basis in March 2002.  In any event, even if Plaintiff was "victimized by poor selection procedures," as Plaintiff seems to believe, that is not sufficiently probative evidence of pretext.  *Fischbach*, 86 F.3d at 1186.  Because Plaintiff offers nothing to demonstrate pretext other than his unfounded opinions and speculative second-guessing of FBI CTD managers, Defendants are entitled to judgment as a matter of law.

> **D.**     **Plaintiff's Characterizations About DocEx and His Role There Do Not Establish Pretext.**

Plaintiff has attempted to obfuscate the narrow, straightforward issue presented in this case by mischaracterizing and confusing the record.   Despite Plaintiff's distortions, the record establishes indisputably that the FBI had legitimate and nondiscriminatory reasons for temporarily assigning Plaintiff to DocEx in March 2002, and Plaintiff has failed to establish that these reasons were pretextual.

As noted, Caruso is the official who made the decision to assign Plaintiff to DocEx.  The undisputed evidence shows that Plaintiff was on detail to NCIX at the time he and Caruso met.  Deposition of Bassem Youssef ("Youssef I Depo") (Ex. 10) at 224.  Prior to that meeting, Watson advised Caruso that Plaintiff was looking to work in CTD, and Watson asked if Caruso could help find Plaintiff a position.   Defs.' SMF ¶¶ 45-46; Caruso Depo (Ex. 25) at 52, 61-62.  Watson also advised Pasquale D'Amuro, the Inspector-in-Place for the FBI's 9/11 Investigation, that Plaintiff could play a helpful role in setting up DocEx.  Defs.' SMF ¶ 48.

The undisputed evidence further demonstrates that when Plaintiff and Caruso met in late February or early March 2002, Caruso knew little about Plaintiff or his FBI career.  Plaintiff and Caruso briefly touched on Plaintiff's background during their meeting.  *See* Youssef I Depo (Ex. 10) at 19, 224-225; Deposition of Bassem Youssef ("Youssef II Depo") (Ex. 26) at 35; Caruso Depo (Ex. 25) at 64.  Plaintiff noted that Caruso was "complimentary" of Plaintiff's background during their discussion.  Youssef I Depo at 224.  Recognizing Plaintiff's Arabic language skills and understanding that there was a need for people to assist at DocEx, Caruso made the "marriage in his head" that Plaintiff would be a good fit for the DocEx offsite facility.  Caruso Depo at 63.  Caruso explained to Plaintiff that he and other CTD executives believed there was an urgent need to quickly review and assess the large volume of materials that were "coming off the desert floors of Afghanistan."  Caruso Depo at 68.  Caruso added that the DocEx position was just an offer and that Plaintiff was free to say no to the assignment.  Caruso Depo at 64.  Plaintiff thanked Caruso, and Caruso never heard from Plaintiff again.  Caruso Depo at 54; Youssef II Depo at 110-11.   Thus, contrary to Plaintiff's allegations, *see* Pl.'s SJ

Opp. Memo 23-24, the record evidence in this case clearly establishes that FBI

managers—particularly Watson and Caruso—took an interest in placing Plaintiff in CTD

and in fact acceded to his request by assigning Plaintiff on a TDY basis to the offsite

component of DocEx.[6]

      Plaintiff's assertions to the contrary, the record evidence also demonstrates that

FBI leaders viewed DocEx, including the offsite component, as a critical

counterterrorism priority.  Defs.' SMF ¶¶ 16-23; 30-32.  Caruso testified that he

understood there was a critical need for assistance in DocEx to expedite the review of

documents, which he and other FBI executives believed contained information related to

potential terrorist threats.  Defs.' SMF ¶ 17; Caruso Depo (Ex. 25) at 68-69.  Thomas

Kinnally, the official in charge of the DocEx project at the time of Plaintiff's assignment,

Defs.' SMF ¶¶ 14-15, testified that he needed people experienced in working with

"actionable intelligence," Deposition of Thomas Kinnally ("Kinnally Depo") (Ex. 27) at

