# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BASSEM YOUSSEF** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:03-cv-1551 (CKK) |
| | ) |
| **LORETTA E. LYNCH**, | ) |
| Attorney General, | ) |
| U.S. Department of Justice | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JOINT PRETRIAL STATEMENT

Plaintiff Bassem Youssef and Defendant U.S. Department of Justice, pursuant to

Local Civil Rule 16.5(b) and this Court's orders, including its January 1, 2015, Pretrial

Scheduling and Procedures Order "Pretrial Order" (ECF No. 326), file this Joint Pretrial

Statement.

I.     **Parties and Counsel**
    **Plaintiff:**    Bassem Youssef
                c/o
                Kohn, Kohn & Colapinto, LLP


    **Plaintiff's**
    **Counsel:**    Stephen M. Kohn, sk@kkc.com
                David K. Colapinto, dc@kkc.com
                Kohn, Kohn, & Colapinto, LLP
                3233 P Street, N.W.
                Washington, D.C. 20007
                (202) 342-6980

    **Defendant:**    Loretta E. Lynch
                United States Attorney General
                950 Pennsylvania Avenue, NW
                Washington, DC 20530-0001

**Defendant's
Counsel:** Carlotta P. Wells
Adam Siple
Kieran Gostin
Susan K. Ullman
Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
P.O. Box 883
Washington, D.C. 20044

## II.    Joint Neutral Statement of the Case

Plaintiff Bassem Youssef brought this action under Title VII of the Civil Rights

Act.  Plaintiff worked as a Special Agent for the Federal Bureau of Investigation.  He

claims that his assignment by the FBI to the Document Exploitation project (DocEx

project) in March 2002 was motivated by national origin discrimination.   Defendant

asserts that this assignment  was made for legitimate business reasons and did not

constitute discrimination.

## III.   Claims

### A.    Plaintiff's Statement of the Case

This case was filed pursuant to Title VII of the Civil Rights Act of 1964,

*as amended*, alleging that the FBI discriminated against Mr. Youssef on the basis

of  his national origin (Arab).  Mr. Youssef was transferred to the DocEx project

on or about March 14, 2002.  On March 14, 2002 Mr. Youssef filed his initial

EEO complaint seeking counseling on the basis of discrimination in violation of

Title VII of the Civil Rights Act (national origin).  Mr. Youssef exhausted his

administrative remedies during this counseling period and filed a complaint

within the FBI EEO process on July --, 2002, again alleging national origin

discrimination.  On July 18, 2002, Mr. Youssef filed his initial complaint in

federal district court, and on October 25, 2004 this complaint was amended.  On

March 30, 2008 Mr. Youssef's national origin discrimination complaint was

dismissed by the District Court.  On September 13, 2012 the U.S. Court of

Appeals for the District of Columbia remanded the case back to the district court

to adjudicate Mr. Youssef's claim of national origin discrimination related to his

assignment to the DocEx project.  On December 2, 2014 the U.S. District court

denied Defendant's second motion for summary judgment on the national origin

claim.

**B.    Plaintiff's Statement of Claims**

1.  Whether Mr. Youssef's transfer to DocEx was motivated by national origin discrimination.

2.  Whether Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and his inability to obtain such a position, constitutes evidence that his transfer to DocEx was pretextual.

3.  Mr. Youssef is requesting that the jury find that his transfer/TDY placement to the DocEx project constituted adverse action, as he experienced an extraordinary reduction in responsibilities constituting an adverse action under Title VII of the Civil Rights Act.

4.  Whether Mr. Youssef's over-qualification for the tasks he was assigned at DocEx offsite constitutes evidence of discrimination or pretext.

5.  Whether evidence of the following, taken collectively or individually, demonstrates that the FBI discriminated against Mr. Youssef when he was transferred to the DocEx Project:

    a.  Assigning Mr. Youssef to search for office space while he worked at DocEx Project constitutes evidence of pretext and adverse action

b.  The FBI's argument that its failure to properly assign Mr. Youssef to work commensurate with his back ground and experience (i.e. its transfer of Mr. Youssef to the DocEx project) was justified because Mr. Youssef failed to apply for other positions constitutes pretext.

c.  The FBI's argument that its failure to properly assign Mr. Youssef to work commensurate with his background and experience (i.e. its transfer of Mr. Youssef to the DocEx project) was justified because of "chaos" after the 9/11 attacks constitutes pretext.

d.  The FBI's argument that Mr. Chornyak "assisted plaintiff in his efforts to find counterterrorism work" after the 9/11 attacks constitutes evidence of pretext.

e.  The FBI's contention that senior FBI managers assisted Mr. Youssef in finding work in counterterrorism after the 9/11 attacks is not accurate and constitutes evidence of pretext.

f.  The fact that Mr. Youssef's skills were not critically needed in DocEx contradicts the FBI's stated reason for the transfer to DocEx and constitutes evidence of pretext

g.  The FBI's argument that senior managers learned of Mr. Youssef's interest in counterterrorism at the same time as his appointment to DocEx is not true and constitutes evidence of pretext.

h.  The FBI's exaggeration and false statements regarding the critical role of DocEx is not truthful and constitutes evidence of pretext.

i.  The FBI's assertion that Mr. Youssef was the "senior management" official assigned to the DocEx offsite is misleading and constitutes evidence of pretext.

j.  The FBI's explanation of why Mr. Youssef was assigned to the DocEx offsite was not truthful and constitutes evidence of pretext.

k.  Mr. Caruso's explanation of how Mr. Youssef was assigned to the DocEx project is evidence of pretext.

6.  Mr. Youssef is requesting that the jury find his assignment to DocEx, and the nature of his work assignments therein, constituted an adverse action and were motivated, in whole or in part, by discrimination against him because of his national origin.

7. Mr. Youssef is requesting that the jury find that the failure to properly assign him to work that conformed to his rank, his background and experience and his unique expertise after the 9/11 terrorist attacks is evidence that his transfer to DocEx constituted an adverse action and was motivated by discrimination against him because of his national origin.

8. Mr. Youssef is requesting that the jury find that Mr. Youssef's assignment to DocEx, and the nature of his work assignments therein, constituted an adverse action in violation of Title VII and caused Mr. Youssef to suffer compensatory damages that include, but are not limited to, emotional distress, loss of reputation, and humiliation, and award him appropriate damages for these losses.

9. Mr. Youssef is requesting the Court to grant economic damages and equitable relief including, but not limited to, notice posting in the FBI of employee rights, all economic damages that resulted from Mr. Youssef's assignment to the DocEx project and instatement into a position for which he would have held within the FBI if he had been properly assigned after the 9/11 attacks, and if he had not been transferred into the DocEx position, but instead into a position that was commensurate with his background and experience. The Court will decide this part of the case after a jury trial.

10. Mr. Youssef is requesting the Court to grant all reasonably incurred attorney's fees and costs.

11. Mr. Youssef is requesting that the FBI's personnel records be amended to reflect the position that Mr. Youssef would have attained had he not been subjected to discrimination. The Court will decide this part of the case after a jury trial.

## IV.    Statement of Defendant's Defenses to Plaintiff's Claims

Defendant contends that it did not discriminate against Plaintiff on the basis of his national origin when the FBI assigned Plaintiff, at his request, to a temporary duty position in DocEx in early 2002.

Plaintiff was a GS-15 manager when he was assigned TDY to DocEx in March 2002. Plaintiff's assignment to DocEx was made in the aftermath of the September 11, 2001 terrorist attacks. These attacks galvanized the FBI and caused a top to bottom transformation of the Bureau. After 9/11, the FBI's

primary focus shifted to identifying terrorist threats to the United States and preventing future terrorist attacks.  The FBI operated on a 24/7 basis for many months after 9/11, working not only to investigate the 9/11 attacks but also to ensure that other, possibly imminent attacks would not occur.  During this period of time, as many resources as possible were devoted to the FBI's counterterrorism efforts.  As part of the agency's build-up, it became apparent that the FBI needed to completely reorganize and expand the Counterterrorism Division (CTD).  Although the process of identifying and developing the functions and capabilities of a transformed CTD began immediately following 9/11, a permanent structure for CTD was not adopted until July 31, 2002, and even then it took months to staff permanent positions.   Several of the components in what became the established, post-9/11 CTD   developed organically:  as a need was identified in the aftermath of the terrorist attacks, a rough structure was established and personnel were located, usually on a temporary duty (TDY) basis, to staff the particular undertaking.

One of the new capabilities that the FBI came to realize that it needed after 9/11  was a large scale document exploitation capability to further the FBI's efforts to gather intelligence relating to the 9/11 attacks and to prevent future terrorist attacks.  Senior FBI officials determined that it was essential for the FBI to translate, analyze, and process materials captured in overseas raids of suspected terrorist locations as expeditiously as possible.  Thus, the DocEx project was conceived in December 2001 to enable the FBI to effectively review and analyze documents and electronic media seized during military operations in Afghanistan

6

and other overseas locations.  While other intelligence agencies already were reviewing these sensitive materials, FBI leadership concluded that it needed to undertake its own review tailored to its unique law enforcement purposes.  From its inception, the DocEx project was considered a priority within the FBI because leaders believed that the exploitation of information reviewed and processed by DocEx could help advance the investigation of the 9/11 attacks as well as prevent another terrorist attack in the United States.  From December 2001 until January 2003, when the FBI stood up the Document Exploitation Unit within the Communications Exploitation Section of officially reorganized CTD, the DocEx Project was not part of the FBI's formal structure but rather was in bureaucratic limbo.  During this transitional time, including when Plaintiff was assigned there in March 2002, the DocEx project was managed and staffed on an ad hoc basis through temporary duty assignments.  There were no formal positions, job descriptions, or job titles.  Individuals were assigned to fill temporary roles, as needed, to further the FBI's mission.

Plaintiff's temporary duty assignment to DocEx did not constitute an adverse employment action.  Plaintiff's placement was non-competitive as well as temporary; he did not compete for the job, and there was no intent on the part of FBI managers that Plaintiff was either in a permanent position or could not be available for other assignments.  Plaintiff maintained the same grade and pay in his temporary duty assignment to DocEx.  Further, as a GS-15 Supervisory Special Agent, the FBI expected that Plaintiff would take responsibility for the FBI's mission at the DocEx off-site facility at a time when DocEx was still in its

7

formative stages and when the FBI considered the triage of information coming into DocEx to constitute a priority goal.

By way of background, at the time of Plaintiff's temporary assignment to DocEx, Plaintiff was neither working at the FBI nor assigned to a permanent FBI position.  Since July 2000, Plaintiff had been serving in a detail position at the CIA; in this position, Plaintiff reported to the National Security Division (NSD)[1] at FBI Headquarters (FBIHQ).  Plaintiff's detail was expected to last for two years, or until July 2002, but after the 9/11 attacks Plaintiff desired a new assignment within the FBI's CTD.  Plaintiff never submitted an application for any permanent or temporary duty CTD position during the period from September 2001 to March 2002.  Instead, Plaintiff claims he telephoned three managers within CTD shortly after the 9/11 attacks to express his interest in lending a hand with the FBI's terrorism investigation.  Plaintiff also consulted with William Chornyak, an Acting Deputy Assistant Director in NSD, about finding a CTD position at FBIHQ.  Chornyak had no authority for placing an employee in CTD, but mentioned the fact that Plaintiff was looking for a CTD position to Dale Watson, the Executive Assistant Director for NSD and CTD.  Watson, who had interacted with Plaintiff when Plaintiff was serving as the Legal Attaché in Saudi Arabia, suggested that Chornyak bring the matter to the attention of James Caruso, the Deputy Executive Assistant Director for NSD and CTD.

Both Chornyak and Watson talked to Caruso about whether there was a

---

[1] The NSD was inadvertently referred to as the Counterintelligence Division and as "CID" in earlier briefing.  However, the Counterintelligence Division, which is frequently referred to as "CI," not "CID," did not come into existence until December 2002.  Prior to that time, counterintelligence was under the purview of NSD.

position Plaintiff could fill in CTD.  Watson told Caruso that Plaintiff was an

Arabic speaker and that it would be helpful to have Plaintiff come to work for

CTD.  Watson also informed Pasquale D'Amuro, the Chief of the 9/11

Investigation, that Plaintiff could be useful in helping to set up DocEx.

Around this same time period, Thomas Kinnally, Chief of the Domestic

Preparedness Section, who was responsible for setting up the DocEx project,

informed Caruso that DocEx needed an employee proficient in Arabic and with

experience in counterterrorism in order to detect information in the seized

materials concerning any potential terrorist threats against the United States.

Kinnally sought an agent who could put the information together because of

language ability, experience in working with actionable intelligence, and

experience with the day-to-day operations of terrorism cases.

In late February 2002, Plaintiff met with Caruso to discuss finding

Plaintiff a place to work in CTD.  During their meeting, Plaintiff explained to

Caruso that he was looking to lend a hand in the counterterrorism area.  Plaintiff

also touched on his professional background with Caruso during the meeting.

Although Caruso did not have any personal knowledge of Plaintiff beyond their

February 2002 meeting, he determined that, in part based on what he had been

told about Plaintiff's counterterrorism experience and his language skills, Plaintiff

would be a good fit for the DocEx project.  Caruso explained to Plaintiff that the

FBI needed assistance in a temporary position at the DocEx project.  Caruso told

Plaintiff that the TDY work at DocEx might not be glamorous, but stated the

country, and the FBI, needed the critical work to be done.  Plaintiff indicated to

Caruso that he was interested in the TDY position at DocEx. Caruso later informed Plaintiff that he would be assigned to the DocEx project on a TDY basis. Caruso also informed Kinnally that he had located an employee who was proficient in Arabic and had counterterrorism experience to assist with the DocEx Project.

As of March 2002, when Plaintiff received his temporary assignment, the DocEx project was loosely configured into two functional components. There was a DocEx team located inside the FBIHQ, which focused primarily on ensuring that leads generated from intelligence gleaned from materials processed by DocEx were communicated to appropriate field offices. Plaintiff was assigned to the FBI DocEx team located at an offsite facility, which was responsible for receiving the large volume of materials from Afghanistan and other overseas locations, reviewing the content of the materials for purposes of setting leads, and establishing procedures for chain of custody so that the materials and information in DocEx could be effectively stored and retrieved for use in counterterrorism investigations and prosecutions. The DocEx offsite facility was also supported and staffed by other federal intelligence agencies.