42, and that Plaintiff was assigned to DocEx to "help review documents to determine if

there was any terrorist threat to the United States or for that matter to any of the military

over in Afghanistan." *Id*. at 52.  Plaintiff has offered no evidence to contradict this

---

[6] Plaintiff's argument that FBI Acting Deputy Assistant Director for Counterintelligence William Chornyak's alleged failure to find him counterterrorism work is a pretext for discrimination, *see* Pl.'s SJ Opp. Memo 21-22, is unavailing.  The record establishes that Chornyak proposed a number of possible assignments in CID to Plaintiff.  Deposition of William Chornyak ("Chornyak Depo") (Ex. 24) at 39-44, 50-53. As this Court determined, Plaintiff cannot make out a claim of discrimination based on Chornyak's recommendation that Plaintiff accept an assignment to the budget office in CID because, as Plaintiff never transferred to this unit, he "could not have suffered an adverse employment action in this regard." *Youssef I*, 541 F. Supp. 2d at 165.  Further, it is undisputed that, as an employee of CID, not CTD, Chornyak had no involvement in the decision to assign Plaintiff to DocEx.  *See* Pl.'s SJ Opp. Memo 33.  *See also* Chornyak Depo at 71-72.  Nor does Plaintiff explain how Chornyak's failure to get Plaintiff a position at FBI headquarters demonstrates that Caruso's reasons for placing him in DocEx was a pretext for discrimination.

testimony, but instead merely offers his opinion that the DocEx offsite was not nearly as important as FBI executives believed.[7]

In addition, the role that FBI officials believed Plaintiff would be performing in DocEx informs the legitimacy of the FBI's justification for assigning Plaintiff there on a TDY basis in March 2002.  In the ever-shifting operating environment in the FBI's CTD after the 9/11 terrorist attacks, critical functions and personnel assignments often were filled on an ad hoc, temporary basis and did not include an official job title.  *See* Defs' SMF ¶¶ 5-7, 33-34.  Moreover, others perceived Plaintiff to be fulfilling an important function.  As Supervisory Special Agent Scott Harper testified, agents were assigned to fulfill certain new functions, as they arose, and to make sure whatever work needed to be completed got done.  Deposition of Scott Harper ("Harper Depo") (Ex. 28) at 50-63. Although Plaintiff now disparages the work he performed at DocEx, even he has testified that he used his Arabic language skills to review documents from Afghanistan, Youssef I Depo (Ex. 10) at 263-64, and that he assessed whether such documents were "worthwhile" for intelligence purposes.  *Id.* at 268. *See also Youssef I*, 541 F.Supp.2d  at 133 n.11  (noting that Plaintiff's disparaging characterization of his role at DocEx is undercut by his own deposition testimony).

Further, although Caruso candidly acknowledged that Plaintiff's role at the DocEx offsite might not have been "glamorous," it nevertheless was an important

---

[7] Plaintiff's criticism of the FBI's reliance on several electronic communications ("ECs") that were sent to FBI Senior Executives, including Caruso, during February through early April 2002 is misplaced.  Pl.'s SJ Opp. Memo 27-28.  These ECs discuss the establishment of DocEx, its role in the FBI's counterterrorism response, including the investigation of Al Qaeda and Osama Bin Laden, and the large volume of materials in need of exploitation.  *See* Dec. of Deborah A. Crum ("Crum Dec.") (Defs.' SJ Memo Ex. G), Exs. 4-7. The ECs constitute contemporaneous evidence of the priority ascribed to DocEx by FBI leaders in February 2002 and the sense of urgency that FBI leaders understood with respect to the review of materials at DocEx.

counterterrorism role that the FBI needed filled at that time.  Defs.' SMF ¶ 57.  Harper

recalled that Plaintiff assessed materials that came into the offsite and prioritized them for

FBI analysis.  Harper Depo (Ex. 28) at 35-37, 57.  Harper also testified that he was

responsible for DocEx functions at FBIHQ while Plaintiff, the sole GS-15 Supervisory

Special Agent at the offsite location, was in charge there.  Harper Depo at 47-64, 81.