The senior FBI management officials who knew of Plaintiff's temporary assignment to DocEx intended that Plaintiff would be in charge of the FBI's mission at the offsite location and responsible for ensuring the FBI's mission there. Other FBI employees also perceived Plaintiff to be the FBI official responsible for achieving the FBI's mission at the DocEx offsite facility.

Plaintiff never expressed dissatisfaction with his temporary assignment to

DocEx to anyone within his chain of command, nor did he communicate to any CTD official that he would rather take on another CTD position, whether temporary or permanent.  Further, Plaintiff never submitted an application for any other positions in CTD—whether temporary or permanent—until August 2002, when he submitted an application for the permanent position of Unit Chief of DocEx.

The FBI had compelling and legitimate business reasons for temporarily assigning Plaintiff to DocEx in March of 2002.  Faced with the necessity of obtaining critical information contained in documents and electronic media from terrorist raids reviewed and analyzed as quickly and meaningfully as possible for potential terrorist threats as well as for investigative value, FBI senior managers responded to Plaintiff's offer of assistance by assigning him to a temporary position at the DocEx offsite facility, where they believed his language ability and prior counterterrorism experience could be put to good use.

In summary, Defendant's defenses are as follows:

1. Plaintiff's assignment to a temporary position in DocEx in March 2002 did not constitute an adverse employment action.  Plaintiff's placement was non-competitive and voluntary.  Contrary to Plaintiff's claim that the assignment stymied his career, Plaintiff was provided with an opportunity in the hectic and evolving post-9/11 CTD to fill out and take control of a newly identified priority for the FBI—the triage, analysis, review, and processing of large quantities of information seized from terrorists in order to identify intelligence for use in investigating past terrorist attacks as well

as preventing the occurrence of future attacks.  Plaintiff's failure to maximize his potential in a new and important role cannot be attributed to the FBI.  Further, to the extent Plaintiff was dissatisfied, nothing precluded him from seeking other jobs either at FBIHQ or in an FBI field office.

2.      The FBI had legitimate business reasons for placing plaintiff in the temporary position at DocEx.  The FBI had a critical need to be filled: the triage, analysis, and organization of a large volume of materials by an employee with Arabic language skills and counterterrorism experience. The Deputy Executive Assistant Director for Counterterrorism and Counterintelligence determined that Plaintiff filled this need as of March 2002, a time when Plaintiff was looking for a non-competitive placement in CTD.  Thus, Plaintiff's assignment was not based on national origin discrimination.

3.      Plaintiff has included a mixed-motive instruction in his proposed jury instructions.  The FBI objects to Plaintiff proceeding on a mixed-motive theory and to the presentation of this instruction to the Court.  However, to the extent that Plaintiff is permitted to present a claim based on a mixed-motive theory, Defendant would present a same-decision defense.

V.      **The Parties Stipulations of Fact to be Read to the Jury**

1.      The Plaintiff in this case, Mr. Bassem Youssef, was born in Cairo, Egypt on November 8, 1958.

2.      In 1972, at the age of 13, Mr. Youssef immigrated to the United States with his family and became a US Citizen.

3.      Mr. Youssef joined the FBI as a GS-10 Special Agent on March 7, 1988.

4.      Mr. Youssef was assigned to the St. Louis FBI field office from June 1988 through May 1992.

5.      Mr. Youssef was assigned to the Los Angeles Field office from May 1992 through February 1997.

6.      Mr. Youssef served as the FBI's Legal Attaché (Legat) in Riyadh, Saudi Arabia from February 1997 through June 2000.

7.      Mr. Youssef later applied for and was selected to serve as the FBI's Chief Administrative Officer at the National Counterintelligence Center (NACIC) located at the Central Intelligence Agency.  This was a GS-15 detail position, and Mr. Youssef began serving in the position at the NACIC in July 2000.

8.      On January 5, 2001, the NACIC was eliminated by Executive Order of President Bush, and a new organization similar to the NACIC was established, known as the Office of the National Counterintelligence Executive (NCIX).

9.      As a result of the presidentially directed transformation of the NACIC to the NCIX, the position to which Mr. Youssef had been detailed was adjusted.  Mr. Youssef remained at the NCIX and continued working there following the reorganization.

10.     After the terrorist attacks on September 11, 2001, Mr. Youssef desired a job in the Counterterrorism Division (CTD) of the FBI.

11.   In early 2002, Mr. Youssef talked with William Chornyak, an acting Deputy
      Assistant Director within the National Security Division about his interest in
      finding positions at FBIHQ and expressed interest in working in CTD.

12.   Because he was a manager within NSD, Mr. Chornyak had no authority to assign
      Mr. Youssef to a position within CTD.  However, Mr. Chornyak did make efforts
      to help Mr. Youssef pursue his interest in being reassigned from his detail
      position to FBIHQ.

13.   In February or March of 2002, Mr. Youssef met with James Caruso, Deputy
      Executive Assistant Director for Counterterrorism and Counterintelligence about
      Mr. Youssef's interest in working in CTD.

14.   Mr. Youssef was assigned to work on the DocEx Project in March of 2002.

15.   At the time of his assignment to the DocEx Project, Mr. Youssef was a GS-15
      Supervisory Special Agent (SSA).

16.   On March 22, 2002, Mr. Youssef contacted the FBI's Equal Employment
      Opportunity Office.

17.   Mr. Youssef applied for and was selected to fill the position as the permanent
      DocEx Unit Chief; he assumed this position on January 27, 2003.

## VI.   Witnesses

### A.  Witnesses to Be Called by Plaintiff

Defendant's objections to Plaintiff's proffered testimony are set forth separately
in objections to be filed with the Joint Pretrial Statement as Attachment A,
Defendant's Objections to Plaintiff's Pretrial Statement.

Attachment B is Plaintiff's Response to Defendant's Objections to Plaintiff's
Witnesses and Exhibits.

Attachment C is Defendant's Response to Plaintiff's Objections, which, in part, sets forth responses to Attachment B.

Attachment D is Plaintiff's Reply to Defendant's Response to Plaintiff's Objections (Witnesses and Exhibits)

Plaintiff Bassem Youssef intends to call or to read deposition designations of/from the following witnesses, although not necessarily in this order:

> **(1)  *      Bassem Youssef**
> **c/o Kohn, Kohn & Colapinto, LLC**
> **3233 P St. NW**
> **Washington, D.C. 20007**
>
> **(estimated direct:  5 hours)**

Bassem Youssef, the plaintiff in this matter, will testify concerning every element of this claim.  He will testify about his national origin, that the FBI was aware of his national origin, the fact that the FBI discriminated against him based on his national origin, and the damages he suffered as a result of this discrimination.  Mr. Youssef will testify concerning his background and experience and work history at the FBI, the job assignments he held prior to the 9/11 attacks,  his efforts to obtain meaningful work in counterterrorism after the 9/11 attacks, his assignment to a budget unit position, his assignment to the DocEx project, the work her performed in DocEx, the failure to appoint him as the Acting Unit Chief in DocEx and how his assignments within DocEx were demeaning, discriminatory and were performed at a level below his GS-15 grade.  He will explain that the explanations given by the FBI for his transfer/assignment to DocEx were pretextual, and that the FBI's testimony as to his role in DocEx, and the need for his foreign language expertise in DocEx was misleading, not truthful and pretextual.  Mr. Youssef will testify concerning the damages he suffered, including compensatory

damages, damages to reputation, humiliation, emotional distress and physical harm.  Mr. Youssef was deposed in this matter, and executed a number of sworn affidavits.  The FBI is aware of the contents of these documents.   Also see the statement of expert and lay opinion testimony filed in this proceeding.

Mr. Youssef may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual; (5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given for his transfer into DocEx was pretextual; (6) testimony regarding other facts that reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the "twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx constituted an adverse action.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Mr. Youssef are set forth separately in objections to be filed with the Joint Pretrial Statement.

    (2)   *     **Edward Curran**
                  **31997 Carneros Ave**
                  **Lewes, Delaware 19958**

                  **(estimated direct:  2.5  hours)**

Edward Curran is a previously disclosed witness who was deposed and the Defendant is well aware of the nature of his testimony.  He also testified in the prior trial.   In regard to Mr. Curran's prior court testimony, the subject matters for which he testified in the prior case are also relevant in this matter, except for his testimony that specifically related to inspection certification.  Mr. Curran may testify to all of the matters for which he testified to in the prior trial, except the testimony related to inspection certification. Mr. Curran may testify as to Mr. Youssef's career history within the FBI, including his accomplishments and his professional conduct; to issues related to Mr. Youssef's loss of Reputation and to his professional qualifications; and to the policies and practices of the FBI. He may offer direct, opinion and expert testimony regarding the damages incurred or suffered by Mr. Youssef. Edward Curran may also testify as to whether or not the use of Mr. Youssef after the 9/11 attacks and/or in the DocEx project was reasonable, pretextual, or could be justified under any circumstances. He may also testify to whether or not the FBI could have had any justification for assigning Mr. Youssef to the Budget Unit and/or DocEx. In addition, he may testify that Mr. Youssef's skills and qualifications were in extremely high demand and that the

failure of the FBI to utilize Mr. Youssef after 9/11 could only be explained by discrimination.   He may testify that the transfer to DocEx was an adverse employment action, and explain how the work assignments in DocEx were far below the work assignments given to Mr. Youssef when he was an agent at the GS-12 or GS-13 levels.  The witness is not a retained expert. However, the witness was approved to offer opinion and/or expert testimony in the prior case, and he may offer similar testimony in this case, except as that testimony related to inspection certification. Also see the attached statement of expert and lay opinion testimony filed in this proceeding.

The witness may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual; (5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given for his transfer into DocEx was pretextual; (6) testimony regarding other facts that

reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the "twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx constituted an adverse action.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Mr. Curran are set forth separately in objections to be filed with the Joint Pretrial Statement.

> **(3) *       Louis Freeh**
> **1100 North King Street,**
> **Wilmington, Delaware 19807**
>
> **(estimated direct:  15 minutes)**

Louis Freeh is a prior witness who was deposed by the parties. Certain selections of Mr. Freeh's deposition were admitted during the 2010 trial of this case. Plaintiff will therefore read from the same excerpts of admitted deposition testimony in this proceeding, which are attached to this statement. Mr. Freeh's testimony provides information on Mr. Youssef's qualifications and reputation within the FBI. These excerpts provide direct, opinion and expert testimony regarding the damages incurred or suffered by Mr. Youssef. The witness is not a retained expert.  Plaintiff does maintain the right to try to have Mr. Freeh testify at the trial.

**Defendant's Objection**:  Defendant's objections to Mr. Freeh are set forth separately in objections to be filed with the Joint Pretrial Statement.

> **(4) *       Robert Thompson**

**(estimated direct: 1 hour)**

Robert Thompson is a previously disclosed witness who was deposed.  He will be asked to testify regarding all of the testimony he gave in his deposition. Robert Thompson was Mr. Youssef's direct supervisor while Mr. Youssef was assigned as the lead FBI official at NACIC. Mr. Thompson may provide direct and circumstantial testimony as to the nature and quality of Mr. Youssef's work at NACIC and testify that the transfer to DocEx constituted an adverse action.  Mr. Thompson will describe the position for which Mr. Youssef held prior to his transfer to DocEx, and provide testimony that the DocEx position was at a level far below the last official position for which Mr. Youssef had been selected by the FBI to perform.

 Mr. Thompson may also provide expert testimony as to the needs of the FBI following the 9/11 attacks. The witness is not a retained expert.

Plaintiff expects to call this witness to testify at the trial.  However, his testimony may need to be read in by deposition depending on the address of this witness, which has not yet been determined.

**Defendant's Objection**: Defendant's objections to Mr. Thompson are set forth separately in objections to be filed with the Joint Pretrial Statement.

**(5) *        Dale Watson**
**McLean, Virginia**

**(estimated direct:  1 hour)**

 Dale Watson is a previously disclosed witness who was deposed. He will be called as an adverse witness, and Plaintiff reserves the right to question

him using any and all prior statement he has made related to this case or Mr. Youssef.   Dale Watson served as the Assistant Director of the Counterterrorism Division of the FBI at the time that Mr. Youssef was seeking a position within counterterrorism. Mr. Watson may provide direct and circumstantial testimony as to the decision to place Mr. Youssef in the DocEx project. Mr. Watson may also provide direct, lay opinion, and expert testimony on the needs of the FBI following the 9/11 attacks, the promotional practices of the FBI following the 9/11 attacks, and direct or circumstantial evidence that the decision to transfer Mr. Youssef to DocEx or the failure to assign Mr. Youssef as the Acting Unit Chief (including, but not limited to, the failure to utilize his skills and expertise at DocEx) was pretextual and/or not justified The witness is not a retained expert.

The witness is expected to provide testimony that contradicts the testimony of other witnesses, and contradicts the business justification provided by the Defendant to justify the transfer of the Plaintiff to DocEx.

The witness may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr.

Youssef was transferred into DocEx he was not selected for the Acting Unit Chief

position, while an agent at a lower grade was selected for that position,

demonstrated that the reasons given for his transfer into DocEx was pretextual;

(5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given

for his transfer into DocEx was pretextual; (6) testimony regarding other facts that

reveal the false and pretextual nature of the FBI's supposed legitimate

nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the

"twelve pieces of evidence" cited to in the Memorandum Opinion issued by this

Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx

constituted an adverse action.

This witness may also be questioned on all of the subject areas identified

by the Defendant in either the Rule 26 statements filed by the Defendant or in the

witness statements provided by the Defendant in the pretrial brief.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Mr. Watson are set
forth separately in objections to be filed with the Joint Pretrial Statement.


(6) *         **James Caruso**
              **Annapolis, Maryland**

              **(estimated direct:  1  hour)**

James Caruso is a previously disclosed witness who was deposed. All

prior information contained in his deposition and/or in any prior disclosure is

hereby incorporated by reference. Plaintiff Bassem Youssef may call Mr. Caruso

in his case in chief as an adverse witness. Mr. Caruso was responsible for

facilitating Mr. Youssef's transfer to the DocEx project and may provide direct

testimony as to the reasoning behind this decision. Mr. Caruso may also provide direct, circumstantial and opinion testimony as to the needs of the FBI following the 9/11 attacks, the promotional practices of the FBI following the 9/11 attacks and direct or circumstantial evidence that the decision to transfer Mr. Youssef to DocEx or the failure to assign Mr. Youssef as the Acting Unit Chief (including, but not limited to, the failure to utilize his skills and expertise at DocEx) was pretextual and/or not justified. The witness is not a retained expert.