Special Agent Deborah Doran testified that she considered Plaintiff to be her supervisor.

*See* Deposition of Deborah Doran ("Doran Depo") (Ex. 30) at 115-124; 143-45; Doran

Dec. (Ex. 13) at ¶ 21.  Similarly, D'Amuro stated that Plaintiff was sent to on a TDY

basis DocEx to "manage the Document Exploitation project." Dec. of Pasquale D'Amuro

(Defs.' SJ Memo Ex. E) ¶ 6.[8]

      Thus, the undisputed evidence shows that others perceived Plaintiff to be the FBI

official responsible for the DocEx offsite location.  And even though Plaintiff was not

given a formal title or job description for the TDY assignment he was provided in March

2002, there is no question Plaintiff was given an opportunity to assist the FBI in fulfilling

its number one priority at that time: the prevention of another terrorist attack.

      In addition, as noted above, Plaintiff never expressed any discontent with his

assignment to DocEx to those responsible for his being there.  Caruso testified that, after

his meeting with Plaintiff, he never heard from Plaintiff again.  Defs' SMF ¶ 73.  Both

D'Amuro and Kinnally testified that they were not aware that Plaintiff wanted another

---

[8] In his written comments in support of Plaintiff's application for the permanent Unit Chief for DocEx,
D'Amuro stated:  "SSA Youssef has been assigned to DOCEX for approximately seven months.  As such,
he has operational familiarly with *managing* the tremendous volume of documents and evidence obtained
pursuant to overseas military raids and covert intelligence operations.  SSA Youssef is familiar with the
processing and tracking of evidence, the review of documents and electronic media for potential threat
information, and the assignment of leads for additional investigation and intelligence exploitation."  Crum
Dec. (Defs' SJ Memo Ex. G) at Ex. 8 (emphasis added).  Thus, Plaintiff's argument, Pl.'s SJ Opp. Memo at
30-31, that the FBI's argument that he was assigned to DocEx to perform management duties such as
establishing policies and procedures is an after the fact, fabricated justification is unwarranted.

position in CTD other than DocEx and that Plaintiff never requested or otherwise sought

their assistance in obtaining another position.  Defs.' SMF ¶¶ 71-72.  Similarly, Watson

testified that he never heard from Plaintiff after March 2002.  Deposition of Dale Watson

("Watson Depo") (Ex. 34) at 141.  Finally, Plaintiff never applied for any other

permanent or temporary positions in CTD until he applied for the Unit Chief position for

DocEx in August 2002.  Defs.' SMF ¶ 38; Youssef I Depo at 401.   Accordingly, plaintiff

cannot establish pretext based on his mischaracterizations of the DocEx project.

### E.  Plaintiff Engages in Unwarranted Speculation About Special Agent Doran's Assignment to DocEx.

In his efforts to minimize the significance of his TDY assignment to DocEx,

Plaintiff argues that Special Agent Doran had been assigned to that project because she

was traumatized by the 9/11 attacks and was otherwise "burnt out."  Pl.'s SJ Opp. Memo

9, 12-13.  Plaintiff's reliance on his impression that Doran "was clearly shaken and

emotional when she discussed the attacks, and broke down during the deposition when

the subject of the attacks was first raised," Pl.'s SJ Opp. Memo Ex 3 ¶ 107,  is

particularly misplaced given that Plaintiff was on the telephone during the deposition, not

in the same room as the witness.  Doran Depo (Ex.30) at 66-67.  Moreover, the

deposition transcript does not reflect the kind of emotional breakdown that Plaintiff

alleges, but instead indicates that Doran explained that the time after the 9/11 attacks was

particularly "chaotic" for FBI personnel in New York City.  Doran Depo at 67-71.  Doran

did not testify that she was "burnt out," but she did explain that she was feeling

"exhausted" from having worked on counterterrorism investigations intensively for many

years prior to 9/11 out of the New York Field Office.  *Id.* at 71.  Significantly, Doran

testified that she was exhausted in the context of explaining why she had not wanted to

become a full-time case agent for the 9/11 investigation, a responsibility that would have meant a long-term commitment to counterterrorism work for the indefinite future, and which would have inevitably prevented her from moving into other areas of FBI work. *Id.* at 27-28.