The witness is expected to provide testimony that contradicts the testimony of other witnesses, and contradicts the business justification provided by the Defendant to justify the transfer of the Plaintiff to DocEx.

The witness may also testify to the following:  (1) Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual; (5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given

for his transfer into DocEx was pretextual; (6) testimony regarding other facts that reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the "twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx constituted an adverse action.

This witness may also be questioned on all of the subject areas identified by the Defendant in either the Rule 26 statements filed by the Defendant or in the witness statements provided by the Defendant in the pretrial brief.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Mr. Caruso are set forth separately in objections to be filed with the Joint Pretrial Statement.

**(7) \***          **Robert Mueller III**
                 **1875 Pennsylvania Ave., NW**
                 **Washington, D.C. 20006**

                 **(estimated direct:  1 hour)**

Mr. Mueller is a previously identified witness who has been deposed. All prior information contained in his deposition and/or in any prior disclosure is hereby incorporated by reference.  Plaintiff Bassem Youssef may call Mr. Mueller in his case in chief as an adverse witness. Mr. Mueller may testify as to the process used to assign Mr. Youssef to a position in counterterrorism in 2002, and the intent of the FBI to make Mr. Youssef's transfer to DocEx a non-TDY position.  He may also testify as the pretextual justification given for his transfer to DocEx and/or how the managers responsible for his transfer lied to him (or

misled him) regarding the reason for his transfer to DocEx.  He may provide expert and opinion testimony on the policies and practices of the FBI, and the need for which the FBI had concerning properly using Mr. Youssef's expertise after the 9/11 attacks, and throughout 2002.  He may also provide direct, opinion and expert testimony as to the needs of the FBI following the 9/11 attacks as well as the promotional and work assignment practices of the FBI in the aftermath of the attacks, as well as direct or circumstantial evidence that the decision to transfer Mr. Youssef to DocEx was based on a pretext.   His testimony will provide further evidence that the reasons given for placing Mr. Youssef into the DocEx position, and the reasons given for not utilizing Mr. Youssef's background, experience and expertise within counterterrorism, were pretextual.

The witness may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual;

(5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given for his transfer into DocEx was pretextual; (6) testimony regarding other facts that reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the "twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx constituted an adverse action.

The witness is also expected to testify that the reasons given for transferring Mr. Youssef into DocEx were false and misleading, and thus evidenced pretext by the managers who approved the transfer.

This witness may also be questioned on all of the subject areas identified by the Defendant in either the Rule 26 statements filed by the Defendant or in the witness statements provided by the Defendant in the pretrial brief.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Mr. Caruso are set forth separately in objections to be filed with the Joint Pretrial Statement.

**(8) \*                   William Chornyak**
**                              Overland Park, Kansas**

**                              (estimated direct:  2 hours)**

Mr. Chornyak is a previously identified witness who has been deposed. All prior information contained in his deposition and/or in any prior disclosure is hereby incorporated by reference.  Plaintiff Bassem Youssef may call Mr. Chornyak in his case in chief as an adverse witness. Mr. Chornyak may testify as to the process used to assign Mr. Youssef a position in early 2002, as well as

expert and opinion testimony on the policies and practices of the FBI, and the reason for which the counterterrorism division did not express an interest in placing Mr. Youssef into a position and/or the reason Mr. Chornyak was unable to place Mr. Youssef into a position within the counterterrorism division. He may also provide direct, opinion and expert testimony as to the needs of the FBI following the 9/11 attacks as well as the promotional and work assignment practices of the FBI in the aftermath of the attacks, as well as direct or circumstantial evidence that the decision to transfer Mr. Youssef to DocEx or the decision to place Mr. Youssef into a budget unit.  His testimony will provide further evidence that the reasons given for placing Mr. Youssef into the DocEx position, and the reasons given for not utilizing Mr. Youssef's background, experience and expertise within counterterrorism, was pretextual. If the FBI does not intend to produce this witness at the trial, plaintiff may seek this witness's testimony by deposition or by video. The witness is not a retained expert.

The witness is expected to provide testimony that contradicts the testimony of other witnesses, and contradicts the business justification provided by the Defendant to justify the transfer of the Plaintiff to DocEx.

The witness may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11

attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual; (5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given for his transfer into DocEx was pretextual; (6) testimony regarding other facts that reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the "twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx constituted an adverse action.

This witness may also be questioned on all of the subject areas identified by the Defendant in either the Rule 26 statements filed by the Defendant or in the witness statements provided by the Defendant in the pretrial brief.

Plaintiff expects to call this witness to testify at the trial. Given the importance of this witness's testimony, if the FBI does not agree to bring this witness to Washington to testify, Plaintiff will seek to have this witness testify via video conferencing. If the witness cannot testify, and Plaintiff is forced to rely on his deposition testimony, Plaintiff has designated deposition pages. These pages are based on the admission of documents for which the witness admitted at the deposition that the documents accurately reflected statements he made to an

FBI EEO investigator.

This court has previously ruled that certain statements by this witness are hearsay.  Plaintiff respectfully disagrees with these findings and will ask the court to reconsider those findings, or otherwise hold that Plaintiff has properly reserved his contention for purposes of appeal.

Regardless of the applicability of the hearsay rule, the witness is competent to testify as to his own state of mind. Hearsay is defined as an out of court statement introduced for the truth of the matter asserted. This means that any testimony given by the witness concerning his own state of mind would not constitute hearsay, because those statements would be rendered in court.   This witness played a key role in the transfer decision of Mr. Youssef.  He testified that he interacted directly with the two officials who made the transfer decision, Mr. Watson and Mr. Caruso, and he discussed Youssef with these persons during the time period for which the transfer decision was made.  Moreover, the witness alleged that he was actively attempting to place Mr. Youssef in a position within counterterrorism.  His statement to the EEO concerning his beliefs about Youssef, and his assessment of his reputation within counterterrorism, are relevant to the witnesses state of mind, and the decisions he made and/or contributed to during the February-March 2002 time period concerning Mr. Youssef.  The witness will testify to his state of mind regarding Youssef, and will testify to the  opinions he held of Youssef based on his national origin during the time period he interacted with the counterterrorism officials ultimately responsible for placing Youssef in DocEx.  Moreover,  the testimony he will give concerning his interactions with

these officials is contradicted by the officials themselves, and these contradictions regarding who had input or involvement in the transfer decision are relevant. .

> **Defendant's Objection**: Defendant's objections to Mr. Chornyak are set forth separately in objections to be filed with the Joint Pretrial Statement.

(9) *                         **Michael Fedarcyk**
                              **Arlington, VA**

                              **(estimated direct:  1  hour)**

Mr. Fedarcyk is a previously identified witness who has been deposed. All prior information contained in his deposition and/or in any prior disclosure is hereby incorporated by reference. Plaintiff Bassem Youssef may call Mr. Fedarcyk in his case in chief as an adverse witness. Mr. Fedarcyk may provide direct, circumstantial and opinion testimony as to the general nature of Mr. Youssef's work in the DocEx project, his specific work assignments, as well as expert and opinion testimony on the policies and practices of the FBI, including but not limited to: promotional procedures; the needs of the FBI after the 9/11 attacks. Mr. Fedarcyk may also provide testimony as to direct or circumstantial evidence that the decision to transfer Mr. Youssef to DocEx or the failure to assign Mr. Youssef as the Acting Unit Chief (including, but not limited to, the failure to utilize his skills and expertise at DocEx) was pretextual and/or not justified.   The witness is not a retained expert.

The witness is expected to provide testimony that contradicts the testimony of other witnesses, and contradicts the business justification provided by the Defendant to justify the transfer of the Plaintiff to DocEx.

30

The witness may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual; (5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given for his transfer into DocEx was pretextual; (6) testimony regarding other facts that reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the "twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx constituted an adverse action.

This witness may also be questioned on all of the subject areas identified by the Defendant in either the Rule 26 statements filed by the Defendant or in the witness statements provided by the Defendant in the pretrial brief.

Plaintiff may call this witness to testify at the trial, or may decide to

question this witness as part of his rebuttal case and/or through cross examination.

**Defendant's Objection**: Defendant's objections to Mr. Fedarcyk are set forth separately in objections to be filed with the Joint Pretrial Statement.

(10)*        **Dr. Edwin Carter, Ph.D.**
             **Associated Clinical Services**
             **8134 Keene Mill Rd. Suite 101**
             **Springfield, VA 22152**

             **(estimated direct:  2  hours)**

Dr. Edwin Carter, Ph.D is a clinical psychologist previously deposed by

the parties. All prior information contained in his deposition, court testimony

and/or in any prior disclosure/expert report is hereby incorporated by reference.

The witness counseled Mr. Youssef intermittently between 2005 and 2007. He

will testify as to the findings in his 2005 and 2008 reports on the emotional state

of Mr. Youssef. He will also testify as to the extent to which plaintiff's claims for

damages derive from work-related issues, or from other factors. The witness has

also reviewed Dr. Mitchell Hugonnet's report on the Mr. Youssef's, and may

offer his opinions on said evaluation.  Dr. Carter will testify that the placement of

Mr. Youssef to DocEx, the failure to utilize his skills and experience, and the

failure to assign Mr. Youssef as the Acting Unit Chief of DocEx caused Mr.

Youssef emotional distress for which Mr. Youssef should be compensated. The

witness is an expert retained by plaintiff Bassem Youssef.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Dr. Carter are set forth separately in objections to be filed with the Joint Pretrial Statement.

(11) *        **Dr. James Sharf**

**SHARF & Associates, Inc.**
**211 North Union Street, Suite 100**
**Alexandria, VA 22314**

**(estimated direct:  2  hours)**

Dr. Sharf, Ph. D., is a previously disclosed witness who was deposed. All prior information contained in his deposition and/or in any prior disclosure/expert report is hereby incorporated by reference. Dr. Sharf produced three expert reports and was extensively deposed by the FBI.  He will provide testimony, including expert testimony, regarding his reports and the subject matters covered in the depositions taken by the FBI.  In addition, Dr. Sharf will provide expert testimony that the reasons given by the FBI for assigning Mr. Youssef to DocEx, for the nature of his work assignments therein, and for not assigning him as Acting Unit Chief of DocEx were pretextual, that according to the FBI's policies and public statements that Bassem Youssef should have been assigned to a position where he could have utilized his skills and expertise and should not have been assigned to DocEx.  He will examine the promotional practices within the FBI after 9/11 and provide expert testimony on whether or not Mr. Youssef should have been promoted and/or whether his position in DocEx was discriminatory.  He is expected to testify regarding damages based on the findings of his reports. Dr. Sharf will also testify that discrimination explains Mr. Youssef's assignment to DocEx, the nature of his work assignments therein, and the FBI's failure to assign Mr. Youssef to DocEx. The witness is an expert retained by plaintiff Bassem Youssef.

This witness will offer rebuttal testimony to the "primary defense" offered

by the FBI.  In a May 4, 2006 filing with the Court, the FBI stated that its

"primary defense" to the discrimination claim was that "plaintiff failed to apply"

for various positions that would have been "commensurate" with his expertise.

This expert will offer testimony that during the time period at question no such

application requirement existed, and that promotions and assignments were made

without any application whatsoever.

      Plaintiff expects to call this witness to testify at the trial.

      **Defendant's Objection**: Defendant's objections to Dr. Sharf are set forth
separately in objections to be filed with the Joint Pretrial Statement.


      **(12) \***        **Dr. Daniel Byman**
                    **4613 Norwood Dr.**
                    **Chevy Chase, MD  20815**

                    **(estimated direct:  1.5  hours)**

Dr. Daniel Byman executed an expert report, filed on the 13th of March

2006, as well as a second report, filed on the 26th of July 2013, and was deposed

in this case on September 6th 2013. All prior information contained in his

deposition and/or in any prior disclosure/expert report is hereby incorporated by

reference. Dr. Byman will be called upon to testify as to the contents of the two

reports, all matters covered his reports, the means by which he arrived at his

conclusions therein, as well as to any and all of his deposition testimony.  Dr.

Byman may testify that based on his expertise, including, but not limited to, his

work on the Joint Congressional investigation into the 9/11 attacks, his work on

the 9/11 Commission, and his interaction with top counterterrorism officials for

the FBI that Mr. Youssef's skills and qualifications were not properly utilized by

the FBI.  Dr. Byman may testify to the FBI's need, following the 9/11 attacks, for personnel experienced in counterterrorism operations and who are fluent in Arabic and who have knowledge of middle eastern culture, experience in Saudi Arabia, with experience as a liaison with foreign government agencies, with experience acquiring sensitive sources, and with experience infiltrating the top levels of terrorist organizations. Dr. Byman will offer testimony that demonstrates the assignment of Mr. Youssef to DocEx and the FBI's failure to properly utilize his skills post-9/11 was pretextual.  Dr. Byman may also testify to Mr. Youssef's loss of reputation, eligibility for promotion and economic damages. The witness is an expert retained by plaintiff Bassem Youssef.

The witness may also testify to the following:  (1Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (2) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Dr. Byman are set forth separately in objections to be filed with the Joint Pretrial Statement.

**(13) *        Pasquale D'Amuro**
**New York, New York**

Based on the FBI's representation that he will not be available to testify in

Plaintiff's case in chief, deposition excerpts will be set forth below.

> **Defendant's Objection**: Defendant's objections to Mr. D'Amuro are set forth separately in objections to be filed with the Joint Pretrial Statement.

 **(14) \***   **Dr. Amy McCarthy**
       **McCarthy Consulting**
       **P.O. Box 878**
       **Edgewater Maryland 21037**

Dr. Amy McCarthy filed an expert report in this case using another expert witness's, Dr. James Sharf's, analysis to calculate the damages suffered by Mr. Youssef in monetary terms. All prior information contained in her expert report as well as any other prior disclosures is hereby incorporated. Dr. McCarthy may testify as to the calculation of damages, as well as the reasoning she used to arrive at the calculation. She will not testify at the trial, her testimony will only be used at the equitable relief stage of this proceeding. The witness is an expert retained by plaintiff Bassem Youssef.

> **Defendant's Objection**: No objection.

 **(15) \***   **Timothy Groh**
       **Deputy Assistant Director**
       **Human Resources Division**
       **FBI Headquarters**
       **Washington, D.C.**

       **(estimated direct:  2.5  hours)**

Timothy Groh is a previously disclosed witness who was deposed.   He is an adverse witness.  All prior information contained in his deposition and/or in any prior disclosure or expert report Mr. Groh filed is hereby incorporated by reference. Timothy Groh may provide direct, opinion and expert testimony as to

the promotional and career development processes within the Federal Bureau of Investigation. He may also offer expert, direct, circumstantial and opinion testimony as to the needs of the FBI following the 9/11 attacks.  He will be questioned on all matters that were covered in his deposition, and he will be questioned concerning an affidavit he executed. If the FBI does not intend to produce this witness at the trial, plaintiff may seek this witness's testimony by deposition or by video.