Moreover, despite Plaintiff's disparaging comments, Doran's testimony underscores the importance of the DocEx mission. Doran explained that she initiated her assignment to DocEx on a TDY basis to engage in "firsthand Intel collection" by beginning the process of reviewing and assessing materials that had been collected from Afghanistan. Doran Depo 81-84. She established the organizational structure for processing those materials and began connecting information gleaned therefrom to ongoing terrorism investigations, including the New York office's ongoing investigation of Osma Bin Laden. *Id.* at 85-110. *See also* Doran Dec. (Ex. 30) ¶¶ 13-16. 23. And her efforts at DocEx undercut any accusation that she was burnt out or otherwise emotionally fragile as Doran worked 12-hour days for months on end exploiting the materials for significant information. Doran Dec ¶ 17. In sum, Plaintiff's argument and allegations concerning Doran's assignment to DocEx is disingenuous speculation and, as such, does not constitute probative evidence of pretext.

\*      \*      \*

Plaintiff has not come forward with any probative or admissible evidence that the reasons proffered by Defendants for assigning him to DocEx are false. Therefore, Plaintiff cannot establish pretext and summary judgment is warranted.

## II.     THE LAW OF THE CASE DOCTRINE BARS PLAINTIFF FROM RECYCLING CLAIMS PREVIOUSLY REJECTED BY THIS COURT IN THIS POST-REMAND PROCEEDING.

In a further attempt to demonstrate that the FBI's reasons for his TDY assignment in DocEx were pretextual, plaintiff recycles several arguments that this Court previously rejected and which the D.C. Circuit did not disturb on appeal.  Simply repeating the same baseless allegations does not make them true (or legally relevant or admissible), and this is precisely the sort of tactic the law of the case doctrine is intended to avoid.  *See e.g.*, *Williams v. Johnson*, 747 F. Supp. 2d 10, 16 (D.D.C. 2010) (Kollar-Kotelly, J.).  The law of the case doctrine is based in part on principles of judicial economy and "reflects the general concept that a court involved in later phases of a lawsuit should not re-open questions decided (*i.e.*, established as the law of the case) by that court or a higher one in earlier phases." *New York v. Microsoft Corp*, 224 F. Supp. 2d 76, 88 (D.D.C. 2002) (Kollar Kotelly, J.) (citing *Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 739 (D.C.Cir.1995)).  The law of the case doctrine provides that "the *same* issue presented a second time in the *same case* should lead to the *same result*."  *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (emphasis in the original).  *Cf. Pepper v. United States*,___ U.S. ___, 131 S. Ct. 1229, 1250 (2011) ("[law-of-the-case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks and citations omitted).  Thus, adherence to the law of the case doctrine means that courts must be "'loathe' to reconsider issues already decided in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *LaShawn,* 87 F.3d at 1393 (quoting *Christianson v. Colt Indus.*

*Operating Corp.,* 486 U.S. 800, 817 (1988) and *Arizona v. California,* 460 U.S. 605, 618 n. 8 (1983)).

The Court has consistently applied the law of the case doctrine to reject attempts by a party to re-litigate claims that were conclusively resolved at an earlier stage in the action. *See, e.g.*, *Williams*, 747 F. Supp. 2d at 16 (D.D.C. 2010); *Pro-Football v. Harjo,* 567 F. Supp. 2d 46, 52 (D.D.C. 2008); *Microsoft Corp.*, 224 F. Supp. 2d at 88. And the Court has adhered to the law of the case doctrine following an appeal, as in this case, in which the court of appeals affirmed a decision in part but reversed on a specific point of law and remanded for further proceedings. For example, in *Microsoft,* the Court defined with particularity the law of the case that would guide its efforts on remand to craft an appropriate remedy, *see* 224 F. Supp. 2d at 88-103, stressing that because the Court's factual findings survived challenge on appeal, those findings, much like the D.C. Circuit's legal conclusions, would "comprise the foundation" upon which the remedy would be fashioned. *Id*. at 98. Similarly, in *Pro-Football,* the district court stated that it would not revisit issues resolved in its previous opinions unless it was required to do so by the court of appeals' remand.  567 F. Supp. 2d at 52.