The witness is expected to provide testimony that contradicts the testimony of other witnesses, and contradicts the business justification provided by the Defendant to justify the transfer of the Plaintiff to DocEx.   This witness will also offer testimony that rebuts the "primary defense" to be offered by the FBI, i.e. that Mr. Youssef's transfer to DocEx was caused, in whole or in part, by his failure to apply for positions "commensurate" with this background and experience.

The witness may also testify to the following:  (1)  Mr. Youssef's transfer to DocEx constituted an extraordinary reduction in responsibilities; (2) Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (3) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (4) the fact that once Mr.

Youssef was transferred into DocEx he was not selected for the Acting Unit Chief

position, while an agent at a lower grade was selected for that position,

demonstrated that the reasons given for his transfer into DocEx was pretextual;

(5) that Mr. Youssef's assignments in DocEx demonstrated that the reasons given

for his transfer into DocEx was pretextual; (6) testimony regarding other facts that

reveal the false and pretextual nature of the FBI's supposed legitimate

nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the

"twelve pieces of evidence" cited to in the Memorandum Opinion issued by this

Court on December 2, 2014 (Slip op. page 22); (7) that the transfer to DocEx

constituted an adverse action.

This witness may also be questioned on all of the subject areas identified

by the Defendant in either the Rule 26 statements filed by the Defendant or in the

witness statements provided by the Defendant in the pretrial brief.

Plaintiff expects to call this witness to testify at the trial.

**Defendant's Objection**: Defendant's objections to Mr. Groh are set forth
separately in objections to be filed with the Joint Pretrial Statement.


**(16) *          Paul Vick**
**15941 W. 65th Street, No. 303**
**Shawnee, Kansas**

**(estimated direct: 1.5  hours)**

Mr. Vick will testify that Mr. Chornyak lied under oath when he denied

believing that Mr. Youssef was a Muslim, and will further testify to the negative

opinions Mr. Chornyak had concerning Mr. Youssef, and the false rumors that

Chornyak heard about Youssef, and passed on to other persons about Youssef.

Mr. Vick will testify that Mr. Chornyak was angry or upset that he had to provide information to the EEO investigator looking into Youssef's allegation of discrimination, and referred to the statement that EEO had prepared for Chornyak to sign as this "shit."  He will testify that numerous persons in the FBI, including managers, incorrectly confused Youssef with another agent who was born in Egypt, and incorrectly believed that Youssef was not well regarded in counterterrorism, that he hade engaged in insubordinate activities and that he had a bad reputation with Saudi intelligence.  He will testify that he worked with Mr. Youssef and personally knew that Youssef had skills the FBI needed after the 9/11 attacks, and that the FBI did not utilize these skills.  The witness may also testify to the following:  (1Mr. Youssef's attempts to find a position in Counterterrorism immediately after the 9/11 attacks, and  his failure to obtain any such position (temporary or otherwise) constituted evidence of pretext for discrimination based on national origin; (2) the fact that Mr. Youssef was not called into service immediately after the 9/11 attacks, while many agents at his grade level were called into service, despite his Arabic language skills and his counterterrorism experience, and his expressed desire to be so assigned constituted evidence of pretext; (3) the fact that once Mr. Youssef was transferred into DocEx he was not selected for the Acting Unit Chief position, while an agent at a lower grade was selected for that position, demonstrated that the reasons given for his transfer into DocEx was pretextual; (4) testimony regarding other facts that reveal the false and pretextual nature of the FBI's supposed legitimate nondiscriminatory reason for Mr. Youssef's transfer to Doc Ex, including the

"twelve pieces of evidence" cited to in the Memorandum Opinion issued by this Court on December 2, 2014 (Slip op. page 22).Mr. Vick may be called to rebut testimony provided by other FBI witnesses.   Mr. Vick may be asked to give a lay witness opinion(s).

The witness will also offer testimony, pursuant to Federal Rule of Evidence 803(3), as to the state of mind of Mr. Chornyak.  He will testify that Mr. Chornyak was hostile to the EEO process, and held negative opinions regarding Mr. Youssef based on Mr. Youssef's national origin.  The witness will testify that he learned of these negative opinions during a conversation with Mr. Chornyak, during the time period in which Mr. Chornyak was reviewing the EEO statement documenting his statements about Mr. Youssef.  Mr. Chornyak referred to the EEO process as "shit," and argued that Youssef was not a Christian.

Plaintiff expects to call this witness to testify at the trial.  However, because the witness resides outside of the District of Columbia, the witness may be agreeable to testify via video conferencing.

**Defendant's Objection**: Defendant's objections to Mr. Vick are set forth separately in objections to be filed with the Joint Pretrial Statement.

### (17) *       Michael McCrery

Mr. McCrery interviewed FBI witnesses in the time period shortly after Mr. Youssef filed his EEO complaint and may testify as to admissions against interest made by FBI officials and employees.  Furthermore, this witness may be needed to authenticate exhibits introduced by Mr. Youssef.

This witness will be called to testify only if needed to authenticate

documents and/or provide testimony as to the statements made to him by various

FBI witnesses for which he interviewed as part of the EEO investigation.

> **Defendant's Objection**: Defendant's objections to Mr. McCrery are set
> forth separately in objections to be filed with the Joint Pretrial Statement.

### (18) *        Margaret Buckley

Ms. Buckley will testify that although she put ITOS (International

Terrorism Operations Section) on Mr. Youssef's Directed Transfer Memo, she

was aware that Mr. Youssef's transfer was to the DocEx project.

> **Defendant's Objection**: Defendant's objections to Ms. Buckley are set
> forth separately in objections to be filed with the Joint Pretrial Statement.

### (19) *  Witnesses to Rebut All Witnesses Identified by the Defendant as Witnesses, but who were not identified in Rule 26 Statements

The FBI identified various witnesses that they never identified on their

Rule 26 statements.  Mr. Youssef maintains that these persons cannot be called as

witnesses in this case.  However, if the Court permits any of these persons to

testify, Mr. Youssef may need to call additional witnesses to rebut their

testimony, and/or recall witnesses to rebut their testimony.

> **Defendant's Objection**:  Local Civil Rule 16.5(b)(5) requires the
> disclosure in the pretrial statement of all witnesses, except those to be
> called solely for impeachment purposes.  Plaintiff's catch-all witness
> paragraph does not meet those requirements.   Furthermore, Defendant's
> responses to Plaintiff's objections cite where in the record in this litigation
> each witness that Defendant intends to call in its case-in-chief has been
> previously identified and/or became known to Plaintiff.  For those who are
> potential impeachment witnesses only, Defendant was not required to
> disclose them previously.  Local Civil Rule 16.5(b)(5) further provides
> that: "No objection shall be entertained to a witness or to testimony on the
> ground that the witness or testimony was disclosed for the first time in a

party's Pretrial Statement, unless the party objecting has unsuccessfully
sought to learn the identity of the witness or the substance of the testimony
by discovery, and the court or magistrate judge finds the information to
have been wrongfully withheld." Because Plaintiff cannot meet this
standard, his objections should not be entertained.

**(20) *        Any Witnesses Necessary to Authenticate an Exhibit or
                Necessary to Establish a Basis for the Admission of an
                Exhibit**

**Defendant's Objection**: Local Civil Rule 16.5(b)(5) requires the
disclosure in the pretrial statement of all witnesses, except those to be
called solely for impeachment purposes. Plaintiff's catch-all witness
paragraph does not meet those requirements. Plaintiff should identify
now any necessary witnesses and exhibits, then Defendant could stipulate
to authenticity if appropriate.

**Plaintiff reserves the right to call any witness listed by Defendant.**

**B. Witnesses to Be Called by Defendant**

**Plaintiff's objections to Defendants witnesses are set forth below. Attachment D
sets forth Plaintiff's Reply to Defendant's Response to Plaintiff's Objections,
which includes a reply related to the witnesses.**

**Witnesses Defendant Intends to Call**: The Defendant intends to call the following
witnesses to provide testimony at trial.[2]

**(1)        Dale Watson #
             McLean, Virginia**

             **(Estimated Direct: 1.5 hour)**

Dale Watson is a former Executive Assistant Director for Counterterrorism and

Counterintelligence Divisions, FBI Headquarters, who retired from the FBI in September

2002. He will testify about his experience working on counterterrorism and

---

[2] Defendant notes that, pursuant to the Court's Pretrial Scheduling and Procedures Order (Dkt. # 326), the
parties must designate with an asterisk those witnesses expected to provide "opinion" testimony. Defendant
has so designated those witnesses who will provide opinion testimony at trial in accordance with Federal
Rule of Evidence 702. Defendant has identified with a pound sign (i.e., #) those witnesses who may provide
lay opinion testimony at trial in accordance with Federal Rule of Evidence 701.

counterintelligence matters as well as the responsibilities, operations, and workload of the

CTD both prior to and after the 9/11.  Mr. Watson also will testify about his observations

and knowledge of Plaintiff's performance, including but not limited to his interactions

with Plaintiff when Plaintiff served as the Legal Attaché in Saudi Arabia.  Mr. Watson

further will testify about the origination and purpose of the DocEx project and what he

knows about Plaintiff's assignment to DocEx in March 2002.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial
> Statement.

### (2)    Pasquale D'Amuro #
### New York, New York

### (Estimated Direct: 1.5 hour)

Pasquale D'Amuro is a former FBI official who served as Inspector-in-Place for

the FBI's investigation of the 9/11 terrorist attacks and who retired from the FBI in

March 2005.  Mr. D'Amuro will testify about his counterterrorism experience with the

FBI.  He further will testify about his appointment to oversee the 9/11 investigation and

his duties and responsibilities in that position as well as the responsibilities, operations,

and workload of the CTD.  Mr. D'Amuro further will  testify about the origination and

purpose of the DocEx project and what he knows about Plaintiff's assignment to DocEx

in March 2002 as well as about his knowledge and expectations of the role Plaintiff

would be performing in that assignment.  Mr. D'Amuro will also testify about his

knowledge of and interactions with Plaintiff prior to the 9/11 attacks.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial
> Statement.

     **(3)**        **James Caruso#**
                  **Annapolis, Maryland**

                  **(Estimated Direct: 1 hour)**

James Caruso is a former Deputy Executive Assistant Director for

Counterterrorism and Counterintelligence Divisions, FBI Headquarters, who retired from

the FBI in July 2002.    Mr. Caruso will testify about the impact of the 9/11 attacks on the

FBI.  Mr. Caruso further will testify about his knowledge of and interactions with

Plaintiff.  He also will testify about his understanding of the origination and purpose of

the DocEx project as well as about his reasons for offering Plaintiff a temporary position

at DocEx in early 2002.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial
> Statement.

     **(4)**    **Robert Mueller III**
               **1875 Pennsylvania Ave., NW**
               **Washington, D.C. 20006**

**(estimated direct:  30 minutes)**

Robert Mueller is a former Director of the FBI.  Mr. Mueller will testify about the FBI's response to the 9/11 terrorist attacks and its reorganization to prioritize counterterrorism following those attacks.  Additionally, Mr. Mueller will testify about the personnel needs of the FBI after the 9/11 attacks. Mr. Mueller will also testify about the necessary qualifications for FBI senior management or leadership positions.

> **Plaintiff's Objection**: Objection – not listed on Defendant's Rule 26 statements as a witness for the defense.

> **Defendant's Response**:  Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

 **(5)**   **Thomas Kinnally#**

    **Ashburn, Virginia**

    **(Estimated Direct: 1.5 hour)**

Thomas Kinnally is a former Section Chief, Domestic Preparedness Section, FBI Headquarters, who retired from the FBI on June 3, 2005.  Mr. Kinnally will testify about the origination, purpose, and organization of the DocEx project.  He further will testify about his duties and responsibilities for creating a framework for the DocEx project, staffing DocEx, and overseeing the FBI's exploitation of documents and media obtained from overseas locations.  Mr. Kinnally also will testify about his knowledge of Plaintiff's assignment to the DocEx offsite, his expectations of the role Plaintiff was to perform in his temporary position at DocEx, and his interactions with Plaintiff.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

(6)         **William Chornyak#**
            **Overland Park, Kansas**

            **(Estimated Direct: 1 hour)**

William Chornyak is a former acting Deputy Assistant Director, National Security

Division (NSD), FBI Headquarters, who retired from the FBI in September 2002.  Mr.

Chornyak will testify regarding his knowledge of and interactions with Plaintiff,

including but not limited to his meetings and discussions with Plaintiff in early 2002

about locating a position for Plaintiff at FBIHQ.  Mr. Chornyak further will testify about

his knowledge of the effect of a detail assignment to another federal agency on a Special

Agent's employment status with the FBI and the process for transitioning back to a

permanent FBI position.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

(7)         **Debbie Stafford#**
            **Fort Meade, Maryland**

            **(Estimated Direct: 30 minutes)**

Debbie Stafford is a former FBI Unit Chief who retired from the FBI in June

2008.  Ms. Stafford will testify about her extensive experience in counterterrorism and

her role in the CTD following the terrorist attacks of 9/11.  She also will testify about her

knowledge of and interactions with Plaintiff, including but not limited to her knowledge

of and interactions with him in the CTD arena in the 1990s.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).
>
> Plaintiff objects to this witness' testimony due to a failure to
> properly disclose the witness.  See Federal Rule of Civil Procedure
> 37(c).  Additionally, this witness may not testify to any matter
> covered under any performance document produced by the FBI in
> discovery (including PARs) for which the subject matter which
> could pertain to the  witness' testimony was withheld by the FBI or
> deleted from the document produced in discovery (including
> deletions made by the FBI to Mr. Youssef's responses to
> interrogatory questions).
>
> **Plaintiff's Performance-Testimony Objection**:  Plaintiff also
> objects to this witness introducing any testimony critical of Mr.
> Youssef's performance, or testifying as to any exhibit that is
> critical of Mr. Youssef's performance and/or questions Mr.
> Youssef's qualifications to perform work at the GS-15 level.
>
> During the discovery phase of this proceeding the FBI was asked to
> produce documents related to Mr. Youssef's performance and
> qualifications, including documents that identified any
> performance issues.  The FBI objected to these discovery requests,
> and also failed to produce such documents pursuant to Rule 26.
> When the FBI was challenged about these failures they stated, on
> the record, that they were not basing their defense of the
> discrimination claim on any allegation that Mr. Youssef had
> performance issues.  For example, in a May 4, 2006 filing in this
> Court [Docket No. 97], the FBI made the following representation
> concerning the discrimination claims raised by Mr. Youssef:
> "*Defendants have made clear in several filings that their <u>primary</u>
> <u>defense</u> to plaintiff's first (discrimination) claim is that plaintiff
> failed to apply either for the position he claims to be seeking or for*

*any other commensurate position. For this reason, during the*
*discovery phase of this case, defendants could not reasonably have*
*been expected to exhaust time and resources checking each and*
*every last detail of plaintiff's FBI employment history . . . "* The
Defendant has represented that plaintiff's employment history is
not relevant to the discrimination claims, and used that
justification to explain why they did not respond to various
discovery requests seeking information on Mr. Youssef's
performance, performance issues and/or documentation related to
his expertise or lack of expertise.   Plaintiff objects to any
testimony whatsoever, in oral or documentary form, that attempts
to impeach Mr. Youssef's performance, or raises issues as to his
lack of expertise.  A large number of Defendant's exhibits and
witnesses fall into this category.  .