Notwithstanding the law of the case doctrine, Plaintiff has totally ignored this Court's prior Orders and has re-introduced claims that this Court previously rejected and which are outside the scope of the D.C. Circuit's remand. Specifically, Plaintiff again alleges that the FBI unlawfully discriminated against him on the basis of his national origin because the FBI failed to affirmatively place him in some unspecified capacity and for some unidentified position immediately following the 9/11 terrorist attacks. Pl.'s SJ Opp. Memo 40. This Court, however, already determined that Plaintiff cannot pursue his

19

claim that he "was blocked from obtaining meaningful work in his area of expertise post-9/11," stating that the "claim does not allege an adverse employment action, it alleges the status quo. . . . In the absence of identifying other positions to which he applied, it is unclear how Youssef could show that he is basing a claim on anything other than "'[m]ere idiosyncrasies of personal preference [that] are not sufficient to state an injury.'" *Youssef I*, 541 F. Supp. 2d at 164 (quoting *Brown*, 199 F.3d at 457). The D.C. Circuit's decision does nothing to disturb this Court's conclusion that Plaintiff failed to offer evidence of discrimination regarding a discrete employment action in connection with this claim, and this conclusion should constitute the law of the case.

In addition, Plaintiff apparently continues to argue, now under the guise of pretext, that he should have been appointed into a Senior Executive Service ("SES") position within CTD, notwithstanding the fact he neither identified such a position to which he should have been appointed in the immediate aftermath of 9/11 nor applied for such a position until 2007, well after the time that the decision was made to place him in DocEx. Plaintiff alleges that other FBI Special Agents with less experience and expertise in counterterrorism were pre-selected or otherwise "drafted" for permanent SES positions in CTD following the 9/11 terrorist attacks. Pl.'s SJ Opp. Ex 3 ¶¶ 73-75, 105-06.[9] This Court, however, already rejected Plaintiff's allegations regarding pre-selection for SES

---

[9] In support for his argument that he should have been placed in an SES position without having to submit an application, Plaintiff claims that the FBI's Human Resources witness, Timothy Groh, testified that the "official Career Board selection process for promoting employees was like the 'wild west' in the 2002 time frame." Pl.'s SJ Opp. Memo at 20. This claim misstates Groh's testimony. Groh simply noted that during the period prior to 2003, and thus including the time immediately following 9/11, officials on SES Career Boards might have had some leeway to consider subjective criteria or first-hand knowledge about a candidate in connection with making recommendations for selecting FBI agents for posted SES vacancies. Nothing in Groh's testimony supports Plaintiff's allegation that individuals were being appointed into entry-level SES positions without going through the formal application process. *See* Deposition of Timothy Groh (Ex. 16) at 58-62. Accordingly, Plaintiff's assertions concerning placement of Special Agents in SES positions without having applied is not just barred by the law of the case doctrine, but it is factually unsupported (and fails to state a cognizable adverse employment action under Title VII).

positions in two separate orders: (1) in its decision rejecting Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. # 47); and (2) in the decision on summary judgment (Doc. # 125).  *See Youssef I*, 541 F. Supp. 2d at 153-55.  Therefore, because this Court earlier denied Plaintiff's pre-selection arguments as a matter of law, arguments that were not disturbed by the D.C. Circuit's decision, that finding is law of the case and the Court should not revisit Plaintiff's pre-selection arguments.