**Defendant's Response**: Defendant's response is set forth
separately in responses to be filed with the Joint Pretrial
Statement.

  (8)               **Michael Rolince#**

                        **National Joint Terrorism Task Force**
                        **FBIHQ**

                        **(Estimated Direct: 30 minutes)**

Michael Rolince is a former Section Chief, International Terrorism Operations

Section (ITOS), FBI Headquarters, who retired from the FBI on October 31, 2005.   Mr.

Rolince will testify about his knowledge of and interactions with Plaintiff, including but

not limited to his knowledge of and interactions with him in the CTD arena pre-9/11.  He

will also testify about his counterterrorism and counterintelligence experience, his duties

and responsibilities as a Section Chief in ITOS, and the evolution of the CTD both before

and after 9/11.

**Plaintiff's Objection**: Plaintiff objects to this witness providing
any lay opinion or expert testimony. Federal Rule of Civil
Procedure 37(c)(1).  Also see the objection to the testimony of
Debbie Stafford (Plaintiff's Performance-Testimony Objection).

Plaintiff objects to this witness' testimony due to a failure to properly disclose the witness.  See Federal Rule of Civil Procedure 37(c).  Additionally, this witness may not testify to any matter covered under any performance document produced by the FBI in discovery (including PARs) for which the subject matter which could pertain to the  witness' testimony was withheld by the FBI or deleted from the document produced in discovery (including deletions made by the FBI to Mr. Youssef's responses to interrogatory questions).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.


    **(9)**        **Scott Harper#**
                   **Washington, D.C.**

                 **(Estimated Direct: 1 hour)**

Scott Harper is a former FBI Unit Chief who retired on April 30, 2006.

Mr. Harper will testify about his FBI career.  Mr. Harper also will testify about his duties and responsibilities when he was temporarily assigned to the DocEx project in 2001 and again in 2002.  He further will testify about the evolution, purpose, and organization of the DocEx project.  Additionally, Mr. Harper will testify about his knowledge of and interactions with Plaintiff as well as about his perceptions of the role Plaintiff was fulfilling in DocEx.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1)..

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**(10)**          **Richard Kolko#**

**Crisis Management Unit**
**Critical Incident Response Group**
**Quantico, Virginia**

**(Estimated Direct: 1 hour)**

Richard Kolko is a FBI Supervisory Special Agent assigned to the Crisis

Management Unit, Critical Incident Response Group.  Mr. Kolko will testify about his

duties and responsibilities during his temporary assignment to DocEx as well as about the

origination, purpose, and organization of DocEx.  Mr. Kolko also will testify about his

knowledge of and interactions with Plaintiff.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial
> Statement.

**(11)**          **Deborah Doran#**

**FBI Special Agent**
**Boston Field Office**
**One Center Plaza Boston, MA 02108**

**(Estimated Direct: 2 hours)**

Ms. Doran is a Special Agent currently assigned to the Boston field office of the

FBI.   Ms. Doran will testify about her experience in counterterrorism and also as an

Assistant Legal Attaché.  Ms. Doran also will testify about her temporary assignment to

work at DocEx as well as about the origination, purpose, and organization of DocEx.  She

will also testify about her knowledge of and interactions with plaintiff.   Ms. Doran

further will testify about her understanding of the role Plaintiff was assigned to perform

at DocEx.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial Statement.

### (12)      Ellen Knowlton#
### Las Vegas, Nevada

### (Estimated Direct: 30 minutes)

Ellen Knowlton is a former Special Agent in Charge of the FBI Field Office in

Las Vegas, Nevada and former acting Assistant Director in NSD at FBIHQ, who retired

from the FBI on February 3, 2006.   Ms. Knowlton will testify regarding her knowledge

of and interactions with Plaintiff.  Ms. Knowlton will also testify about her knowledge of

Plaintiff's efforts to procure a job at FBI Headquarters in early 2002.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial Statement.

### (13)      David Szady#
### East Falmouth, Massachusetts

### (Estimated Direct: 30 minutes)

David Szady is a former Assistant Director for CI, FBI Headquarters, who retired

from the FBI on January 27, 2006.  Mr. Szady will testify about his knowledge of and

interactions with Plaintiff during the time he served as Plaintiff's supervisor at the NCIX

and his knowledge of Plaintiff's efforts to find other jobs after 9/11.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).

> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial Statement.

 (14)        **Bill Lewis#**

             **Los Angeles, California**

             **(Estimated Direct: 30 minutes)**

Bill Lewis is a former Assistant Director in Charge of the FBI's Los

Angeles Division.   Mr. Lewis retired from the FBI on January 31, 2015.  Mr.

Lewis will testify about his duties and responsibilities overseeing temporary duty

assignments within the CTD at FBI Headquarters, in legal attaché offices around

the world, and in FBI Field Offices after 9/11.  Mr. Lewis also will testify about

available TDY positions after 9/11, the process for notifying FBI employees about

such temporary duty assignments, and the process by which FBI Special Agents

submitted applications for such positions.

**Plaintiff's Objection**: Plaintiff objects to this witness providing
any lay opinion or expert testimony. Federal Rule of Civil
Procedure 37(c)(1).  Also see the objection to the testimony of
Debbie Stafford (Plaintiff's Performance-Testimony Objection).

**Defendant's Response**: Defendant's response is set forth
separately in responses to be filed with the Joint Pretrial Statement.

**(15)**     **Timothy Groh\*#**

**Deputy Assistant Director**
**Human Resources Division**
**FBI Headquarters**
**Washington, D.C.**

**(Estimated Direct: 2 hours)**

Mr. Groh is the Deputy Assistant Director of the FBI's Human Resources Division.  Mr. Groh will provide fact testimony about the career path and promotion opportunities for FBI special agents; the duties, responsibilities, expectations, and potential for job growth associated with the  positions which FBI Special Agents encumber, including but not limited to comparing the role of Legats with that of a Supervisory Special Agent in FBI field offices in the United States; and the FBI's consideration of leadership skills, past experience, subject matter expertise, and foreign language abilities in connection with assessing an individual's qualifications for a management position in the FBI.  Mr. Groh will also testify about the FBI's policies concerning temporary duty assignments, including the FBI's staffing of such assignments, the noncompetitive nature of such selections, and the expectations for agents serving in temporary duty roles. He also will compare the policies, procedures, processes, and expectations for such temporary assignments with those associated with permanent duty positions.   Additionally, Mr. Groh will offer fact and opinion testimony about Plaintiff's job applicant history, the nature of Plaintiff's career progression within the FBI, the effect of plaintiff's assignment to DocEx on his career, and the expectations the FBI had of the duties and responsibilities a GS-15 level manager

would assume upon assignment to a position such as DocEx in March 2002.  With

respect to the issue of equitable remedies, in addition to the foregoing testimony,

Mr. Groh will describe the qualities and skills needed for management positions

and the process for making selections, will offer opinion testimony about

plaintiff's qualifications for promotion to an SES position, and identify GS-15

positions available in CTD post-9/11.

**Plaintiff's Objection**: Any testimony beyond the Rule 26 witness
disclosure.


**Defendant's Response**: Defendant's response is set forth
separately in responses to be filed with the Joint Pretrial Statement.

  **(16)**　　　　　　**Michael Fedarcyk#**

　　　　　　　　　　**Arlington, VA**

　　　　　　　　　**(Estimated Direct: 1 hour)**

Michael Fedarcyk is a retired FBI senior manager who served as the acting

Section Chief of the Communication Exploitation Section from July 2002 until December

2002 and then as the permanent Section Chief.   Mr. Federcyk will testify about his

knowledge of and interactions with Plaintiff.  He also will testify about the evolution,

purpose and organization of DocEx.

**Plaintiff's Objection**: Plaintiff objects to this witness providing
any lay opinion or expert testimony. Federal Rule of Civil
Procedure 37(c)(1).  Also see the objection to the testimony of
Debbie Stafford (Plaintiff's Performance-Testimony Objection).


**Defendant's Response**: Defendant's response is set forth
separately in responses to be filed with the Joint Pretrial Statement.


  **(17)**　　　　　　**Dr. Mitchell Hugonnet***

　　　　　　　　　　**Bethesda, Maryland**

**(Estimated Direct: 2.5 hours)**

Dr. Hugonnet is a clinical psychologist who, based on his independent medical examination of Plaintiff, will offer testimony about plaintiff's psychological and emotional state, both before and after the alleged act of discrimination.  He also will testify about the extent to which Plaintiff's claims for damages derives from issues relating to Plaintiff's temporary assignment to DocEx, or from other factors.

>**Plaintiff's Objection**: Objection to any medical-related testimony, interpretation of any medical information or testimony related to any medications, as this witness is not qualified to give medical testimony.  Objection to any testimony outside of the witness' Rule 26 disclosures.

>**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

*POTENTIAL IMPEACHMENT WITNESSES: Defendant may call the following witnesses to provide impeachment testimony at trial.*

>**(18)        Arthur Cummings#**
>**          Fairfield, Connecticut**

>**(Estimated Direct: 1 hour)**

Mr. Cummings is the former Executive Assistant Director of the FBI's National Security Branch, who retired from the FBI on April 30, 2010.   If called, Mr. Cummings will provide impeachment testimony if Plaintiff testifies about his claimed accomplishments relating to counterterrorism cases or investigations in comparison to the professional background and experience of Mr. Cummings and/or Mr. Cummings' qualifications for a Senior Executive Service (SES) position.  Mr. Cummings also may testify about his knowledge of and interactions with Plaintiff arising out of their tenure in the Los Angeles CT program in the early 1990s.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

The FBI cannot delete substantive information from his performance reviews and employment history on one hand and then call witnesses to rebut plaintiff's performance reviews.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**(19)      Christopher Castillo#**

**Supervisory Special Agent**
**Los Angeles Field Office**
**Federal Bureau of Investigation**

**(Estimated Direct: 30 minutes)**

Mr. Castillo is a Supervisory Special Agent and the Counterterrorism Program Coordinator in the Los Angeles Field Office of the FBI.  Mr. Castillo may be called as an impeachment witness if Plaintiff testifies about his role in developing a source with connections to Al Qaida while working on counterterrorism matters when assigned to the Los Angeles Field Office, as well as other CT matters Plaintiff claims to have been involved with in Los Angeles. If called, Mr. Castillo will testify about his knowledge of the case files pertaining to counterterrorism cases handled by Special Agents in the Los Angeles field office during the period from 1992 to 1996.

**Plaintiff's Objection**: Plaintiff objects to this witness' testimony due to a failure to properly disclose the witness.  See Federal Rule of Civil Procedure 37(c).  Additionally, this witness may not testify to any matter covered under any performance document produced by the FBI in discovery (including PARs) for which the subject matter which could pertain to the  witness' testimony was withheld by the FBI or deleted from the document produced in discovery (including deletions made by the FBI to Mr. Youssef's responses to

interrogatory questions).  Also see the objection to the testimony of
Debbie Stafford (Plaintiff's Performance-Testimony Objection).


**Defendant's Response**: Defendant's response is set forth
separately in responses to be filed with the Joint Pretrial Statement.


    **(20)**             **Andre Khoury #**

                          **FBI Special Agent**
                          **Boston Field Office**
                          **One Center Plaza Boston, MA 02108**

                          **(Estimated Direct: 30 minutes)**

Mr. Khoury is a Special Agent of the FBI, currently assigned to the Boston field

office.   Mr. Khoury may be called as an impeachment witness if Plaintiff testifies that he

was the only GS-15 Special Agent in the FBI with Arabic language skills and

counterterrorism expertise.  If called, he will testify about his tenure and status within the

FBI and his knowledge of the Arabic language. Mr. Khoury will also testify about the

role of a Legal Attaché.

**Plaintiff's Objection**: Plaintiff objects to this witness providing
any lay opinion or expert testimony. Federal Rule of Civil
Procedure 37(c)(1).


Plaintiff objects to this witness' testimony due to a failure to
properly disclose the witness.  See Federal Rule of Civil Procedure
37(c).  Additionally, this witness may not testify to any matter
covered under any performance document produced by the FBI in
discovery (including PARs) for which the subject matter which
could pertain to the  witness' testimony was withheld by the FBI or
deleted from the document produced in discovery (including
deletions made by the FBI to Mr. Youssef's responses to
interrogatory questions).  Also see the objection to the testimony of
Debbie Stafford (Plaintiff's Performance-Testimony Objection).


**Defendant's Response**: Defendant's response is set forth
separately in responses to be filed with the Joint Pretrial Statement.

**(21)          Gary Perdue#**

**Deputy Assistant Director**
**Counterterrorism Division**
**FBI Headquarters**
**Washington, D.C.**

**(Estimated Direct: 45 minutes)**

Mr. Perdue is currently a Deputy Assistant Director, CTD.  If called, he will

testify about his tenure and status within FBI and his knowledge of the Arabic language.

Mr. Perdue may be called as an impeachment witness if Plaintiff testifies that he was the

only GS-15 Special Agent in the FBI with Arabic language skills and counterterrorism

expertise and/or that his experience with obtaining FISAs in counterterrorism cases was

unique. Mr. Perdue will also testify about his work on counterterrorism investigations

throughout his career and his knowledge and experience concerning the submission of

Foreign Intelligence Surveillance (FISA) declarations in support of such investigations.