In addition, Plaintiff blithely ignores the Court's ruling that Plaintiff's claims regarding rumors about him in the FBI are inadmissible.  In his Opposition, Plaintiff claims that Chornyak's testimony regarding rumors regarding Plaintiff constitutes evidence of pretext.  Pl.'s SJ Opp. Memo 35-39.  However, the Court held that this evidence is inadmissible because (1) it constitutes hearsay and (2) Plaintiff has failed "to connect these rumors to any adverse employment action, and fails to present evidence showing that they could, standing alone, constitute an adverse action."  *Youssef I,* 514 F. Supp. 2d at 131-32, 164; *see also id.* at 152 (in connection with his claim that he was discriminated against because he was not selected for a position in SIOC, court noted that Plaintiff had not come forward with any evidence that either any of the Career Board members had heard the rumors or that the rumors factored into the Board's deliberations).  Indeed, Caruso specifically denied that he had any knowledge of these rumors.  *See* Caruso Depo (Ex. 25) at 80-81, as did Watson and D'Amuro.  Watson Depo (Ex. 34) at 94-96; Deposition of Pasquale J. D'Amuro (Ex. 31) at 71-72.  Therefore, Plaintiff cannot attempt to rely on this same evidence to show pretext given the law of the case.[10]

---

[10] Although the court of appeals noted Plaintiff's claims about disparaging rumors in its opinion, *see Youssef*, 687 F.3d at 402-03, it did so only in the context of noting that the trial Court had not had considered whether those rumors might establish pretext because this Court had no reason to address

Finally, Plaintiff bears the burden of establishing the kind of "extraordinary circumstances" required to justify a departure from the law of the case doctrine with respect to matters already conclusively resolved against Plaintiff in this litigation, and Plaintiff has failed to offer *any* justification whatsoever.  Therefore, the law of the case doctrine forecloses Plaintiff's claims that he should have been immediately given a CTD assignment after 9/11, that he otherwise should have been "drafted" into an SES position, and that the alleged rumors about him constitute evidence of discrimination.

III.    **PLAINTIFF'S CLAIM THAT THE FBI FAILED TO IMMEDIATELY ASSIGN HIM COUNTERTERRORISM WORK AFTER 9/11 IS BARRED BECAUSE PLAINTIFF DID NOT FILE A TIMELY CLAIM.**

To the extent Plaintiff seeks to bring a discrimination claim based upon his allegation that the FBI should have given him some unspecified counterterrorism assignment immediately after the 9/11 attacks, such a claim is barred because he failed to pursue it administratively through the EEO process within the 45-day period prescribed by law.  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a).  Plaintiff concedes "there is a 45-day statute of limitations period placed on Mr. Youssef's EEO claim."  Pl.'s SJ Opp. Memo 41.  Plaintiff argues, however, that it was not until March 2002 that he became fully aware of the FBI's discrimination against him on the basis of his national origin following the 9/11 attacks, and that therefore his obligation to seek  EEO counseling was not triggered until that time.  *See id*. at 41-45.   To support his theory, plaintiff claims that Watson failed to return a telephone call that Plaintiff allegedly made

---

pretext in the proceedings prior to remand.  However, the court of appeals did not question this Court's ruling on the admissibility of this proffer of evidence.  *Id.*

to Watson's office on September 12, 2001, Pl's Opp Memo 42;[11] other FBI officials

allegedly did not respond to his expressed interest in helping with the 9/11 investigation,

*id*.; Bill Chornyak was not helpful to Plaintiff's cause, *id*. at 42-43; Plaintiff was "persona

non grata," *id*. at 43; and Plaintiff was "sidelined" by management.  *Id*.  Plaintiff further

contends that, despite his unsuccessful attempts to obtain a position in CTD immediately

after the 9/11 attacks, he did not realize the FBI intended to exclude him from

counterterrorism work until he was told by Chornyak that he would be assigned to work

in CID's budget unit, after which he submitted his request for EEO counseling.  *Id*.