DAD Perdue also may testify about his experience serving as a program manager and

then Chief of the Radical Fundamentalist Unit, International Terrorism Operations

Section from 1996 to 2000, and his knowledge of Plaintiff's claimed role in various CT

cases.  DAD Perdue may also testify concerning his knowledge of Plaintiff's role in

obtaining FISAs for FBI terrorist cases.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).
>
> Plaintiff objects to this witness' testimony due to a failure to
> properly disclose the witness.  See Federal Rule of Civil Procedure
> 37(c).  Additionally, this witness may not testify to any matter
> covered under any performance document produced by the FBI in
> discovery (including PARs) for which the subject matter which

could pertain to the witness' testimony was withheld by the FBI or deleted from the document produced in discovery (including deletions made by the FBI to Mr. Youssef's responses to interrogatory questions). Also see the objection to the testimony of Debbie Stafford (Plaintiff's Performance-Testimony Objection).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

    **(22)**           **Dr. Rodrigo Hurtado#**

                      **3450 N Beauregard Street**
                      **Alexandria, VA 22302**

                      **(Estimated Direct: 1 hour)**

Dr. Hurtado is one of Plaintiff's treating physicians and may testify about Plaintiff's medical condition both before and after the alleged act of discrimination and in particular about the allergies that Plaintiff suffers, including their physical manifestations and possible causes.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

    **(23)**           **Dr. Diane H. Browne#**

                      **15732 Crabbs Branch Way**
                      **Rockville, MD 20855**

                      **(Estimated Direct: 1 hour)**

Dr. Browne treated Plaintiff from March to November 2001. She may testify as to the reasons why Plaintiff sought treatment and the nature of the treatment she provided to him during this time.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

   **(24)**          **Suzanne Tsacoumis\***

                     **66 Canal Center Plaza**
                     **Alexandria, VA 22314**

                     **(Estimated Direct: 2.5 Hours)**

If called, Dr. Tsacoumis will present testimony in rebuttal to plaintiff's expert,

James Sharf, related to the promotional practices and policies of the FBI and their effect

on the plaintiff.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

   **(25)**          **Joel Lesch\***

                     **517 South Washington Street**
                     **Alexandria, VA 22314**

                     **(Estimated Direct: 1 hour)**

Mr. Lesch is an accountant who will provide expert testimony about the amount

of monetary harm experienced by Plaintiff if the Court finds that he should have been

given some other job temporary duty assignment in March of 2002.  His testimony will

address all components of Plaintiff's alleged monetary injury, including back pay,

benefits, overtime, performance bonuses and any impact on plaintiff's pension.  Mr.

Lesch will also present testimony in rebuttal to Plaintiff's economic expert, Amy McCarthy.

>**Plaintiff's Objection**:  Testimony must be limited to the Rule 26 disclosure statement.

>**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

>(26)　　　　**Scott Jessee#**
>　　　　　**Alexandria, Virginia**
>
>　　　　**(Estimated Direct: 30 minutes)**

Mr. Jessee was an Assistant Section Chief, assigned to the Counterterrorism Division at FBI Headquarters.  Mr. Jessee may be called as an impeachment witness if Plaintiff testifies about his role in the PAKNAP case extending beyond that of a translator, about his claimed accomplishments relating to counterterrorism cases or investigations, his role in conducting CT investigations while serving as a Legat, and his qualifications for an SES position. If called, Mr. Jessee will testify about his counterterrorism experience.  He also will testify about his knowledge of Plaintiff's role in the PAKNAP case, on which he worked when assigned to the Washington field office starting in 1991.   Mr. Jessee will also testify about his experience as the FBI's first Legal Attaché in Pakistan during the time period that Plaintiff was a Legal Attaché in Riyadh, and will testify about the role of a Legal Attaché.

>**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1). Debbie Stafford (Plaintiff's Performance-Testimony Objection).

Plaintiff objects to this witness' testimony due to a failure to properly disclose the witness.  See Federal Rule of Civil Procedure 37(c).  Additionally, this witness may not testify to any matter covered under any performance document produced by the FBI in discovery (including PARs) for which the subject matter which could pertain to the  witness' testimony was withheld by the FBI or deleted from the document produced in discovery (including deletions made by the FBI to Mr. Youssef's responses to interrogatory questions).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

(27)        **Andrew A. Apollony#**

           **Louden County, Virginia**

           **(Estimated Direct: 30 minutes)**

Mr. Apollony is a former Special Agent for the FBI.  Mr. Apollony may be called

as an impeachment witness if Plaintiff testifies that his involvement in the investigation

was more than that of a translator.  If called, he will testify about his knowledge of

Plaintiff's role in the counterterrorism investigation relating to the Warrayat group.

**Plaintiff's Objection**: Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

Plaintiff objects to this witness' testimony due to a failure to properly disclose the witness.  See Federal Rule of Civil Procedure 37(c).  Additionally, this witness may not testify to any matter covered under any performance document produced by the FBI in discovery (including PARs) for which the subject matter which could pertain to the  witness' testimony was withheld by the FBI or deleted from the document produced in discovery (including deletions made by the FBI to Mr. Youssef's responses to interrogatory. Also see the objection to the testimony Debbie Stafford (Plaintiff's Performance-Testimony Objection).

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

    **(28)**          **James Van Rhein#**

                        **Warson Woods, MO 63122**

                        **(Estimated Direct: 30 minutes)**

Mr. Van Rhein is a former Special Agent for the FBI.  If called, Mr. Van Rhein will testify about his knowledge of Plaintiff's role in counterterrorism cases in St. Louis during the period beginning in 1988.  Mr. Van Rhein may be called as an impeachment witness if Plaintiff testifies that his involvement on Major Case 94 was more than that of a translator.   Mr. Van Rhein will testify about his knowledge of Plaintiff's role on Major Case 94, known as the Desert War investigation, which was a terrorism case investigating alleged members of the Abu Nidal Organization, as well as his knowledge of FISA applications and renewals submitted during that investigation.

    **Plaintiff's Objection**:  Plaintiff objects to this witness providing any lay opinion or expert testimony. Federal Rule of Civil Procedure 37(c)(1).

    Plaintiff objects to this witness' testimony due to a failure to properly disclose the witness.  See Federal Rule of Civil Procedure 37(c).  Additionally, this witness may not testify to any matter covered under any performance document produced by the FBI in discovery (including PARs) for which the subject matter which could pertain to the  witness' testimony was withheld by the FBI or deleted from the document produced in discovery (including deletions made by the FBI to Mr. Youssef's responses to interrogatory questions).  Also see the objection to the testimony of Debbie Stafford (Plaintiff's Performance-Testimony Objection).

    **Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

    **(29)**       **Chris Briese#**

                **Charlotte, North Carolina**

                **(Estimated Direct: 45 minutes)**

Mr. Briese is a former Special Agent in Charge of the FBI's Charlotte Division.

Mr. Briese may be called as an impeachment witness if plaintiff testifies in an

exaggerated fashion about his role in the CT program in the Los Angeles Field Office in

the 1990s.   If called, Mr. Briese will testify about his experience in counterterrorism, his

knowledge of the counterterrorism cases handled by CT agents assigned to the Los

Angeles Field Office in the early 1990s, and his knowledge of and interactions with

Plaintiff.

        **Plaintiff's Objection**: Plaintiff objects to this witness providing
        any lay opinion or expert testimony. Federal Rule of Civil
        Procedure 37(c)(1).

        Plaintiff objects to this witness' testimony due to a failure to
        properly disclose the witness.  See Federal Rule of Civil Procedure
        37(c).  Additionally, this witness may not testify to any matter
        covered under any performance document produced by the FBI in
        discovery (including PARs) for which the subject matter which
        could pertain to the  witness' testimony was withheld by the FBI or
        deleted from the document produced in discovery (including
        deletions made by the FBI to Mr. Youssef's responses to
        interrogatory questions). Debbie Stafford (Plaintiff's Performance-
        Testimony Objection).

        **Defendant's Response**: Defendant's response is set forth
        separately in responses to be filed with the Joint Pretrial Statement.

    **(30)**       **Patrick Patterson#**

                **Washington, DC**

                **Estimated Direct: 1 hour)**

Mr. Patrick Patterson is a former Special Agent in Charge of the San Antonio

field office.  Mr. Patterson may be called as an impeachment witness if plaintiff

exaggerates his role as a Legat as well as the nature and extent of his field office

experience.  If called, Mr. Patterson will testify regarding the role of a FBI Legat as well

as his knowledge of, and his interactions with, Plaintiff.

> **Plaintiff's Objection**: Plaintiff objects to this witness providing
> any lay opinion or expert testimony. Federal Rule of Civil
> Procedure 37(c)(1).
>
>
> Plaintiff objects to this witness' testimony due to a failure to
> properly disclose the witness.  See Federal Rule of Civil Procedure
> 37(c).  Additionally, this witness may not testify to any matter
> covered under any performance document produced by the FBI in
> discovery (including PARs) for which the subject matter which
> could pertain to the  witness' testimony was withheld by the FBI or
> deleted from the document produced in discovery (including
> deletions made by the FBI to Mr. Youssef's responses to
> interrogatory questions). Debbie Stafford (Plaintiff's Performance-
> Testimony Objection).
>
>
> **Defendant's Response**: Defendant's response is set forth
> separately in responses to be filed with the Joint Pretrial Statement.

**Defendant reserves the right to call any witness listed by Plaintiff.**

## VII.    Exhibits

### A.  Plaintiff's Exhibits

**Defendant's general objection**: Defendant's general objections to Plaintiff's proffered
exhibits are set forth separately in Defendants' objections to be filed with the Pretrial
Statement.  See Attachment A.

Attachment B is Plaintiff's Response to Defendant's Objections to Plaintiff's Witnesses
and Exhibits.

Attachment C sets forth Defendant's response to the arguments raised in Attachment B.

Attachment D is Plaintiff's Reply to Defendant's Objections.

1.  Performance Appraisal Reports of Bassem Youssef (1988-2002).

    **Defendant's Objection**: No objection.

2.  Recommendation for the Director of Central Intelligence Award/DCI Award.

    **Defendant's Objection**: No objection.

3.  Awards and Recognitions of Bassem Youssef before 9/11/01 (copies of the award documentation).

    **Defendant's Objection**: No objection.

4.  1995 Inspection Report (Los Angeles).

    **Defendant's Objection**: Defendant's objections to Exhibit 4 are set forth separately in objections to be filed with the Joint Pretrial Statement.

5.  Polygraph Examiner Training Announcement.

    **Defendant's Objection**: No objection.

6.  Bassem Youssef Assignment to Attend Department of Defense Polygraph Institute (DODPI) for Polygraph Training.

    **Defendant's Objection**: No objection.

7.  Bassem Youssef Successful Polygraph Training Results.

    **Defendant's Objection**: No objection.

8.  Request for Corrected DODPI Diploma.

    **Defendant's Objection**: No objection.

9.  Bassem Youssef Undercover Certification.

    **Defendant's Objection**: No objection.

10. Bassem Youssef undercover identity assignment from the Attorney General of the United States. (Attempting to Locate)

    **Defendant's Objection**: Defendant's objections to Exhibit 10 are set forth

separately in objections to be filed with the Joint Pretrial Statement.

11. TDY Assignment teletype(s).

   **Defendant's Objection**: No objection.

12. List of Arabic Speaking Agents.

   **Defendant's Objection**: No objection.

13. Request for Funding to Support Mass Language Testing.

   **Defendant's Objection**: Defendant's objections to Exhibit 13 are set forth separately in objections to be filed with the Joint Pretrial Statement.

14. Cairo Assignment Write-Up.

   **Defendant's Objection**: Defendant's objections to Exhibit 14 are set forth separately in objections to be filed with the Joint Pretrial Statement.

15. John Bell Recommendation of Bassem Youssef for Legat Riyadh Position.

   **Defendant's Objection**: Defendant's objections to Exhibit 15 are set forth separately in objections to be filed with the Joint Pretrial Statement.

16. Career Board Recommendation for Legat Riyadh Position for Bassem Youssef.

   **Defendant's Objection**: Defendant's objections to Exhibit 16 are set forth separately in objections to be filed with the Joint Pretrial Statement.

17. 2000 Inspection Report (Saudi Arabia).

   **Defendant's Objection**: Defendant's objections to Exhibit 17 are set forth separately in objections to be filed with the Joint Pretrial Statement.

18. Faxes from Saudi Arabia.

   **Defendant's Objection**: No objection.

19. FBI HQ approval of tour of duty extension (November 3rd, 1998).

   **Defendant's Objection**: No objection.

20. Division Head Comments Recommending Bassem Youssef for NACIC Position.

   **Defendant's Objection**: Defendant's objections to Exhibit 20 are set forth

separately in objections to be filed with the Joint Pretrial Statement.

21. Bassem Youssef Ranking for NACIC Position Selection.

   **Defendant's Objection**: Defendant's objections to Exhibit 21 are set forth separately in objections to be filed with the Joint Pretrial Statement.

22. Memo re: Bassem No objection.

   **Defendant's Objection**: Defendant's objections to Exhibit 22 are set forth separately in objections to be filed with the Joint Pretrial Statement.

23. Position Description – NACIC

   **Defendant's Objection**: Defendant's objections to Exhibit 23 are set forth separately in objections to be filed with the Joint Pretrial Statement.

24. Supervisory Special Agent GS-15 Position Description.

   **Defendant's Objection**: No objection.

25. -Executed Request for Director Transfer memo (originally dated April 30, 3002).

   **Defendant's Objection**: Defendant's objections to Exhibit 25 are set forth separately in objections to be filed with the Joint Pretrial Statement.

26. Email chain between Bassem Youssef and Michael Fedarcyk.

   **Defendant's Objection**: No objection.

27. EEO Report of Counseling, pages BY 473, 477.

   **Defendant's Objection**: Defendant's objections to Exhibit 27 are set forth separately in objections to be filed with the Joint Pretrial Statement.

28. Letter from Bassem Youssef to Congressman Frank R. Wolf.

   **Defendant's Objection**: Defendant's objections to Exhibit 28 are set forth separately in objections to be filed with the Joint Pretrial Statement.

29. First Letter-Report of Dr. Edwin Carter.

   **Defendant's Objection**: Defendant's objections to Exhibit 29 are set forth separately in objections to be filed with the Joint Pretrial Statement.

30. Second Letter-Report of Dr. Edwin Carter, with CV attached.

**Defendant's Objection**: Defendant's objections to Exhibit 30 are set forth separately in objections to be filed with the Joint Pretrial Statement.