Contrary to Plaintiff's arguments, he previously has testified that he believed he

was discriminated against when Watson failed to return his telephone call on September

12, 2001 and two CTD managers did not seek his assistance in the FBI's response to the

9/11 attacks after he spoke with them sometime between late September and the end of

October 2002.  Youssef I Depo (Ex. 10) at 123 (in the context of discussing calls he made

immediately after 9/11, Plaintiff testified that he was "being blocked wilfully for no good

reason other than I'm of Middle Eastern background.").  Under the governing

regulations, Plaintiff was required to initiate contact with an EEO counselor within 45

days of when he reasonably suspected that an alleged adverse employment action was

discriminatory.  *Armstead v. Jewell,* 958 F. Supp. 2d 242, 245 (D.D.C. 2013); *Hines v.*

*Bair,* 594 F. Supp. 2d 17, 22 (D.D.C. 2009).  *See also Nat. R.R Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 105 (2002) (Title VII "precludes recovery for discrete acts of

discrimination or retaliation that occur outside the statutory time period").  "Plaintiff was

---

[11] Plaintiff alleges that he called Watson and left a message with his secretary on September 12, 2001. Youssef I Depo (Ex. 10) at 121-22.  Not hearing back, Plaintiff never followed up on his message with Watson (or Watson's secretary) because he did not want to seem "pushy." *Id.*  Watson testified that he did not recall ever receiving a message from Plaintiff.  Watson Depo (Ex. 34) at 140-41.

not entitled to wait until he had direct evidence of discrimination before contacting an EEO counselor." *Armstead*, 958 F. Supp. 2d at 247; *Hines,* 594 F. Supp. 2d at 22.  Here, despite having believed he had been mistreated by CTD officials in September-October 2001, Plaintiff failed to initiate counseling until March 5, 2002.  Thus, any claim of discrimination based on these alleged adverse employment actions is untimely.[12]

Further, Plaintiff cannot salvage his untimely claims by means of the continuing violation theory because he has never articulated a hostile work environment claim in this case.  As the court noted in *Hines*, "[f]or statute of limitations purposes, a continuing violation is 'one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period[.]' " 594 F. Supp. 2d at 24 (quoting *Taylor v. F.D.I.C.*, 132 F.3d 753, 765 (D.C. Cir. 1997).   Here, Plaintiff himself has testified that he believed he "was being blocked wilfully for no good reason" based on his "Middle Eastern background" in the fall of 2001 and, thus, at that time Plaintiff knew or should reasonably have known that of the FBI's alleged discrimination against him on the basis of his national origin. [13]  Therefore, Plaintiff's claim that the FBI's failure to assign him to an unspecified, unidentified CTD position in the immediate aftermath of 9/11is untimely.

---

[12]   Even though the FBI accepted for investigation Plaintiff's claim that he had been excluded from a meaningful position in CTD since 9/11, the agency's acceptance of an issue for investigation does not constitute a waiver of the timeliness defense. *Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001).

[13] Defendants do not dispute that Plaintiff can introduce evidence about his attempts to find a position in CTD immediately after 9/11 to demonstrate that Defendants' proffered reasons are a pretext for discrimination. *Morgan*, 536 U.S. at 113.  Yet, for the reasons explained *supra* at 4-21, Plaintiff has failed to proffer probative and admissible evidence of pretext with respect to this or any other issue.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment, and Plaintiff's case should be dismissed.


Dated:  March 11, 2014                                   Respectfully submitted,

                                                        STUART F. DELERY
                                                        Assistant Attorney General

                                                        RONALD R. MACHEN
                                                        United States Attorney

                                                        JOSHUA E. GARDNER
                                                        Assistant Director
                                                        Federal Programs Branch

                                                        CARLOTTA P. WELLS
OF COUNSEL:                                              ADAM SIPLE
                                                        Attorneys
KATHLEEN O'NEILL-TAYLOR                                  United States Department of Justice
Office of General Counsel                                Civil Division
Federal Bureau of Investigation                         Federal Programs Branch
                                                        20 Massachusetts Ave., N.W.
                                                        Washington, D.C. 20530
                                                        Tel: (202) 305-7664
                                                        Fax: (202) 616-8460

                                                        Counsel for Defendants