31. EEO Interview Statement re: Dale Watson (6-26-2003)(BY 1371-75)

    **Defendant's Objection**: Defendant's objections to Exhibit 31 are set forth separately in objections to be filed with the Joint Pretrial Statement.

32. Initial Expert Report of Dr. James Sharf.

    **Defendant's Objection**: Defendant's objections to Exhibit 32 are set forth separately in objections to be filed with the Joint Pretrial Statement.

33. Supplemental Expert Report of Dr. James Sharf.

    **Defendant's Objection**: Defendant's objections to Exhibit 33 are set forth separately in objections to be filed with the Joint Pretrial Statement.

34. Second Supplemental Expert Report of James C. Sharf.

    **Defendant's Objection**: Defendant's objections to Exhibit 34 are set forth separately in objections to be filed with the Joint Pretrial Statement.

35. Documents relied upon by Dr. Sharf for his reports.

    **Defendant's Objection**: Defendant's objections to Exhibit 35 are set forth separately in objections to be filed with the Joint Pretrial Statement.

36. Initial Expert Report of Daniel Byman.

    **Defendant's Objection**: Defendant's objections to Exhibit 36 are set forth separately in objections to be filed with the Joint Pretrial Statement.

37. Second Expert Report of Daniel Byman.

    **Defendant's Objection**: Defendant's objections to Exhibit 37 are set forth separately in objections to be filed with the Joint Pretrial Statement.

38. Second Groh Declaration.

    **Defendant's Objection**: No objection.

39. 1994 Performance Appraisal report for Ed Curran

    **Defendant's Objection**: No objection.

40. List of GS-15 Agents TDY'd, GS-15 and SES Agents Transferred, and Agents Promoted to GS-15 in Counterterrorism between 9/11/01 and 05/02/02.

   **Defendant's Objection**: No objection.

41. Justice Department Briefing by Attorney General John Ashcroft and FBI Director (September 17th, 2001).

   **Defendant's Objection**: Defendant's objections to Exhibit 41 are set forth separately in objections to be filed with the Joint Pretrial Statement.

42. Robert Mueller's Testimony to the United States Committee on the Judiciary, "Reforming the FBI in the 21st Century: Reorganizing and Refocusing the Mission" (May 8, 2002).

   **Defendant's Objection**: No objection.

43. The Performance of the Intelligence Community: Staff Statement no. 12.

   **Defendant's Objection**: Defendant's objections to Exhibit 43 are set forth separately in objections to be filed with the Joint Pretrial Statement.

44. Robert Mueller's Statement on Homeland Security and the Intelligence Community (June 27, 2002).

   **Defendant's Objection**: No objection.

45. Robert Mueller Statement before the National Commission on Terrorist Attacks Upon the United States (April 14, 2004).

   **Defendant's Objection**: Defendant's objections to Exhibit 45 are set forth separately in objections to be filed with the Joint Pretrial Statement.

46. Responses to June 6, 2002 Written Questions of Senator Patrick Leahy.

   **Defendant's Objection**: Defendant's objections to Exhibit 46 are set forth separately in objections to be filed with the Joint Pretrial Statement.

47. The EEO investigator reports re: Chornyak Statement (Cover of report, and pages 40-41 from the report).

   **Defendant's Objection**: Defendant's objections to Exhibit 47 are set forth separately in objections to be filed with the Joint Pretrial Statement.

48. 6-10-2003 EEO Investigator EC re: Chornyak Statements

**Defendant's Objection**: Defendant's objections to Exhibit 48 are set forth separately in objections to be filed with the Joint Pretrial Statement.

49. SAMMS Board documents on the assignment of a Unit Chief for Doc-Ex.

**Defendant's Objection**: Defendant's objections to Exhibit 49 are set forth separately in objections to be filed with the Joint Pretrial Statement.

50. The entire EEO investigatory file, including copies of all complaints filed by Mr. Youssef.  NOTE:  These documents are not intended to be a pre-admitted exhibit, and are identified because they may be used in examination of a witness, and may be introduced as part of the examination.

**Defendant's Objection**: Defendant's objections to Exhibit 50 are set forth separately in objections to be filed with the Joint Pretrial Statement.

51. All Witness Declarations Provided During the EEO investigation into Mr. Youssef's EEO case (potential rebuttal exhibits).  NOTE:  These documents are not intended to be a pre-admitted exhibit, and are identified because they may be used in examination of a witness, and may be introduced as part of the examination.

**Defendant's Objection**: Defendant's objections to Exhibit 51 are set forth separately in objections to be filed with the Joint Pretrial Statement.

52. Transcripts of career board tapes (potential rebuttal exhibits).

**Defendant's Objection**: Defendant's objections to Exhibit 52 are set forth separately in objections to be filed with the Joint Pretrial Statement.

53. Deletion Codes

**Defendant's Objection**: Defendant's objections to Exhibit 53 are set forth separately in objections to be filed with the Joint Pretrial Statement.

54. Withdrawn.

55. Withdrawn.

56. Withdrawn.

57. Exhibits to Chornyak Deposition

   **Defendant's Objection**: Defendant's objections to Exhibit 57 are set forth separately in objections to be filed with the Joint Pretrial Statement.


58. Career Board Memo to the SAMMS Board on recommendation of candidates for the Unit Chief of DocEx

   **Defendant's Objection**: Defendant's objections to Exhibit 58 are set forth separately in objections to be filed with the Joint Pretrial Statement.


59. SAMMS Board recommendation of candidates for the Unit Chief of DocEx

   **Defendant's Objection**: Defendant's objections to Exhibit 59 are set forth separately in objections to be filed with the Joint Pretrial Statement.


60. OPR Inquiry Report – [name redacted]

   **Defendant's Objection**: Defendant's objections to Exhibit 60 are set forth separately in objections to be filed with the Joint Pretrial Statement.


61. Division Head Comments (Youssef) Legat Riyadh Position

   **Defendant's Objection**: Defendant's objections to Exhibit 61 are set forth separately in objections to be filed with the Joint Pretrial Statement.


62. Supervisory Vacancy Request Form (August 26, 1996)

   **Defendant's Objection**: No objection.


63. SAMMS Board Recommendation for Legat Riyadh Position

   **Defendant's Objection**: No objection.


64. Memo from Director Freeh to the Department of State on the Selection of Bassem Youssef for the Legat Riyadh Position

   **Defendant's Objection**: No objection.

65. Memo from Director Freeh to the Department of State and Embassies on the Selection of Bassem Youssef for the Legat Riyadh Position

   **Defendant's Objection**: No objection.

66. Abbreviated Employee Profile – Art Cummings – DOJ 4548

   **Defendant's Objection**: Defendant's objections to Exhibit 66 are set forth separately in objections to be filed with the Joint Pretrial Statement.

67. Personnel Action History, DOJ 18747-750 (Cummings)

   **Defendant's Objection**: Defendant's objections to Exhibit 67 are set forth separately in objections to be filed with the Joint Pretrial Statement.

68. Career Board Tapes – Position at NACIC

   **Defendant's Objection**: Defendant's objections to Exhibit 68 are set forth separately in objections to be filed with the Joint Pretrial Statement.

69. Riyadh Legal Attaché (LEGAT) Inspection Follow Up File Review (to be used for rebuttal only if Defendant FBI is permitted to pursue Rattigan issues)

   **Defendant's Objection**: No objection.


**B.    Defendant's Exhibits**

   A table of Defendant's exhibits is attached as Attachment E.

**C.    Plaintiff's Objections to Defendant's Exhibits**

   A table of Plaintiff's objections to Defendant's exhibits, is attached as Attachment F.

   In addition, the parties have filed substantive objections and responses to these exhibits, which are contained in Attachment A, Defendant's Objections to Plaintiff's Pretrial Statement;  Attachment B, Plaintiff's Response to Defendant's Objections to Plaintiff's Witnesses and Exhibits; Attachment C, Defendant's Response to Plaintiff's Objections; and Attachment D, Plaintiff's Reply to Defendant's Response to Plaintiff's Objections (Witnesses and Exhibits)


   Additionally, a large amount of Defendant's exhibits concern alleged performance issues concerning Mr. Youssef, or issues related to his expertise and qualifications. These documents are all subject to an objection based on discovery violations.  The FBI

73

never produced in discovery all of the requested documents related to Mr. Youssef's performance, despite the fact that these documents were requested in a number of discovery requests. Furthermore, these documents were not produced pursuant to Rule 26 disclosure requirements. When the FBI was challenged about these failures they stated, on the record, that they were not basing their defense on any allegation that Mr. Youssef had performance issues. For example, in a May 4, 2006 filing in this Court [Docket No. 97], the FBI made the following representation concerning the discrimination claims raised by Mr. Youssef: "Defendants have made clear in several filings that their <u>primary defense</u> to plaintiff's first (discrimination) claim is that plaintiff failed to apply either for the position he claims to be seeking or for any other commensurate position. For this reason, during the discovery phase of this case, defendants could not reasonably have been expected to exhaust time and resources checking each and every last detail of plaintiff's FBI employment history . . . " Furthermore, the Defendant has represented that plaintiff's employment history is not relevant to the discrimination claims, and used that justification to explain why they did not respond to various discovery requests seeking information on Mr. Youssef's performance, performance issues and/or documentation related to his expertise or lack of expertise. Plaintiff objects to any testimony whatsoever, in oral or documentary form, that attempts to impeach Mr. Youssef's performance, or raises issues as to his lack of expertise. A large number of Defendant's exhibits and so-called "rebuttal" witnesses fall into this category.

Defendant's Response: Defendant's responses to Plaintiff's objections are set forth in a separate document filed with the Joint Pretrial. With respect to the general objection to exhibits about performance, expertise and qualifications, Defendant responds that Plaintiff's objection to such exhibits is misplaced because Plaintiff is the party who has placed his performance at issue in connection with the remaining discrimination claim in this case. Indeed, in opposition to Defendant's Motion for Summary Judgment, Plaintiff submitted a 97-page Statement of Material Facts ("SMF") as to Which There Exists a Genuine Issue (ECF 317-3). Plaintiff's SMF consisted of 488 paragraphs identifying allegedly material facts as to which he claims there is a genuine issue pertinent to the question of whether the FBI discriminated against him by assigning him on a temporary basis to the DocEx Project. Most of these allegedly material facts pertain to Plaintiff's FBI career and experience as an FBI Special Agent. Plaintiff cannot claim on the one hand that his career and experience are material and then assert on the other that Defendant must be precluded from presenting evidence relating to his performance and qualifications.

Further, the extent to which Defendant will use exhibits regarding Plaintiff's performance, expertise, or qualifications depends on the nature and content of the case Plaintiff presents during his case-in chief. *See, e.g., Youssef v. Holder*, Tr, Transcript (Day 3 AM Session) at 30-31. If Plaintiff puts on evidence relating to specific details about his career, the FBI should not be precluded from responding to such evidence to the extent it is relevant to its weight or credibility. FRE 104(e). In other words, if Plaintiff presents evidence which relates to his performance and qualifications, Defendant cannot be precluded from presenting rebuttal and/or impeachment exhibits in response. Cf.

*Michelson v. United States*, 335 U.S. 469, 478-79 (1948)  (if a criminal defendant puts his reputation in issue, then the prosecution may "pursue the inquiry with contradictory witnesses").  Therefore, Plaintiff's objection as to performance, expertise and qualification exhibits should be overruled.

**VIII.    Demonstrative Evidence, Physical Evidence, Videotapes:**

**A.    Joint Demonstrative Evidence, Physical Evidence, Videotapes**

> **Joint Demonstrative Aid 1.**  Counterterrorism Division Organizational Chart, dated 10/09/01

> **Joint Demonstrative Aid 2.**  National Security Division Organizational Chart, dated 3/25/02

Additionally, the Parties have agreed to work together to prepare other demonstrative exhibits reflecting the organizational structure of CTD, NSD, and FBIHQ from September 2001 through June 2002.

**B.    Plaintiff's Demonstrative Evidence, Physical Evidence, Videotapes**

> **Demonstrative Aid 1:**    Chart of "GS-15 Agent Arabic Proficiency"

> **Defendant's Objection**: Defendant's objections to Plaintiff's Demonstrative Aid 1 are set forth separately in objections to be filed with the Joint Pretrial Statement.

> **Demonstrative Aid 2:**    Chart of "Average Proficiency Score of FBI Agents in Arabic"

> **Defendant's Objection**: Defendant's objections to Plaintiff's Demonstrative Aid 2 are set forth separately in objections to be filed with the Joint Pretrial Statement.

> **Demonstrative Aid 3:**    Youssef Career Progression:  1988-2003

> **Defendant's Objection**: Defendant's objections to Plaintiff's Demonstrative Aid 3 are set forth separately in objections to be filed with the Joint Pretrial Statement.

Additional demonstrative aids based on a review of the exhibits and arguments to be raised by the Defendants.

**C.    Defendant's Demonstrative Evidence, Physical Evidence, Videotapes**

**See Attachment G, Table of Defendant's Demonstrative Aids**

**Plaintiff's Opposition**:  Plaintiff reserves the right to object to these demonstrative aids once the Defendant provides plaintiff with a copy of said aids.  Based on the description provided by Defendant, Plaintiff makes the following objections:

**Demonstrative Aid 1:**     Pie chart illustrating breakdown of FBI Special Agents by pay grade as of September 2001

**Plaintiff's Objection**: Relevance (number of agents not material or relevant to this case); The underlying data necessary to document this exhibit was not produced in discovery.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**Demonstrative Aid 2:**     Chart showing posted TDY opportunities within CTD, broken down by month, from September 2001through December 2002

**Plaintiff's Objection**: The underlying data upon which this aid is based was not produced in discovery.  The exhibits which purport to contain the information represented in this exhibit are subject to an objection.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**Demonstrative Aid 3:**     Chart showing number of FBI agents, by grade, on TDY to CTD, broken down by month, from September 2001 through December 2002

**Plaintiff's Objection**: The underlying data upon which this aid is based was not produced in discovery.  The exhibits which purport to contain the information represented in this exhibit are subject to an objection.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**Demonstrative Aid 4:**     Posted unit chief openings in CTD, broken down by month, from September 2001 through December 2002

**Plaintiff's Objection**: The underlying data upon which this aid is based was not produced in discovery.  The exhibits which purport to contain the information represented in this exhibit are subject to an objection.  The aid is also irrelevant.  Why

is the number of Unit Chief's relevant to this case?  Misleading and prejudicial.  The number of approved Unit Chief positions is very misleading.  The counterterrorism division was in the process of being expanded, and many of the Unit Chief positions were not officially approved, yet persons were occupying those positions in a temporary, acting or TDY basis.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**Demonstrative Aid 5:**   Timeline illustration showing Plaintiff's FBI career progression from entry on duty in 1988 through March 2002

**Plaintiff's Objection**: Plaintiff will reserve objection to this aid pending its publication to the Plaintiff.  The Plaintiff will also have his own version of a similar aid.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

**Demonstrative Aid 6:**   Organizational chart for FBIHQ for September 2001

**Plaintiff's Objection**: No objection.

**Demonstrative Aid 7:**   Organizational chart for CTD for September 2001

**Plaintiff's Objection**: No objection.

**Demonstrative Aid 8:**   Illustration of chain of command and structure for DocEx project for March 2002

**Plaintiff's Objection**: Plaintiff reserves any objection until the aid is published to the Plaintiff.

**Defendant's Response**: Defendant's response is set forth separately in responses to be filed with the Joint Pretrial Statement.

Defendant reserves the right to create additional demonstrative aids derived from the organizational charts/flow charts that have been submitted as Joint Demonstrative Exhibits #1 and #2.  Defendant also reserves the right to create additional demonstratives based on organizational charts of CTD or NSD from September 2001 through June 2002.

## IX.   **Deposition Designations**

**A. Plaintiff's Deposition Designations**

**1.      Bassem Youssef**

If a witness identified in Mr. Youssef's witness list will not testify either in person at the trial or by remote video conferencing, Plaintiff reserves the right to designate portions of the deposition to be read to the jury at trial.

**Defendant's Objection:** Local Civil Rule 16.5(b)(7) and the Court's Pretrial Order require Plaintiff to designate, by line and page number, the depositions he intends to use at trial. Plaintiff's paragraph purporting to reserve his rights does not comply with the Rule and Order. The time for Plaintiff to determine whether his witnesses will appear at trial is now. Defendant objects to any future designations of deposition testimony. Defendant's objections to remote video conferencing are set forth in the separate document of Defendant's objections submitted with the Joint Pretrial Statement.

**2.      William Chornyak**

If, for whatever reason Mr. Chornyak is not available to testify at the trial (either in person, or by video), Mr. Youssef hereby designates the following portions of his deposition:

    4: 4-7
    6: 13-16
    7: 7-20
    10:18 through page 13, line 11 [introduce Deposition Exhibit 3]
    13: 21 though page 14, line 22  [introduce Deposition Exhibit 2

**Defendant's Objection:** Defendant objects to the designation of 6:13-16 concerning Chornyak's employment at Coca Cola in 2005 as irrelevant. And Defendant objects to the remaining designations for the reasons expressed in our written objections to Plaintiff's proffer of witness testimony for Mr. Chornyak. These designations relate to purely speculative hearsay evidence concerning alleged rumors about Plaintiff that this Court has previously ruled in admissible under FRE 602.

**3.      Art Cummings**

    4:  4-12
    7:  17-21
    13: 8-22
    14: 1-16
    26: 8-22
    27: 1-2
    29: 12-22

30:  4-22
31-41:  All
42:  1-18
52:  6-22
53-56:  All
57: 1-3

**Defendant's Objection:** Defendant objects to designation 7:17-21 concerning Cumming's language ability as not relevant and therefore inadmissible under FRE 402.  Defendant also objects to all of Plaintiff's remaining designations, which concern Cumming's personal career path and selection for CTD roles as not relevant and therefore not admissible under 402.   Such irrelevant testimony is likely only to confuse and mislead the jury at trial because Plaintiff and Mr. Cummings never competed against one another for job assignments within the FBI Counterterrorism Division after 9/11.  In fact, Plaintiff *never* applied for any of the jobs that Mr. Cummings later obtained during his career.  Thus, testimony that would essentially juxtapose Mr. Cummings' career path with that of the Plaintiff lacks both factual foundation and relevance, and would only mislead the jury.  Therefore such testimony must be barred from trial under FRE 402 and 403.

**Defendant's Counter-Designations for Mr. Cummings**: To extent Plaintiff's designations are admitted, however, then Defendant submits the following counter designations:

5:18-29:14
57:7-15
60:21-63-69:16
74:5-81:22
93:6-112:12
122:21-125:5

**Plaintiff's Objection to Defendant's Counter-Designations**:  These counter-designations are beyond the scope of direct.

4.      **Ellen Knowlton**

4: 4-6
16: 18-22
17: 1-7
32: 13-22
33: 1-15
34: 4-10
40: 20-22
41: 1-2, 4-22
42:  1—14
43:  1-3

44: 20-22
45: 1-8
46:  4-5, 22
47:  1-2
48: 9-22
49:  1-18
53: 3-10
62: 8-11
69: 22
70: 1-6

**Defendant's Counter-Designations for Ms. Knowlton**:  Defendant intends to call Ms. Knowlton, accordingly deposition designations are not appropriate.  Plaintiff can cross-examine Ms. Knowlton and use her deposition for impeachment purposes.  Nonetheless, if counter-designations are necessary at this time, Defendant designates as follows:


6: 17-20
9: 5-11
9: 19-10:6
16:9-17
16: 22
32: 12
33: 16-34:3
34: 11-35:1
38: 16-22
39: 8-20
42: 15-16
44: 14-18
45: 9-46:3
47:3-48:7
61:4-8
70:7
70:17-71:6

**Plaintiff's Objection to Defendant's Counter-Designations**:  These counter-designations are beyond the scope of direct.

**Also,  based on the FBI's representation that this witness will testify at trial, Plaintiff withdraws his request to introduce testimony from this witness via deposition.  He will cross examine the witness at trial.**

5.      **Louis Freeh**

Plaintiff will introduce the same portions of Mr. Freeh's deposition as were introduced in the first trial in this matter.

**Defendant's Counter-Designations for Mr. Freeh**:

68: 8 – 69:1-5
69: 10 - 70: 7

**Plaintiff's Objection to Defendant's Counter-Designations**:  Plaintiff's objection to this counter-designation and any further rebuttal designations are reserved as the formatting of the transcript used by the Defense may not be consistent with the formatting of the transcript in the possession of the Plaintiff.

6.    **Robert Thompson [if he cannot testify at trial]**

4: 10-17
7: 10-17
9: 15-22
10: 1-15
12: 4-22
13: 1-22
14: 1-5
19: 21-22
20: 1-2
22: 6-21
26: 11-18
26: 19-22
27: all
28: all
29: 1-12
32: 13-16
34: 3-22
35: 1-13
39: 5-21
40: 9-17
41: 9-12

Note:  The transcript for which Plaintiff relied on to set forth these designations is not consistent with the pagination in the transcript in the possession of the Defendant.  All objections are reserved until the pagination issue is resolved.

B.  **Defendant's Deposition Designations:**

1.    **Robert Mueller**

1: 9-15
4: 9-15
9: 2-16
41: 17-45:5
47: 11-18
57: 19-62-13
63: 9-20
98: 20-100:12
109:7-111:10

**Plaintiff's Counter-Designations for Mr. Mueller**:  This witness will testify at trial and be subject to cross-examination.  Plaintiff objects to the use of the deposition transcript.  However, if the witness is permitted to testify via deposition the following designations have been identified:

4: 16-17, 20
5: 15-22
6: 1
9: 2-5, 7-11
13: 16-22
14: 1-5, 10-12, 16-22
17: 5-6, 8
21: 8-12
28: 17-22
29: 1-8
30: 1-12
31: 17-22
32: 1-4, 9-21
45: 5-7
63: 22
64: 1-7
66: 6-16, 18-20
68: 4-17
80: 11-18
81: 1-2

[**Defendant's Response:** Defendant objects to Plaintiff's addition of testimony about the meeting with Congressman Wolf (28: 17-29:8, 30:1-12, 31:17-32:4, 32:9-21, 68:4-17) because Plaintiff has already tried his claim based on Defendant's alleged retaliation for Plaintiff contacting Congressman Wolff; the jury rejected that claim; and Plaintiff should not be permitted to revive it as part of this trial.  Defendant further objects to designated testimony concerning selections for SES positions (13:16-22, 21:8-12, 45-5-7) which are not at issue in this case concerning Plaintiff's assignment to DocEx in March of 2002.  Plaintiff did not apply for any SES positions in 2001 or 2002.  Lastly, defendant objects to

designated testimony concerning Mr. Mueller's personal knowledge or
background relating to the Middle East and counterterrorism. (4:16-17, 20, 80:11-
18, 81-1-2), as Mr. Mueller's personal expertise in these areas is not relevant to
Plaintiff's national origin discrimination claim. All three areas of designated
testimony are not relevant and may only confuse the jury as to the nature of claim
for trial, and thus, consistent with FRE 402 and 403, these designations should not
be read to the jury at trial.   However, if those additional designations are
permitted, then Defendant makes the following designations in response

> 6:2-9:1
> 14:9
> 15:1-2
> 29:9-33:430:13
> 32:5-8
> 66:17
> 66:21
> 67:21-68:3
> 86:17-87:14

## 2.   William Chornyak

> 4:1-8
> 30:5-57-9
> 60:18-62:15
> 65:16-72:18
> 87:9-17
> 93:3-94:4

**Plaintiff's counter-designations:  Plaintiff maintains that this witness
should testify at trial or testify by video conferencing if he is not
available in Washington, D.C.  The deposition designations proposed
by the Plaintiff in his portion of the brief relate only to the
introduction of this witnesses statements to the FBI EEO.  The
Defendant has designated a large portion of his testimony for
admission.  Plaintiff maintains that if this witness does not testify at
trial, the entire deposition would need to be reviewed and an
agreement made as to which parts should be introduced and which
parts the parties would contest.  The reason for this process is that
Mr. Chornyak's deposition was a discovery deposition, not a
testimonial deposition.**

## X.   Damages Itemization

1.   <u>Lost Wages</u>

Based on the expert report of Amy McCarthy and testimony of Plaintiff to be supplemented at the equitable relief phase of the case.

This evidence will not be submitted to the jury, but is reserved for the equitable relief phase of the trial, should that phase be conducted.

2.   <u>Compensatory Damages for Emotional Distress and Loss of Professional Reputation</u>.

Mr. Youssef has suffered emotional distress, physical pain, humiliation, embarrassment, and damage to professional reputation as a result of the discrimination alleged in his complaint.  Plaintiff's compensatory damages will be decided by a jury but cannot exceed $300,000 or the legal maximum permitted under Title VII of the Civil Rights Act of 1964, *as amended*, whichever is larger.

3.   <u>Equitable Relief</u>

Plaintiff will ask for equitable relief pursuant to Title VII §2000e-5. Based on the jury verdict, plaintiff would submit a request for equitable relief post-trial.  Equitable relief would include:  Bureau-wide posting, instatement into the position for which Mr. Youssef would have held but for the discrimination; a correction of Mr. Youssef's job record; his job records would reflect his instatement into the Acting Unit Chief position within DocEx.

4.   <u>Attorney Fees and Costs</u>

Mr. Youssef shall request payment for all reasonable attorney fees, expert witness fees and other costs as permitted under 42 U.S.C. § 1988 or any other applicable law.

**XI.    Relief Sought Plaintiff seeks relief for:**

1.    Monetary Damages.

2.    Compensatory Damages for Emotional Distress and Loss of Professional Reputation.

3.    Equitable Relief Pursuant to Title VII §2000e-5.

4.    Attorney's Fees and Costs.

**XII.    Motions to be Decided / Unusual Issues of Fact or Evidence**

Plaintiff believes that the Federal Bureau of Investigation has improperly classified information related to the plaintiff's background and experience. Plaintiff will seek the release of this information either in these proceeding or outside proceedings.  He is currently pursuing the prepublication clearance process to have some of these materials released.  Plaintiff maintains that it is incumbent upon the FBI to disclose all of the withheld information.  Defendant disputes that it is "incumbent upon the FBI to disclose all of the withheld information," notes that Plaintiff failed to timely object to the redactions during discovery, and will respond to any motions Plaintiff files.

Defendant expects to file motions *in limine*.

**XIII.    Estimate of Trial Time**

10 days.

XIV.   **Jury Voir Dire**

The parties' Joint Proposed Jury Voir Dire is attached hereto as

Attachment H.

XV.   **Jury Instructions**

Joint Proposed Jury Instructions, Plaintiff's Proposed Jury Instructions, and

Defendant's Proposed Jury Instructions, along with objections, are attached hereto

as Attachment I.

XVI.   **Jury Verdict Form**

Joint Proposed Verdict Form is attached hereto as Attachment J.

XVII.   **Miscellaneous Matters**

The parties agree that these proceedings should be bifurcated, such that all issues

relating to liability and compensatory damages be tried before a jury, and if the jury

returns a verdict finding Defendant liable, then the Court will begin pretrial proceedings

with respect to equitable relief sought by Plaintiff. "This bifurcation should focus the

parties initially on presenting only those issues relevant to liability and compensatory

damages."  Court Order on Bifurcation Jan. 21, 2010 (ECF No. 185).  Based on this

agreement, the parties are not identifying witnesses and/or exhibits whose testimony is

only related to the equitable relief that may be sought by the Plaintiff.

Dated: June 8, 2015                    Respectfully submitted,


                                       BENJAMIN C. MIZER
                                       PRINCIPAL DEPUTY ASSISTANT ATTORNEY
                                       GENERAL

                                       VINCENT H. COHEN, JR.
                                       Acting United States Attorney

                                       CARLOTTA P. WELLS
                                       Assistant Director
                                       Federal Programs Branch

                                       /s/_____

                                       KIERAN G. GOSTIN (DC Bar 1019779)
                                       SUSAN K. ULLMAN (DC Bar 426874)
                                       ADAM C. SIPLE (NY Bar 4387296)
                                       United States Department of Justice  Civil
                                       Division, Federal Programs Branch  20
                                       Massachusetts Ave., N.W.  Washington, D.C.
                                       20530
                                       Tel: (202) 305-7664
                                       Fax: (202) 616-8460
                                       E-mail: Adam.C.Siple@usdoj.gov

                                       Attorneys for Defendant

                                       /s/_____


                                       STEPHEN M. KOHN (D.C. Bar No. 411513)
                                       KOHN, KOHN, & COLAPINTO, LLP
                                       3233 P Street, N.W.  Washington,
                                       DC 20007-2756
                                       Tel: (202) 342-6980
                                       Fax: (202) 342-6984
                                       sk@kkc.com


                                       Attorneys for Plaintiff


87